**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff,** | |
| **v.** | **Civ. No. 1:25-CV-1907** |
| **APPROXIMATELY 225,364,961** | |
| **Defendant.** | |

**GOVERNMENT'S MOTION TO STRIKE VERIFIED CLAIMS OF**
**CLAIMANTS 1-118**

The United States of America, by and through Jeanine Ferris Pirro, United States Attorney

for the District of Columbia, and Rick Blaylock, Jr., Assistant United States Attorney, files this

Motion to Strike the Claims of Victim-Claimants pursuant to Rule G(8)(c)(i) of the Supplemental

Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions for failing to comply with

Rule G(5) and because Claimants lack Article III and statutory standing under 18 U.S.C. §§ 981

and 983.   In support of its motion the Government states the following:

**BACKGROUND**

1.      On June 18, 2025, the government filed a Verified Complaint for Forfeiture in a

civil action *in rem* against 225,364,961 USDT.[1]   Claimants 1-118 filed a "Verified Claims of

Victim-Claimants Identified in Schedule A" on October 3, 2025.[2]

---

[1] Doc. 1.
[2] Doc. 2.

2. Procedures for this action are mandated by Rule G of the supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, as well as 18 U.S.C. §§ 981 and 983 and the Federal Rules of Civil Procedure.

3. OKX, a virtual currency exchange, contacted law enforcement officers regarding a large network of virtual currency accounts (the "144 OKX Accounts") they analyzed and believed were involved in receiving and transferring vast amounts of cryptocurrency scam proceeds—all controlled by a coordinated group of overseas actors. Law enforcement identified approximately 434 suspected fraud victims whose funds were likely laundered using this network.

4. Investigators identified approximately 93 addresses to which victims voluntarily deposited their virtual currency while under the belief that they were sending funds to legitimate exchange platforms. Victims' funds were then sent to 22 of the 144 OKX Accounts after being cycled through a large set of "intermediary addresses," which law enforcement assesses were used by scammers for laundering purposes.

5. Once the money launderers sent victim funds through the network of 144 OKX Accounts, they then laundered the funds even further through a group of 35 additional intermediary addresses. Funds traced through these 35 intermediary addresses ultimately were sent to the Subject Virtual Currency Addresses. On or about May 1, 2025, the Honorable United States Magistrate Judge Moxila A. Upadhyaya in the District of Columbia issued a seizure warrant for the approximately 225,364,961 USDT associated with the Subject Virtual Currency Addresses, which constitute the Defendant Property.

6. Claimants 1-118, as identified in Schedule A of their Verified Claims, assert that they fell victim to a criminal scheme and never voluntarily transferred, assigned, or abandoned their lawful ownership interests. Although their voluntary transfers may have been induced

through misrepresentations, those transfers were made voluntarily nonetheless.    Because the Claimants voluntarily authorized and executed the crypto transfers, and because constructive trusts are not a cognizable basis for civil forfeiture relief in the D.C. Circuit, the Claimants are precluded from contesting the forfeiture of the relinquished property.

7.        While Claimants 1-118 cannot contest forfeiture—they may still be made whole. The United States routinely compensates victims through remission or mitigation.[3]  And it does so for free with no cost to victims.[4]  Filing a claim and contesting forfeiture is simply the wrong avenue to recovery.

## DISCUSSION

8.        In this forfeiture action involving cryptocurrency, the Claimants 1-118 fail to establish both Article III and statutory standing under 18 U.S.C. §§ 981 and 983.   The Claimants voluntarily authorized and executed the transfers at issue, thereby relinquishing any colorable ownership, possessory or security interest in the defendant property upon its receipt by the recipient.    Under the relation-back doctrine of § 981(f), legal title to the property vested retroactively in the United States at the time of the underlying criminal act. The Claimants' subjective expectations of control do not constitute legally protected interests, and even if standing could be shown, their reliance on a constructive trust theory is foreclosed by D.C. Circuit precedent. The Circuit has made clear that equitable remedies cannot override or circumvent the statutory scheme granting exclusive ownership to the government through retroactive vesting. Because the Claimants failed to comply with Rule G(5) and because they lack standing to contest the forfeiture of the relinquished property, their Verified Claims should be stricken pursuant to

---

[3] *See* https://www.justice.gov/criminal/criminal-mnf/remission.
[4] *See* https://www.forfeiture.gov/FilingPetition.htm.

Rule G(8)(c)(i). Because Claimants do not have standing, the court should not reach the merits of the motion to transfer.

9.    Nevertheless, a primary goal of the Department's Asset Forfeiture Program is to return forfeited funds to victims. Should the government prevail in this forfeiture action, it intends to compensate victims through the routine process of remission, which is free and available to any victim.

## I.    Claimants Lack Article III and Statutory Standing

10.    To contest a government forfeiture action, a claimant must establish both Article III standing and statutory standing.   "In order to establish Article III standing, a claimant must have colorable ownership, possessory or security interest in at least a portion of the [seized] property."[5] Possession of a "legal interest" in forfeited property is "the touchstone for standing" of a third party seeking to challenge forfeiture.[6]   To establish statutory standing in an Admiralty or Maritime Claim or Asset Forfeiture Action, a claimant must satisfy standing requirements of 18 U.S.C. §§ 981 and 983, as well as the supplemental Rule G.   Specifically, § 983(d)(6)(A) considers an "owner" to be a "person with an ownership interest in the specific property sought to be forfeited," and does not include "a person with only a general unsecured interest in, or claim against, the property or estate of another."[7]   Both the statutes and the rule require that a claimant in a forfeiture action "assert[] an interest" in "specific property" that is named as a defendant asset.[8] Without such an interest, a claim should be stricken for failing to comply with Rule G(5) and for

---

[5] *United States v. Munson*, 477 F.App'x 57, 62-63 (4th Cir. 2012) (citations omitted).
[6] *United States v. Oregon*, 671 F.3d 484, 490 (4th Cir. 2012).
[7] 18 U.S.C. § 983(d)(6)(B).
[8] Supp. R. G(5)(a)(i); *see* 18 U.S.C. § 983(a)(2)(C).

lacking standing to challenge the forfeiture.[9]  A claimant must respond to special interrogatories, and the court must determine whether the claimant has standing to contest the forfeiture before the court addresses any issue that the claimant may raise.[10]  A claimant bears the burden to establish by a preponderance of the evidence that they possess the required constitutional and statutory standing to challenge the government's forfeiture.[11]

11.    The District of Columbia made clear: fraud victims who voluntarily transfer their property to their wrongdoers do not retain a legal interest in their property; instead, such victims acquire a debt against their wrongdoers.[12]

12.    Claimants here explicitly and voluntarily authorized and delivered the relevant cryptocurrency transfers via private key and on-chain confirmation, divesting themselves of legal title upon receipt by the recipient.  Legal title passed to the recipient and vested in the United States "upon commission of the act giving rise to forfeiture."[13] As such, lacking any interest in "specific property" that is named as a defendant, the Claimants have no standing to challenge the

---

[9] Supp. R. G(8)(c)(i)(A-B).

[10] *United States v. $104,250 in U.S. Currency*, 947 F. Supp. 2d 560, 565 (D. Md. 2013) ("claimant must respond to the special interrogatories, and court must determine whether the claimant has standing to contest the forfeiture, before court addresses any other issue that the claimant may raise"); *see also United States v. $14,800 in U.S. Currency*, No. ELH–11–cv–3165, 2012 WL 4521371, *3 (D. Md. Sept. 28, 2012) (court held that "standing is a threshold issue that must be resolved before addressing an asset forfeiture claim" and so ruling on the adequacy of claimant's response to special interrogatories before addressing claimant's motion for summary judgment);

[11] *United States v Bank Julius Baer & Co. Ltd. Guernsey Branch Acct. No. 121128 (Lazarenko)*, 480 F. Supp. 3d 1, 16 (D.D.C. 2020).

[12] *United States v. 8 Gilcrease Lane, Quincy Fla. 32351*, 641 F. Supp. 2d 1, 5 (D.D.C. 2009); *see also United States v. Agnello*, 344 F.Supp.2d 360, 372 (E.D.N.Y.2004) (finding that standing in a civil forfeiture action requires a showing of an ownership interest in the forfeited property, not merely a right to payment); see also *United States v. $3, 000 in Cash*, 906 F.Supp. 1061, 1065 (E.D.Va.1995) (claimant/victim could trace his money to seized bank account but title to the money passed to perpetrator, making claimant an unsecured creditor without standing).

[13] 18 U.S.C. § 981(f).

forfeiture.[14]   Any subjective expectations of "maintaining custody and control" that the Claimants

may have held are not among the statutory grounds for ownership and do not constitute legally

protected interests.[15]   Nor do they negate intent or delivery.[16]   Because the Claimants voluntarily

authorized and executed the crypto transfers, thereby divesting themselves of legal title under §

981(f), they lack standing to contest the forfeiture of the relinquished property.

## II.   Constructive Trust Theory Does Not Apply

13.   Even if standing could be shown, the Claimant's constructive trust theory is

foreclosed by the relation-back doctrine and the exclusivity of statutory remedies.   Generally, a

constructive trust is said to arise "[w]here a person holding title to property is subject to an

equitable duty to convey it to another on the ground that he would be unjustly enriched if he were

permitted to retain it."[17]   For example, "if 'a fraudster acquires property from a victim by fraud,'

a court may find that 'the fraudster holds the property in constructive trust for his victim,' and thus

may be compelled to return the property."[18]   Constructive trust doctrine, therefore, is sometimes

useful for would-be claimants in forfeiture actions as it "may permit a party who has neither title,

nor possession, nor a secured interest in the defendant property to claim standing" in order to

challenge the forfeiture "on the ground that the party has an equitable interest in the property

arising from the automatic imposition of a constructive trust upon the occurrence of some act of

fraud or mistake."   *Id.* (citation omitted).   Some courts have even found that a "mere assertion of

[a] claim, which may someday be remedied by the imposition of a trust, is sufficient to demonstrate

---

[14]  *See* Supp. R. G(5)(a)(i) and G(8)(c)(i)(A-B).
[15]  *See* 18 U.S.C. § 983(d)(6)(A)-(B).
[16]  *See United States v. Emor*, 785 F.3d 679 (D.C. Cir. 2015).
[17]  *Restatement (First) of Restitution* § 160 (1937).
[18]  *United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d 191, 200 (D.D.C. 2011) (citation omitted).

an interest in the defendant property" as to "confer standing upon the claimant." *Id.* (citation omitted). The reasoning there assumes that "if a trust is ultimately imposed, it will be found to have arisen at the time of the act causing unjust enrichment, and so to have existed when the claimant originally intervened in the forfeiture action." *Id.* (citation omitted).

14. The D.C. Circuit, however, does not subscribe to this theory of standing in forfeiture cases.[19] Instead, it has held that the forfeiture statute's retroactive vesting provision creates a "remedial scheme that reaches back to the time of the criminal acts to forfeit the property to the United States."[20] That "retroactive legal fiction" is "similar to a constructive trust for the benefit of the United States," and "[i]t is not open to a court to fashion another remedy (a competing fiction) that also reaches back to snatch the property away from the United States – which is exactly what a constructive trust would do."[21] In other words, equitable constructive trust claims cannot circumvent an explicit statute that creates a retroactive legal fiction for the benefit of the United States.

15. Although the action at hand proceeds under 18 U.S.C. §§ 981 and 983 rather than the RICO statute that was in question in *BCCI Holdings*, the identical relation-back language in § 981(f) compels the same result: "All right, title, and interest in property [subject to forfeiture] … shall vest in the United States upon commission of the act giving rise to forfeiture."[22] Therefore, § 981, just like the RICO statute, reaches back to the moment of the criminal act and pre-empts competing legal fictions, such as a constructive trust.[23]

---

[19] *United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185 (D.C. Cir. 1995).
[20] *Id.* at 1191 (quoting 18 U.S.C. § 1963(c)).
[21] *Id.*
[22] 18 U.S.C. § 981(f).
[23] *See United States v. 92 Buena Vista Ave.*, 507 U.S. 111, 125-26 (1993) (plurality) ("The government's title to forfeited property relates back to the moment of forfeitability" and relation-

16.    The Claimants' third-party interests at hand are therefore measured as of the time the criminal acts occurred.[24]   A constructive trust not yet imposed by a court cannot be shown to have existed at that moment.[25]   The D.C. Circuit has never recognized a constructive trust as a basis for relief in civil forfeiture, and §§ 981 and 983 limit claimants to legal title or bona fide purchaser status, nothing more.[26]   Since constructive trusts are statutorily unavailable under §§ 981 and 983, and are foreclosed by the law of this Circuit, the Claimants' assertion that they are the beneficiary of a constructive trust is not a cognizable claim and does not confer standing. Even if a constructive trust were cognizable, the claims fail because the Claimants voluntarily authorized the crypto transfers, divesting themselves of legal title before any alleged unjust enrichment arose.

**III.    The proper mechanism for victim compensation is remission or mitigation, not contesting forfeiture.**

17.    A primary goal of the Department's Asset Forfeiture Program is to return forfeited funds to victims of crime.[27]  The asset forfeiture statutes authorize victim compensation but do not mandate it as a matter of right.   However, existing Attorney General guidance directs prosecutors to use asset forfeiture for the recovery of assets to compensate victims of crime, as permitted by law, whenever possible.[28]

---

back vests absolute title in the government subject only to statutory innocent-owner defenses).

[24] 18 U.S.C. § 983(d)(3)(A).

[25] *See BCCI Holdings*, 46 F.3d at 1191.

[26] *See Emor*, 785 F.3d at 679.

[27] U.S. Department of Justice, *Asset Forfeiture Program*, https://www.justice.gov/afp. (Last accessed February 4, 2026).

[28] *See* Dep't of Justice, The Attorney General's Guidelines on Seized and Forfeited Property (2018), available at https://www.justice.gov/criminal-mlars/file/1123146/download (last accessed February 4, 2026).

18.     Authority to distribute forfeited property to owners, lienholders, or victims rests solely with the Attorney General through processes of remission and mitigation.[29]   The Attorney General delegated the authority to decide petitions for remission or mitigation in judicial cases to the Chief of the Department of Justice's Money Laundering, Narcotics, and Forfeiture Section (formerly the Money Laundering and Asset Recovery Section).[30]

19.     Attorney General guidance also directs prosecutors to make their best efforts to see that crime victims are notified of, and accorded, the rights described in the Crime Victims' Rights Act, which includes the right to full and timely restitution as provided by law.[31]   Accordingly, the Department uses its authorities to provide discretionary victim compensation through the Program, in furtherance of the victim compensation directives in the Attorney General's guidance.   The Department has published regulations governing the exercise of this authority.[32]   Under these regulations, the Department may compensate qualified crime victims for pecuniary losses caused by the crime underlying the forfeiture and certain related offenses.   The Department regularly compensates victims through remission or mitigation and intends to here—that is the lawful mechanism for recovery, not contesting a forfeiture action in which Claimants do not have standing.

---

[29] *See* 28 U.S.C. § 524(c)(1)(E)(i); 18 U.S.C. § 981(d) (civil forfeitures); 21 U.S.C. § 853(i)(1) (pertaining to controlled substances violations; applicable to other criminal forfeiture statutes by, *e.g.*, 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b)(1)); 18 U.S.C. § 1963(h)(2) (RICO); *see also* 28 C.F.R. Part 9.

[30] *See* 28 C.F.R. § 9.1(b)(2).

[31] *See* Attorney General Guidelines for Victim and Witness Assistance (2022), Art. V.B.1, available at https://www.justice.gov/ag/page/file/1546086/download (last accessed February 4, 2026).

[32] *See* 28 C.F.R. Part 9, "Regulations Governing the Remission or Mitigation of Administrative, Civil, and Criminal Forfeitures."

**CONCLUSION**

Claimants 1-118's failed to comply with Rule G(5) and 18 U.S.C. §§ 981 and 983, and their claim and answer should be stricken.


Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY


By: */s/ Rick Blaylock, Jr.*
    Rick Blaylock, Jr.
    TX Bar No. 24103294
    Assistant United States Attorney
    Asset Forfeiture Coordinator
    United States Attorney's Office
    601 D Street, N.W.
    Washington, D.C. 20001
    (202) 252-6765
    rick.blaylock.jr@udoj.gov