UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

Approximately $225,364,961 USDT.

Defendant <u>In</u> <u>Rem</u>.

Civ. No. 25-1907 (AHA)

---

## UNITED STATES OF AMERICA'S FIRST RESPONSE TO THE CLAIMANT 118'S MOTION TO TRANSFER VENUE

**INTRODUCTION**

The United States of America, by and through United States Attorney for the District of Columbia Jeanine Ferris Pirro, and Assistant United States Attorney Rick Blaylock, Jr., files this opposition to potential victim claimant's motion to transfer venue, pursuant to 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406, because potential claimants have not established that the District of Columbia is an improper venue or that the stringent transfer requirements are met as to the Northern District of California.

The Court should not reach Claimant 1-118's argument to transfer because they do not have standing in this matter.[1] Without waiving this assertion, the United States nevertheless addresses their motion *arguendo*.

## I.    VENUE IS PROPER IN THE DISTRICT OF COLUMBIA

Here, venue is proper under 18 U.S.C. § 3238 and 28 U.S.C. §§ 1355(b) and 1395(a) and (c). Specifically, § 1355(b)(1)(B) provides that a forfeiture action may be brought in any other district where venue for the forfeiture action or proceeding is specifically provided for in § 1395. A civil proceeding for forfeiture may be prosecuted in the district where it accrues pursuant to § 1395(a). Here, the forfeiture accrues in the District of Columbia pursuant to § 3238, as all offenses begun or committing elsewhere out of the jurisdiction of any particular state or district, the offenders were not arrested or brought into any district, and the last known residence of the offenders is unknown. A civil proceeding for the forfeiture of property seized outside any judicial district can also "be prosecuted in any district into which the property is brought" under § 1395(c).[2] Here, the property subject to the action was brought into the District of Columbia pursuant to a

---

[1] This argument is made in the motion to Strike Claimant 1-118's Claim, Doc. 44.
[2] While 28 U.S.C. § 1395 actually confers jurisdiction, 28 U.S.C. § 1355(b)(1)(B) explains that venue is proper as long as jurisdiction is met under § 1395 or any other statute.

warrant issued by a Magistrate Judge in the District of Columbia and is currently in possession of the United States.[3] The Defendant Property was held by the United States Marshals Service and is now held by the Federal Bureau of Investigation, Washington D.C. Field Office.

In § 1355(b)(2), Congress provided that "[w]henever property subject to forfeiture under the laws of the United States is located in a foreign country, . . . an action or proceeding for forfeiture may be brought . . . in the United States District court for the District of Columbia."[4] Here, the property subject to forfeiture was located "in a foreign country."[5] Therefore, venue is proper in the District of Columbia, consistent with Congress's goal to provide one District to consolidate forfeiture proceedings involving international criminal actors, which can often involve large numbers of victims scattered throughout the United States as in this case.[6]

## II. THE PUBLIC AND PRIVATE INTERESTS WEIGH AGAINST TRANSFERRING VENUE FROM THE PLAINTIFF'S CHOICE OF VENUE

When considering a Motion to Transfer, courts first determine if the proposed transferee court is located "in a district where the action might have been brought"[7] and, if venue is proper in the potential district, courts engage in a balancing test.[8] In this analysis, "the plaintiff's choice of forum is given substantial deference."[9] "[T]he movant requesting a transfer of venue 'bears a

---

[3] Compl. ¶ 16, 48.
[4] 28 U.S.C. § 1355(b)(2).
[5] Compl. ¶ 50, 54, 63-66. Whether or not the Tether's location is tied to OKX in the Seychelles, the exchange where the cryptocurrency transactions occurred, or in the Philippines, where "these accounts were almost exclusively accessed", does not matter. Both locations are "in a foreign country" for the purposes of 28 U.S.C. § 1355(b)(2). The logical endpoint of potential victim claimants' own theory, in which the "situs of intangible assets is the domicile of the owner unless fixed by some positive law," is that the location of the seized USDT was the Philippines. *Currier v. PDL Recovery Group, LLC*, No. 14-12179, *2018 WL 4057394, at 2 (E.D. Mich. Aug. 27, 2018); Mot. to Transfer Venue at *20; *see also* Compl. ¶ 54, 63-66.
[6] Compl. ¶ 45.
[7] *Smith v. Yeager*, 234 F. Supp. 3d 50, 55 (D.D.C. 2017).
[8] 28 U.S.C. § 1404(a).
[9] *Smith v. Yeager*, 234 F. Supp. 3d 50, 58 (D.D.C. 2017); *see also Gross v. Owen*, 221 F.2d 94, 95 (D.C.Cir.1955) ("It is almost a truism that a plaintiff's choice of a forum will rarely be

heavy burden of establishing that [the] plaintiffs' choice of forum is inappropriate.'"[10] District courts usually defer to a plaintiff's choice of forum unless that forum has "no meaningful relationship to the plaintiff's claims or to the parties,"[11] or if "the forum is not plaintiff's home forum and most of the relevant events occurred elsewhere."[12] Even if the District of Columbia as a venue had "no meaningful relationship to the plaintiff's claims or to the parties," this court would still have to weigh the public and private factors to decide whether venue is proper.[13]

"The private interest considerations include: (1) the plaintiffs' choice of forum . . .; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses. . .; but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof."[14]

"The public interest considerations include: (1) the transferee [ ] [court's] familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home."[15]

While the United States is at home in the District of Columbia and a substantial amount of the relevant domestic events occurred in the District of Columbia, a short recitation of the facts relevant to each factor helps illustrate why the District of Columbia is proper.

    a.  Private Interests

        i.  *The Plaintiff's Choice of Forum Strongly Weighs Against Transfer*

---

disturbed . . . unless the balance of convenience is strongly in favor of the defendant.").

[10] *Smith*, 234 F. Supp. 3d at 58.

[11] *U.S. ex rel. Westrick*, 771 F. Supp. 2d 42 at 47.

[12] *Hunter v. Johanns*, 517 F. Supp. 2d 340, 344 (D.D.C. 2007).

[13] *See U.S. ex rel. Westrick*, 771 F. Supp. 2d at 47.

[14] *Smith*, 234 F. Supp. 3d at 55.

[15] *Id.*

The criminal conduct occurred overseas.[16] Tether voluntarily froze the cryptocurrency.[17] The United States filed a seizure warrant for the Defendant Property in the District of Columbia, and the Honorable United States Magistrate Judge Moxila A. Upadhyaya approved and issued that seizure warrant.[18] After Tether transferred the Defendant Property to the government, the United States Marshals Service maintained custody of the cryptocurrency and later transferred it to the Federal Bureau of Investigation, Washington, D.C. Field Office, where it remains in government custody.[19]

Claimants 1-118 emphasize that the "USSS San Francisco Field Office initiated" the investigation which eventually led to this seizure[20] and that there was a "week-long law enforcement operation in Northern California."[21] This investigation included law enforcement personnel and involves victims throughout the country, including law enforcement in San Francisco and the United States Attorney's Office for the District of Columbia Scam Center Strike Force[22] in Washington, D.C. The plaintiff's choice of forum weigh against transfer.

### ii. Defendant's Choice of Forum is Neutral Regarding Transfer

As this is an civil *in rem* matter, the defendant is the asset itself. At this stage, Claimants 1-118 have not established standing, and their argument should not be considered. The defendant in this case, approximately 225,364,961 USDT *in rem*, does not have a choice of forum.

### iii. Whether the Claim Arose Elsewhere Weighs Against Transfer

The United States filed this *in rem* action in the District of Columbia based on valid

---

[16]Compl. ¶ 45.
[17] Compl. ¶ 172.
[18] Compl. ¶ 48.
[19] *See* Compl. ¶ 16.
[20] Compl. ¶ 50.
[21] Compl. ¶ 76, n. 24.
[22] *See* https://www.justice.gov/usao-dc/scam-center-strike-force.

jurisdiction to compensate victims of confidence scams where the perpetrators are located abroad. The claim arose in the District of Columbia and should stay here.

### iv.    The Convenience of the Parties Weigh Against Transfer

Claimants 1-118, who do not have standing, assert that their claim of interest outweighs the other 430 suspected victims throughout the country. Even if they did have standing, they equate to less than half of the suspected victims. With the weight against them, Claimants 1-118 are asking the court to give preference to a minority of victims at the expense of the majority. Their argument should be denied.

### v.    The Convenience of the Witnesses and Sources of Proof Weigh Against Transfer

While the United States maintains that the District of Columbia would be more convenient for witnesses and sources of proof relevant to the United States's case, it is enough to say that potential victim claimants do not identify any sources of proof which would be at odds with the government's case and only identify potential witnesses useful to the government's case. [23] The United States is able to try this case in the manner which it chooses. [24] The court should not transfer venue based on an assertion from a non-party without standing that the United States's sources of

---

[23] Mot. to Transfer Venue at *12-13. Potential victim claimants argue that California has more sources of proof in California. They identify "critical third-party witnesses" and a USSS Special Agent and FBI Special Agent from the San Francisco Field Office.  They focus on sources of proof that can "elucidate the source of funds, their life cycle, and the accounts used by the perpetrators of the fraud[,]"  all from their careful parsing of the complaint and other public sources. These sources of proof all presumably help prove the government's case in any potential trial. The potential victim claimants do not identify any sources of proof which would be at odds with the government's case.

[24] *See United States v. Sineneng-Smith*, 590 U.S. 371, 375, 140 S. Ct. 1575, 1579, 206 L. Ed. 2d 866 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation."); *see also Greenlaw v. United States*, 554 U.S. 237, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008) ("[I]n both civil and criminal cases, in the first instance and on appeal . . ., we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.").

proof and witnesses would be more convenient elsewhere when the United States itself is asserting that the District of Columbia would be most convenient. The convenience of the witnesses and sources of proof weighs against transfer.

b.   Public Interests

"The public interest considerations include: (1) the transferee [ ] [court's] familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home."[25] These public factors are neutral regarding transfer.

First, federal courts are ordinarily presumed equally competent in matters of federal law,[26] such as the civil forfeiture statutes. This factor is based on the *governing law*, not the factual basis of a particular case.[27] Federal courts in the District of Columbia are more than presumed competent—they are—and they regularly handle similar cases filed by the United States Attorney's Office for the District of Columbia Scam Center Strike Force.[28] Claimants 1-118, who do not have standing, and are from California, are wrong in their bold assertion that the Northern District of California's familiarity with cryptocurrency enforcement actions favors transfer.

Second, as the relative congestion statistics between NCDA and the District of Columbia are mixed, this factor is neutral.

Third, the local interest in deciding local controversies at home favors the District of Columbia. There are a large number of potential victims scattered around the United States and

---

[25] *Id.*

[26] *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987); *accord U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 771 F. Supp. 2d 42, 46 (D.D.C. 2011).

[27] *See* Mot. to Transfer Venue at *14.

[28] *See* https://www.justice.gov/usao-dc/scam-center-strike-force.

the criminal actors are located in a foreign country.[29] While both jurisdictions have an interest in dissuading international actors from targeting United States citizens in confidence scams, Congress has expressly provided that these types of suits are best settled in the District of Columbia when enacting 28 U.S.C. 1355(c) and 18 U.S.C. § 3238.[30]

The application of these factors does not overcome the heavy burden of establishing that [the] plaintiffs' choice of forum is inappropriate.'"[31] Instead, they illustrate the suitability of the District of Columbia for international civil forfeiture cases and reaffirms the policy rationale for the Supp. Rule G's commonsense standing provisions. It simply does not make sense for non-party potential claimants to control the direction of litigation, especially when the basis of their motion to transfer rests on increased convenience for the party without standing who is opposing that motion.[32]

**CONCLUSION**

For all of these reasons, the court should deny the Motion to Dismiss by Claimants 1-118 pursuant to 18 U.S.C. § 28 U.S.C. § 1404(a), 28 U.S.C. § 1406, 18 U.S.C. § 3238, 28 U.S.C. § 1355(b) and 28 U.S.C. §§ 1395(a) and (c).

---

[29] Compl. ¶ 45; 63-66.
[30] Both statutes provide expressly provide for venue in the District of Columbia in criminal actions and civil forfeiture proceedings even if those claims may include victims scattered around the United States as long as the property in question is in a foreign country or the criminal offense was committed outside the United States.
[31] *Smith*, 234 F. Supp. 3d at 58.
[32] *See* Mot. to Transfer Venue at *12-13.

Respectfully Submitted,

JEANINE FERRIS PIRRO
United States Attorney

*/s/ Rick Blaylock, Jr.*
RICK BLAYLOCK, JR.
TX Bar No. 24103294
Assistant United States Attorney
Asset Forfeiture Coordinator
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20001
(202) 252-6765

9