**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

      Plaintiff,

v.

APPROXIMATELY 225,364,961 USDT

      Defendant, *in rem*.

Case No. 25-cv-1907

## <u>VERIFIED CLAIM</u>

Claimant Nivedita Kaul submits this Verified Claim pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions to intervene and assert her interest in Wallet 0x82e1d4ddd636857ebcf6a0e74b9b0929c158d7fb ("Wallet 0x82e"), identified as 'USDT Token Group G' in the Verified Complaint filed by the Plaintiff against Approximately 225,364,961 USDT (the "Defendant Property").

In support, Ms. Kaul states as follows:

1. Ms. Kaul is a United States citizen, a judgment creditor, and a victim of a criminal conspiracy perpetrated between April and December 2022, through which her assets were stolen by members of the enterprise identified in the Government's Verified Complaint in connection with Wallet 0x82e.

2. In January 2023, Ms. Kaul initiated civil debt enforcement proceedings under Turkish law to enforce the debt owed to her by members of this enterprise.

3. As a result of the civil debt enforcement proceedings, Ms. Kaul obtained a Payment Order for Proceedings without Judgment from the Republic of Turkey Azdavay Execution Office on February 6, 2023, against Ling Sun Dylon and Kai Li Kelly, named parties to the Turkish

1

enforcement proceedings, in the amount of 164,096,484.48 Turkish Lira, representing the $8.7 million principal debt also documented in Ms. Kaul's criminal complaint on February 11, 2023. This debt amount is independently confirmed and judicially acknowledged in the indictment filed under Investigation No. 2023/6371. The Payment Order is final and binding, carrying the legal force of a money judgment under Turkish Enforcement and Bankruptcy Law, entitling Ms. Kaul to proceed directly to attachment and enforcement without further judicial proceedings.

4. Ms. Kaul's total claim is not less than $25,461,000, representing the principal debt, approximately $14.4 million in accrued commercial default interest from February 6, 2023, through the date of this filing, and approximately $2.35 million in legal fees and costs incurred in Turkish proceedings. Per Turkish Commercial Code Article 1530, Ms. Kaul's judgment earns interest at the highest published rate of the Central Bank of Turkey for the period the debt remains unpaid; the highest such rate since the date of default is 53.25% per annum, simple interest. This amount reflects Ms. Kaul's civil debt claim and does not include consequential and other damages as may be awarded by the Turkish criminal court in ongoing criminal proceedings in which Wallet 0x82e is at issue, among others. Ms. Kaul reserves the right to supplement this claim with a detailed interest schedule as the default period continues.

5. Ms. Kaul commenced criminal proceedings in Turkey on February 11, 2023, five days after issuance of the Payment Order, as the statutorily prescribed escalation under Turkish Enforcement and Bankruptcy Law when the enforcement process was frustrated. Tether, in communications to Ms. Kaul's Turkish counsel, had declined to comply with civil enforcement orders on the ground that it would only freeze assets subject to a criminal

investigation. Those communications and Tether's refusal to act on civil orders caused the Turkish prosecutor's office to open Investigation No. 2023/6371.

6. Ms. Kaul developed her forensic blockchain analytical capabilities and proprietary methodology independently and identified a key network node through which her assets had been channeled. In March 2023, Ms. Kaul provided this intelligence to Turkish judicial authorities. Acting upon Ms. Kaul's intelligence, Turkish authorities established the foundational investigative predicate for the Turkish Republic's ongoing criminal prosecution (2023/6371), which verified Ms. Kaul's findings and produced judicial proceedings against the network's controllers. Her intelligence directly produced the August 11, 2023, criminal judicial seizure and preservation of the seized assets, including Wallet 0x82e, the single largest asset among the seven USDT Token Groups now claimed by the U.S. Government. Ms. Kaul's intelligence has led to approximately 70 arrests to date. Ms. Kaul serves as the witness, complainant, party, and investigative originator of the intelligence that led to the identification and preservation of the Defendant Property, establishing her role in this prosecution approximately 9 months before the U.S. investigation began in November 2023.

7. On August 11, 2023, on account of the criminal complaint made by Ms. Kaul, the Ankara West 1st Criminal Judgeship of Peace issued two simultaneous criminal judicial seizure orders arising from Investigation No. 2023/6371. Decision 2023/5985 directed the criminal judicial seizure of assets held at the Binance cryptocurrency exchange. Decision 2023/5986 directed the criminal judicial seizure of Wallet 0x82e through Tether Limited, the issuer and custodian of the USDT held in that wallet, which contained over $101,000,000 in USDT at the time. The criminal judicial seizure order (Decision 2023/5986) attached Ms.

3

Kaul's civil enforcement title to the specific assets of Wallet 0x82e to preserve them against dissipation pending enforcement.

8. Tether confirmed in writing to the Turkish prosecutor on October 11, 2023, pursuant to the criminal judicial seizure order, that Wallet 0x82e is "now frozen."

9. In the 60 days between the issuance of the Turkish criminal judicial seizure order on August 11, 2023, and Tether's written confirmation of compliance on October 11, 2023, approximately $13,500,000 left Wallet 0x82e. Tether's failure to timely comply with a criminal judicial seizure order allowed those funds to be dispersed from Wallet 0x82e.

10. Wallet 0x82e contained approximately $87,465,000 in USDT when this forfeiture action was filed, representing 39% of the total Defendant Property. The Government's Verified Complaint alleges that the Defendant Property constitutes a single, unified money-laundering enterprise controlled by common owners (*Verified Complaint, paras. 1, 47, 52, and 195*). Ms. Kaul reserves all rights to assert her interest in the full pool of proceeds.

11. Under Turkish law, Investigation No. 2023/6371 is a private prosecution initiated by Ms. Kaul. As a matter of due process, the Defendants have exercised their right to confront Ms. Kaul directly, thereby requiring her continued presence and participation in the proceedings. On November 8, 2023, twelve days before Tether and OKX reported the seized assets to the U.S. Secret Service, Ms. Kaul appeared in person before the Ankara Chief Prosecutor and provided her sworn statement. In her statement, she detailed the incident that led to her investigation, her documented losses, and the basis of her identification of the individuals in Turkey. Ms. Kaul testified not only as the complainant and claimant but was further examined by the Prosecutor on her proprietary forensic

blockchain tracing methodology she had developed and applied to identify the critical wallets and connections.

12. Upon information and belief, Tether retained Turkish counsel who reviewed the criminal proceedings before confirming, in writing, compliance with the Turkish criminal judicial seizure order on October 11, 2023. Forty days later, on November 20, 2023, Tether and OKX reported these same assets to the U.S. Secret Service San Francisco Field Office (*Verified Complaint, para. 50*). The following day, the Department of Justice announced its $4.3 billion resolution with Binance, an exchange already subject to a three-month-old Turkish criminal judicial seizure order.

13. Tether reported the assets to U.S. law enforcement without notifying Ms. Kaul, without notifying the Turkish court, and without seeking relief from the order it had acknowledged in writing. The U.S. Government's own complaint confirms that "USSS requested that Tether voluntarily freeze" the assets (*Verified Complaint, para. 172)*. To Ms. Kaul's knowledge, the Turkish criminal judicial seizure order remained in force throughout.

14. Ms. Kaul is the reason the Department of Justice knows about the wallets that are the subject of this forfeiture action. Before Ms. Kaul initiated any action in Turkey, she sought assistance from the U.S. Secret Service, which told her that recovery efforts were not possible.

15. On January 18, 2023, Ms. Kaul contacted Erin West, Deputy District Attorney, Santa Clara County, CA, and REACT Task Force coordinator, following Ms. West's public solicitation of cryptocurrency crime victims. Ms. West referred Ms. Kaul to Agent Andrew Frey, U.S. Secret Service San Francisco Field Office, describing him as "the best in the nation."

16. On January 19, 2023, Agent Frey directly solicited Ms. Kaul's evidence, promising that "secrecy is in our name—we'll treat your information with the utmost care." By January 30, 2023, Agent Frey confirmed his office was "working on getting your transactions traced."

17. On January 27, 2023, Shawn Bradstreet, Special Agent in Charge of the San Francisco Field Office, received forensic analytics reports explicitly identifying Wallet 0x82e and its $101,000,000 balance. Despite being in possession of the specific wallet address that constitutes the largest single asset in this forfeiture action, SAC Bradstreet's office declined to take preservation action.

18. On January 29, 2023, Ms. Kaul alerted Ms. West that funds needed to be frozen "before they disappear," and she was redirected back to Agent Frey. By February 22, 2023, Agent Frey stated that his office had "exhausted preliminary recovery efforts" and that "recovery... is not possible here." Even after Ms. Kaul provided forensic findings and transaction records to FBI Agent Majors in March 2023 and reported that new funds were entering the wallets, Agent Frey, in April 2023, maintained there was "no ongoing work specific to your loss."

19. On June 5, 2023, Ms. Kaul escalated the matter to Agent Majors, requesting that the FBI "remedy a potential operational error by USSS" in closing her case. In that communication, Ms. Kaul disclosed that she was "collaborating with 3 international law firms that have verified this evidence as actionable and are escalating U.K. law enforcement intervention overseas since the case crosses multiple countries."

20. On June 6, 2023, Ms. Kaul provided Agent Frey with forensic documentation of a frozen and blacklisted wallet traceable to the same network described in the Government's

complaint and requested that her restitution claim be staked within any enforcement action that had produced the freeze. Agent Frey, copying Ms. West, responded that Ms. Kaul's funds were not recoverable from that address under the accounting methodology his office applied. No preservation action was taken on her behalf.

21. The same day, Ms. Kaul provided her forensic materials to Brian R. Lewin, Special Agent in Charge, U.S. Secret Service Honolulu Field Office. SAC Lewin confirmed in writing that Ms. Kaul had been sent to the wrong jurisdiction by Ms. West, "Generally, the complaint is taken where the victim resides... which falls under our Los Angeles Field Office." SAC Lewin also noted, "Andrew is probably one of our best in USSS. Andrew is who we go to when we get stuck. If either SF or SJ is saying they hit a dead end, that's not good." SAC Lewin subsequently transferred to the U.S. Secret Service Los Angeles Field Office in July 2023; no corrective action was provided.

22. Following the June 2025 seizure, SAC Bradstreet publicly stated that the funds should "be returned to their rightful owners." His office held forensic identification of Wallet 0x82e and its balance for 29 months without taking preservation action. The U.S. Secret Service San Francisco Field Office is the same office that declined to act on Ms. Kaul's intelligence in 2023 and subsequently led the investigation initiated after Tether's November 2023 report.

23. On June 24, 2023, 19 days after receiving Ms. Kaul's written disclosure of international recovery efforts, the FBI registered her in the Department of Justice Victim Notification System (VNS). Ms. Kaul was assigned a Victim Identification Number (VIN) under the Los Angeles Division. Her case was subsequently transferred to the FBI Denver Division in October 2023, with the Government providing VNS updates through July 2024.

24. The Government possessed Ms. Kaul's complete identity, Victim Identification Number, and FBI case number, yet did not notify her of this forfeiture action. Ms. Kaul believed that the Turkish court's criminal judicial seizure order on Wallet 0x82e remained in place; and, indeed, nothing in the Turkish proceedings to which she is a party indicates that such order has been vacated.

25. Ms. Kaul has had, and continues to have, an ownership interest in the assets of Wallet 0x82e. Not only is Ms. Kaul an innocent owner under 18 U.S.C. § 983(d), she is the *original* innocent owner. She provided timely notice to multiple U.S. law enforcement agencies and, upon their refusal to act, obtained a criminal judicial seizure through Turkish courts that preserved those assets.

26. On March 14, 2025, approximately three months before the United States filed this forfeiture action, Ms. Kaul appeared as the lead prosecution witness at a hearing before the Ankara 23rd Heavy Criminal Court. The defendants had challenged Ms. Kaul's existence as a real person, exercising their confrontation rights directly against Ms. Kaul. She appeared in person before the accused to answer that challenge. She testified under oath for approximately three hours, subject to direct questioning by the court, the defendants, and defense counsel. Multiple indicted defendants were present who directly examined her on her forensic analysis and blockchain tracing methodology, which served as the foundational investigative predicate for the prosecution. The court confirmed Ms. Kaul's procedural rights under the Turkish Code of Criminal Procedure Article 234, including the right to participate in the prosecution and to appeal decisions arising from those proceedings. The criminal case in which Ms. Kaul is the complainant, from which the

criminal judicial seizure order on Wallet 0x82e originates, was actively being prosecuted when this forfeiture was initiated, and such proceedings continue today.

27. The Turkish criminal proceedings arose directly from Ms. Kaul's civil debt enforcement and constituted the statutorily mandated next step under the Turkish Enforcement and Bankruptcy law, initiated because civil process alone was insufficient to reach assets held by non-compliant third parties. The indictment filed under Investigation No. 2023/6371 explicitly incorporates Ms. Kaul's documented loss, as recorded in her statement before the prosecutor, referencing her February 11, 2023, criminal complaint and naming the specific perpetrators, Kai Li Kelly and Ling Sun Dylon, thereby establishing a judicially acknowledged minimum floor of the victim restitution obligation. Turkish Penal Code Article 55(1) mandates that this principal floor, together with accrued commercial default interest thereon, be satisfied in full before any state confiscation of the criminal proceeds can occur.

28. Ms. Kaul is thus a judgment creditor and the investigative originator whose interest is secured by a prior perfected judicial lien on the assets of Wallet 0x82e, established through the Turkish criminal judicial seizure order (Decision 2023/5986), which placed the Defendant Property under Turkish judicial custody more than 20 months before any U.S. seizure warrant was issued. Without Ms. Kaul's intelligence and the Turkish proceedings that she initiated, the Defendant Property would not have been identified and preserved. The Defendant Property exists for forfeiture because of Ms. Kaul. The Turkish criminal judicial seizure order on Wallet 0x82e has never been vacated.

9

29. In addition to her claim of $25,461,000, Ms. Kaul demands, pursuant to 28 U.S.C. § 2465(b), attorneys' fees incurred in this action, post-judgment interest, and allocable or imputed interest that has been paid or would have been paid to the United States.

30. This filing constitutes a Verified Claim asserting direct ownership, not a petition for remission. Ms. Kaul reserves all rights to seek any and all available remedies, including administrative relief, should judicial proceedings not fully resolve her claim.

I attest and declare under penalty of perjury that my claim is not frivolous and the information provided in support of my claim is true and correct to the best of my knowledge and belief.

*Nivedita Kaul*            March 17, 2026

Nivedita Kaul

Submitted by and through:

SEQUOR LAW, P.A.
*s/ Tara J. Plochocki*
Tara J. Plochocki (D.C. Bar No. 989404)
Sequor Law, P.A.
1200 G Street, N.W.
Suite 340
Washington, D.C.  20001
tplochocki@sequorlaw.com
Tel. (202) 900-8740