# EXHIBIT 1

**U.S. Department of Justice**
**Criminal Division**
*Money Laundering and Asset Recovery Section*



# Asset Forfeiture Policy Manual     2023

# Table of Contents: Asset Forfeiture Policy Manual

**Foreword** ................................................................................................x

**Chapter 1: Planning for Seizure and Restraint** .................................... 1-1
I.    Guidelines for Seizure and Restraint Planning ........................................... 1-1
    A.   Background ................................................................................... 1-1
    B.   Scope of assets covered by guidelines ........................................ 1-2
    C.   General seizure planning policy guidelines ................................. 1-4
    D.   Seizure planning analysis and documentation .............................. 1-8
    E.   Quick release ............................................................................ 1-11
II.   Pre-Seizure Judicial Review .................................................................. 1-13

**Chapter 2: Seizure and Restraint** ......................................................... 2-1
I.    Overview .................................................................................................. 2-1
II.   General Policies and Procedures for Seizing Property ............................. 2-2
    A.   Responsibility for execution of process ...................................... 2-2
    B.   Notification by seizing agency ..................................................... 2-2
    C.   Forms of process ......................................................................... 2-2
    D.   Judicial authority issuing process ................................................ 2-4
III.  Seizures for Criminal Forfeiture ............................................................. 2-4
    A.   What process must the government seek to retain custody of an asset for potential criminal forfeiture? ...................................... 2-4
    B.   If civil forfeiture is being pursued parallel to criminal forfeiture, no additional criminal restraint process is needed ................................. 2-5
    C.   Property seized without a warrant .................................................. 2-7
    D.   Property seized for evidence .......................................................... 2-8
IV.  Proper Use of Writs of Entry in Civil and Criminal Forfeiture Proceedings .............. 2-8
V.   Seizure of Financial Instruments and Cryptocurrency ............................. 2-9
    A.   Certificates of deposit ................................................................. 2-9
    B.   Cryptocurrency ......................................................................... 2-10
    C.   Employee Retirement Income Security Act (ERISA) accounts ...... 2-12
    D.   Interest On Lawyer Trust Accounts (IOLTA) ............................... 2-12
    E.   Life insurance ............................................................................ 2-13
    F.   Money orders ............................................................................ 2-14
    G.   Personal, certified, and cashier's checks ..................................... 2-16
    H.   Prepaid access devices ............................................................... 2-17
    I.   Securities .................................................................................... 2-19
    J.   Travelers' checks ........................................................................ 2-20
    K.   U.S. savings bonds ..................................................................... 2-21

VI.   Seizure of Operating Businesses.................................................................... 2-21
VII.  Seized Cash Management ............................................................................. 2-23
VIII. Using Asset Forfeiture Authorities in Connection with Structuring Offenses .......... 2-23
     A.   Link to prior or anticipated criminal activity ................................... 2-24
     B.   No intent to structure ....................................................................... 2-24
     C.   150-day deadline .............................................................................. 2-25
     D.   Settlement ........................................................................................ 2-25
     E.   Internal Revenue Service (IRS) structuring cases ........................... 2-25

**Chapter 3: Seizures by State, Local, and Tribal Law Enforcement................... 3-1**
I.     Forfeitures Follow the Prosecution ................................................................ 3-1
II.    General Adoption Policy................................................................................ 3-1
III.   Custody ......................................................................................................... 3-2
     A.   Concurrent jurisdiction .................................................................... 3-2
     B.   Use of anticipatory seizure warrants to obtain federal *in rem* jurisdiction ......... 3-4
     C.   Retention of custody by federal, state, local, or tribal agency during federal forfeiture proceedings ..................................................................... 3-4
IV.   Federal Adoption Procedure .......................................................................... 3-4
     A.   Federal adoption request .................................................................. 3-4
     B.   Federal law enforcement agency review........................................... 3-6
     C.   Timing .............................................................................................. 3-7
V.     Cases Initiated by a U.S. Attorney Directly with State, Local, and Tribal Law Enforcement without Federal Agency Involvement .................................. 3-7
     A.   Direct adoption by the U.S. Attorney................................................ 3-7
     B.   Direct referral by the U.S. Attorney ................................................. 3-8

**Chapter 4: Real Property ................................................................................ 4-1**
I.     Pre-Forfeiture Considerations ....................................................................... 4-1
     A.   General policy .................................................................................. 4-1
     B.   Real property valuation..................................................................... 4-2
     C.   Commencing the civil or criminal forfeiture proceeding ................. 4-3
     D.   Title conveyance .............................................................................. 4-5
     E.   Contamination liability .................................................................... 4-6
II.    Ownership and Notice.................................................................................... 4-7
     A.   Title search....................................................................................... 4-7
     B.   *Lis pendens* ..................................................................................... 4-7
     C.   Noticing the Mortgage Electronic Registration System (MERS)...................... 4-8
III.   Third-Party Interests ..................................................................................... 4-8
     A.   Tenancy interests.............................................................................. 4-8
     B.   Occupancy agreements for tenants ................................................... 4-9
     C.   Business or corporate owners ........................................................... 4-9

    D.   Lienholders ............................................................................................... 4-9

IV.  Taxes and Penalties ............................................................................................ 4-9

    A.   Payment of state and local real property taxes.................................... 4-9

    B.   Some taxes become a lien on the property before they are due........ 4-10

    C.   Payment of interest and penalties on real property taxes................. 4-10

V.   Real Property Transfers.................................................................................... 4-10

    A.   Weed and Seed Initiative..................................................................... 4-11

    B.   Operation Goodwill ............................................................................. 4-11

    C.   Federal component transfers................................................................ 4-12

    D.   Governor's request for historic, recreational or preservation purposes............ 4-12

## Chapter 5: Administrative and Judicial Forfeiture

**Chapter 5: Administrative and Judicial Forfeiture ........................................... 5-1**

I.    Overview.............................................................................................................. 5-1

    A.   Seized property eligible for forfeiture should be forfeited ................................. 5-1

    B.   Forfeiture should follow the prosecution........................................................... 5-1

II.   Administrative Forfeiture Guidelines ................................................................. 5-2

    A.   Scope of property subject to administrative forfeiture ...................................... 5-2

    B.   Administrative forfeiture notice deadlines........................................................ 5-3

    C.   Timeliness and content of claims in administrative proceedings ...................... 5-7

    D.   Plea and settlement negotiations involving property subject to administrative

        forfeiture ......................................................................................................... 5-8

III.  Judicial Forfeiture Guidelines............................................................................ 5-8

    A.   Parallel administrative, civil, and criminal forfeiture proceedings.................... 5-8

    B.   Deadlines for instituting civil judicial forfeiture proceedings .......................... 5-8

    C.   Providing notice of judicial forfeiture actions .................................................. 5-9

    D.   Issues specific to civil judicial proceedings.................................................... 5-12

    E.   Issues specific to criminal judicial proceedings............................................. 5-19

IV.  Firearms Forfeiture Policy ............................................................................... 5-22

    A.   Preference for forfeiture.................................................................................. 5-22

    B.   Administrative and civil judicial forfeiture of firearms deadline issues ........... 5-23

    C.   Firearms are treated differently...................................................................... 5-24

## Chapter 6: Grand Jury

**Chapter 6: Grand Jury........................................................................................... 6-1**

I.    Using the Grand Jury Properly to Achieve Asset Forfeiture Policy Objectives ......... 6-1

II.   When Assistant U.S. Attorneys May Disclose Matters Occurring before the Grand

    Jury in Connection with Asset Forfeiture Matters and Cases under 18 U.S.C.

    § 3322(a) and Federal Rule of Criminal Procedure 6(e)(3)....................................... 6-2

    A.   Criminal Assistant U.S. Attorneys may disclose grand jury information to

        Assistant U.S. Attorneys for use in civil forfeiture matters and cases under

        18 U.S.C. § 3322................................................................................................ 6-2

B.   Although Assistant U.S. Attorneys may not disclose grand jury information to seizing agency counsel under 18 U.S.C. § 3322, they may under Federal Rule of Criminal Procedure 6(e)(3)(A)(ii) ................................................................. 6-3

C.   Assistant U.S. Attorneys should disclose grand jury material to government contractors working on civil or criminal asset forfeiture matters in a manner consistent with applicable Department of Justice guidance on disclosing grand jury materials to contractors .................................................................................. 6-4

III.   Presenting Forfeiture to the Grand Jury ...................................................................... 6-4

A.   Charging document must include notice of forfeiture ......................................... 6-4

B.   Government may ask the grand jury to make a probable cause finding as to the nexus between particular charges and assets ...................................................... 6-5


**Chapter 7: Civil Forfeiture Litigation Issues ......................................................... 7-1**

I.   Preservation Policy for Civil Forfeiture ...................................................................... 7-1

A.   Legal obligation ................................................................................................. 7-1

B.   Litigation holds .................................................................................................. 7-1

C.   Documents and other relevant information subject to preservation .................... 7-2

D.   Litigation hold notice ......................................................................................... 7-3

II.   Fifth Amendment Advisements in Civil Forfeiture Proceedings ................................. 7-5

III.   Negotiating with Fugitives in Civil Forfeiture Matters ............................................... 7-7


**Chapter 8: International Forfeiture ........................................................................ 8-1**

I.   International Forfeiture Overview ................................................................................. 8-1

A.   Department of Justice consultation and coordination policy .............................. 8-1

B.   Forfeiture and recovery of assets located abroad under U.S. law ....................... 8-2

C.   Forfeiture of assets located in the United States under foreign law ................... 8-2

II.   Foreign Property Management Considerations ............................................................. 8-2

III.   Probable Cause Finding to Seize or Restrain Assets Abroad ....................................... 8-3

A.   Criminal forfeiture cases .................................................................................... 8-4

B.   Civil (*in rem*) forfeiture cases ........................................................................... 8-5

C.   Parallel civil and criminal cases ......................................................................... 8-7

IV.   Securing Notice Abroad .............................................................................................. 8-7

V.   Consultation with MLARS and OIA when Seeking Repatriation of Forfeitable Assets Located Abroad .......................................................................................................... 8-8

VI.   Approval Process for 18 U.S.C. § 981(k) Seizure from Correspondent Bank Account ...................................................................................................................... 8-8

VII.   Lack of Administrative Forfeiture Authority for Overseas Property .......................... 8-9

VIII.   Settlements, Plea Agreements, and Attorneys' Fees .................................................. 8-10

IX.   Enforcement of Judgments ........................................................................................ 8-10

A.   Foreign enforcement of U.S. judgments ........................................................... 8-10

B.   U.S. enforcement of foreign judgments and restraining orders ........................ 8-11

X.   International Sharing .................................................................................................. 8-11

**Chapter 9: Third-Party Experts in Forfeiture Cases...........................................9-1**

I.      Introduction......................................................................................................9-1

II.     Prerequisites to Selecting a Third-Party Expert.............................................9-2

    A.  Consider alternatives to a third-party expert.........................................9-2

    B.  Consultation among the U.S. Attorney's Office, Money Laundering and Asset Recovery Section, Asset Forfeiture Management Staff, and U.S. Marshals Service before seeking the appointment of a third-party expert.....................................9-2

III.    Qualifications of Trustees, Monitors, Managers, and Custodians ............................9-3

IV.     Trustee, Monitor, Manager, and Custodian Expenses.....................................9-3

**Chapter 10: Use and Disposition of Seized and Forfeited Property..............10-1**

I.      Management and Disposal of Seized Assets...............................................10-1

    A.  Assets seized by Department of Justice law enforcement agencies .................10-1

    B.  Assets seized by Department of the Treasury and Department of Homeland Security law enforcement agencies...................................................10-1

    C.  Coordination for seizure planning, custody, and disposition decisions ...........10-1

II.     Use of Seized Property..................................................................................10-2

    A.  Use of seized property is prohibited ..........................................................10-2

    B.  Pre-forfeiture sale of certain seized property...................................................10-2

III.    Disposition of Forfeited Property and Funds...............................................10-3

    A.  Forfeiture orders...........................................................................................10-3

    B.  Disposition of forfeited property in civil and criminal cases...........................10-3

    C.  Sale of forfeited property ...............................................................................10-4

    D.  Disposition of forfeited funds .....................................................................10-4

IV.     Purchase or Personal Use of Forfeited Property by Department of Justice Employees.......................................................................................................10-5

**Chapter 11: Settlements...................................................................................11-1**

I.      General Policy.................................................................................................11-1

    A.  Scope............................................................................................................11-1

    B.  General settlement principles.......................................................................11-3

II.     Settlement Approval Authorities...................................................................11-6

    A.  Authorizing officials ...................................................................................11-6

    B.  Approval authority examples.......................................................................11-6

III.    Using Administrative Forfeiture to Achieve a Settlement ...........................11-7

    A.  Settlement of forfeiture as an administrative forfeiture after a claim is filed in an administrative forfeiture proceeding but before a judicial complaint is filed...11-7

    B.  Using administrative forfeiture to settle civil forfeiture proceedings where no prior administrative forfeiture proceeding has begun.....................................11-8

    C.  Using administrative forfeiture to settle criminal forfeiture proceedings.........11-9

IV.     References to Remission or Restoration in Settlements ...............................11-9

V.      Settlements in Civil Judicial Forfeiture Cases ........................................................ 11-10
VI.     Plea Agreements Incorporating Criminal Forfeiture............................................. 11-10
VII.    Settlement of Attorneys' Fees Liabilities ............................................................... 11-11
VIII.   Global Settlements and Dealing with Claimants and Witnesses ........................... 11-11
        A.    Ethical considerations ................................................................................... 11-11
        B.    Global settlements......................................................................................... 11-11
        C.    Claimants and witnesses ............................................................................... 11-12
IX.     Cash in Lieu of Forfeiture of Other Property......................................................... 11-14
        A.    Department of Justice policy ........................................................................ 11-14
        B.    Policy limitations .......................................................................................... 11-14
        C.    "Cash in lieu" vs. "substitute asset"............................................................. 11-15
        D.    Interlocutory sales ........................................................................................ 11-15

**Chapter 12: Attorneys' Fees .......................................................................... 12-1**
I.      Payment of Attorneys' Fees in Civil Forfeiture Proceedings.................................. 12-1
II.     Payment of Attorneys' Fees in Criminal Forfeiture Cases..................................... 12-2
        A.    Defendant's attorneys' fees ........................................................................... 12-2
        B.    Third-party petitioner's attorneys' fees......................................................... 12-3
III.    Payment of Attorneys' Fees in Forfeiture Cases Chart .......................................... 12-5
IV.     Forfeiture of Attorneys' Fees ................................................................................... 12-5

**Chapter 13: Post-Forfeiture Third-Party Interests........................................... 13-1**
I.      Petitions for Remission and Mitigation ................................................................... 13-1
        A.    Owners in remission ...................................................................................... 13-1
        B.    Lienholders in remission................................................................................ 13-2
        C.    Mitigation....................................................................................................... 13-2
        D.    Procedure for notice and processing petitions ............................................. 13-3
        E.    Priority of payments...................................................................................... 13-3
        F.    Cultural property ........................................................................................... 13-4
II.     *Qui Tam* Actions: Payment of Relator's Share ...................................................... 13-4
        A.    Overview of the False Claims Act (FCA)...................................................... 13-4
        B.    Forfeiture proceedings as alternate remedies................................................ 13-5
        C.    Source of relator's right to recover ............................................................... 13-5
        D.    Relator's share is a percentage of the net forfeiture recovery...................... 13-6
        E.    Procedure for paying relator's share ............................................................. 13-7

**Chapter 14: Forfeiture and Compensation for Victims of Crime** ................... 14-1
I.    Overview...................................................................................................... 14-1
II.   Returning Forfeited Assets to Victims ....................................................... 14-2
      A.    Remission............................................................................................. 14-2
      B.    Restoration .......................................................................................... 14-6
      C.    Preservation of assets for victims ...................................................... 14-9
      D.    Special considerations for federal government victims..................... 14-9
      E.    Special considerations for victims of human trafficking crimes..... 14-10
      F.    Hybrid remission and restoration review......................................... 14-10
      G.    Termination of forfeiture and direct payment of assets to victims ... 14-10
      H.    Comparison of judicial remission and restoration chart ............... 14-11
III.  Constructive Trusts in Multiple-Victim Fraud Cases............................... 14-12

**Chapter 15: Federal Official Use and Equitable Sharing** ............................... 15-1
I.    Federal Official Use .................................................................................... 15-1
      A.    Overview............................................................................................. 15-1
      B.    Federal official use designations by the federal seizing agency ....... 15-1
      C.    Federal official use requests by other federal agencies.................... 15-2
      D.    Internal guidelines............................................................................. 15-2
      E.    Payment of liens on personal property placed into federal official use ........... 15-3
II.   Equitable Sharing....................................................................................... 15-3
III.  Processing Applications for Equitable Sharing......................................... 15-4
      A.    Eligible participants .......................................................................... 15-4
      B.    Compliance ........................................................................................ 15-4
      C.    Equitable sharing allocations ............................................................ 15-5
      D.    Submission of requests for equitable sharing ................................... 15-5
      E.    Final approval authority..................................................................... 15-6
IV.   Equitable Sharing Payments ...................................................................... 15-7
V.    Federal Contribution Form (FCF).............................................................. 15-7
VI.   Reverse Sharing .......................................................................................... 15-9
VII.  International Sharing of Forfeited Assets .................................................. 15-9

**Appendix A: Approval, Consultation, and Notification Requirements
      Chart** .............................................................................................. A-1

# Foreword

The Money Laundering and Asset Recovery Section (MLARS) is pleased to release the 2023 edition of the *Asset Forfeiture Policy Manual*, a publicly available compilation of policies governing the Department of Justice Asset Forfeiture Program (Program).  The purpose of the *Policy Manual* is to provide Department of Justice (Department) prosecutors, agents, and other professionals with a reference manual in support of the Program's goals.

The Program's mission is to use asset forfeiture as a tool to deter, disrupt, and dismantle criminal enterprises, denying them the instruments and the proceeds of criminal activity.  The effective use of both criminal and civil asset forfeiture is an essential component of the Department's efforts to combat the most sophisticated criminal actors and organizations including terrorist financiers, fraudsters, human traffickers, transnational drug cartels, and cyber criminals.

The Program's primary goals, set forth in *The Attorney General's Guidelines on the Asset Forfeiture Program* (July 2018) (*AG Guidelines*), are:

(1)  To punish and deter criminal activity by depriving criminals of property used in or acquired through illegal activities.

(2)  To promote and enhance cooperation among federal state, local, tribal, and foreign law enforcement agencies.

(3)  To recover assets that may be used to compensate victims when authorized under federal law.

(4)  To ensure the Program is administered professionally, lawfully, and in a manner consistent with sound public policy.

For 2023, the updates to the *Policy Manual* include policy guidance related to operational aspects of the judicial and administrative forfeiture processes; revisions to the form of equitable sharing for state, local, and tribal law enforcement through the Department's Equitable Sharing Program, namely, the elimination of the transfer of real property or tangible items through equitable sharing; new guidance on the finality of criminal forfeitures; new delegations to the U.S. Attorney's Offices (USAOs) to approve direct adoptions of certain assets; and clarifications to the policies governing settlements and disclosures of grand jury information.

This *Policy Manual* replaces and supersedes all previous versions of the *Policy Manual* and all Policy Directives issued by MLARS unless otherwise noted.  The *Policy Manual* is available online at MLARS Publications.

The *Policy Manual* sets forth the Department's policies.  It does not, however, create or confer any legal rights, privileges, or benefits that may be enforced in any way by private parties.  *See United States v. Caceres*, 440 U.S. 741 (1979).

We recommend using this format when citing the *Policy Manual*:

*Asset Forfeiture Policy Manual* (2023), Chap.__, Sec.___._____. (*e.g.*, Chap. 1, Sec. I.A).

Brent Wible
Chief
Money Laundering and
Asset Recovery Section

# Chapter 1:
# Planning for Seizure and Restraint

## I.    Guidelines for Seizure and Restraint Planning

### A.  Background

The Department of Justice (Department) Asset Forfeiture Program (Program) encompasses the seizure, forfeiture, and disposition of assets that represent the proceeds of, or were used to facilitate, federal crimes.  The Program has four primary goals:

(1)  Punish and deter criminal activity by depriving criminals of property used in or acquired through illegal activities.

(2)  Promote and enhance cooperation among federal, state, local, tribal, and foreign law enforcement agencies.

(3)  Recover assets that may be used to compensate victims when authorized under federal law.

(4)  Ensure that the Program is administered professionally, lawfully, and in a manner consistent with sound public policy.[1]

The Department must administer the Program in a fiscally responsible manner to minimize costs while maximizing the Program's ability to carry out these goals.  These guidelines encourage practices that minimize or avoid the possibility that the government may inadvertently file forfeiture proceedings against properties that lead to net losses to the Assets Forfeiture Fund (AFF) or that present unique management and disposition challenges.[2]

In particular, these guidelines ensure consultation with the U.S. Marshals Service (USMS), including its district offices and headquarters Asset Forfeiture Division (AFD), because the USMS serves as the primary custodian of seized and forfeited property, other than firearms and ammunition,[3] for the Program, and with other agencies in the Program with responsibility for seizing, restraining, managing, and disposing of assets, before the government commences legal action against forfeitable property.[4]

Investigators should begin seizure planning as soon as they have identified assets for seizure or forfeiture.  Seizure planning affords agencies an opportunity to conduct financial analyses to determine net equities of identified assets and to review in advance title or ownership issues that may delay or prevent the government from disposing of an asset in a timely manner following forfeiture. In addition, seizure planning gives the USMS sufficient time to plan for the care of the assets, assess

---

[1]  *The Attorney General's Guidelines on the Asset Forfeiture Program* (July 2018) (*AG Guidelines*).

[2]  References to seizure in this chapter include criminal or civil restraint unless plainly not applicable or appropriate.

[3]  The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) serves as the primary custodian of firearms and ammunition seized for forfeiture.  *See* the Department's *About the Asset Forfeiture Program-Asset Forfeiture Program Participants and Roles* page for additional information on Program participants.  For seizure planning, management, and disposal of assets seized by agencies operating under Department of the Treasury (Treasury) guidelines, *see* Chap. 10, Sec. I.B in this *Manual*.

[4]  References to the USMS throughout this *Manual* include other departments responsible for managing restrained and seized assets like the Department of the Treasury (Treasury) and the Department of Homeland Security (DHS).

the level of difficulty in handling the assets, and identify any special requirements needed to preserve the assets.

These guidelines direct each U.S. Attorney's Office (USAO)[5] (or in administrative forfeitures, the agents in charge of each field office) to establish specific procedures for their respective offices or districts to identify and address critical financial and property management issues before seizing or restraining real property, commercial enterprises, or other types of property that may pose problems of maintenance or disposition (*e.g.*, animals and aircraft). These guidelines are sufficiently flexible to enable each USAO (or in administrative matters, the agent in charge of a seizing agency's field office) to establish and use local procedures that clearly define and assign local seizure and restraint-planning responsibilities.

The USAO or seizing agency should advise the USMS[6] promptly before the seizure or restraint, or before the filing of any civil forfeiture complaint or the return of any indictment containing forfeiture allegations, as to any assets that are best managed with advance seizure planning (*e.g.*, real or commercial property, virtual currency, animals). This consultation affords the USMS sufficient time to conduct ownership or title and valuation analyses, and to identify all resources necessary to efficiently manage seized assets and dispose of forfeited assets.

## B.  Scope of assets covered by guidelines

These guidelines cover all assets considered for federal forfeiture.[7] The degree and nature of planning for seizure or restraint will vary depending upon the circumstances and complexity of each case.

For the USMS to best assist USAOs and seizing agencies in a thorough, efficient, and effective manner, the USAO or seizing agency must involve the USMS in the investigation as soon as it identifies assets that likely will be seized for forfeiture.[8] Seizure planning should occur well before the filing of a civil forfeiture complaint or the return of an indictment containing forfeiture allegations. Specifically, seizure planning requires a detailed discussion of all potential issues affecting the seizure, custody, maintenance, and disposal arrangements specific to each asset identified for forfeiture. This discussion may occur in person, by telephone, or electronically, and may be

---

[5]  References to USAOs throughout this *Manual* generally include Criminal Division trial attorneys or other litigating Department components not partnering with a USAO.

[6]  References to the USMS include USMS district office representatives.

[7]  *See* Chap. 3 in this *Manual* for a full discussion of the policies and procedures involving assets seized by state and local law enforcement agencies.

[8]  Assets in cases where a Department agency is not the lead agency may be handled by the independent contractors employed by non-Department agencies rather than the USMS (like Treasury or DHS) and those independent contractors should participate in seizure planning as appropriate. *See* Chap. 10, Sec. I.B in this *Manual*; *see also* Sec. I.C.1 in this chapter for a discussion of lead agency responsibility.

ongoing depending on the nature of the asset and stage of the forfeiture proceeding. These seizure planning discussions are mandatory for certain assets:

- residential or commercial real property and vacant land;[9]

- businesses and other complex assets;[10]

- large quantities of assets involving potential inventory, storage, or security problems (*e.g.*, multiple vehicles from several locales or districts, personal property assets that will be seized from multiple locations on the same day, or the inventory of operating businesses, such as jewelry stores);

- assets that create difficult or unusual problems (*e.g.*, animals, perishable items, chemicals and pharmaceuticals, leasehold agreements, intellectual property, cryptocurrencies, and valuable art and antiques); and

- assets located in foreign countries.[11]

Depending upon the complexity and scope of the case, formal seizure planning may continue after this initial discussion as required by the USAO, the seizing agency, or the USMS. In many instances, the USMS will need to procure the professional assistance of commercial vendors during the covert stage of an investigation so that services such as inventories, appraisals, transportation, and storage will coincide with a scheduled takedown date. The USMS will take appropriate measures to protect sensitive law enforcement information while consultation occurs with the involved components.

The USMS must consult with the USAO or the seizing agency in advance of the release of any information to third-party contractors.[12] The information provided to contractors can be limited to that necessary to procure required contractor services and facilities (*e.g.*, towing services and storage space for 50 vehicles required in a particular location by a certain date). At all times, those engaged in the seizure planning process must be sensitive to operational security, and never do anything that might jeopardize operational security or compromise ongoing covert investigations. In addition, the USAO or seizing agency must conduct real property lien and title searches as covertly as possible, such as through use of public property websites, if available.

Examples of the types of services the USMS may provide upon the request of a USAO or seizing agency (as well as the usual time it takes to obtain the requested service) include lien search and appraisal information, animal care, logistics services, and business recommended action plans.

---

[9]  For the purposes of this *Manual*, commercial real property means residential real property comprising five or more units and any other real property held for commercial purposes.

[10]  *See* Sec. I.D.2 in this chapter for a discussion of seizure or restraint of operating businesses. Commercial vessels, or any vessels worth more than $1 million, are considered complex assets that require prior notification and consultation with the Money Laundering and Asset Recovery Section (MLARS). *See* Sec. I.C.3 in this chapter.

[11]  Federal prosecutors must adhere to established procedures for international contacts and should not contact foreign officials directly on case-related matters unless such contacts have been approved by, and are under the supervision of, or are in consultation with the Office of International Affairs (OIA). *See* Chap. 8, Sec. I.A in this *Manual*.

[12]  *See* Chap. 6 in this *Manual* for a discussion of disclosure of grand jury information.

| Service | Estimated Completion Time | Description |
|---|---|---|
| **Lien search and appraisal information** | 3–4 weeks from date of request to return information (additional time necessary for full, non-"drive-by" appraisals) | USMS offers these services to provide USAOs and investigative agencies information during the pre-indictment, seizure planning stage of a criminal or civil investigation. |
| **Animal care** | 1–2 months prior to seizure | Proper arrangements must be made to ensure health and daily care of the animals. USAOs should contact USMS for further guidance involving the care of animals. |
| **Logistics services** | 3–6 months prior to takedown date for unusual or complex assets | Federal contracting regulations and the time necessary to coordinate with commercial vendors make it imperative to involve USMS as soon as such services are anticipated. |
| **Business recommended action plan** | 2–4 months, or longer in more complex cases | USAOs and seizing agencies should make forfeiture decisions only after USMS conducts a documentary review of the business assets identified for forfeiture and their financial status. |

## C.  General seizure planning policy guidelines

Section C provides broad seizure planning policy guidelines for all agencies participating in the Program. In some circumstances, variations to these guidelines may be made in consultation with the Money Laundering and Asset Recovery Section (MLARS).

### C.1  Lead agency responsibility

The U.S. Attorney[13] (or in administrative forfeiture proceedings, the agent in charge of the forfeiture matter in the field office[14]) is responsible for ensuring that proper and timely seizure planning occurs in asset forfeiture proceedings within each federal judicial district. All seizure planning meetings must include, at a minimum:

- the Assistant U.S. Attorney (AUSA) or investigative agent in charge of the administrative forfeiture matter (and, if applicable, the AUSA in charge of the related criminal matter);

- investigative agents; and

- appropriate USMS representatives.

In forfeiture proceedings involving federal regulatory matters, seizure planning meetings must also include a federal regulatory agency representative.

As a general rule, one lead agency should process all the seized assets for forfeiture. The lead agency is the agency that processes the assets for forfeiture. Assets shall not be divided among multiple

---

[13] Unless otherwise noted, references to the U.S. Attorney in this *Manual* include other authorizing officials responsible for oversight of Criminal Division trial attorneys or Department components.

[14] Depending on the agency, agency staff may be responsible for ensuring that proper and timely seizure planning occurs.

agencies to process for forfeiture.[15]  For instance, a cash seizure of $800,000 may not be divided into two $400,000 seizures to be separately credited to two agencies.  Similarly, a seizure of two vehicles may not be divided into two seizures of one vehicle each to be credited to two different agencies.  Further, forfeiture amounts paid pursuant to an agreement to pay a particular amount in the future to satisfy a money judgment, a deferred prosecution agreement (DPA), or a non-prosecution agreement (NPA) may not be divided into separate payments to multiple agencies.

The lead prosecuting office may, in extraordinary circumstances, permit individual seizures to be allocated to different agencies.  These allocations require the express consent of the lead prosecuting office.

In asset forfeiture proceedings involving more than one federal judicial district, the USAO instituting the forfeiture proceeding shall have primary responsibility, in coordination with the lead investigative agency, to ensure that proper and timely seizure planning occurs in all districts in which assets will be seized.

### C.2  Seizure planning overview

Seizure planning ensures that the various components of the Department work together so that asset forfeiture is used as an efficient and cost-effective law enforcement tool consistent with the Program's goals.  To that end, seizure planning provides the government with the opportunity to make informed decisions on matters regarding the financial effects of seizing, restraining, forfeiting, and managing assets, and on all matters affecting the government's ability to efficiently dispose of assets following forfeiture.  Specifically, seizure planning consists of anticipating issues and making fully informed decisions concerning what property should be seized or restrained, how and when it should be seized or restrained, and, most importantly, whether the property should be forfeited at all.  Depending on asset type and circumstance, seizure planning discussions should address:

- **What is being seized, who owns it, and what are the liabilities against it?** Determine the full scope of the seizure to the extent possible.  For example, if a house is being seized, will the contents also be seized? If a business is being seized, are the buildings in which it operates, the property upon which it is located, the inventory of the business, and its operating or other bank accounts, accounts receivable, or accounts payable also to be seized? All ownership interests and any existing or potential liabilities in each asset must be identified to the extent possible.

- **Should the asset be seized or even identified for forfeiture?** If the asset has a negative or marginal net equity at the time of seizure, should it be seized and forfeited? Over time, what is the likelihood that the asset will depreciate to a negative or marginal value? What law enforcement benefits are to be realized from seizure and forfeiture? Is a restraining or protective order an adequate alternative to seizure, given the circumstances? Can any anticipated losses be avoided or mitigated through careful planning? Will custody, forfeiture, or disposal of the asset impose unduly significant demands on USMS or USAO resources or require a considerable infusion of funds from the AFF? For complex assets, what is the long-term marketability of the assets? For example, as to a business, what is the financial

---

[15] Multiple asset identification numbers should not be created for an individual asset in the Consolidated Asset Tracking System (CATS) database.

viability of the business? Determine whether the continued operation, or even a takeover, of the business is in the government's best interest.

- **How and when is the asset going to be seized and forfeited?** Determine whether immediate seizure is necessary or if restraint of the asset is sufficient to preserve and protect the government's interest.  The type and content of the seizing instrument and authority for both the investigative agency and the USMS to enter or cross private property, such as in a writ of entry, must be identified and procured before seizure or restraint to ensure that each agency has the necessary information and legal authority for its seizure and post-seizure responsibilities.

- **What management and disposition problems are anticipated, and how will they be resolved?** Any expected logistical issues involving the maintenance, management, or disposition of assets should be discussed and resolved as early as possible.

- **If an asset has negative net equity, or planning reveals management and disposition problems, what are the alternatives to forfeiture?** For example, is it possible to instead release the property to a lienholder and seek a lien in favor of the government pursuant to 18 U.S.C. § 983(d)(5), or allow tax foreclosure and identify any proceeds of it, or file an interpleader action?

- **Is any negative publicity anticipated?** If publicity or public relations concerns are anticipated, appropriate public affairs personnel should be advised and consulted.  Consider preparing a press release announcing any information from the public record on the basis and purpose of the seizure, restraint, and forfeiture.

### C.3  Asset-specific net equity thresholds

These guidelines set minimum net equity levels that generally must be met, preferably before seizing property and certainly before instituting federal forfeiture proceedings.  The net equity values are intended to enhance case quality and expedite processing of the cases that are initiated.  In general, the minimum net equity requirements are:

- **Real property and vacant land—**minimum net equity must be at least $30,000 or 20% of the appraised value, whichever amount is greater, at the time of case initiation.  No real property with a net equity less than $30,000 should be identified for forfeiture but individual districts may set higher thresholds to account for local real estate markets.  *See also* Chapter 4, Section I.B.2 in this *Manual*.  As a general rule, the Department exercises extreme caution in seizing contaminated real properties for forfeiture.[16]

- **Vehicles—**minimum net equity must be at least $10,000 (based on the J.D. Power, formerly known as National Automobile Dealers Association, "trade-in value").  The value of multiple

---

[16] *See* Chap. 4, Sec. I.E in this *Manual*.

vehicles seized at the same time may *not* be aggregated for purposes of meeting the minimum net equity.

- **Cash**—minimum amount must be at least $5,000, unless the person from whom the cash was seized either was, or is, being criminally prosecuted by state or federal authorities[17] for criminal activities related to the property, in which case the amount must be at least $1,000.

- **Aircraft**—minimum net equity must be at least $30,000.  Note that failure to obtain the logbooks for the aircraft will significantly reduce the aircraft's value.

- **Vessels**—for personal or recreational vessels, the minimum net equity must be at least $15,000.  Commercial vessels, or any vessels worth more than $1 million, are considered complex assets that require the USAO or the seizing agency to notify and closely consult with MLARS prior to seizing, restraining, or otherwise seeking forfeiture of the asset.  *See* Section I.B in this chapter.

- **All other personal property**—minimum net equity must be at least $2,000 in the aggregate.

- **Firearms, ammunition, explosives, devices used in child exploitation, and vehicles with after-market hidden compartments**—Minimum value and net equity thresholds do not apply to firearms,[18] ammunition, explosives, devices used in child exploitation, or vehicles with after-market hidden compartments because there is a compelling law enforcement interest in forfeiting these items.

- **Businesses**—*see* Section I.D.2 in this chapter.

Exceptions from the minimum net equity requirements are not allowed for any individual item if it has a value of less than $1,000.  Exceptions may be allowed if practical considerations support the seizure (*e.g.*, 20 items of jewelry, each valued at $500, might be seized, as the total value of the items is $10,000 and the cost of storing 20 small items of jewelry is not excessive).

The USAO, in consultation with local federal law enforcement agencies, may institute higher district-wide thresholds for judicial forfeiture cases as law enforcement or management needs require.  Similarly, a federal law enforcement agency may institute higher thresholds for administrative forfeiture cases.  Districts shall not use their own higher thresholds as a basis to deny a request for seizure assistance from another district with a lower threshold if the requesting district intends to file the judicial proceeding.  Prosecutors should consult with their respective districts and the federal law enforcement agency regarding district- or agency-specific forfeiture thresholds.

In some circumstances, an overriding law enforcement interest may require the seizure and forfeiture of an asset that does not meet the net equity thresholds.  In individual cases, these thresholds may be waived when forfeiture of a particular asset will serve a compelling law enforcement interest, *e.g.*, a drug house; a conveyance with after-market hidden compartments; a computer or internet domain name involved in a major fraud scheme; equipment connected to child exploitation and pornography, human trafficking, or terrorism; vessels used in alien smuggling or modified or customized to facilitate illegal activity; or a vehicle used in alien smuggling seized at an international border.  When

---

[17] Written communication from state or federal authorities of the intent to seek criminal prosecution in the future is also appropriate to trigger the $1,000 threshold.

[18] *See* Chap. 5, Sec. IV in this *Manual*.

feasible, prior to seizure, a supervisory-level official at the USAO (for judicial forfeitures) or seizing agency (for administrative forfeitures) must approve in writing the seizure or restraint and forfeiture of any asset that does not meet the thresholds, and ensure that the reason for the decision be noted in the case file. The USMS may request this approval during seizure planning if sufficient equity does not exist or it is anticipated to dissipate during the asset's time in custody.[19]

If the restraint, seizure, or forfeiture of real property could create a net loss to the AFF for that property, the USAO and the seizing agency must consult MLARS, the Asset Forfeiture Management Staff (AFMS), and the USMS. *See* Section I.D.1.b.1 in this chapter; *see also* Chapter 4, Section I.B.2 in this *Manual*. If the restraint, seizure, or forfeiture of an operating business could create a net loss to the AFF for that business, the USAO and the seizing agency must obtain prior approval from MLARS, in coordination with AFMS and the USMS. *See also* Section I.D.2 in this chapter.

### C.4  Seizure of proceeds from violations involving a state sponsor of terrorism

The statute governing the U.S. Victims of State Sponsored Terrorism Fund (USVSST Fund) mandates that certain forfeiture proceeds, penalties, and fines be deposited into the USVSST Fund if forfeited or paid to the United States after the date of the Act's enactment (December 18, 2015).[20] This includes cases related to countries designated by the Department of State as state sponsors of terrorism, involving violations of the International Emergency Economic Powers Act (IEEPA)[21] or the Trading with the Enemy Act[22] or related conspiracies, schemes or other federal offenses.[23] Prosecutors must consult MLARS as early as possible in any case that involves a state sponsor of terrorism and may require deposits to the USVSST Fund. *See* Chapter 10, Section III.D in this *Manual*.

### D.  Seizure planning analysis and documentation

The USMS has various seizure planning resources to assist stakeholders in making informed decisions when identifying assets for forfeiture. USMS resources include net equity worksheets, ownership analysis documents, and financial analysis documents. The USAO and seizing agency must consult with USMS to determine which analyses to perform for any assets identified for forfeiture. This consultation, and obtaining the information required to complete these analyses, will identify the issues that must be addressed during the seizure planning phase of a case, which reduces the chance that forfeiture may cause the AFF to incur a loss, preserves the government's ability to dispose of the assets in an efficient and cost-effective manner following forfeiture, and ensures that the costs of storage and maintenance of particular assets, as well as the potential liabilities involving the assets, may be assessed well in advance of forfeiture. Individual offices may supplement these analyses as they see fit. However, the USMS requires the basic information described below for adequate planning.

### D.1  Net equity worksheet

When certain assets, especially residential, commercial, and vacant real properties, are identified for forfeiture, the potential net equity must be calculated as part of seizure planning. A written financial

---

[19] *See* Sec. I.D.1.b in this chapter.

[20] For more information about the USVSST Fund, visit MLARS' USVSST page

[21] 50 U.S.C. § 1701 *et seq.*

[22] 50 U.S.C. § 4301 *et seq.*

[23] *See* 34 U.S.C. § 20144(e)(2)(A).

analysis facilitates, documents, and informs seizure planning decisions. In cases where information relating to titles and liens cannot be acquired without compromising the investigation, the financial analysis may be completed following restraint or seizure of the property.[24]

The USMS net equity worksheets provide step-by-step formulas for computing net equity—the estimated total amount of money the government expects to recoup from the asset once the aggregate of all liens, mortgages, and management and disposal costs have been subtracted from the expected proceeds of the sale of the asset—and documents the results of this analysis. The USAO or the seizing agency is strongly encouraged to adopt the USMS net equity forms, as they provide the most updated estimates for the management and disposal of properties based on current contract prices.

### D.1.a    Ownership and encumbrances

The investigative agency is responsible for compiling current and accurate information on the ownership of, and any encumbrances against, personal property identified for forfeiture, and providing that information to the USMS and the USAO before seizure, whenever practicable. When not practicable before the seizure, the investigative agency must compile and make the information available to the USAO and USMS as soon as possible following the seizure. When real property and businesses are identified for seizure, the USMS has primary responsibility for conducting a title search before seizure unless otherwise agreed in individual cases. The USMS often cannot conduct a complete ownership analysis for a business unless the USAO obtains, by subpoena or otherwise, appropriate ownership documents (*e.g.*, stock record books, stock certificates, LLC operating agreements, etc.). A subpoena may be required to obtain accurate mortgage balances to accurately calculate net equity.

### D.1.b    Financial analysis: avoiding liability seizures

#### D.1.b.1 Planning before seizure and restraint

Before seizing an asset with a potential liability in a judicial forfeiture, the USAO must consult with the seizing agency and the USMS to evaluate and consider the forfeitable net equity and the law enforcement purposes in light of the potential liability issues and estimated costs of post-seizure management and disposition. In an administrative forfeiture of an asset with a potential liability, the seizing agency must consult with the USMS.

If the financial analysis, at the time of case initiation, indicates that the aggregate of all liens (including judgment liens), mortgages, and management and disposal costs approaches or exceeds the anticipated proceeds from the sale of the property, the USAO, or in administrative forfeiture actions the seizing agency, must either (1) determine not to go forward with the seizure[25] or (2) acknowledge the potential financial loss and document the circumstances that warrant the seizure and institution of the forfeiture action. For real property, the USAO must obtain approval by a supervisory-level official at the USAO in writing with an explanation of the reason noted in the case file.[26]

---

[24] *See* Sec. I.D.1.b.2 in this chapter.

[25] The USAO may consider alternatives to seizure such as restraint of certain assets or a *lis pendens* for real property.

[26] *See* Chap. 4, Sec. I.B.2 in this *Manual*.

### D.1.b.2 Planning after seizure and restraint

In instances where seizure planning is not possible or is not completed before seizure, the seizing agency may be responsible for custody and maintenance of the property until the USMS has had the opportunity to conduct an analysis of the assets. The USMS will complete its seizure planning analysis as soon as practicable given the nature of the information required. Upon completion and reporting of the USMS seizure analysis, a seizure meeting with the appropriate agencies as described in Section I.C.1 in this chapter should take place to address all issues identified. For property that has met the required net equity threshold, if the financial assessment indicates that the aggregate of all liens and management and disposal costs approaches or exceeds the anticipated proceeds from the sale of the property, then the seizing agency in administrative forfeiture proceedings must either (1) take immediate action to terminate forfeiture of the asset (if any forfeiture proceeding has been commenced) or (2) acknowledge the potential loss and document the justification for continued pursuit of the forfeiture notwithstanding the financial assessment. In judicial forfeiture cases, the USAO must either (1) take action to dismiss the asset from the forfeiture action and to void any expedited settlement agreements involving the asset (if any have been entered into) or (2) acknowledge the potential loss and document the justification for the continuation of the forfeiture action notwithstanding the loss.

### D.2  Seizure or restraint of operating businesses

Seizing an operating business poses complex issues and risks substantial losses and liabilities. Accordingly, the USAO must notify and closely consult with MLARS and the USMS before seizing, restraining, or otherwise seeking forfeiture of an operating business.

The USAO or seizing agency must seek approval from MLARS if the restraint, seizure, or forfeiture of a business could create a net loss to the AFF. MLARS, in coordination with the USAO, AFMS, and the USMS, will determine whether to grant approval. Further, prior approval from the U.S. Attorney is required before seizing or filing a civil forfeiture complaint against an operating business based on a facilitation theory.[27]

Before any seizure or restraint of an operating business, the USAO, investigative agency, and USMS should formulate an action plan outlining each agency or office's requirements, responsibilities, and objectives. Although there are many complex issues to consider in evaluating an operating business, the government must first determine what it intends to restrain, and ultimately seize and forfeit. This determination requires analysis of the business entity itself (*e.g.*, corporation, limited liability company, partnership, sole proprietorship), the ownership structure of the business (*e.g.*, the existence of other owners or partners), and whether the entity itself or its owners have been or will be indicted.

---

[27] *See* Chap. 5, Sec. III.D.1.b in this *Manual*.

A pre-seizure review of a business will help a USAO answer the following questions:

- Who owns the building in which the business operates?

- Who owns the land?

- What is the cash flow of the business? What is the cash flow if income from the illegal activity ceases?

- What are the monetary values of accounts receivable and payable?

- What other valuable assets does the business own?

- Are there significant liabilities?

- What is the net equity of the business?

- Are there environmental concerns?

- Is the business highly regulated? Is the business currently in compliance with its regulatory obligations?

- Will the business require capital contributions to remain viable?

- What law enforcement or regulatory methods or alternatives to forfeiture may be effective (*e.g.*, revocation of a license essential to operation of the business by state or local authorities)?

- Is the business being seized as facilitating property or as proceeds of crime? Once the source of illegal funding and the illicit customers are gone, the business may no longer be profitable. If the business is facilitating illegal activity and also engaging in legal but unseemly activity, is the government in a position to prevent or monitor the activity (*e.g.*, government operation of a strip club that attracts illegal drugs and prostitution)? The public may have an expectation that if the government is operating the business, it will be able to prevent all illegal activity.[28]

- What would it cost to hire either a business monitor or trustee and necessary staff, or other third-party experts, if needed?

- Can the business be disposed of efficiently and cost-effectively upon forfeiture, and how long will the forfeiture and post-forfeiture disposition process take?

Please refer to Chapter 2, Section VI in this *Manual* for more detailed guidance addressing the seizure and forfeiture of businesses.

### E.  Quick release

#### E.1  Before filing of any claim

Certain non-contraband property may be released following federal seizure for forfeiture but prior to the filing of any claim pursuant to 28 C.F.R. § 8.7.  This is known as "quick release."  This may include property that does not meet asset-specific net equity thresholds (*see* Section I.D.1

---

[28]  *See* Chap. 9, Sec. III in this *Manual* for a discussion of security measures.

in this chapter), property the seizing agency decides not to forfeit after post-seizure analysis (*see* Sections I.D.1.b.1 and I.D.1.b.2 in this chapter), property belonging to an innocent owner having an immediate right to possession, or other property the release of which serves to promote the best interests of justice or the government (28 C.F.R. § 8.7(b)).  While these issues ideally should be resolved in seizure planning,[29] agencies may use post-seizure quick release whenever warranted.

When a seizing agency elects to use quick release, determining the appropriate party to whom the property should be released will depend on the nature of the seized property and the particular circumstances.  If there is no registered owner of the property to be released, *e.g.*, currency, it usually should be returned to the person from whom it was seized.[30]  If there is a registered owner of the property, such as in the case of an automobile, the property should usually be returned to that party, regardless of whether there is a lienholder or other third party with ownership rights to the property.  However, if a third party, such as a lienholder, has asserted its contractual rights in a judicial proceeding, obtained a final judgment, and provided satisfactory proof of the judgment and its ownership interest and right to immediate possession of the property, the seizing agency may return the property to that third party instead of the registered owner.  Similarly, if a state court authorizes a state or local law enforcement agency to take possession of the seized property, the seizing agency may release the property in accordance with that state court's order.  If the seizing agency is aware of a third party with an ownership interest in the property, regardless of whether the third party has asserted any contractual rights to immediate possession, the seizing agency may notify the third party of the release in advance of releasing the asset to the registered owner.

### E.2  Declination

There may be instances in which a prosecutor declines to proceed with a judicial forfeiture after a claim has been filed in an administrative forfeiture proceeding.  Once that decision is made and the federal government no longer has a legal basis for holding the seized property (*e.g.*, it is not evidence of a violation of law), within 30 days of the decision the agency that seized the property must return it to the appropriate party, initiate abandonment proceedings pursuant to 28 C.F.R. § 8.10(e), or otherwise dispose of it in accordance with law.  In determining the appropriate party to whom to return the seized property, the seizing agency should follow the same guidance for the return of property pursuant to quick release, including providing prompt notification to the appropriate party.

---

[29] *See* Secs. I.C.2 and I.D in this chapter for more about seizure planning.

[30] In most cases, however, release of funds will be subject to the Treasury Offset Program (TOP).  *See* Chap. 11, Sec. I.B.9 in this *Manual*.

## II.    Pre-Seizure Judicial Review

Pre-seizure judicial authorization of property seizures serves multiple purposes, including:

- allowing neutral and detached judicial officers to review the basis for seizures before they occur;

- enhancing protection for Department officers against potential civil suits claiming wrongful seizures; and

- reducing the potential that the public will perceive property seizures to be arbitrary and capricious.

Whenever practicable, Department officials should obtain *ex parte* judicial approval by, for example, obtaining a seizure warrant, before seizing personal property.

# Chapter 2:
# Seizure and Restraint

## I. Overview

Seizure and restraint of assets is a critical step in any civil or criminal investigation. *Seizure* involves the physical restraint of an asset or its transfer from the owner or possessor to the custody or control of the government, primarily through a law enforcement agency. Seizure generally occurs:

- incident to an arrest,

- pursuant to a search,

- pursuant to a civil or criminal seizure warrant for specific items subject to forfeiture,

- pursuant to arrest warrant *in rem*, or

- pursuant to a preliminary order of forfeiture.

A restraining order is an order that the government may obtain from a district court judge before or after filing a civil forfeiture complaint or an indictment seeking forfeiture of an asset. A restraining order directs a person or entity who owns or has custody of an asset subject to forfeiture to preserve the asset for potential forfeiture. The government typically does not take physical possession of the asset pursuant to a restraining order. But a restraining order may require the execution of satisfactory performance bonds; create receiverships; appoint conservators, custodians, appraisers, accountants, or trustees; or require the person on whom it is served to take other actions to secure, maintain, or preserve the availability or value of property subject to forfeiture.[1]

Law enforcement often obtains authority for seizures through a search warrant or seizure warrant issued by a federal magistrate and based upon a sworn affidavit that describes in detail the property to be seized and the evidence demonstrating probable cause that the property is subject to seizure and forfeiture. Federal Rule of Criminal Procedure 41 governs the authorization for search warrants, and the seizure of evidence, contraband or items illegally possessed, and the instrumentalities to a crime. 18 U.S.C. § 981(b), 21 U.S.C. § 881, and 21 U.S.C. § 853 govern the authorization of seizure warrants of assets for forfeiture.

Under certain circumstances, warrantless seizures may be necessary and appropriate. A warrantless seizure may be appropriate if the seizing agent had probable cause at the time of seizure to believe that the asset is subject to forfeiture, an exception to the warrant requirement applies, and the seizing agent is lawfully in a position to effect the seizure. *See* 18 U.S.C. § 981(b)(2)(B).

---

[1]  *See* 18 U.S.C. § 983(j), which provides for issuance of civil restraining orders; 21 U.S.C. § 853(e), which provides for issuance of criminal restraining orders.

## II.  General Policies and Procedures for Seizing Property[2]

### A.  Responsibility for execution of process

In addition to seizure planning,[3] investigators should also formulate a plan for executing the warrant. Generally, the U.S. Marshals Service (USMS) has primary responsibility for execution of warrants of arrest *in rem*, while the pertinent Department of Justice (Department) investigative agency has primary responsibility for execution of seizure warrants.  The USMS and investigative agencies should coordinate execution of process.

Effective warrant execution planning includes, for example,

- identifying who will be the seizing agents;

- planning for unusual assets that would be difficult to secure, transport, maintain, or store;

- identifying and inventorying assets;

- planning for safeguarding the value of assets upon seizure; and

- caring for any animals to be seized.

### B.  Notification by seizing agency

U.S. Attorney's Offices (USAOs) and investigative agencies participating in the Department's Asset Forfeiture Program (Program) must enter all assets seized for forfeiture in the Consolidated Asset Tracking System (CATS) database.

In many instances, USAOs work with agencies to obtain process to effectuate seizures and restraints. Thus, USAOs often have direct access to information about certain seizures.  However, when USAOs are not involved in restraints, USAOs can still access reports of seizures by agencies participating in the Program in their districts in CATS.  All non-Department agencies that do not report seizures in CATS must forward copies of seizure forms or a report of seizures to the pertinent USAO within 25 days of seizure unless an individual USAO chooses to not receive seizure notices.

### C.  Forms of process

#### C.1  Warrant of arrest *in rem*

In most civil judicial cases, the court exercises its *in rem* jurisdiction over property by issuing warrants of arrest *in rem*, which the seizing agency then executes.  Rule G(3) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules) governs the procedure for issuing an arrest warrant *in rem*.  Under the Supplemental Rules, no arrest warrant is needed if the defendant property is real property[4] or is already subject to a pretrial restraining order.[5] In all other cases, however, the government must obtain an arrest warrant *in rem* and serve it on the

---

[2]  *See* Chap. 3, Sec. III in this *Manual* for a full discussion of the policies and procedures involving custody and concurrent jurisdiction.

[3]  *See* Chap. 1 in this *Manual* for a full discussion of seizure planning.

[4]  *See* 18 U.S.C. § 985(c)(3); Supplemental Rule G(3)(a).

[5]  *See* Supplemental Rule G(3)(b)(iii).

property, generally by actual or constructive seizure of the property, so that the court obtains *in rem* jurisdiction.

The procedure for issuing the warrant of arrest *in rem* differs depending on the custody of the property at the time the complaint is filed. If the property is already in the government's custody at the time the complaint is filed, the clerk of the court may issue the warrant without any finding of probable cause by a judge or magistrate judge. But if the effect of the warrant will be to take the property out of the hands of a non-government entity, the court must issue the warrant upon a finding of probable cause. *See* Supplemental Rule G(3)(b). Once the warrant is issued, it must be delivered "to a person or organization authorized to execute it." *See* Supplemental Rule G(3)(c).

### C.2  Seizure warrant

A seizure warrant authorized by 21 U.S.C. § 881(b), 21 U.S.C. § 853(f), and 18 U.S.C. § 981(b)(2) also serves as a form of process for seizing forfeitable property. A seizure warrant issues upon a judicial finding of probable cause in a similar manner to a search warrant obtained under Federal Rule of Criminal Procedure 41. In the case of a *criminal* forfeiture seizure warrant obtained under § 853, in addition to probable cause for seizure, the judge must also find that a restraining order is insufficient.[6] While a seizure warrant may be issued pursuant to either the applicable criminal or civil forfeiture statute, it may be prudent to obtain a warrant under both the civil *and* criminal statutes. This is often referred to as a "dual-purpose" or "hybrid" warrant. Such a dual-purpose warrant eliminates the need for the government to obtain any additional order authorizing the government to continue holding property for criminal forfeiture where the government had originally seized the property via a civil warrant or for civil (including administrative) forfeiture. *See* 18 U.S.C. § 983(a)(3); *see also* Section III.B in this chapter.

If agents intend to enter a private structure for the purpose of searching for and seizing, or inventorying, personal property subject to forfeiture, they should consult with their local USAO on whether the circumstances or law also require a separate search warrant.

### C.3  Seizure of real property

The government ordinarily does not physically seize real property prior to forfeiture. Indeed, in a civil forfeiture case, 18 U.S.C. § 985 bars the government from seizing real property before judgment except upon the government's (1) making a pre-seizure *ex parte* showing of probable cause and exigent circumstances or (2) serving notice of the motion for a seizure warrant on the property owner and giving the property owner a meaningful opportunity to be heard. *See* Chapter 4, Section I.C in this *Manual* for a discussion of the Department's policy on how to obtain *in rem* jurisdiction over real property and the limited circumstances under which it may be appropriate to seek pre-judgment seizure of real property.

---

[6]  *See* 18 U.S.C. § 982(b)(1); 21 U.S.C. § 853(e); *In re Pre-Indictment Restraining Ord.* (*Hailey*), 816 F. Supp. 2d 240, 244–45 (D. Md. 2011) (noting that under § 853(e), a court may enter orders directing a person to refrain from dissipating assets, to account for expenditures of funds subject to forfeiture; and to take affirmative steps to preserve property subject to forfeiture; entering pre-indictment restraining order, following court's earlier issuance of non-dissipation and accounting orders that froze two bank accounts of target of criminal investigation and required target to surrender property he acquired in violation of prior non-dissipation order to the custody of the court pending indictment and trial).

### C.4  Seizure by state or local law enforcement

An adoptive forfeiture occurs when a state or local law enforcement agency seizes property and requests that a federal seizing agency adopt the seizure and proceed with federal forfeiture. *See* Chapter 3 in this *Manual* for a discussion of the policies and procedures involving seizures by state and local law enforcement agencies.

### D.  Judicial authority issuing process

While seizure warrants, search warrants, and forfeiture restraining orders are similar in many respects, they differ greatly in one important characteristic. While a search warrant typically must issue from a judge in the district in which the property to be searched is located, forfeiture process, such as a seizure warrant or restraining order, may issue from a judge in which the property to be seized is located or in the district that has venue for the prosecution of the criminal or civil judicial forfeiture proceeding.

## III.  Seizures for Criminal Forfeiture

### A.  What process must the government seek to retain custody of an asset for potential criminal forfeiture?[7]

The government is not required to have an asset subject to criminal forfeiture in the government's possession during the pendency of a criminal forfeiture proceeding. That is because criminal forfeiture proceedings are *in personam*—so the court does not need to have *in rem* jurisdiction over the asset (which type of jurisdiction typically requires the government to have possession of the asset) to make the asset subject to criminal forfeiture. The criminal forfeiture statutes accordingly contemplate that assets subject to criminal forfeiture might remain in the defendant's custody until the court enters a preliminary order of forfeiture. *See* 21 U.S.C. § 853(g) ("Upon entry of an order of forfeiture under this section, the court shall authorize the Attorney General to seize all property ordered forfeited").

That said, to avoid the dissipation of forfeitable assets, the government often *does* have physical possession of the asset subject to criminal forfeiture before entry of a preliminary order of forfeiture in the criminal case. For example, the government could have obtained custody of the asset via a criminal seizure warrant under § 853(f) or a criminal restraining order under § 853(e) that required the defendant to transfer the asset to the government's custody. Or the government could have seized the asset as evidence in a criminal investigation. The government also could have seized the asset for civil forfeiture via a civil seizure warrant issued under 18 U.S.C. § 981(b), a warrant of arrest *in rem* issued under Rule G(3)(b)(ii) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules) after the government filed a civil forfeiture action, or a lawful warrantless seizure for forfeiture purposes.

However, if "criminal forfeiture is the only forfeiture proceeding commenced by the government, the government's right to continued possession of the property shall be governed by the applicable criminal forfeiture statute." *See* 18 U.S.C. § 983(a)(3)(C). Accordingly, where the government seeks

---

[7]   As noted in footnote 9 in Sec. III.B in this chapter, the question of whether a criminal seizure warrant or restraining order is required to retain custody of an asset for criminal forfeiture does not arise where the asset was originally seized via a criminal seizure warrant under 21 U.S.C. § 853(f) and 18 U.S.C. § 982(b)(1) or a dual-purpose criminal-civil seizure warrant under those statutes and 18 U.S.C. § 981(b).

to criminally forfeit an asset that was originally obtained through some process other than a criminal or dual-purpose seizure warrant and (1) civil, judicial, or administrative forfeiture proceedings against the asset were never commenced or have terminated and (2) the asset lacks sufficient evidentiary value to justify its continued retention as evidence, then *to be entitled to retain custody of the asset for criminal forfeiture pending the outcome of the criminal case* under § 983(a)(3)(C), the government must obtain:

- a criminal or dual-purpose seizure warrant,

- a restraining order under 21 U.S.C. § 853(e), or

- a "housekeeping order" under § 853(e) authorizing retention of the asset for criminal forfeiture purposes.[8]

### B. If civil forfeiture is being pursued parallel to criminal forfeiture, no additional criminal restraint process is needed[9]

Assistant U.S. Attorneys (AUSAs) should consider preserving the option of pursuing civil forfeiture of assets—particularly high-value assets or unique assets that require special care, such as live animals—even while pursuing criminal forfeiture of those assets to mitigate risk in the event the defendant is acquitted, flees, or dies before the criminal case is finalized.[10]

The government may retain an asset pending the outcome of a civil forfeiture proceeding as long as (a) an administrative forfeiture proceeding or a civil judicial forfeiture action is pending against the asset or (b) a court has issued either (or both) a civil seizure warrant authorizing its seizure under 18 U.S.C. § 981(b) or a warrant of arrest *in rem* under Rule G(3)(b)(ii) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules). This remains

---

[8]   *See United States v. Zazueta-Hernandez*, No. 1:19-cr-00130-MWM-1, 2020 WL 5016940 (S.D. Ohio Aug. 25, 2020) (holding that for assets already in the government's custody, the government may satisfy 18 U.S.C. § 983(a)(3)(B)(ii)(II)'s requirement that the government take steps to assure the availability of the property for criminal forfeiture by requesting only a "housekeeping" order, and noting that because a housekeeping order is not a restraining order as the property is already in the government's custody, order requires no finding of probable cause); *In Re 2000 White Mercedes ML320 Five Door SUV*, 220 F. Supp. 2d 1322, 1325 (M.D. Fla. 2001) (holding that as to property already in government custody, the government may satisfy 18 U.S.C. § 983(a)(3)(B)(ii)(II) by requesting only a "housekeeping" order under 21 U.S.C. § 853(e)); *but see United States v. Escobedo-Coronado*, No. 4:21-cr-00325-GKF-4, 2022 WL 873615,*2–3 n.3 (N.D. Okla. Mar. 23, 2022) (holding that where an asset is already in the government's custody but the government has not previously obtained a finding of probable cause that the asset is subject to criminal forfeiture, and the government seeks to retain custody of the property by satisfying § 983(a)(3)(B)(ii)(II)'s requirement that the government take steps to assure the asset's availability for criminal forfeiture, the government must both allege that the asset is subject to criminal forfeiture in the indictment or a bill of particulars and also obtain a restraining order under 21 U.S.C § 853(e) upon a showing of probable cause that the asset is subject to criminal forfeiture; rejecting *United States v. Zazueta-Hernandez* and other cases holding that the government may satisfy § 983(a)(3)(B)(ii)(II)'s custody preservation requirement without a showing of probable cause as to forfeiture nexus where there has been such no prior finding of probable cause as to nexus).

[9]   The question of whether a criminal seizure warrant or restraining order is required in a criminal case for the government to preserve the option of civil forfeiture does not arise where the asset was originally seized via a criminal seizure warrant under 21 U.S.C. § 853(f) and 18 U.S.C. § 982(b)(1) or a dual-purpose criminal-civil seizure warrant under those statutes and 18 U.S.C. § 981(b).

[10]  *See United States v. Ajrawat*, 738 F. App'x. 136, 139–40 (4th Cir. 2018) (if defendant's conviction is extinguished because of death while appealing conviction and sentence, the forfeiture and restitution orders must be abated); *United States v. Lay*, 456 F. Supp. 2d 869, 874 (S.D. Tex. 2006) (noting that a conviction typically abates if defendant dies after he is sentenced but before his appeal is final and that this abatement rule applies equally to cases where defendant dies before he has been sentenced and judgment entered against him; vacating conviction and restitution order).

the case even if the civil forfeiture case against the asset is stayed pending resolution of a parallel criminal case.[11]

When an asset is the subject of an administrative forfeiture proceeding and someone made a claim to the asset in that proceeding, *to preserve the government's ability to pursue civil forfeiture of the asset*, within 90 days from the date the claim was filed with the seizing agency in the administrative proceeding the government must:

(1)  commence a civil forfeiture action against the asset;

(2)  obtain a criminal indictment or file a criminal information "containing an allegation that the property is subject to forfeiture" and "take the steps necessary to preserve [the government's] right to maintain custody of the property as provided in the applicable criminal forfeiture statute"; or

(3)  return the property.

*See* 18 U.S.C. § 983(a)(3)(B).[12]

If the government files a civil forfeiture proceeding against the asset within that 90-day period following the filing of the claim in the administrative forfeiture proceeding (or within the time of any court-authorized extension), the government obviously preserves its option to pursue civil forfeiture of the asset. The arrest warrant *in rem* (as well as any civil seizure warrant) would authorize the government's continued possession of the property while the civil forfeiture case is pending.

If, however, the government seeks to satisfy § 983(a)(3)(A) solely by pursuing criminal forfeiture of an asset—by obtaining an indictment (or filing an information) that includes a forfeiture notice listing the asset as subject to forfeiture within the 90-day period—it must also "take the steps necessary to preserve [the government's] right to maintain custody of the property as provided in the applicable criminal forfeiture statute." *See* 18 U.S.C. § 983(a)(3)(B)(ii)(II).[13] If the government has already obtained a pre-indictment criminal or a dual-purpose seizure warrant or a criminal restraining order as to the asset, then the government need not take any further steps. If the government has not already obtained a criminal or dual-purpose seizure warrant or restraining order upon obtaining the

---

[11]  *See United States v. Stokes*, No. 1:14-CR-290-1-TWT-JKL-1, 2017 WL 5986231, *5 (N.D. Ga. Oct. 23, 2017), *r. & r. adopted*, 2017 WL 5971986 (N.D. Ga. Dec. 1, 2017) (holding that government may lawfully retain possession of funds subject to criminal forfeiture "by virtue of [a] timely filed parallel civil forfeiture action" where funds were seized via civil seizure warrant and after claim was made in administrative proceeding, government filed parallel civil forfeiture case against funds within the 90-day period prescribed in 18 U.S.C. § 983(a)(3); stay of civil forfeiture case pending resolution of criminal case did not affect government's authority to retain the seized funds by virtue of timely filing of parallel civil forfeiture case).

[12]  The government may also obtain, from a court in the district where the civil forfeiture complaint will be filed, an extension of the complaint-filing deadline "for good cause or upon agreement of the parties." *See* § 983(a)(3)(A). Because it is not always clear who will be the "parties," that is, who will be the claimants, in a not-yet-filed civil forfeiture case, even upon reaching extension stipulations with all the anticipated claimants, an AUSA seeking an extension of the complaint-filing deadline should nonetheless ask the court to make a good-cause finding for the extension.

[13]  *See United States v. Lindell*, No. 13-00512 DKW, 2016 WL 4707976, *8 (D. Haw. Sept. 8, 2016) (because government had initially seized funds via a pre-indictment dual-purpose warrant issued under both civil and criminal forfeiture statutes, when the government then obtained an indictment seeking forfeiture of those funds within the time specified in 18 U.S.C. § 983(a)(3)(A), the government was already in compliance with § 983(a)(3)(B)(ii)'s requirement that the government also "take steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute").

indictment, then to satisfy § 983(a)(3)(B)(ii)(II), the government must also obtain within the 90-day period:

- a criminal or dual-purpose seizure warrant,

- a restraining order under 21 U.S.C. § 853(e), or

- a "housekeeping order" under § 853(e) authorizing retention of the asset for criminal forfeiture purposes.[14]

Finally, if within that 90-day period (or any extension), the government fails either (1) to commence a civil forfeiture proceeding against the asset or (2) to both commence a criminal action seeking forfeiture of the asset and obtain a criminal seizure warrant, restraining order, or housekeeping order to preserve the government's right to retain the asset for criminal forfeiture, then the government may not seek civil forfeiture of the asset. In that circumstance, the statute requires that the government "promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense." *See* 18 U.S.C. § 983(a)(3)(B).

To summarize, where (1) the government has seized an asset *in some way other than a criminal seizure warrant or criminal restraining order*, (2) the asset is the subject of an administrative forfeiture proceeding, (3) someone made a claim to the asset in that administrative forfeiture proceeding, and (4) the government elects to pursue only criminal forfeiture of the asset, then to preserve the government's option to pursue civil forfeiture, the government must, within 90 days after the claim was made in the administrative proceeding, both (1) include the asset in the forfeiture notice of an indictment or in a bill of particulars and (2) obtain a seizure warrant, restraining order, or a housekeeping order allowing the government to maintain custody of the asset for potential criminal forfeiture pending the conclusion of the criminal case. Thus, under these very common circumstances, a timely order authorizing the government to continue retaining the asset for criminal forfeiture is essential to preserve the government's power to forfeit the asset civilly.

The 90-day deadline provision in § 983(a)(3) applies only where an asset was the subject of an administrative forfeiture proceeding in which a claim was made. *See* 18 U.S.C. § 981(a)(1)(A). If the seizing agency did not commence an administrative forfeiture proceeding against the asset, then the 90-day deadline and the other requirements of § 983(a)(3) do not apply. Still, even in such cases, if the government pursues only criminal forfeiture of an asset, the government may not lawfully maintain possession of that asset by relying solely on a civil seizure warrant. Rather, in that case, and as noted in Section III.A in this chapter, the government must obtain either a criminal seizure warrant, restraining order, or housekeeping order to be entitled to retain the asset for criminal forfeiture.

### C. Property seized without a warrant

Under 18 U.S.C. § 981(b), property may be seized for civil judicial or administrative forfeiture without a warrant if probable cause exists for the seizure and an exception to the warrant requirement applies. If the seizure satisfies those conditions, the government may maintain physical possession of the property pursuant to the § 981(b) seizure during the pendency of parallel criminal and civil

---

[14] *See* footnote 8 in Sec. III.A in this chapter for cases holding that as to property already in government custody, the government may satisfy 18 U.S.C. § 983(a)(3)(B)(ii)(II) by requesting only a "housekeeping" order under 21 U.S.C. § 853.

judicial or administrative forfeiture proceedings to the same extent it could if the property had been seized with a warrant. However, as described above, if the related civil judicial or administrative forfeiture is terminated or not filed within the statutory deadline, the government will have to maintain physical possession pursuant to a criminal seizure warrant, pretrial restraining order, housekeeping order, or as evidence.

### D.  Property seized for evidence

The seizure of property for evidence in a criminal case provides an independent basis for the continued physical possession of property during the pendency of a criminal forfeiture proceeding while the evidentiary value of the property persists.[15]  Thus, if property is seized for evidence, it may be named in a criminal forfeiture proceeding and held by the government without the need to obtain a criminal seizure warrant or pretrial restraining order.[16]  Once the property loses its evidentiary value, however, the government must obtain a seizure warrant or restraining order to maintain custody of the property for forfeiture.  If a court has entered a preliminary order of forfeiture, however, the government can rely on the preliminary order of forfeiture to continue to hold the property, without obtaining a seizure warrant or restraining order.

The USMS does not store property held as evidence, even when it is subject to forfeiture.  The seizing agency retains custody until the property is no longer needed for evidence.

## IV.  Proper Use of Writs of Entry in Civil and Criminal Forfeiture Proceedings

A district court has the authority pursuant to 18 U.S.C. § 983(j)(1)[17] and 21 U.S.C. § 853(e)(1)[18] to take any action necessary to preserve the availability of property subject to forfeiture.  Accordingly, the government may apply for a writ of entry in any civil or criminal forfeiture proceeding to preserve the availability of property subject to forfeiture, and the district court has the authority to issue such a writ for that purpose.

---

[15]  However, a warrantless seizure justified on the ground of exigent circumstances may not remain valid once the exigency has passed.  *See United States v. Cosme*, 796 F.3d 226, 235 (2d Cir. 2015) ("the exigent circumstances exception only permits a seizure to continue for as long as reasonably necessary to secure a warrant"; invalidating under the Fourth Amendment the continued government custody of funds without a warrant two years after the funds were seized from bank accounts without a warrant on the grounds of exigent circumstances).

[16]  For a discussion of policies and procedures relating to seized cash management and cash retained for evidence, *see* Sec. VII in this chapter.

[17]  18 U.S.C. § 983(j)(1) provides that, "Upon application of the United States, the court may enter a restraining order or injunction, require the execution of satisfactory performance bonds, create receiverships, appoint conservators, custodians, appraisers, accountants, or trustees, or take any other action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture."

[18]  21 U.S.C. § 853(e)(1), a criminal forfeiture statute located in the drug code, provides that, "Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property [subject to criminal forfeiture] under this section." Section 853 applies to the general criminal forfeiture statute found in Title 18 pursuant to 18 U.S.C. § 982(b)(2).

In both civil and criminal proceeding in which a final order has not been obtained, the government may use writs of entry issued by the court and based upon a finding of probable cause to enter:

- onto the curtilage of private real property to inventory structures located thereon without entering those structures;

- onto private real property for the purpose of seizing personal property located thereon (such as an automobile) in plain view; or

- the interior of a private struct ure subject to forfeiture to conduct an inventory limited to documenting the condition of the interior and inspecting for damage, and to conduct an appraisal.

*See* 18 U.S.C. § 985(b)(2).  When seeking a writ of entry, the application should include a detailed agent affidavit setting forth the facts supporting a conclusion that the government has probable cause to believe that (1) the property being searched for, seized, or inventoried is subject to forfeiture and (2) the property is located at or in the place to be searched.

The "filing of a *lis pendens* and the execution of a writ of entry for the purpose of conducting an inspection and inventory of the property" does not constitute a seizure under the statute authorizing civil forfeiture of real property.  *See* 18 U.S.C. § 985(b)(2).

## V.   Seizure of Financial Instruments and Cryptocurrency

### A.  Certificates of deposit

A Certificate of Deposit (CD) is a savings deposit certificate with a fixed maturity date and a specified fixed interest rate.  Essentially, a CD is a promissory note from the issuer to repay the deposited funds plus interest at a future maturity date.  CDs are usually issued by commercial banks, mature in as little as a month or as long as 10 years or more, and range in denominations from $1,000 to "jumbo" CDs over $100,000.  If a CD is issued by a qualifying financial institution, the principal amount is insured by the Federal Deposit Insurance Corporation (FDIC) and the National Credit Union Administration (NCUA) for up to $250,000 per person per account.  Interest may be paid at regular intervals or all at once at maturity.  Higher interest is available for larger deposits or longer maturity dates.  A penalty usually applies for early withdrawal of the funds, but no-penalty CDs are available at an extremely low interest rate.  Because there are no licensing or registration requirements, brokerage firms and independent salespersons may issue CDs, which may or may not be FDIC or NCUA-insured.

Particularly because CDs are so variable, the seizing agency should immediately notify the issuer of the CD that it has been seized or restrained for forfeiture.  The agency should instruct the issuer to take the steps necessary to freeze the principal and accrued interest covered by the CD so it will be negotiable by the USMS after forfeiture.  Most CDs issued today are not evidenced by a paper certificate; they are simply an electronic bookkeeping entry.

The USMS will take appropriate action, in accordance with established procedures, to liquidate the CDs after forfeiture.

Chapter 2: Seizure and Restraint

## B. Cryptocurrency

Cryptocurrency is a form of virtual currency that uses cryptography to secure and authenticate transactions and to manage and control the creation of new currency units. Generally, cryptocurrency is not issued by any government, bank, or company but instead generated and controlled through computer software operating on a decentralized peer-to-peer network. Most cryptocurrencies have a blockchain, a decentralized (typically public) transaction ledger containing an immutable and historical record of every transaction involving the cryptocurrency. Using open source or subscription analytical tools, cryptocurrency transactions can often be traced in their blockchains. However, some cryptocurrencies known as anonymity-enhanced cryptocurrencies (AECs) operate on blockchains that are not transparent or have built in privacy protocols designed to conceal transactional information, making it difficult to trace or attribute transactions. AECs are also commonly referred to as privacy coins.

Financial Crimes Enforcement Network (FinCEN) Guidance issued on March 18, 2013 (FIN-2013-G001),[19] and May 9, 2019 (FIN-2019-G001),[20] states that convertible virtual currency administrators and exchangers, including kiosk operators and individual exchangers operating as a business, are regulated as money services businesses (MSBs).[21]

Cryptocurrency is associated with a type of storage account called a wallet. A wallet is a software program that interfaces with the blockchain and generates and stores public and private keys used to send and receive cryptocurrency.

Each seizing agency must have an agency-controlled, unhosted wallet for temporary storage of seized cryptocurrency prior to the transfer of custody to the USMS or USMS contractor. Depending on the types of cryptocurrency seized, law enforcement agencies typically set up one or more wallets for each seizure. After seizing cryptocurrency, processing the seized cryptocurrency through the seizing agency's asset forfeiture department, and assigning a CATS identification number, the seizing agency may then transfer the cryptocurrency for pre-forfeiture storage according to current USMS Complex Assets Unit (CAU) procedures.

As there are thousands of types of cryptocurrencies, prior to seizing cryptocurrency assets, prosecutors and agents should consult with the USMS to determine if targeted cryptocurrency can be stored and liquidated by the USMS or USMS contractor. If a cryptocurrency type has been seized but cannot be stored or liquidated by the USMS, USMS may not be able to process the asset. After seizing AECs, law enforcement should store them in the agency's unhosted wallets until further notice from the USMS.

Unless a seizing agency has obtained authorization through a search warrant or consent by the owner, the seizing agency should obtain a seizure warrant for the seizure of cryptocurrency.[22] In the case of cryptocurrency held in a locally stored wallet in the United States, the seizing agency should obtain a

---

[19] FIN-2013-G001: Application of FinCEN's Regulations to Person Administering, Exchanging, or Using Virtual Currencies (Mar. 18, 2013).

[20] FIN-2019-G001: Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies (May 9, 2019).

[21] *See* FIN-2013-G001 and FIN-2019-G001.

[22] In many cases, the seizure of cryptocurrency associated with a locally stored wallet may be authorized by a Federal Rule of Criminal Procedure 41 search and seizure warrant issued for a premises or electronic device where a wallet and private keys are located.

seizure warrant for that cryptocurrency possessed and controlled by the owner and serve the warrant on the owner or the owner's counsel.  In the case of cryptocurrency held in an account or wallet hosted by a U.S.-based service provider, such as an institutional exchange, the seizing agency should obtain and serve a seizure warrant on the service provider, similar to executing a seizure warrant on a bank account.

Many cryptocurrency service providers are located outside the United States.  Prosecutors should consult the Office of International Affairs (OIA) regarding seizure of cryptocurrency from foreign service providers, such as institutional exchanges, even in cases where a wallet company does not itself have access to or control of the private key.  Generally, seizures from foreign-located service providers will require use of a mutual legal assistance (MLA) treaty request or other similar authority. *See* Chapter 8 in this *Manual* for a discussion of policies relating to international seizures and forfeitures.  Some exchanges located outside the United States might have U.S. offices or points of contact and will accept service of U.S. seizure warrants; however, prosecutors and agents should seek the voluntary restraint of foreign-located assets only through U.S. points of contact.  Prosecutors should not agree to accept any cryptocurrency from a foreign-located company without an MLA request or permission from OIA, even if the company offers to transfer the assets voluntarily.  Doing so without an MLA request or permission from OIA could violate the sovereignty of another country. Contact the Money Laundering and Asset Recovery Section (MLARS) for examples of warrants for cryptocurrency.

Prosecutors and agents should be aware that there may be multiple copies of a private key for a particular cryptocurrency asset.  Thus, once the government obtains authorization to seize cryptocurrency, the seizing agency should immediately transfer it to an agency-controlled, unhosted wallet so that others who have copies of the private key cannot transfer the asset.  This will not only preserve the cryptocurrency for forfeiture but also will preserve the jurisdiction of the court in a civil forfeiture case because *in rem* jurisdiction is premised upon the court's control of the asset.  Seizing agencies should hold all seized cryptocurrency in cold storage (*i.e.*, in a secure offline device) until the agencies transfer it to a USMS or USMS contractor-controlled wallet, per current USMS procedures.

If the seizing agency has difficulty accessing the cryptocurrency for seizure, it should work with the owner or contact the Computer Crime and Intellectual Property Section (CCIPS) for assistance.

Cryptocurrency should be kept in the form it was seized and not liquidated (*i.e.*, converted to fiat currency or other cryptocurrency) until a final order of forfeiture is entered or an administrative forfeiture is final.  Premature conversion poses certain risks, including fluctuation in the value of the cryptocurrency, and the government would be responsible for making the owner whole (including any price fluctuation), should the seized cryptocurrency ultimately be returned to the owner.

In the limited situations where an interlocutory sale or pretrial conversion may be appropriate, prosecutors and agents must consult with MLARS before seeking an order for interlocutory sale.  An order for the interlocutory sale of cryptocurrency must be sought at the request of, or with the consent of, all parties with an ownership interest in the asset, or in certain cases involving victims who suffered pecuniary losses.

Prosecutors should contact MLARS or USMS headquarters Asset Forfeiture Division (AFD) for guidance regarding disposition of AECs.  MLARS must approve any request to sell AECs or to place them into official use.

Any liquidation of cryptocurrency should be executed according to established written policies of the seizing agency and the USMS. Prosecutors or agencies may contact MLARS or USMS AFD for guidance regarding disposition of any cryptocurrencies.

### C. Employee Retirement Income Security Act (ERISA) accounts

Defendants frequently hold retirement accounts that may be subject to forfeiture, either directly or as substitute assets. However, prosecutors should be aware that there may be legal limitations on the forfeiture of retirement accounts. Certain employee pension benefit or deferred compensation plans are governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 *et seq*. The statute limits the assignment or sale of certain pension plans. *See* 29 U.S.C. § 1056(d)(1). Some courts have held that ERISA's anti-alienation provision precludes forfeiture of funds in ERISA-protected retirement plans. *See United States v. Funds ex rel. Weiss*, 345 F.3d 49, 56–57 (2d Cir. 2003) (ERISA anti-alienation provision bars forfeiture of funds while they are held in a valid ERISA-protected pension plan). Prosecutors should be familiar with the caselaw in their own districts and circuits.

Although in certain circuits there exists a limitation on forfeiting funds in ERISA-protected pension plans, ERISA does not bar the garnishment of funds in ERISA-protected retirement plans for restitution. *See United States v. Sheth*, 759 F.3d 711 (7th Cir. 2014) ("We have recognized that the Mandatory Victims Restitution Act (MVRA) supersedes anti-alienation provisions so that retirement accounts may be used as a source of funds to provide restitution" (cleaned up)); *United States v. DeCay*, 620 F.3d 534, 541 (5th Cir. 2010) (notwithstanding its anti-alienation provision, 29 U.S.C. § 1056(d)(1), ERISA retirement accounts are subject to MVRA restitution awards). Accordingly, forfeiture prosecutors should consult closely with their financial litigation counterparts whenever the government is considering pursuing ERISA-protected assets.

### D. Interest On Lawyer Trust Accounts (IOLTA)

Most states require attorneys to maintain client funds in a client trust account (CTA). CTAs frequently hold funds clients pay up-front as an advance on fees and expenses before legal work is commenced. These accounts also frequently contain other client funds, such as funds received from legal settlements. All states have Interest On Lawyer Trust Accounts (IOLTA), a form of CTA, programs. IOLTAs are mandatory in some states and voluntary in others. Whether mandatory or voluntary, the IOLTA mechanism pools funds that could not otherwise earn interest for individual clients, and the interest on the pooled funds is payable to a state-sponsored IOLTA program. IOLTA programs in turn use the funds to finance charitable and educational endeavors, improvements to the administration of justice, and to provide indigent and low-income persons with legal services.

CTA or IOLTA accounts may contain client funds that are subject to forfeiture, including funds transferred by a client relating to legal services to be performed and other funds. Funds residing in a CTA or IOLTA account are not attorneys' fees because they have not been earned by the performance of legal work; they represent funds held in an account available to bill against for future legal services. Therefore, funds residing in a CTA or IOLTA account may be seized without prior approval from MLARS. However, specific Department policy applies to the forfeiture of earned attorneys' fees.[23] This policy does not limit the seizure and forfeiture of client funds held in CTA or IOLTA

---

[23] *See* Chap. 12, Sec. IV in this *Manual; Justice Manual* (JM) § 9-120.000 *et seq*.

accounts that are unrelated to the provision of legal services. However, CTA or IOLTA accounts often contain commingled funds of numerous clients. Consequently, prosecutors should ensure that only forfeitable funds in CTA or IOLTA accounts that are subject to forfeiture are seized or restrained, not other untainted funds unrelated to the target that are commingled in the CTA or IOLTA account. To avoid the seizure of untainted third party funds, prosecutors should not rely on the fungible property statute, 18 U.S.C. § 984, when seizing funds from CTA or IOLTA accounts.

### E.  Life insurance

The value to be realized from the seizure or restraint of a life insurance policy depends on the type of insurance policy at issue and its level of maturity. Thus, before seizing or restraining a life insurance policy for forfeiture, prosecutors and seizing agencies must identify the type of insurance policy at issue.

There are generally two types of life insurance—term life insurance and cash-value or permanent life insurance. Term life insurance is referred to as basic life insurance. Term insurance provides coverage for a specific period of time and pays a lump sum upon the death of the policyholder. Once the term ends, coverage under this policy ends. It does not include a cash value that can be used in the future. However, some term insurance policies include an option to convert to a cash-value policy.

Cash-value life insurance is considered a form of permanent life insurance that pays out upon the policyholder's death but accumulates wealth during the policyholder's lifetime. The policyholder can use the cash value as a tax-sheltered investment or as a fund from which to borrow and as a means to pay policy premiums later in life, or the policyholder can pass it to their heirs. The cash-value account earns a modest rate of interest that accumulates tax-free. Over time, the cash-value account grows, which reduces the mortality risk of the life insurer. Upon the death of the insured, the insurer is only obligated to pay the death benefit, not the cash value, which it retains. Whole life, variable life, and universal life are all types of cash-value life insurance. Coverage under these policies stays in effect as long as the premiums are paid.

The cash value to be realized from the seizure or restraint of a life insurance policy depends upon the type of insurance policy at issue and its level of maturity. The account value of a life insurance policy that builds cash value is the amount that the investment portion of the policy is worth. The investment portion of the policy is paid out of the premiums paid by the insured. Some cash-value life insurance policies levy a surrender charge if cashed in before a certain length of time. Surrender charges generally become lower the longer the insured owns the life insurance policy. With most policies the surrender charges eventually disappear, and the account value and surrender value of the policy become the same.

The face value of the policy is the death benefit that it provides upon the insured's death. This is the minimum that the beneficiary would receive from the policy, as long as there is not an outstanding loan against a cash-value policy. Some policies, typically universal life policies, pay more than the face value if the insured dies and the investments have gained in value. The policy might pay the cash value of the policy in addition to the face value.

Because there may be tax and other legal implications for early withdrawal, to preserve the value of the policy, it may be more appropriate for prosecutors to seek a restraining order, rather than a seizure warrant, for the funds.

To maximize the value of the policy at issue, prosecutors should:

(1)  identify the type of insurance policy at issue;

(2)  identify the maturity date of the policy;

(3)  identify the value of the policy to be seized or restrained.  Prosecutors may be able to obtain this information from various sources, including the attorney or fraud investigator for the insurance company;

(4)  if seeking a restraining order, make sure that the order directs the insurance company to:

    (a)  maintain investments as they were as of the date of restraint, in the case of a restraining order; and

    (b)  change the beneficiary of the policy to the government.

(5)  if seeking a seizure warrant, make sure that the warrant directs the insurance company to pay the requested value as set forth in the warrant;

(6)  serve the restraining order or seizure warrant on the insurance company or appropriate financial institution; and

(7)  provide a copy of the restraining order or seizure warrant to the USMS at the time the funds are transferred to government custody.

The USMS will take appropriate action, in accordance with established procedures, to liquidate the life insurance policy after forfeiture.

### F.  Money orders

The U.S. Postal Service (USPS) is the largest issuer of money orders.  Other non-USPS private MSBs and financial institutions issue their own money orders either through thousands of agents or through their own branches.

The USPS sets a maximum purchase value of $1,000 for each domestic money order and $700 for most international money orders, except for El Salvador and Guyana, for which the maximum purchase value is $500.  Other issuers set maximum purchase values of $500 to $1,000 for their money orders.  Purchasers may use cash, debit cards, or travelers' checks to purchase most money orders.  Because purchasers frequently use cash to buy money orders, criminals often misuse money orders as part of laundering schemes or to move illicit proceeds obtained from any number of criminal activities.

A buyer of a money order usually receives a receipt that includes the money order's serial number.  Tracking a money order generally requires the serial number; without a receipt or serial number, tracking can be difficult, if not impossible.  The USPS offers USPS online Money Order Inquiry System (MOIS), an online money order inquiry service that allows purchasers to input the money order serial number and receive an update on its status.  To track any other type of money order, issuers usually require the inquirer to complete a tracking form and pay additional fees to determine whether a money order already has been cashed.

Seizing a money order as evidence or for forfeiture does not necessarily seize the funds held on deposit by the issuer to satisfy payment of the money order. Because the purchaser may obtain a refund of the purchase funds by reporting money orders stolen, lost, or accidentally destroyed, physical possession of the money order is not required to dispose of the funds associated with it. Therefore, in most instances, prosecutors should obtain a criminal or civil seizure warrant or criminal restraining order that authorizes seizure or restraint of the money orders themselves, as well as an order that authorizes seizure or restraint of the total amount of funds held by the issuer necessary to satisfy the money orders.

For USPS money orders, investigating agents or prosecutors may verify or track a money order several ways:

- by checking the USPS online MOIS by selecting the "6401 Inquiry" option and entering the serial numbers to determine whether the payees already may have redeemed them;

- by calling the USPS automated money order verification system at 1-866-459-7822; or

- by emailing the USPS accounting help desk, making sure to include a contact name and other contact information along with the money order amounts, serial numbers, and any other information requested, such as payment date or whether the money order has been reported lost or stolen.

Immediately following seizure, the seizing agency should send a request to hold the money orders seized to the following address:

U.S. Postal Inspection Service
Criminal Investigations Group
National Money Order Coordinator
475 L'Enfant Plaza SW, Room 3800
Washington, DC 20260-3800

The request must be submitted on agency letterhead and include:

(1) the reason for the request;

(2) the case number and seizure number;

(3) statutory authority for seizure and possession; and

(4) a money order list by serial number, issue office, and monetary value.

Originals or copies of money orders are not required. Upon receipt of this information, the U.S. Postal Inspection Service (USPIS) will flag the respective money orders to place them "on hold," pending further instructions. The timing of the issuance of a hold on the money orders is critical, as they can be replaced very quickly by the purchaser. Accordingly, the seizing agency should submit its written request as soon as possible. The seizing agency should also provide the USMS with a copy of this letter at the time the money orders are transferred to the USMS for custody. If further assistance is needed, contact the local office of the USPIS.

Immediately after seizing non-USPS-issued money orders, the seizing agency should send correspondence to the money order issuer that includes the same information as for USPS money

orders and advise the issuer to place a hold on payment of the money orders pending further instructions.

When seeking a judicial order of forfeiture[24] for money orders and the funds held on deposit to satisfy them, prosecutors should:

- forfeit the seized money orders as well as the funds held by the issuer on deposit for payment of the money orders; and

- authorize the USMS to take possession of the funds held by the issuer on deposit to satisfy the money orders.

The USMS will take appropriate action, in accordance with established procedures, to liquidate the money orders after forfeiture.

### G.  Personal, certified, and cashier's checks

A personal check is a check drawn on the personal account of the originator, which could be an individual or entity.  A certified check is a check on which the bank has certified that the account holder has sufficient funds to cover the check and the check is drawn against that personal account holder's funds.  A cashier's check is a check issued by the bank itself and sold to a purchaser.  While a personal check or certified check is an obligation of the accountholder, a cashier's check is a direct obligation of a bank.

Following the seizure of any check, the agency should immediately identify the source of funding for the check, investigate that source, and determine whether seizure of funds is appropriate.[25] Different processes for seizure and restraint of funds apply depending on whether agents have seized a personal, certified, or cashier's check.

If the source of funding for a personal or certified check is an account that contains property subject to forfeiture, then the seizing agency, working with the prosecutor, should immediately obtain a seizure warrant, under the applicable criminal or civil forfeiture statute, for the funds in the account; serve the seizure warrant on the financial institution; and advise the USMS of the warrant and seizure of funds, as well as the amounts held in the account that are subject to forfeiture.

---

[24]  For administrative forfeiture, please contact agency counsel for further guidance.

[25]  Agencies should also note the date the check was drawn to avoid a stale dated personal check (*see* U.C.C. § 4-404) or a certified check that may be considered abandoned property under state law.

If a cashier's check was purchased with funds subject to forfeiture, and if the seizing agency and prosecutor determine that the funds that support the check are subject to forfeiture, then the seizing agency, in conjunction with the prosecutor, should immediately:

(1)  obtain a judicial restraining order or seizure warrant, under the applicable criminal or civil forfeiture statute, directing the financial institution upon which the check is drawn to either:

(a) take necessary steps to maintain funds sufficient to cover the check or place a hold on or revoke the check, in the case of a restraining order; or

(b) release funds in the amount of the check, in the case of a seizure warrant;

(2)  serve the restraining order or seizure warrant on the financial institution; and

(3)  provide a copy of the restraining order or seizure warrant to the USMS at the time the check is transferred for custody.

The USMS will accept custody of all checks for which the investigative agency has contacted the bank from which they were drawn.  The agency and USAO should ensure that any final order of forfeiture provides the USMS with authority to take or maintain custody of, deposit, and dispose of the funds that were restrained or seized to cover the check.

## H.  Prepaid access devices

A prepaid access device is a card-based alternative to cash.  It is a stored value card linked to an external account maintained by a financial institution rather than to an account held by the cardholder. The funds are in a pooled account.  A prepaid access device acts as a debit card linked to that pooled account, and the program manager or processor allows the card to access only the amount of funds "loaded" on the device.  The value stored on the device can be accessed either by using the device's magnetic stripe or chip or by entering the device number.

Two categories of prepaid access devices exist.  Closed-loop devices may be used only for the issuer's products or other limited purposes (for example, a device that can be used at a specific retailer, restaurant, or utility provider).  Most closed-loop devices are issued for a fixed amount and cannot be redeemed for cash.[26]  Open-loop devices, in contrast, are more general-purpose cards that can be used to obtain cash, make purchases, or transfer funds.  Open-loop devices are backed by an online electronic system for authorization, and often can be reloaded in person or online and used again. All open-loop devices are branded cards (*e.g.*, Visa, MasterCard, Discover, American Express, JCB, and Union Pay) that allow the user to make purchases or conduct transactions anywhere the brand is accepted.  However, there are also network-branded devices (*e.g.*, public benefits cards or bank Automated Teller Machine (ATM) cards) that are linked to point-of-sale and ATM networks using PIN-based technologies for sales and withdrawals.

An issuing bank is the financial institution that acquires a Bank Identification Number (BIN), or Issuer Identification Number (IIN), on behalf of a prepaid access device program manager, and then

---

[26]  Branded, closed-loop cards also exist.  Examples include cards that can only be used at a particular place, such as a specific mall or university.

"rents" the BIN to the program manager.[27]  Only a financial institution can register a BIN, and it retains ultimate responsibility for use of the BIN.  The issuing bank is a member of a card network for which it has an agreement to issue network branded cards.  The issuing bank maintains cardholder funds that have been added, or loaded, onto the prepaid access device through the use of a "pooled account."  These funds are held on deposit by the issuing bank until the cardholder uses the prepaid access device to make purchases or to transfer or withdraw funds.

A program manager is the company that oversees a prepaid access device program and is responsible for card activation, cardholder verification, account servicing, records processing, establishing relationships with retail partners, and maintaining the relationship with the issuing bank, among other duties.  The program manager, in most cases, also produces and distributes the prepaid access devices.

Prepaid access device processors (issuing processors) are hired by a program manager, issuing bank, retail partner, or merchant to handle all or some program operation components as provided for in the processing contract.  To effectively handle the payment-processing component of any transaction involving a prepaid access device, a processor records transaction information (purchase, transfer, fees, and all other credits or debits to the card), tracks the card balance, and oversees all aspects of card usage, including chargebacks, returns, or payment disputes.  Some processors also take responsibility for managing the card (card issuance, enrollment options, and loading), providing cardholder care (call centers, online account management, statement generation, balance inquiry capabilities, fraud mitigation monitoring, risk mitigation, security, and compliance), and other platform management functions.

The issuing processor differs from the merchant processor.  Merchant processors work on behalf of the merchants accepting branded cards, providing the network to process the transaction through the card association.

A seizure of a prepaid access device does not constitute a seizure of the funds associated with or loaded onto the card because disposition of funds does not require physical possession of the card.  For example, funds associated with a prepaid access device easily can be spent or transferred while law enforcement holds the card as evidence.  Thus, to prevent criminals from spending or transferring funds associated with a particular card, law enforcement must take additional action.

The seizing agency should first examine the card to determine the issuing bank and program manager or processing company.  The seizing agency should then contact the issuing bank to determine the identity of the program manager.  In some instances, the issuing bank is also the program manager, and will be able to provide all necessary balance and card information.  If the card has been re-encoded with other account information, however, the seizing agency will want to contact the issuing bank associated with the re-encoded information.

The seizing agency must determine whether the issuer, program manager, or processor can put a hold on the funds associated with the prepaid access device so that the funds are not spent or transferred while the seizing agency obtains and serves a warrant or restraining order.  The issuer, program manager, or processor may do this automatically as a risk management function upon contact by law enforcement and may request written documentation for its file.

---

[27]  The BIN or IIN, is the first 6 digits of a bank card number or payment card number and is part of ISO/IEC 7812, a standardized global numbering scheme used for the purpose of identifying institutions who assign unique account numbers to their customers, including for the issuance of payment cards.  The Registration Authority for banks and other issuers is the American Banking Association (ABA), which maintains a complete listing of IINs/BINs.

Unless the owner consents, the government should obtain a seizure warrant or restraining order for the seizure of all funds associated with seized prepaid access devices to ensure the funds' availability for forfeiture. Seizure of the card itself neither deprives the owner of control over the funds associated with the seized prepaid access device nor authorizes the government to take possession of the funds.

The government should issue a grand jury or a Federal Rule of Civil Procedure 45 subpoena to the program manager or processor for all customer account records, any customer interactive voice response account records, customer web log information reports, customer deposit information for account reports, customer account history reports, and any internal customer, anti-money laundering, or Bank Secrecy Act (BSA) compliance documentation related to the customer or account activity.

The USMS will take appropriate action, in accordance with established procedures, to liquidate the prepaid access device after forfeiture.

## I.    Securities

A security is a negotiable financial instrument that represents some type of financial value, such as an equity interest in a publicly traded corporation (stock), a debt security used by a governmental body or a corporation to borrow money (bond), or rights to ownership as represented by an option. The company or entity that issues the security is known as the issuer.

As a general rule, the USMS will accept custody of all stocks and bonds for which the seizing agency can document a significant worth. The seizing agency should consult with the USMS CAU before seizing any stocks or bonds with questionable value. As a best practice, the USMS will coordinate with the USAO to try to liquidate stocks and bonds through interlocutory sale whenever possible.

For publicly traded securities, the seizing agency should contact a state- and national-certified stockbroker immediately following seizure or restraint to establish the fair market value of the asset and the manner of trading. If the instrument has an insignificant or minimal value, it should not be seized or restrained.

For non-publicly traded securities, including stock of a privately held company, the seizing agency should contact the USMS CAU.[28] The stocks and bonds of closely held corporations can present unique issues caused by illiquidity and lack of information. Closely held financial instruments that have been determined to have an insignificant or minimal value should not be seized or retained because the USMS will not take custody of them. If law enforcement seizes closely held securities with significant worth, the seizing agency must expeditiously seek a viable plan for liquidation in consultation with the AUSA and the USMS.

Securities that are held in a brokerage account usually will be seized or restrained in place. Any restraining order may provide that the assets in the account will continue to be invested as they were on the date of restraint, unless modified by court order. Upon receipt of an interlocutory order or final order of forfeiture, or a declaration of administrative forfeiture, the USMS will instruct the broker to liquidate the account. The net proceeds after commission are deposited in the Seized Asset Deposit Fund (SADF) or the Assets Forfeiture Fund (AFF). Pursuant to court order, brokerage accounts may be held in a different manner to preserve the value of the account.

---

[28] To the extent possible, the seizing agency should establish the value of all closely held financial instruments prior to seizure. If the determination cannot be made prior to seizure, it should be made as expeditiously as possible subsequent to seizure.

Whether the forfeited securities were held in a brokerage account or not, upon entry of an interlocutory sale order or a final order of forfeiture, the seizing agency or the prosecutor must immediately consult the USMS to effect the liquidation of the securities, and the deposit of proceeds (less broker or transfer agent commission) into the SADF or the AFF. If closely held financial instruments were not liquidated prior to forfeiture, prosecutors must consult with the USMS CAU to ensure expeditious liquidation.

### J. Travelers' checks

Because traveler's checks may be used to conceal or convert criminal proceeds, agents and prosecutors may encounter them during investigations. If agents locate older travelers' checks during an investigation, they may still be redeemable for forfeiture even if the original issuer no longer offers travelers' checks for sale. Certain companies will honor their no-longer-issued travelers' checks.

Seizing a traveler's check as evidence or for forfeiture does not necessarily seize the funds held on deposit by the issuer to satisfy payment of the traveler's check. Because the purchaser may obtain a refund of the purchase funds by reporting a traveler's check or a series of travelers' checks stolen, lost, or accidentally destroyed, physical possession of the traveler's check is not required to dispose of the funds associated with it. In most instances, prosecutors should obtain a criminal or civil seizure warrant or criminal restraining order that authorizes seizure or restraint of the travelers' checks themselves, as well as an order that authorizes seizure or restraint of the total amount of funds held by the issuer necessary to satisfy the travelers' checks.

Upon seizing travelers' checks, the seizing agency should immediately identify and contact the issuer responsible for their payment to determine the checks' authenticity and validity. The seizing agency should also notify the issuer that law enforcement has seized the checks for forfeiture and should determine the required procedures for redemption. If the checks can be redeemed before resolution of the forfeiture case, the seizing agency should ask the issuer to liquidate and redeem them to allow the funds to be held by the USMS pending conclusion of the forfeiture case.

If the travelers' checks cannot be redeemed until after forfeiture, the checks should be turned over to the USMS with verification that the issuing company has been notified of the forfeiture action. If necessary, the prosecutor may need to seek a restraining order to prevent the issuer from dissipating the funds held for redeeming the travelers' checks during the pendency of the forfeiture action.

In seeking a judicial order of forfeiture[29] of travelers' checks and the funds held on deposit to satisfy them, the prosecutor should request that the district court:

- forfeit the seized travelers' checks and the funds held by the issuer on deposit for their redemption; and

- authorize the USMS to take possession of the funds held by the issuer on deposit to satisfy the travelers' checks.

The USMS will take appropriate action, in accordance with established procedures, to liquidate the travelers' checks after forfeiture.

---

[29] For administrative forfeiture, please contact agency counsel for further guidance.

### K.  U.S. savings bonds

U.S. savings bonds are debt securities issued by the Department of the Treasury (Treasury).  Treasury and virtually all financial institutions sold paper bonds until 2012, when paper bonds were abolished, and financial institutions stopped selling them.  Today, savings bonds may be bought and redeemed only via TreasuryDirect accounts online,[30] and they are issued only in electronic, book-entry form.

Immediately following seizure of U.S. savings bonds, the seizing agency should notify Treasury by certified letter, listing

(1)  serial numbers,

(2)  bond denominations,

(3)  to whom payable, and

(4)  the reason for which they were seized.

The seizing agency should send this information to:

Treasury Retail Securities Site
P.O. Box 214
Minneapolis, MN 55480-0214

Savbond@bpd.treas.gov

Phone: 1-844-284-2676 (toll free)

The seizing agency should provide the USMS with a copy of this letter at the time the savings bonds are transferred for custody.  If the seizing agency fails to provide this notice, it could result in the bond(s) being valueless at the time of forfeiture.

The USMS will accept custody of all savings bonds, maintain them until forfeiture, and dispose of them in accordance with established procedures.

## VI.  Seizure of Operating Businesses

It is typically difficult in the early stages of an investigation to collect all information necessary to make an informed decision about whether an operating business should be forfeited as part of the underlying criminal investigation.  Therefore, in almost all cases, MLARS and the USMS recommend that the USAO file a restraining order or protective order that allows normal operations to continue under the review and monitoring of the USMS, and concurrently allows the USMS on-site access to the business to inspect the premises, review financial records, and interview employees.

Protective orders and restraining orders should authorize the USMS to use internal resources to monitor and oversee operations of the business for a period of time so as to best formulate a recommendation on whether seizure and forfeiture of the business is advisable.[31]  The authority granted to the USMS under a restraining or protective order must *not* include—in fact, must expressly exclude—taking over the management responsibilities for operation of the business, at least during

---

[30]  *See* TreasuryDirect.

[31]  In rare cases, a court-appointed trustee or monitor may be required.  *See* Chap. 9 in this *Manual*.

the assessment period. The USMS will consider this only as an action of last resort. Protective orders should also seek to restrain the owners from further encumbering the business, dissipating its assets, or selling the business except as authorized by court order.

The USAO should be mindful that the phrasing of the restraining order and subsequent forfeiture order might affect the administration, management, and sale of the business. For example, the seizure of an ownership interest may have legal (*e.g.*, business law, labor law, securities law, tax law) and regulatory implications that need to be identified in advance and fully considered.[32] Alternatively, the seizure of all assets of a business might very well cause the operating business to fail, which may affect third parties, even if the business itself is not seized. For example, prosecutors should give thoughtful consideration before seizing a business's operating bank account that may be used to meet the next payroll for its employees, or pay independent entities that provide supplies, materials, or essential services to the business.

The investigative agency should serve a restraining order or protective order over a business on the business itself, the owners, key employees (*e.g.*, executive officers, accounting department), banking institutions holding business' accounts, and any other person or entity that has an interest in the ongoing operations of the business. Ideally, this service should occur simultaneously and in conjunction with execution of any arrest, search, or seizure warrants by the investigative agency as part of the criminal investigation against the business, its principals, or any target conspiring in, aiding, or abetting the criminal activity supporting forfeiture of the business.

The USMS' business review is a time-consuming process that may take 30 days or longer to complete, depending on the availability of records and willingness of the business principals and employees to cooperate in the process. The business review must identify and consider key historic financial data for the business, its current operating environment (including financial activity), and financial projections for the next two years. These projections should include both best- and worst-case scenarios for the business operations as well as "exit strategies" should conditions change for the worse. If the business is likely to lose money or to be sold at a loss, the business plan should include plans to mitigate such losses or liquidate all or parts of the business. Upon review and analysis of the information obtained through the restraining or protective order, the USMS will make an informed recommendation to the USAO as to whether seizure and forfeiture of the business is advisable. The USAO should include the USMS' recommendation in its consultation with MLARS.

During the pendency of a restraining or protective order, the business' existing management personnel will generally remain in place unless a compelling reason warrants otherwise and the USMS is authorized under the restraining order to remove and replace any personnel. In some instances, the business may be forced to shut down temporarily (or even permanently) once key defendants are arrested or indicted. In these instances, and particularly in dealing with a service-oriented industry where a large portion of the business' value consists of goodwill the defendant generates, it may be advisable to limit forfeiture to separable-but-forfeitable assets of the business only. However, if the government fails to complete the forfeiture and the business asset must be returned to the owner, prosecutors should be aware that the government may be subject to substantial liability and adverse legal ramifications for depriving the business of the asset and for any failure to return the asset to the business owner in substantially the same condition in which it was seized. The practice of monitoring an operating business pursuant to a restraining order should help to mitigate this risk.

---

[32] Also, absent a veil piercing or straw-owner argument, the owners of a business entity that is legally distinct from the owners do not own the assets of that entity.

## VII.  Seized Cash Management

Seized cash must be deposited promptly in the Seized Asset Deposit Fund (SADF) pending forfeiture.[33]

This policy applies to all cash seized for purposes of forfeiture.[34]  Therefore, all seized currency subject to criminal or civil forfeiture must be delivered to the USMS for deposit in the SADF either within 60 days after seizure or within 10 days after indictment, whichever occurs first.[35]  Photographs or videotapes of the seized cash should be taken for use in court as evidence.

Exceptions to this policy, including extensions of applicable time limits for deposit in the SADF, may be granted only in limited circumstances.  Retention of currency will be permitted only when it serves a significant independent, tangible, evidentiary purpose due to, for example, the presence of fingerprints, packaging in an incriminating fashion, or a traceable amount of narcotic residue on the bills.[36]  If only a portion of the seized cash has evidentiary value, only that portion with evidentiary value should be retained.  The balance should be deposited in accordance with Department policy.

If the USAO seeks to retain less than $5,000 of seized cash for evidentiary purposes, then a supervisory official within the USAO must approve the continued retention of the currency.  If the USAO seeks to retain $5,000 or more in seized cash, a supervisor within the USAO must send the request to MLARS, and the Chief of MLARS must grant written approval of the request.[37]  The request should include a brief statement of the factors warranting its retention and the name, position, and phone number of the individual to contact regarding the request.  Contact MLARS for further guidance on the form of submission.[38]

## VIII. Using Asset Forfeiture Authorities in Connection with Structuring Offenses

31 U.S.C. § 5324(a) prohibits evasion of certain currency transaction reporting and record-keeping requirements, including structuring schemes.  Structuring occurs when, instead of conducting a single transaction in currency in an amount that would require a report to be filed or record made by a domestic financial institution, the violator conducts a series of currency transactions, keeping each individual transaction at an amount below applicable thresholds to evade reporting or recording.

The Department must appropriately and effectively allocate its limited investigative resources to address the most serious structuring offenses, consistent with Departmental priorities.  The guidance

---

[33] 28 C.F.R. § 8.5(b).

[34] This policy does not apply to the recovery of buy money advanced from appropriated funds.  Cash seizures made by Treasury Forfeiture Fund (TFF) member agencies are governed by similar policy contained in Treasury Executive Office for Asset Forfeiture (TEOAF) Directive No. 4: Seized Cash Management.

[35] To the extent practical, negotiable instruments and foreign currency should be converted and deposited.

[36] When practicable and consistent with law and policy, law enforcement is encouraged to, before depositing the entirety of the seized currency, test and retain samples of seized currency suspected to be proceeds of, or currency used to facilitate, narcotics trafficking, and retain documentation of all test results.

[37] The authority to approve exceptions to the Department's cash management policy requiring that all seized cash, except where it is to be used as evidence, is to be deposited promptly into the SADF was delegated by the Assistant Attorney General, Criminal Division (AAG), to the Chief of MLARS on December 13, 1991.  Requests for an exemption should be filed by the USAO or Criminal Division section responsible for prosecuting, or reviewing for prosecution, a particular case.

[38] The criteria and procedure for obtaining exemptions remains the same for cash retained by other agencies participating in the Program.

below applies to all federal seizures for civil or criminal forfeiture based on a violation of the structuring statute, except those occurring after an indictment or other criminal charging instrument has been filed.[39]

### A.  Link to prior or anticipated criminal activity

If no criminal charge has been filed and a prosecutor has not obtained the approval identified below, a prosecutor shall not move to seize structured funds unless there is probable cause that the structured funds were generated by unlawful activity or that the structured funds were intended for use in, or to conceal or promote, ongoing or anticipated unlawful activity.  For these purposes, "unlawful activity" includes instances in which the investigation revealed no known legitimate source for the funds being structured.  Also, for these purposes, the term "anticipated unlawful activity" does not include future Title 26 offenses.  The basis for linking the structured funds to additional unlawful activity must receive appropriate supervisory approval and be memorialized in the prosecutor's records.[40]

Where the requirements of the above paragraph are not satisfied, unless criminal charges are filed, a warrant to seize structured funds may be sought from the court only upon approval from an appropriate official.[41]

- AUSAs must obtain approval from their respective U.S. Attorney.  The U.S. Attorney may not delegate this approval authority.[42]

- Criminal Division trial attorneys or other Department components not partnering with a USAO must obtain approval from the Chief of MLARS.  The Chief of MLARS may not delegate this approval authority.

The U.S. Attorney or the Chief of MLARS may grant approval if there is a compelling law enforcement reason to seek a warrant, such as: serial evasion of the reporting or record keeping requirements; the causing of domestic financial institutions to file false or incomplete reports; and violations committed, or aided and abetted, by persons who are owners, officers, directors, or employees of domestic financial institutions.

If the U.S. Attorney or the Chief of MLARS approves the warrant, the prosecutor must send a completed "Structuring Warrant Notification Form" to MLARS.  Contact MLARS for additional guidance on submitting the form.

### B.  No intent to structure

There may be instances in which a prosecutor properly obtains a seizure warrant but subsequently determines that there is insufficient admissible evidence to prevail at either civil or criminal trial for

---

[39] These guidelines apply to all structuring activity whether it constitutes "imperfect structuring" chargeable under 31 U.S.C. § 5324(a)(1), or "perfect structuring" chargeable under § 5324(a)(3).

[40] In order to avoid prematurely revealing the existence of the investigation of the additional unlawful activity to the investigation's targets, there is no requirement that the evidence linking the structured funds to the additional unlawful activity be memorialized in the seizure warrant application.

[41] These requirements are effective as of March 31, 2015.  For any case in which seizure was effected prior to this date, the forfeiture may continue so long as it otherwise comports with all other applicable law and Department policy.

[42] Although this authority is ordinarily non-delegable, if the U.S. Attorney is recused from a matter or absent from the office, the U.S. Attorney may designate an Acting U.S. Attorney to exercise this authority, in the manner prescribed by regulation.  *See* 28 C.F.R. § 0.137.

violations of the structuring statute or another federal crime for which forfeiture of the seized assets is authorized. In such cases, within seven (7) days of reaching this conclusion, the prosecutor must direct the seizing agency to return the full amount of the seized money. Once directed, the seizing agency will promptly initiate the process to return the seized funds.

### C.  150-day deadline

Within 150 days of seizure solely based on structuring, if a prosecutor has not obtained the approval discussed below, a prosecutor must either file a criminal indictment or a civil complaint against the asset.[43] The criminal charge or civil complaint can be based on an offense other than structuring. If no criminal charge or civil complaint is filed within 150 days of seizure, then the prosecutor must direct the seizing agency to return the full amount of the seized money to the person from whom it was seized by no later than the close of the 150-day period. Once directed, the seizing agency will promptly initiate the process to return the seized funds.

With the written consent of the claimant, the prosecutor can extend the 150-day deadline by 60 days. Further extensions, even with consent of the claimant, are not allowed, except in the following circumstances:

- AUSAs must obtain approval from their respective U.S. Attorney. The U.S. Attorney may not delegate this approval authority, except as discussed in footnote 42 in Section VIII.A in this chapter.

- Criminal Division trial attorneys or other Department components not partnering with a USAO must obtain approval from the Chief of MLARS. The Chief of MLARS may not delegate this approval authority.

If additional evidence becomes available after the seized money has been returned, prosecutors may still file an indictment or complaint.

### D.  Settlement

Settlements to forfeit or return a portion of any funds involved in a structuring investigation, civil action, or prosecution must comply with the requirements set forth in Chapter 11 in this *Manual*. In addition, settlements must be in writing, include all material terms, and be signed by a federal prosecutor. Informal settlements, including those negotiated between law enforcement and private parties, are expressly prohibited.

### E.  Internal Revenue Service (IRS) structuring cases

On July 1, 2019, Congress passed the Taxpayer First Act.[44] Section 1201 of the Taxpayer First Act amended 31 U.S.C. § 5317(c) to place conditions on Internal Revenue Service (IRS) seizures with respect to structuring transactions. Specifically, the IRS may seize assets or require the taxpayer to forfeit assets only if the property to be seized came from an illegal source, or if the transactions were structured to conceal illegal activities beyond structuring. *See* § 5317(c)(2)(B)(i). The IRS is also required to provide notice within 30 days of the seizure to anyone with an ownership interest in

---

[43] This deadline does not apply to administrative cases governed by the independent time limits specified by the Civil Asset Forfeiture Reform Act of 2000 (CAFRA). *See also* Chap. 5, Sec. III.B.2.a in this *Manual*.

[44] Pub. L. No. 116-25, 133 Stat. 981.

the property. *See* § 5317(c)(2)(B)(ii). If a person with an ownership interest in the property timely requests a hearing, the seized property must be returned unless the court finds probable cause of a structuring violation and probable cause that the seized property was derived from an illegal source or the funds were structured for the purpose of concealing the violation of a criminal law or regulation other than 31 U.S.C. § 5324.

# Chapter 3:
# Seizures by State, Local, and Tribal Law Enforcement

## I.    Forfeitures Follow the Prosecution

Generally, if a criminal prosecution and forfeiture is legally possible in the jurisdiction processing the prosecution, the forfeiture action should follow the criminal prosecution, whether state or federal.  *See* Chapter 5, Section I.B in this *Manual* for a full discussion of this policy.

Under certain circumstances, however, a state, local, or tribal law enforcement agency may seize property under state law, without federal oversight or involvement, and a federal agency later takes the seized property into its custody and uses a federal forfeiture proceeding to forfeit the property.[1] This is known as an "adopted" forfeiture, or an adoption.

## II.    General Adoption Policy

Under Attorney General Order No. 3946-2017: Federal Forfeiture of Property Seized by State and Local Law Enforcement Agencies (July 19, 2017), federal adoption of all types of assets seized lawfully by state, local, or tribal law enforcement under their respective laws is authorized whenever the conduct giving rise to the seizure violates federal law.[2]  The net equity and value thresholds in Chapter 1 in this *Manual* continue to apply.[3]  Agencies and components should prioritize the adoption of assets that will advance the Department of Justice's (Department) prosecution priorities.  Please consult the Department of the Treasury (Treasury) for procedures regarding adoptions by federal agencies participating in the Treasury Forfeiture Fund (TFF).

The Department, through legal counsel for federal investigative agencies as well as through U.S. Attorney's Offices (USAOs), will ensure that adoptions are conducted in compliance with law and Department policies.[4]  Specifically, the Department shall maintain and implement the following

---

[1]    *See* 18 U.S.C. § 981(b)(2)(C) (civil forfeiture statute includes an exemption to the warrant requirement if "the property was lawfully seized by a State or local law enforcement agency and transferred to a Federal agency"); 18 U.S.C. § 983(a)(1)(A)(iv) (extending the general requirement in 18 U.S.C. § 983(a)(1)(A)(i) that notice to "interested parties" be sent "in no case more than 60 days after the date of the seizure" to 90 days in the case of adoptions).

[2]    *See* Attorney General Order No. 3946-2017.

[3]    Chap. 1, Sec. I.C.3 in this *Manual* establishes minimum net equity thresholds of at least $10,000 for vehicles, and a minimum amount of $5,000 for cash seizures, or at least $1,000 if the person from whom the cash was seized either was, or is, being criminally prosecuted by state or federal authorities for criminal activities related to the property. U.S. Attorney's Offices (USAOs), in consultation with federal law enforcement agencies, may continue to establish higher thresholds for judicial forfeiture cases in order to best address the crime threat in individual judicial districts.

[4]    Department policy does not affect the ability of state and local agencies to pursue the forfeiture of assets pursuant to their respective state laws.  Moreover, when a state or local agency has seized property as part of an ongoing state criminal investigation and the criminal defendants are being prosecuted in state court, any forfeiture action should generally be pursued in state court assuming that state law authorizes the forfeiture.  *See* Sec. I in this chapter.

safeguards, among others to ensure that there is sufficient evidence of criminal activity and that the evidence is well documented:

- to ensure that adoptions involve lawfully seized property, legal counsel at the federal agency adopting the seized property must review all seizures for compliance with law, especially seizures made pursuant to an exception to the Fourth Amendment's warrant requirement; and

- to assist federal legal counsel in this review process, state and local agencies seeking federal adoption of seized assets must complete an online form to request federal adoption of any asset and to provide additional information about the probable cause determination justifying the seizure. The additional information in the adoption form better documents probable cause in the first instance and provides federal legal counsel with the relevant information relating to probable cause for review. In addition, state and local agencies are required to certify on the adoption form that they have obtained a turnover order, if necessary,[5] and that the adoption request complies with state law.

Adoptions of cash in amounts equal to or less than $10,000 require additional safeguards. Those adoptions are permissible where the seizure was conducted:

- pursuant to a state warrant,

- incident to arrest for an offense relevant to the forfeiture,

- at the same time as a seizure of contraband relevant to the forfeiture, or

- where the owner or person from whom the property is seized makes admissions regarding the criminally derived nature of the property.

If a federal agency seeks to adopt cash equal to or less than $10,000, and none of these safeguards are present, then the agency may proceed with the adoption only if the USAO first concurs.

## III.  Custody

### A.  Concurrent jurisdiction

Federal prosecutors and agencies may not initiate a federal forfeiture proceeding *in rem* against property seized by state, local, or tribal law enforcement while the property remains subject to the *in rem* or quasi-*in-rem* jurisdiction of a state court. The court first assuming *in rem* jurisdiction over the property retains jurisdiction to the exclusion of all others.[6] In addition, the *Rooker-Feldman* doctrine, which acts as a jurisdictional bar to a federal court reconsidering matters finally decided by a state court, may be applicable in certain circumstances.[7] Finally, considerations of comity may counsel against a federal court asserting jurisdiction over an asset seized by the state even where there is no direct legal obstacle to federal *in rem* jurisdiction.

---

[5]  *See* Sec. IV.B in this chapter.

[6]  *United States v. Timley*, 443 F.3rd 615, 627–628 (8th Cir. 2006).

[7]  *Id*. at 628 (*Rooker-Feldman* doctrine not applicable where the state court did not decide a turnover order proceeding on the merits).

Depending on state and circuit law, a state court may be deemed to acquire jurisdiction over property seized by a state, local, or tribal agency in various circumstances, such as when:

- a state, local, or tribal agency seizes the property pursuant to a state search warrant or seizure warrant;

- a state commences forfeiture proceedings against the seized property;

- the property is subject to a state turnover order requirement or another state-imposed limitation on turnover of seized property for federal forfeiture;

- a party files an action in state court seeking the return of the property; or

- a state, local, or tribal law enforcement officer simply seizes the property in the absence of state process.

Simply put, if, under controlling law in the state at-issue, a state court has *in rem* jurisdiction over property prior to the federal government taking possession of the property, then the state court must relinquish jurisdiction before any initiation of federal *in rem* forfeiture.[8]

Depending upon the applicable state law, assets seized pursuant to the authority of a state search or seizure warrant may be deemed to be within the actual or constructive *in rem* jurisdiction of the state court, thereby impeding federal adoption of those assets even in the absence of a formal turnover statute.[9] Where federal adoption is sought for assets seized through state process, federal prosecutors and agencies should be aware of applicable state law and state practice concerning such assets, and may want to consider requesting assistance from the appropriate state, local, or tribal prosecutorial office in seeking an order from the state court either approving the turnover of the asset for adoption or formally releasing the asset from state jurisdiction.[10]

Some states have enacted statutes that require formal state court approval for turnover of a state-seized asset for federal forfeiture or impose other limitations on turnover. In these situations, the agency requesting to initiate federal forfeiture, with the assistance of the appropriate state, local, or tribal prosecutorial office, may be required to obtain a state court turnover order relinquishing jurisdiction and authorizing the turnover of the property to a federal law enforcement agency for the purpose of federal forfeiture.[11]

The USAO should not seek such orders in state court but may assist its state counterparts in doing so. It is imperative that federal prosecutors work in conjunction with state prosecutors and state agencies to understand the effect state law may have on the federal forfeiture process, as a failure to do so may result in a court-ordered return of seized assets, state court lawsuits against the seizing state agency or officers, and state officers not acting in compliance with state law.

---

[8] Depending on state law, a turnover order may be required for the federal agency to assert *in rem* jurisdiction over the asset.

[9] In *Little v. Gaston*, 232 So.3rd 231, 236–37 (Ala. Civ. App. 2017), the state appellate court held that assets seized pursuant to the authority of a state search warrant remained within the actual or constructive *in rem* jurisdiction of the court that had issued the search warrant, such that their provision for federal adoption was improper.

[10] Federal agents and federal task force officers (TFOs) will often participate in the execution of a state search or seizure warrant. Assets seized by agents and TFOs pursuant to the authority of state process should normally be returned to the state court rather than taken in directly for federal forfeiture.

[11] State and local agencies are required to certify that they have obtained a turnover order where necessary. *See* Secs. II and IV.B in this chapter.

### B.  Use of anticipatory seizure warrants to obtain federal *in rem* jurisdiction

If a state, local, or tribal law enforcement agency commences a forfeiture action under state law, no federal forfeiture action may be commenced as long as the state court has *in rem* or quasi-*in-rem* jurisdiction over the subject property.  If, however, the state, local, or tribal authorities determine, for whatever reason, that the state action will be terminated before it is completed, and that the property will accordingly be released, or a federal seizing agency otherwise learns that the state court is about to order the release of property that is federally forfeitable, the property may be federally seized by obtaining an anticipatory seizure warrant from a federal judge or magistrate.  The anticipatory seizure warrant must provide that it will be executed only after the state court has relinquished control over the property.  For purposes of the notice requirements in 18 U.S.C. § 983(a)(1), property seized pursuant to an anticipatory seizure warrant in these circumstances is considered the subject of a federal seizure such that the period for sending notice of the forfeiture action is 60 days, commencing on the date when the anticipatory seizure warrant is executed.

Given the rapidly changing landscape of state forfeiture laws, federal prosecutors should consider whether an anticipatory federal seizure warrant will create obligations that are directly inconsistent with applicable state law.

### C.  Retention of custody by federal, state, local, or tribal agency during federal forfeiture proceedings

Where authorized by the U.S. Marshals Service (USMS) or Treasury, federal, state, local, or tribal agencies may maintain custody of designated assets pending forfeiture under a written substitute custodial agreement.  Such agreements are contractual in nature and do not require district court approval.  Substitute custodial agreements shall detail requirements for proper storage and maintenance of specified assets under the care of the custodial agency.  In all such cases, security of the assets and the preservation of their condition and value pending forfeiture is of primary concern.  Substitute custodial agencies must provide USMS-approved secure storage for the specified assets and provide the USMS full access to the assets for inspection purposes on request.  The USMS may terminate substitute custodial agreements at any time at its sole discretion if the USMS determines that a substitute custodian has failed to comply with any of the terms of the agreement.[12]

## IV.  Federal Adoption Procedure

### A.  Federal adoption request

When seeking federal adoption, state, local, and tribal agencies are required to complete an online federal adoption form within 15 calendar days following the date of the seizure.  Seizures made as part of joint federal-state investigations or pursuant to federal seizure warrants are not considered adoptions.  Agency participants must review the circumstances of a seizure by state, local, or tribal law enforcement to determine whether it is a federal adoption.

All state, local, and tribal seizures that qualify for adoption[13] and are presented for adoption to either a Department or Treasury federal agency must be reported on the adoption form.  A federal agency

---

[12] *See also* Chap. 10, Sec. II.A in this *Manual*.

[13] *See* Attorney General Order No. 3946-2017.

should not adopt a seizure while the property remains subject to the jurisdiction of a state court.[14]  The state, local, or tribal agency also may be required to complete the federal agency's standard seizure form as part of the adoption request.  The state, local, or tribal agency must attach copies of any investigative reports and of any affidavits in support of warrants pertinent to the seizure for review.[15]  When requesting adoption, state, local, and tribal agencies must certify that the request complies with applicable state law, as some states prohibit the referral of certain categories of seizures for federal forfeiture.

A federal forfeiture proceeding may appropriately arise in the following circumstances and is not considered an adoption:

- seizures by state, local, or tribal authorities who are federally deputized task force officers (TFOs) working with federal authorities on a joint task force (*see* Section IV.A.1 in this chapter);[16] or

- seizures by state, local, or tribal authorities that are the result of a joint federal-state investigation or were coordinated with federal authorities as part of an ongoing federal investigation (*see* Section IV.A.2 in this chapter).

### A.1  Seizure by a federal task force officer (TFO)

This category of seizure generally occurs when an asset is seized by a sworn law enforcement officer employed by a state, local, or tribal law enforcement agency but assigned either part-time or full-time to a federal law enforcement agency as a TFO.  To qualify as a TFO seizure, the following criteria must be met:

- the TFO must have been a credentialed, deputized federal law enforcement officer at the time of the seizure;

- the TFO must have been assigned to a task force operated by a federal law enforcement agency at the time of seizure; and

- the TFO's actions and authorizations for those actions at the time of seizure were related to task force duties and were not conducted solely pursuant to duties and authorizations as a state or local law enforcement agent.

If the above criteria are not met, the forfeiture of an asset seized by a TFO may nonetheless meet the criteria for a joint investigation seizure (*see* Section IV.A.2 in this chapter).  There is no circumstance that would warrant a blanket "federalization" of every seizure made by a state, local, or tribal law enforcement agency simply because the state, local, or tribal agency has an officer assigned to a federal task force or initiative like the High Intensity Drug Trafficking Area (HIDTA) or Organized Crime Drug Enforcement Task Force (OCDETF).

---

[14]  *See* Sec. III.A in this chapter.

[15]  State or local agencies may redact from investigative reports information which may disclose the identity of a confidential informant.  However, disclosures ultimately may be required if information provided by the informant is needed to establish the forfeitability of the property in a subsequent judicial forfeiture proceeding.

[16]  In some states, state law may forbid or regulate the provision of state-seized assets for forfeiture.  In Missouri, for example, all seizures by TFOs are deemed Missouri state seizures if the TFO is a Missouri state or local officer.

However, as discussed in Section III.B in this chapter, federal forfeiture of assets seized by state, local, or tribal law enforcement officers, including TFOs acting in a federal role, may be foreclosed or delayed where the state has preexisting *in rem* jurisdiction, or if state law forbids or regulates the provision of state-seized assets for federal forfeiture.

### A.2   Seizure by a state, local, or tribal law enforcement officer as part of a joint investigation

This category of seizure occurs when an asset is seized under the following circumstances:

- seizure is made at the direction of, or in coordination with, a sworn federal law enforcement officer in conjunction with a pre-existing federal criminal investigation;

- seizure is made as part of a preexisting joint federal-state or federal-local criminal investigation in which a federal law enforcement agency is actively participating for the purpose of pursuing federal criminal charges against one or more specific persons or entities; or

- seizure is made as part of a preexisting joint federal-state or federal-local criminal investigation in which a federal law enforcement agency is actively participating and the seizure arose from the joint investigation.

It can be appropriate to use state or local law enforcement officers to conduct seizures based on probable cause obtained during a federal investigation.

The following criteria generally must be met for a seizure to qualify as a joint-investigation seizure:

- the federal law enforcement agency had advance notice that the seizure would be made;

- the federal law enforcement agency concurred with the seizing state or local law enforcement agency that the seizure was appropriate and in furtherance of the goals of the relevant federal criminal investigation;[17] and

- there was an open federal criminal investigation in which federal agencies were participating at the time of seizure.

### B.   Federal law enforcement agency review

The adopting federal agency must promptly consider adoption requests.[18]  Absent exceptional circumstances, the adopting federal agency must approve the request prior to the turnover of the property to federal custody.

Only an attorney (*e.g.*, the agency's office of chief counsel or other legal unit) outside the chain-of-command of operational officials may approve a request for adoption.

---

[17] Some laws may nullify this exception.

[18] *See also* Sec. IV.C in this chapter.

The attorney review shall verify that:

   (1)  the property is subject to federal forfeiture;

   (2)  the state, local, or tribal law enforcement agency has provided sufficient information about the probable cause determination justifying the seizure;

   (3)  the property is not subject to the jurisdiction of a state court;

   (4)  there is no other legal impediment to a successful forfeiture action; and

   (5)  the state, local, or tribal law enforcement agency has certified that the adoption complies with state law and that the appropriate state turnover order has been obtained, if applicable.

Federal law enforcement agencies will normally secure attorney review through their own offices of chief counsel or other legal unit but—at their discretion—may request that a federal prosecutor conduct this review. Any further review processes established in the future for federal seizures will also apply to adoptive seizures.

### C. Timing

Federal law requires agencies to commence administrative forfeiture proceedings by sending written notice to interested parties "not more than 90 days after the date of seizure by the state or local law enforcement agency."[19] To give individual property owners an opportunity to challenge the seizure as soon as practicable, the Department will expedite federal agencies' decisions regarding adoptions and their provision of notice to interested parties. State, local, and tribal law enforcement agencies must request federal adoption within 15 calendar days following the date of seizure. The adopting federal agency must send notice to interested parties within 45 days of the date of seizure.[20] The supervisory forfeiture counsel (or higher-level official) of the adopting agency may extend these time limitations for good cause, provided that counsel documents any extensions in writing and includes a description of the circumstances justifying the extension. Any such extensions remain subject to statutory time limits pursuant to 18 U.S.C. § 983(a)(1)(A)(iv).

## V. Cases Initiated by a U.S. Attorney Directly with State, Local, and Tribal Law Enforcement without Federal Agency Involvement

As a general rule, a lead federal agency for forfeiture is required to be involved in a federal forfeiture case. However, there are occasions when a federal agency declines involvement or federal prosecutors partner directly with state, local, or tribal law enforcement and no federal seizing law enforcement agencies are involved.[21]

### A. Direct adoption by the U.S. Attorney

If a federal agency will not adopt property seized by a state, local, or tribal law enforcement agency, and the USAO wants to include the property in a judicial forfeiture, the U.S. Attorney may approve

---

[19] *See* 18 U.S.C. § 983(a)(1)(A)(iv); *see also* Chap. 5, Sec. II.B.1 in this *Manual*.

[20] Although federal law gives agencies up to 90 days to send notice to interested parties in the case of adoptive forfeitures, Attorney General Order No. 3946-2017, requires them to send notice not later than 45 days after seizure, unless a senior official at the federal agency approves such an extension. *See also* Chap. 5, Sec. I.B in this *Manual*.

[21] On such occasions, the USMS is the custodial agency.

direct adoption of assets permitted to be adopted, except for real property. The U.S. Attorney must request and obtain approval from the Money Laundering and Asset Recovery Section (MLARS) for direct adoption of seized real property.

For the U.S. Attorney or MLARS to approve a proposed direct adoption:

- a federal seizing agency must decline adoption of the seizure;

- the state, local, or tribal law enforcement agency that seized the property must complete the adoption form and certify that the proposed direct adoption complies with state law, including any turnover statutes;

- the USAO must independently verify that the proposed transfer complies with applicable state law and all turnover orders, if required, are obtained before recommending approval of the direct adoption;[22]

- the USAO must coordinate with its district USMS Asset Forfeiture Coordinator to ensure that the USMS can obtain custody of the asset or that the agency with custody of the property will continue to retain custody in accordance with Section III.C in this chapter.

For direct adoptions requiring MLARS approval, the USAO must send a request to MLARS to initiate the approval process. During the approval process, MLARS may obtain input from the headquarters office of the seizing agency that declined to adopt the seizure. MLARS shall notify the USAO and the USMS in that district whether the direct adoption is approved.

Where the property being adopted for federal forfeiture is a seized firearm, the state, local, or tribal law enforcement agency that seized or is holding the firearm pending federal forfeiture is required to submit a tracing request to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) National Tracing Center (NTC) via eTrace, in accordance with the January 16, 2013, Presidential Memorandum "Tracing of Firearms in Connection with Criminal Investigations."

## B. Direct referral by the U.S. Attorney

In some instances, the USAO will partner directly with a state, local, or tribal law enforcement agency regarding an asset that cannot be adopted because no seizure has occurred (*e.g.*, money judgment, real property).[23] If the USAO wants to include the property in a judicial forfeiture, the USAO must not accept a direct referral from a state, local, or tribal agency until a federal agency declines to process the asset for federal forfeiture. Once that occurs, the USAO may approve direct referral of the asset, other than real property. For real property, the USAO must request that MLARS approve the direct referral. Prior MLARS approval is required for the direct referral of real property to ensure proper communication and coordination among the USAO; state, local, or tribal agency; and the USMS to process the asset, manage its liquidation, and deposit the proceeds into the Assets Forfeiture Fund (AFF). The USAO must initiate the request to MLARS in the same manner as a direct adoption (*see* Section V.A in this chapter). MLARS shall notify the USAO and USMS in that district whether the direct referral is approved.

---

[22] *See* Sec. III.A in this chapter.

[23] Regarding real property, Department officials should adhere to the Department's applicable net equity thresholds and policy concerning the forfeiture of personal residences where title or ownership lies with persons not implicated in illegal conduct. *See* Chap. 4, Sec. I.B.2 in this *Manual*; Chap. 5, Sec. III.D.1.c in this *Manual*.

# Chapter 4:
# Real Property

## I.    Pre-Forfeiture Considerations

The pre-seizure procedures for real property subject to forfeiture rely on the accurate calculation of the property's value and the identification of ownership interests.  While U.S. Attorneys' Offices (USAOs) generally work closely with the U.S. Marshals Service (USMS) regarding pre-seizure and pre-forfeiture considerations for all types of assets, the USAO should coordinate particularly closely with the USMS to address the unique issues that arise before and during forfeiture of real property.[1]  Real property associated with an operating business,[2] for example, always presents unique issues requiring advance planning and coordination with the USMS and consultation with the Money Laundering and Asset Recovery Section (MLARS) and others at the Department of Justice (Department).

### A.  General policy

The potential for substantial losses and other liabilities in forfeiting real property underscores the need for heightened planning and monitoring.  The USAO must conduct planning discussions with the USMS as soon as real property has been identified for forfeiture.[3]  The USMS must consider factors such as existing liens and encumbrances, as well as the costs of future maintenance, sale, environmental factors or contamination, and depreciation prior to forfeiture, among others.  If the USAO intends to forfeit real property that could create a net loss to the Assets Forfeiture Fund (AFF) for that property,[4] the USAO must consult with MLARS before taking any action in furtherance of the forfeiture, beyond the filing of a *lis pendens*[5] pursuant to state law to provide notice that a property is involved in a pending civil or criminal proceeding.  That consultation must occur once the USAO obtains the net equity report–which estimates the net equity of the property, taking into account its valuation, expenses, and other factors, as detailed in Section I.B.1 in this chapter–from the USMS and prior to the entry of a preliminary order of forfeiture.  Prosecutors must also obtain prior written approval from their U.S. Attorney before filing a civil forfeiture complaint against a personal residence based on a facilitation theory of forfeiture.[6]

State law as well as federal law may affect forfeiture actions against real property.  When a USAO identifies real property for forfeiture, but the real property is located in a different district from the investigating or prosecuting USAO, it should consult with the USMS district office or the USAO where the property is located to discuss any state-specific issues relating to the forfeiture.

---

[1]  A general reference to USMS indicates the USMS district office.  Reference to USMS' headquarters Asset Forfeiture Division (AFD) indicates that USMS headquarters should be contacted to obtain topical expertise or authority.  For seizure planning, management, and disposal of assets seized by agencies operating under Department of the Treasury (Treasury) guidelines, *see* Chap. 10, Sec. I.B in this *Manual*.

[2]  *See* Chap. 1, Sec. I.D.2 in this *Manual*.

[3]  *See* Chap. 1, Sec. I.B in this *Manual*.

[4]  *See* Sec. I.B.2 in this chapter and Chap. 1, Sec. I.D.1 in this *Manual*.

[5]  *See* Sec. II.B in this chapter.

[6]  *See* Chap. 5, Sec. III.D.1.c in this *Manual*.  For purposes of this policy, the term "personal residence" refers to a primary residence occupied by the titled owner(s).

## B.  Real property valuation

To properly evaluate real property, the federal seizing agency and the USAO must consult with the USMS to discuss valuation products, lien information, legitimate third-party interests, occupancy issues, environmental considerations, and other factors that may affect seizure and forfeiture decisions.  Participating agencies must provide the USMS with any information developed throughout the investigation–including information obtained via subpoenas, such as mortgage payoff amounts, and any negotiated settlement agreements with lienholders–that may inform the USMS' preparation of an accurate estimate of valuation.[7]  If multiple real properties are identified for forfeiture, or more than one district is involved in the forfeiture, the USAO should consult with each USMS district office involved to develop a communication strategy among offices and to ensure adequate seizure planning for properties located outside of the USAO's district.  In addition to consulting with MLARS, participating agencies must also consult with each other when seizing or forfeiting property that could, as calculated by the USMS, create a net loss to the AFF.[8]

### B.1  Net equity calculation

To determine ownership and the amount and validity of liens recorded against the real property, the USAO must order a pre-seizure package, which includes both a title report and a valuation[9] (appraisal), through the USMS district office as soon as practicable.  Upon receiving such a request, the USMS will conduct an analysis and prepare a net equity worksheet that calculates a net equity minimum value for each parcel of real property to determine whether the property is suitable for forfeiture.  This analysis considers all potential expenses that may accrue from the commencement of the forfeiture proceeding or, where applicable, from seizure or restraint, through disposition.  The analysis also contemplates market conditions, liens, and other encumbrances that could cloud the title.  Upon completing the analysis and net equity worksheet, the USMS can recommend whether the real property meets established net equity thresholds and is thus suitable for forfeiture.

The most current equity information resides with the mortgage lender and borrower and may be obtained via the means permitted by the Financial Right to Privacy Act of 1978, 12 U.S.C. § 3401 *et seq*.

### B.2  Net equity thresholds

The established minimum net equity threshold for forfeiture of commercial or residential real property and vacant land is at least 20% of the appraised value, or $30,000, whichever amount is greater.  Properties with a net equity of less than 20% of the appraised value, or $30,000, whichever amount is greater, should not be considered for forfeiture absent compelling law enforcement interests.[10]  Individual districts may set higher thresholds.

---

[7]  USMS will enter the information in the Consolidated Asset Tracking System (CATS) on a continuing basis during the forfeiture process as expenses are incurred.

[8]  *See* Sec. I.B.2 in this chapter.

[9]  The USMS can recommend what type of appraisal is most appropriate, given the circumstances, including a satellite appraisal, broker's price opinion, or drive-by appraisal.  Only when the government has the legal right to enter property, or the consent of the property owner, may a comprehensive appraisal be obtained.  In special circumstances, such as with high-value or difficult-to-appraise property, the USAO may choose to engage the services of an appraiser with specific expertise.

[10]  *See* Chap. 1, Sec. I.C.3 in this *Manual*.

If the USMS financial analysis indicates that the minimum net equity of real property is below the threshold at the initiation of a case, or if the aggregate of all liens, mortgages, management costs, and disposal costs approaches or exceeds the anticipated proceeds of sale after the initiation of a case against real property that had previously met the threshold, the USAO must either discontinue the forfeiture process or consult with MLARS. To consult with MLARS, the USAO must acknowledge the potential for financial loss and document the compelling law enforcement interest that would be served by pursuing forfeiture of the real property. MLARS will rely on the USAO's documentation of the downward variation from the threshold, which must include a copy of the net equity worksheet, the accompanying appraisal, the facts underlying the forfeiture case, and a detailed explanation of the reason for variation from the threshold. MLARS will discuss the request with the USAO and promptly provide its recommendation in writing. The USAO must also consult with the Asset Forfeiture and Management Staff (AFMS) regarding the net equity of the property.[11]

Following the consultations with MLARS and AFMS, the USAO may decide to waive the Department's net equity thresholds for real property.[12] If the USAO decides at this point to continue the forfeiture process, the USAO must obtain approval from a supervisory-level official at their respective office and include an explanation of the reason in the case file.

### B.3  Use of a writ of entry

To document the current condition of a property and conduct a comprehensive appraisal during seizure planning, the government may require entry into the interior of a structure. The USAO may obtain a writ of entry based on a finding of probable cause by the court. The district court has the authority to issue writs of entry in both civil and criminal forfeiture cases. *See generally* 18 U.S.C. § 983(j)(1) (in civil forfeiture cases, the government may move for a restraining order and ask the court to "take any other action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture"); 21 U.S.C. § 853(e)(1) (in criminal cases, the government may seek [a] restraining [or protective] order and ask the court to "take any other action to preserve the availability of property...for forfeiture"). For a general discussion of writs, *see* Chapter 2, Section IV in this *Manual*.

### C.  Commencing the civil or criminal forfeiture proceeding

In contrast to personal property, real property cannot be forfeited administratively.[13] Likewise, real property is generally not restrained or served with an arrest warrant *in rem* before being forfeited civilly.[14] Generally, Congress has directed that the government must commence a civil forfeiture action against real property by filing a complaint for forfeiture, posting notice of the complaint on the property, publishing the complaint, and *serving* notice of the complaint along with a copy of the complaint on the titled property owner or owners. Some courts have held that service on titled

---

[11]  *See* Chap. 1, Secs. I.C.3 and I.D.1.b in this *Manual*.

[12]  Chap. 1, Sec. I.D.1.b; *see also* Chap. 3, Sec. V.B in this *Manual*.

[13]  *See* 18 U.S.C. § 985(a) ("Notwithstanding any other provision of law, all civil forfeitures of real property and interests in real property shall proceed as judicial forfeitures.").

[14]  The government typically "seizes" real property by taking physical custody of it. Neither the filing of a notice of *lis pendens* nor the execution of a writ of entry for the purpose of conducting an inspection and inventory of real property constitutes a "seizure" under 18 U.S.C. § 985. *See* 18 U.S.C. § 985(b)(2).

property owners must comply with Federal Rule of Civil Procedure 4.[15]  The USAO should also send notice of the action to any other potential claimants who might have an interest in the real property.[16]

Potential claimants include persons or entities having an ownership interest in the specific real property sought to be forfeited, such as persons or entities having a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest in the real property.  Potential lienholder claimants include mortgage lienholders, tax lienholders, homeowners' associations and condominium associations that have recorded liens for past-due assessments, and judgment lienholders who may have perfected their judgment liens against the real property under state law.[17]  Potential claimants exclude those having only a general unsecured interest in, or claim against, the real property, as well as nominees who exercise no dominion or control over the real property.[18]

Even before serving the property owner, in civil forfeiture cases the government must obtain *in rem* jurisdiction over the defendant real property by filing the complaint and then posting notice of the complaint on the property.[19]  Thus, in a civil forfeiture case against real property, the government typically takes physical custody of the real property only after obtaining judgment of forfeiture.

There are, however, two ways the government may seek to take physical custody of real property before it is forfeited civilly: (1) after giving the property owner notice of the *in rem* complaint and the opportunity for a pre-seizure hearing, or (2) via a seizure warrant issued *ex parte* where the government demonstrates probable cause for the forfeiture and exigent circumstances justifying seizure without prior notice.[20]

To pursue criminal forfeiture of real property, the government lists the real property subject to forfeiture in the forfeiture notice of the indictment or in a bill of particulars and records a notice of *lis pendens*.  Only after the court has entered a preliminary order of forfeiture against the real property may the government take physical custody of the real property.  The USAO should work closely with the USMS to determine the proper timing for taking custody of the property.

For cases in which an operating business is targeted for seizure and the business entity owns real property subject to forfeiture, the USAO should record a *lis pendens* on the real property in conjunction with a restraining or protective order issued for other assets of the business.[21] This is the

---

[15]  *See* 18 U.S.C. § 985(c); *United States v. 120 Teriwood St., Fern Park, FL*, No. 16-cv-6101 (CBA) (RER), 2017 WL 8640911 (E.D.N.Y. June 22, 2017), *r. & r. adopted*, 2018 WL 1513641 (E.D.N.Y. Mar. 27, 2018) (under 18 U.S.C. § 985(c), government is required to serve property owners with notice and copy of complaint in compliance with Federal Rule of Civil Procedure 4; service by mail under the Supplemental Rule G(4) "reasonably calculated" standard is insufficient).

[16]  *See* Sec. II.B in this chapter; *see also* Supplemental Rule G(4)(b) ("The government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B).").

[17]  As noted in Sec. II.A in this chapter, the USMS will identify potential claimants, including lienholders, in its preliminary title report or commitment.

[18]  *See* 18 U.S.C. § 983(d)(6) (defining "owner" for innocent ownership purposes).

[19]  *See* 18 U.S.C. § 985(c)(1)(B) ("The Government shall initiate a civil forfeiture action against real property by. . .posting a notice of the complaint on the property"); *id.* § 985(c)(3) ("If real property has been posted in accordance with this subsection, it shall not be necessary for the court to issue an arrest warrant *in rem*, or to take any other action to establish *in rem* jurisdiction over the property.").

[20]  *See* 18 U.S.C. § 985(d)(1) & (2); Rule G(3) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules).

[21]  *See* Chap. 1, Sec. I.D.2 and Chap. 2, Sec. VI in this *Manual* for a discussion of the seizure of operating businesses.

case for both civil and criminal forfeiture. The restraining or protective order should include language intended to prevent illegal activities from occurring on the real property pending forfeiture.

### D. Title conveyance

To sell or otherwise dispose of real property, the government must have clear title. Pursuant to 28 U.S.C. § 524(c)(9)(A), the Attorney General has the authority to warrant clear title upon transfer of forfeited real property to the government.

The USMS is responsible for determining the preferred means to transfer forfeited real property.[22] The USMS and its headquarters Asset Forfeiture Division (AFD) will determine the form of deed by which the government will transfer title to forfeited real property. USMS AFD will approve use of a general warranty deed only in compelling circumstances.[23] In addition to the specific real property at issue, USMS AFD shall also consider the cumulative potential liability that will accrue over time as a result of each successive use of a general warranty deed.

Despite the Attorney General's authority to warrant clear title, the ability of the USMS to offer forfeited properties at market value is often predicated on obtaining a title insurance policy. Title companies may have more stringent noticing requirements, above those required by state or federal law, for issuing these title policies. To avoid difficulties in obtaining title insurance and selling property forfeited civilly or criminally, the following filings and proposed orders concerning real property shall include the property address and a complete and accurate legal property description:

- notice of *lis pendens*

- civil forfeiture complaint

- civil judgment or decree of forfeiture

- the criminal information or indictment

- preliminary order of forfeiture

- final order of forfeiture, and

- all notice and publication documents and filings.[24]

Moreover, all decrees and final orders of forfeiture shall specifically forfeit "all right, title, and interest in" the real property—and not merely the claimant or defendant's interest in that real property—to the United States. In addition, all decrees and final orders of forfeiture should specifically identify the noticing efforts for all third parties, reference any settlements with third parties, and order defaulted the interests of all third parties not appearing, including titled owners, the defendant in a criminal case, the defendant's spouse, and any corporate entities, lienholders, homeowners associations, and taxing authorities. A failure to adhere to these common title requirements could lead to a delay in the

---

[22] The USMS chooses the type of deed pursuant to existing contracts, regional preferences, and market indicators.

[23] A general warranty deed expressly guarantees the grantor's good, clear title and contains covenants concerning the quality of title. Compelling circumstances for which USMS AFD may approve a general warranty deed may exist where the financial advantage of offering a general warranty deed in a particular case, compared to the available alternatives, far outweighs both the potential cost of honoring the warranty and the potential effect of increased purchaser demand for general warranty deeds in future sales of other forfeited properties.

[24] If a legal description does not exist or is unavailable for a parcel of real property, contact USMS AFD for assistance.

time it takes to sell the real property, a reduction in the net equity realized on the sale of the property, or both.

The authority to warrant title conferred by § 524(c)(9)(A) does not extend to interlocutory sales, which are, by definition, pre-forfeiture. Accordingly, the transfer of property pursuant to an interlocutory sale shall be by a USMS deed. The authority to execute deeds and transfer title has been delegated to the USMS pursuant to 28 C.F.R. §§ 0.111(i) and 0.156.[25]

### E.  Contamination liability

#### E.1  General policy

Certain federal and state statutory provisions may impose liability on the government regarding ownership of contaminated real property.[26] Consequently, prosecutors must exercise extreme caution in targeting real property for forfeiture if there are indications that it may be contaminated. The USAO must consult with the seizing agency, the USMS, AFMS, and MLARS before determining to forfeit real property that is contaminated or potentially contaminated with hazardous substances. This policy is applicable to all forfeiture cases referred to the Department by any government agency, regardless of the type or source of the hazardous substance(s), other than lead-based paint, which is covered immediately below.

#### E.2  Lead-based paint contamination

Real property that is federally owned, and for which the proposed use is residential, is subject to the regulations promulgated to implement the Lead-Based Paint Poisoning Prevention Act,[27] as well as the Residential Lead-Based Paint Hazard Reduction Act of 1992.[28] Residential property for which construction was completed on or after January 1, 1978 does not contain lead-based paint and is thus exempt from these regulations.[29] The government may be required to undertake certain abatement actions of lead-based paint contamination for forfeited residential property constructed prior to 1960.[30] Forfeited residential property constructed between January 1, 1960 and December 31, 1977 may be marketed and sold after conducting a lead-based paint risk assessment and lead-based paint inspection without obligation to conduct abatement.[31] If the sale is completed within 270 days of the final order of forfeiture, the government is exempted from these abatement, risk assessment, and inspection requirements.[32] Specific questions should be directed to USMS AFD.

---

[25] The 28 C.F.R. § 0.156 delegation predates the Asset Forfeiture Program and applies to all court-ordered sales of property, not solely to forfeited property sales.

[26] Although federal law may allow for the transfer of contaminated real property without federal liability for cleanup, applicable state law may continue to impose liability or render the real property unmarketable.

[27] 42 U.S.C. § 4821 *et seq.*

[28] 42 U.S.C. § 4851 *et seq.*; 24 C.F.R. § 35.100.

[29] 24 C.F.R. § 35.115(a)(1).

[30] For pre-1960 construction, 24 C.F.R. § 35.210(b) allows the USMS to delegate the abatement but not the inspection.

[31] The USMS must inspect residences constructed from 1960 to 1978, but no abatement is required. *See* 24 C.F.R. § 35.215.

[32] "If a Federal law enforcement agency has seized a residential property and owns the property for less than 270 days," the regulations requiring the government to inspect, assess and abate contamination shall not apply. *See* 24 C.F.R. § 35.115(a)(10).

## II.    Ownership and Notice

To satisfy the notice requirements of 18 U.S.C. § 985 and Rule G(4) of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules), the USAO must identify all parties holding an interest in the real property.[33]  The USMS has a number of ways to identify these parties.  The USAO may consult with the USMS to determine the method best suited to serve its needs.

### A.    Title search

Once the seizing agency has identified real property for forfeiture, the USAO must determine the identity of any borrower, purchaser, note-holder, mortgagee, and all others holding valid liens of record and the amount of each.  To do so, the USAO must request that the USMS order a preliminary title commitment.  This preliminary title commitment identifies the original mortgagee and lienholders, provides the amount of debt recorded against the real property, and provides the legal description of the property that should be used in the order of forfeiture.  The preliminary title commitment also reflects whether the mortgage is registered with the Mortgage Electronic Registration System (MERS).  Additional notification of a forfeiture action should be provided if a mortgage servicer is registered with MERS, as detailed in Section II.C in this chapter.[34]  The preliminary title commitment is prepared by a title company or an authorized title attorney on behalf of a title company.

Title reports and appraisals are considered current if dated not more than six months prior to the filing date of a charging instrument.  When needed, the USAO must request updated valuations and title searches from the USMS.  USAOs may wish to request an updated valuation and title searches when it is reasonably known that a final order for real property will be obtained, as the USMS requires current valuation and title searches before proceeding with a sale.

### B.    *Lis pendens*

A *lis pendens* provides general notice that a property is involved in a pending civil or criminal legal proceeding.  A *lis pendens* typically is recorded in the real property records of the jurisdiction where the property is located.  While recording a notice of a *lis pendens* is not a seizure of the real property,[35] it constitutes a cloud on the title that effectively prevents the owner or claimant from succeeding in a disposal action, refinancing, or obtaining a secondary mortgage to reduce equity or avoid forfeiture.

---

[33]  Examples include owners (pursuant to state law), mortgagees, lienholders, lessees, taxing authorities, business entities, trustees, tenants with a right of first refusal and referees.

[34]  *See* Sec. II.C in this chapter.  Except in limited circumstances, mortgagees may not release private information about a mortgagor without notifying the mortgagor.  In a civil case, the investigative agency may be able to issue an administrative subpoena to obtain detailed information from the mortgagee.  In a criminal case, the USAO may use a grand jury subpoena to obtain an accurate mortgage balance.  When a civil or criminal restraining order is entered, the USAO may seek to include language that directs lien holders to provide current payoff information.

[35]  *See* 18 U.S.C. § 985(b)(2).

It is the responsibility of the USAO to ensure that a *lis pendens* is properly recorded in accordance with state law.[36]  The USAO determines whether the USAO, federal seizing agency, or USMS records the *lis pendens*.  If the property is not located in the district of the USAO prosecuting the case, the USAO prosecuting the case should confer with USMS or USAO representatives in the district where the property is located to determine state and local law and relevant recording practices.

Duration of the *lis pendens* varies by state and may require periodic renewal.[37]  The USAO is responsible for tracking all related recording deadlines and releasing the *lis pendens* when appropriate, as governed by state law.  If more than one USAO is involved, the district that initiates the forfeiture action is responsible for tracking deadlines.  When a parcel of real property is the subject of both criminal and civil forfeiture proceedings, a separate *lis pendens* should be recorded in each action.  A *lis pendens* should be released upon issuance of a final order of forfeiture or when a forfeiture proceeding is dismissed.

### C.  Noticing the Mortgage Electronic Registration System (MERS)

MERS is a national electronic registration system that tracks the changes in servicing rights and beneficial ownership interests in residential mortgage loans on behalf of banks and other financial institutions[38] that service mortgages.  While a title search may identify the original mortgage service provider, MERS captures the most current assignment of a mortgage instrument.  Accordingly, providing notification of a forfeiture action involving real property with a MERS-registered mortgage constitutes notice reasonably calculated to apprise all parties holding an interest in the mortgage of the impending litigation.  The USAO should provide notice directly to MERS concerning any forfeiture action involving MERS-registered real property, if unable to obtain good notice with lienholder directly.

## III.  Third-Party Interests

### A.  Tenancy interests

Leasehold interests represent an interest in real property and are subject to forfeiture.[39]  Therefore, to the extent that the USAO seeks to forfeit a leasehold interest, the USAO must give notice to the tenant, in addition to the fee holder.

---

[36] When a *lis pendens* may be filed on a real property named solely as a substitute asset in a criminal case is dependent on applicable federal law in the district in which the action is filed and state law in the state in which the property is located.  *See e.g. United States v. Balsiger*, 910 F.3d 942, 951 (7th Cir. 2018) (while noting that it "cannot foreclose a circumstance where a *lis pendens* operates to infringe on a defendant's right to choice of counsel," court found in this case that there was no Sixth Amendment violation for district court's supposed refusal to lift *lis pendens* on defendant's untainted residence, where defendant actually sold that residence for $1.5 million eight months before trial and thereby obtained sufficient funds to hire counsel of choice); *United States v. Jarvis*, 499 F.3d 1196, 1203 (10th Cir. 2007) (under New Mexico law, a *lis pendens* may only be filed on property involved in pending litigation; it may not be used merely to secure a future money judgment; substitute assets are not involved in the pending criminal case except to the extent they may be used to satisfy a money judgment; therefore a *lis pendens* cannot be filed against such property).  Prosecutors should therefore confirm, before filing a *lis pendens* on a real property sought to be forfeited solely as a substitute asset, that applicable law permits the filing of a *lis pendens* under such circumstances.

[37] In Florida, for example, a *lis pendens* automatically expires after one year unless renewed.

[38] Not all financial institutions are members of MERS.

[39] For example, a long term commercial lease may have significant economic value.

### B.  Occupancy agreements for tenants

The seizing agency is responsible for determining whether a real property subject to forfeiture is occupied pursuant to a valid lease.  The USMS may seek to enter into an occupancy agreement with the current tenant, and this agreement may include provisions governing the collection of rent until disposition of the property.  The USMS may collect rent prior to entry of a preliminary order of forfeiture or a civil forfeiture order pursuant to a restraining order[40] allowing the USMS to do so.  If the government collects rental proceeds prior to the entry of a preliminary order of forfeiture, it should specifically forfeit those rental proceeds in the final order of forfeiture.  The USMS, however, prefers for property to be vacated to facilitate disposition, except in the case of commercial properties, where paying tenants generally add value.

### C.  Business or corporate owners

If real property represents a substantial portion of an operating business' assets and the government seeks to forfeit the business, the government must follow all policies applicable to the seizure or restraint of an operating business and those policies related to real property.[41]  In particular, the USAO must consult with MLARS prior to initiating the seizure, restraint, or forfeiture of an operating business or commercial property where a business is operating.[42]

When the government seeks forfeiture of real property that is owned by a business, but not forfeiture of the business itself, all pre-forfeiture planning policies for real property as described in this chapter must be followed.  The charging instrument (civil complaint, criminal information, or indictment) must identify the real property by address *and* legal description, and the final order of forfeiture shall extinguish any interest listed as the vested owner, including any corporate entity.[43]

### D.  Lienholders

The USAO must obtain a copy of the recorded mortgage instrument and the note that the mortgage secures.  If the government is required to pay interest and penalties, the Department will recognize claims consistent with the terms of the note for recorded debt.  The USAO is encouraged to require claimants to submit evidence of the payment history, including fees, penalties, and escrows.

## IV.  Taxes and Penalties

### A.  Payment of state and local real property taxes

It is Department policy that the Department pays state and local real property taxes that accrue up to the date of the entry of order of forfeiture or, in criminal cases, the final order of forfeiture, even if the tax liabilities accrue after the events giving rise to forfeiture.  The refusal to pay such taxes

---

[40]  The Second Circuit has held that the receipt of rental income generated by a commercial real property is a property interest subject to the protections of the Due Process Clause, such that absent a showing of exigent circumstances, the government must provide notice and an opportunity for the owner of the real property to be heard before obtaining an order seizing or restraining such rental income.  *See In re 650 Fifth Ave. Co.*, 991 F.3d 74, 89–90 (2d Cir. 2021); *see also* 18 U.S.C. § 985(f)(1) (providing that § 985 "applies...to civil forfeitures of real property and interests in real property").

[41]  *See* Chap. 1, Sec. I.D.2 and Chap. 2, Sec. VI in this *Manual*.

[42]  *See* Chap. 1, Sec. I.D.2 and Chap. 2, Sec. VI in this *Manual.*

[43]  Failure to properly identify the parcel subject to forfeiture may prevent timely disposal or may lead to a dismissal of the forfeiture.

would draw the Department into conflict with state and local authorities and could complicate the interlocutory or post-judgment sale of real property. Prosecutors are encouraged to contact MLARS for additional guidance regarding the payment of state and local taxes.

### B.  Some taxes become a lien on the property before they are due

In certain states, taxes become a lien on the property at some date before the taxes are assessed.[44] In such jurisdictions, if the tax lien date precedes the date of forfeiture, the taxing authorities have frequently taken the position that the entire tax (whether assessed yet or not) must be paid by the government. Federal prosecutors should be aware of the law on this issue in the state where the real property is located.

### C.  Payment of interest and penalties on real property taxes[45]

To ensure consistent Department treatment of the payment of interest and penalties on state and local taxes that have accrued on forfeited real property, the Department will pay

- interest on overdue taxes that have accrued up to the date that the final order of forfeiture is entered and not thereafter; and

- penalties on overdue taxes until the date of entry of the final order of forfeiture in the event that this does not conflict with local tax authority requirements. If tax authorities require a greater period for penalties, the Department will comply.

A final order of forfeiture must be properly recorded in the Consolidated Asset Tracking System (CATS) before payment.

Outstanding real property taxes (and interest and penalties thereon) may only be paid up to the amount realized from the sale of forfeited real property.

## V.   Real Property Transfers

The Attorney General may dispose of property "by sale or any other commercially feasible means."[46] In certain circumstances, the Attorney General may transfer federally forfeited real property for federal official use; to meet other federal needs; to serve state recreational, preservation, or historic purposes; or to assist a state, local, or tribal government, or public or non-profit agency, in carrying out educational, treatment, rehabilitation, housing, and other community-based initiatives.[47]

---

[44] For example, in California, taxes on real property become a lien on January 1. *See* CA Rev & Tax C. § 2192. However, the tax is not assessed until late September [CA Rev & Tax C. § 2601(a)] and the first half of the taxes are not due and payable until November 1 (CA Rev & Tax C. § 2605). To further complicate matters, the second half of the taxes are not due until the following February, after the next year's taxes have become a lien. *See* CA Rev & Tax C. § 2606.

[45] With regard to interest and penalties on property taxes on real property forfeited by agencies operating under Treasury guidelines, please contact the Treasury Executive Office for Asset Forfeiture (TEOAF).

[46] 21 U.S.C. § 853(h); *see also* 21 U.S.C. § 881(e).

[47] *See The Attorney General's Guidelines on the Asset Forfeiture Program* (July 2018) (*AG Guidelines*), Sec. V.H.

Applications for transfer must be provided to MLARS for review and recommendation before final submission to the Attorney General (or a designee) for approval.[48]  Certain requirements apply to all transfers:

(1) the forfeiture must be final and no longer subject to appeal, clear title must be vested in the government, and the real property must be vacant;

(2) the requested use of the real property must comply with all applicable laws, including zoning and land-use restrictions; and

(3) environmental issues and costs of remediation must be addressed.[49]

Additional requirements apply to the non-sale transfers of forfeited real property:

### A. Weed and Seed Initiative

Real property forfeited for drug violations pursuant to 21 U.S.C. §§ 853(i)(4) and 881(e)(1)(A) may be eligible for transfer to the state, local, or tribal law enforcement agency[50] that participated in the seizure or forfeiture of the real property for subsequent transfer to public agencies and non-profit organizations.  The proposed use must

- support community-based drug treatment, crime prevention, and education;

- improve housing;

- enhance job skills; or

- perform other activities that will substantially further neighborhood rehabilitation and rejuvenation.

The state, local, or tribal law enforcement agency must submit an equitable sharing request form (Form DAG-71) accompanied by a request from the U.S. Attorney of the district in which the real property is located.  The real property must have an appraised value that is not greater than $50,000 or an appraised value of not more than $200,000 if the net equity value of the real property is $50,000 or less.  The intended recipient must be vetted by the USAO, enter into a memorandum of understanding (MOU) with all parties to the transfer, and agree to use the real property as proposed for a period of five or more years.  All transfer requests ultimately require the approval of the Deputy Attorney General (DAG) based on a recommendation provided by MLARS.

### B. Operation Goodwill

Under the Operation Goodwill Program, the Attorney General is authorized to transfer real property of limited or marginal value to a state or local government agency, or to its designated contractor or transferee, for use in support of community-based revitalization programs.  *See* Pub. L. 108-199, Jan. 23, 2004, Div. B, Title I, § 108, 118 Stat. 61 (reprinted in the historical and statutory notes for 28 U.S.C. § 524).  Programs include drug abuse treatment, drug and crime prevention, education, housing, job skills training, and other community-based health and safety programs.

---

[48]  Applications for transfer of property forfeited by a TEOAF participating agency must be submitted to TEOAF.

[49]  *See* Sec. I.E in this chapter.

[50]  *See* 18 U.S.C. § 981(e)(1) and (2); 21 U.S.C. § 881(e)(1)(A).

To be eligible, the property must have an appraised value of $50,000 or less or an appraised value of $200,000 or less if the net equity value of the real property is $50,000 or less.[51]  The recipient must be vetted by the USMS, meet Operation Goodwill Program guidelines, enter into an MOU with all parties to the transfer, be approved by USMS AFD, and use the real property as proposed for a period of five or more years.  These transfers require the approval of the Attorney General, based on the recommendation provided by MLARS.  USAOs should contact USMS AFD with questions regarding the Operation Goodwill Transfer Program.

## C.  Federal component transfers

Any federal agency component may request the transfer or retention of forfeited real property to that component for certain purposes, pursuant to 18 U.S.C. § 981(e)(1)[52] and 21 U.S.C. §§ 853(i)(4) and 881(e)(1)(A).[53]  A Department agency may request the transfer to use the real property for a law enforcement purpose.  Non-Department agencies may request that real property be transferred to serve a significant and continuing federal purpose.  There are no valuation limitations for eligibility.  However, financial effects on the AFF are factored into the approval decision.  All transfer requests ultimately require the approval of the DAG based on the recommendation provided by MLARS.

## D.  Governor's request for historic, recreational or preservation purposes

Pursuant to 21 U.S.C. § 881(e)(4)(B), the governor of a state in which forfeited real property is located may request that the Attorney General transfer the real property to the state.  Real property is eligible for transfer only if the state uses it as a public area reserved for recreational or historic purposes, or to preserve the real property's natural condition.  The state official seeking a transfer must contact the USAO, which, in consultation with the USMS and the federal seizing agency, will ensure that all specific program requirements are satisfied.

The recipient state must enter into a MOU with all parties to the transfer and agree to use the real property as agreed in perpetuity.  All transfer requests ultimately require the approval of the DAG based on the recommendation provided by MLARS.

---

[51]  The valuation limitation may be waived if the USMS and USAO determine that compelling law enforcement circumstances exist to warrant the transfer.

[52]  Any federal agency component requesting the transfer or retention of forfeited real property must have statutory authority to receive the real property.

[53]  The customs law provisions for disposition of forfeited property are incorporated by reference.  *See* 19 U.S.C. § 1616a(c)(1)(B)(i).

# Chapter 5:
# Administrative and Judicial Forfeiture

## I.    Overview

### A.  Seized property eligible for forfeiture should be forfeited

*The Attorney General's Guidelines on the Asset Forfeiture Program* (July 2018) (*AG Guidelines*) provide that "the Department of Justice should use asset forfeiture to the fullest extent possible to investigate, identify, seize, and forfeit the assets of criminals and their organizations while ensuring that due process rights of all property owners are protected."[1]

### B.  Forfeiture should follow the prosecution

For legal and practical reasons, it is Department of Justice (Department) policy that regardless of whether a federal, state, local, or tribal law enforcement authority seizes property subject to forfeiture, forfeiture proceedings against that property should follow the criminal prosecution.[2]

A state forfeiture action that runs parallel to a pending federal criminal investigation or prosecution not only risks jeopardizing the federal proceedings but may also create jurisdictional conflicts and unnecessary confusion among potential claimants and law enforcement authorities.  The federal government should pursue federal administrative or judicial forfeiture where there is a pending federal criminal investigation or prosecution.

Under limited circumstances, however, state forfeiture proceedings may be appropriate where the investigation or prosecution is federal in nature.  These limited circumstances include when:

- state authorities have commenced litigation against, conducted substantial litigation regarding, or concluded forfeiture proceedings against an asset seized before the federal agency joined an investigation;

- an existing memorandum of understanding (MOU) between state and federal authorities provides for different procedures for effectuating seizures and forfeitures;

- state or local authorities seized an asset, a turnover order is required by law to pursue federal forfeiture of it, and agency counsel and the federal prosecuting official elect not to seek such an order;

- state or local authorities seized an asset, a turnover order is required by law to pursue federal forfeiture of it, the state court issues an adverse order, and the local prosecuting attorney, agency

---

[1]  *See AG Guidelines*, Sec. II.

[2]  *See* Chap. 3 in this *Manual* for a full discussion of issues involving adoptive forfeitures.

counsel, and the federal prosecuting official conclude that the public interests are best served by pursuing the state forfeiture;

- the seized asset does not meet the Department's minimum net equity thresholds; or

- the pertinent federal prosecuting official has reviewed the case, declined to initiate forfeiture proceedings, and approved a referral for state forfeiture.

When a federal agency believes a state forfeiture is appropriate, agency counsel and the federal prosecutor responsible for asset forfeiture must discuss referring the asset for state forfeiture before any referral. If a federal agency refers significant assets for state forfeiture after a determination to seek federal prosecution has been made and without the required discussion, a federal prosecuting official may decline the federal prosecution.

## II.   Administrative Forfeiture Guidelines

The administrative forfeiture process promotes the efficient allocation of Department resources and discourages undue burdens on the federal judicial system while affording interested parties a prompt resolution through the remission process. Accordingly, property subject to administrative forfeiture should be forfeited administratively. Although policy favors parallel proceedings, as a matter of discretion, the U.S. Attorney may ask the seizing agency to either forego or suspend administrative proceedings in favor of civil or criminal judicial forfeiture.

### A.  Scope of property subject to administrative forfeiture

In general, property subject to administrative forfeiture includes:

- monetary instruments, as defined by statute and implementing regulations,[3] in any amount;[4]

- personal property, including vehicles, vessels, aircraft, merchandise, baggage, jewelry, art, furniture, and antiquities valued at less than or equal to $500,000;

- a vessel, vehicle, or aircraft used to import, export, transport, or store any controlled substance

---

[3]  *See* 31 U.S.C. § 5312(a)(3). Monetary instruments include U.S. coins and currency; coins and currency of a foreign country, travelers' checks, bearer negotiable instruments, bearer investment securities, bearer securities, stock on which title is passed on delivery, and similar material outlined in 31 C.F.R. § 1010.100(dd), the applicable regulation; and checks, drafts, notes, money orders, and other similar instruments that are drawn on or by a foreign financial institution and are not in bearer form as outlined in that same regulation (designating currency; traveler's checks in any form; all negotiable instruments, including personal checks, business checks, official bank checks, cashier's checks, third-party checks, promissory notes as defined in the Uniform Commercial Code, and money orders, in bearer form, endorsed without restriction, made out to a fictitious payee, or otherwise in such form that title thereto passes upon delivery; incomplete instruments, including personal checks, business checks, official bank checks, cashier's checks, third-party checks, promissory notes as defined in the Uniform Commercial Code, and money orders, signed but with the payee's name omitted; and securities or stock in bearer form or otherwise in such form that title thereto passes upon delivery). Monetary instruments do not include warehouse receipts or bills of lading. *See* 31 C.F.R. § 1010.100(dd)(2). Monetary instruments also do not include digital assets, although the Secretary of the Treasury may, by regulation, define "monetary instruments" to include "value that substitutes for any monetary instruments." 31 U.S.C. § 5312(a)(3)(D).

[4]  Domestically seized cryptocurrency valued at less than or equal to $500,000 may be forfeited administratively. Cryptocurrency valued at more than $500,000 must be forfeited judicially. The value of cryptocurrency is determined at the date of seizure. Internationally seized cryptocurrency must be forfeited judicially. *See* Chap. 2, Sec. V.B in this *Manual* for more guidance on the seizure and forfeiture of cryptocurrency.

or listed chemical; and

- merchandise the importation of which is prohibited.[5]

Administrative forfeiture is not authorized for:

- real property;[6]

- personal property valued at more than $500,000;[7]

- funds seized from a bank account in an amount of more than $500,000;[8] or

- property subject to forfeiture pursuant to a statute that does not incorporate the customs laws.

An agency may pursue an administrative forfeiture of property seized pursuant to a criminal or civil seizure warrant, or by a valid warrantless seizure.[9]

### B.  Administrative forfeiture notice deadlines

Statutory and regulatory deadlines govern the government's duty to provide owners and other interest-holders in seized property prompt notice of the right to contest a non-judicial forfeiture, including the procedures for doing so.  *See* 18 U.S.C. § 983(a); 28 C.F.R. § 8.9(c).

Even if pertinent authority authorizes delaying notice under limited circumstances, however, law enforcement agencies should seek extensions of notice deadlines only when necessary and in the manner described in the statute and regulations.  *See* 18 U.S.C. § 983(a)(1)(B) & (C).

### B.1  18 U.S.C. § 983(a)(1)—the default rules

18 U.S.C. § 983(a)(1) outlines the deadlines and other requirements for notifying potential claimants of administrative forfeiture proceedings instituted against property seized for forfeiture.  The deadlines in § 983(a)(1) do not apply, however, to seizures of property to be used strictly for evidence and as to which forfeiture is not sought, seizures pursuant to an exclusively criminal seizure warrant, and seizures made pursuant to a statute that makes administrative forfeiture unavailable.

---

[5]  *See* 19 U.S.C. § 1595a; *see also* 19 U.S.C. § 1607(a)(2).

[6]  *See* 18 U.S.C. § 985.

[7]  *See* 19 U.S.C. § 1607(a)(1).

[8]  Neither that statutory definition of "monetary instruments" nor the parallel definition in the applicable regulations encompasses the funds in a bank account.  *See* 31 U.S.C. § 5312(a)(3); 31 C.F.R. § 1010.100(dd).  Consequently, funds seized from a bank account do not qualify as monetary instruments for the purposes of the exception to the $500,000 cap on administrative forfeitures.

[9]  Most civil forfeiture statutes authorize the seizing agency to forfeit property administratively in accordance with the customs laws.  *See* 18 U.S.C. § 981(d); 21 U.S.C. § 881(d) (incorporating the provisions of 19 U.S.C. § 1602 *et seq*. into the civil forfeiture statutes).  Nothing in the incorporated provisions of Title 19 limits administrative forfeiture to property seized pursuant to a particular kind of seizure warrant.  To the contrary, 19 U.S.C. § 1603(a) provides that property may be seized for administrative forfeiture "upon process issued in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure [*i.e.*, Rule 41]," or "any seizure authority otherwise provided by law."  *See also* 18 U.S.C. § 981(b)(2) (allowing for seizures made pursuant to a warrant "obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure").  Thus, nothing in the customs laws themselves precludes instituting administrative forfeiture proceedings when property is seized pursuant to a criminal seizure warrant issued under 21 U.S.C. § 853(f).

Pursuant to § 983(a)(1)(A)(i), a federal agency that seizes property for forfeiture must send "written" notice to all known, interested parties "as soon as practicable" but no later than 60 days after the seizure date.[10]  Section 983(a)(1)(A)(iv) extends that deadline to 90 days in cases where the forfeiture is adopted from a state or local law enforcement agency; however, Department policy requires notice within 45 days of the seizure in adoption cases, unless a senior official at the federal agency approves an extension.[11]  In cases where an agency learns of a party's interest or identity after the date of the federal seizure or turnover from a state or local agency, but before the administrative forfeiture is complete, the agency must send notice to the newly identified interest-holder within 60 days of the discovery.  *See* § 983(a)(1)(A)(v).

### B.2  Administrative forfeiture proceedings arising from criminal seizure warrants should ordinarily follow 18 U.S.C. § 983(a)(1)'s default rules

By their terms, the notice deadlines in 18 U.S.C. § 983(a)(1) apply only to "nonjudicial civil forfeiture proceeding[s] under a civil forfeiture statute."  *See* § 983(a)(1)(A)(i).  Because the statutory provision authorizing criminal seizure warrants, 21 U.S.C. § 853(f), is in a statute specifically designated as a criminal forfeiture statute, § 983(a)(1) does not apply.

Nonetheless, routinely commencing administrative forfeiture proceedings against property seized with criminal process more than 60 days after seizure could create an appearance of misusing the criminal forfeiture process to circumvent the applicable civil forfeiture deadlines.[12]  Consequently, agencies should send notice of administrative forfeiture proceedings against property seized pursuant to an exclusively criminal seizure warrant within the deadlines that § 983(a)(1) would have imposed had the seizure occurred pursuant to a civil seizure warrant.  If an agency does not send timely notice, it should refer the case to the U.S. Attorney's Office (USAO) for civil or criminal judicial proceedings in the manner described in Section II.B.4 in this chapter.

Despite the strong preference for adhering to the civil forfeiture statute's deadlines even when § 983(a)(1) does not apply, rare circumstances could warrant instituting administrative forfeiture proceedings against property seized with exclusively criminal process more than 60 days after seizure (for example, a case where a defendant agrees to forfeit property administratively as part of a plea agreement).  Generally, decisions to pursue an administrative forfeiture of property seized with criminal process outside the deadlines that would have applied had the property been seized civilly should be extremely rare.

### B.3  Exceptions to 18 U.S.C. § 983(a)(1)'s default rules

Four exceptions can provide relief from 18 U.S.C. § 983(a)(1)'s notice deadlines.  The first, which requires exceptional circumstances, is an extension granted by a designated official within the seizing agency.  The second exception, which also requires exceptional circumstances, is an extension granted by a federal court.  The third exception is known as the "customs carve-out."  The fourth occurs when property is initially seized by a state or local law enforcement agency, then subsequently seized or

---

[10]  18 U.S.C. § 983(a)(1)(A)(i); *see also* 28 C.F.R. § 8.9(c)(1).

[11]  Although federal law gives agencies up to 90 days to send notice to interested parties in the case of adoptive forfeitures, Attorney General Order No. 3946-2017: Federal Forfeiture of Property Seized by State and Local Law Enforcement Agencies (July 19, 2017) requires them to send notice not later than 45 days after seizure, unless a senior official at the federal agency approves such an extension.  *See* Chap. 3, Sec. IV.C in this *Manual*.

[12]  *See generally* Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L. 106-185, Apr. 25, 2000, 114 Stat. 202.

restrained by a federal seizing agency pursuant to a federal seizure warrant or restraining order, or the owner consents to the forfeiture.

### B.3.a    30-day seizing agency extension

18 U.S.C. § 983(a)(1)(B) authorizes designated officials within a seizing agency to issue a limited waiver of the 60-day notice deadline under exceptional circumstances.  Those exceptional circumstances are limited to situations where a reasonable belief exists that supplying notice may have an adverse result, including endangerment of the life or physical safety of an individual, flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, or "otherwise seriously jeopardizing an investigation or unduly delaying a trial."  *See* 18 U.S.C. § 983(a)(1)(D)(i)–(iv).

The designated official must ensure that all extensions issued under § 983(a)(1)(B) be in writing, describe the exceptional circumstances warranting the waiver, and be included and maintained in the administrative forfeiture case file.  Moreover, any such waiver is valid for no more than 30 days, and any additional extension requires a judicial officer's approval.  *See* 18 U.S.C. § 983(a)(1)(C).

### B.3.b    60-day federal court extension

Should a seizing agency conclude that continuing extraordinary circumstances warrant extending the 18 U.S.C. § 983(a)(1) notice deadline beyond the 30 days that its designated agency official(s) may grant, a federal court order is required.  *See* 18 U.S.C. § 981(a)(1)(C).  A concurring government prosecutor must file a motion supported by the agency-designated official's written certification that extraordinary circumstances described in § 983(a)(1)(D) continue to warrant delaying notice.  *See* 18 U.S.C. § 981(a)(1)(C).

If the court concurs, any order that it issues may extend the deadline for no more than 60 days.  Although the statute does not limit the number of extensions a court may grant, the government should remain cognizant that successive motions for extensions are contrary to policies favoring prompt notice to stakeholders and resolution of forfeiture proceedings.

### B.3.c    Customs carve-out

The majority of federal civil asset forfeiture proceedings carry strict deadlines and notice requirements.  However, Congress expressly exempted from 18 U.S.C. § 983(a)'s notice deadlines administrative forfeiture proceedings commenced pursuant to five classes of civil forfeiture statutes:

> (1)  the Tariff Act of 1930[13] and all other civil forfeiture provisions codified in Title 19 of the U.S. Code,[14] statutes that are ordinarily enforced by U.S. Customs and Border

---

[13]  19 U.S.C. § 1202 *et seq*.

[14]  The reference to forfeitures commenced under Title 19 is to cases in which Title 19 provides the substantive basis for the forfeiture, not cases in which the procedures in Title 19 are incorporated into other forfeiture statutes.  *See* 18 U.S.C. § 981(d).

Protection (CBP) and U.S. Immigration and Customs Enforcement-Homeland Security Investigations (ICE-HSI);

(2)    the Internal Revenue Code of 1986;[15]

(3)    the Federal Food, Drug, and Cosmetic Act, found at 21 U.S.C. § 301 *et seq.*;

(4)    Trading with the Enemy Act, found at 50 U.S.C. § 4301 *et seq.*, the International Emergency Economic Powers Act (IEEPA), found at 50 U.S.C. § 1701 *et seq.*, and the North Korea Sanctions Enforcement Act of 2016, found at 22 U.S.C. § 9201 *et seq.*; and

(5)    Section 1 of Title VI of the Act of June 15, 1917, 40 Stat. 233, pertaining to unlawful exportation of war materials pursuant to 22 U.S.C. § 401.

*See* 18 U.S.C. § 983(i).

### B.3.d    Subsequent federal seizure

If property is seized by a state or local law enforcement agency, but personal written notice is not sent to the person from whom the property was seized within the applicable time period, then an agency may commence an administrative forfeiture proceeding against the property:

- if the property is subsequently seized or restrained by the federal seizing agency pursuant to a federal seizure warrant or restraining order and the seizing agency sends notice as soon as practicable, and in no case more than 60 days after the date of the federal seizure, or

- if the owner of the property consents to the forfeiture of the property.[16]

### B.4    Forfeiture proceedings to rectify inadvertent violations of the deadlines in 18 U.S.C. § 983(a)

Failure to comply with 18 U.S.C. § 983(a)(1) deadlines implicates § 983(a)(1)(F):

> If the Government does not send notice of a seizure of property in accordance with subparagraph (A) to the person from whom the property was seized, and no extension of time is granted, *the Government shall return the property* to that person *without prejudice to the right of the Government to commence a forfeiture proceeding at a later time.* The Government shall not be required to return contraband or other property that the person from whom the property was seized may not legally possess.

(emphasis added).

Seized property cannot remain in the government's possession indefinitely without giving interest holders an opportunity to contest the forfeiture in court. Consequently, absent extraordinary circumstances, when § 983(a)(1)(A)'s applicable notice deadlines pass without the government initiating a judicial forfeiture action of any kind, the property at issue must be returned to the person from whom it was seized.

---

[15]  26 U.S.C. § 1 *et seq.*

[16]  28 C.F.R. § 8.9(c)(4).

Absent extraordinary circumstances, once the government misses § 983(a)(1)(A)'s notice deadline for an administrative forfeiture proceeding and has returned the property pursuant to § 983(a)(1)(F), no new administrative forfeiture should be commenced against that same property based on the original violation.

Thus, when an agency and a federal prosecutor agree that circumstances warrant pursuing forfeiture of property despite a missed deadline for initiating administrative forfeiture, the forfeiture should be immediately pursued judicially. If the government pursues a criminal judicial action, it must obtain a criminal seizure warrant, a restraining order, or some other order under 21 U.S.C. § 853(e) to maintain custody of the asset. If the government pursues a civil judicial action, it must obtain an arrest warrant *in rem* or otherwise restrain the property pursuant to Rule G(3)(b) of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules), and execute that warrant to ensure that it has a lawful basis for maintaining custody of the property pending resolution of the case. Thereafter, pursuant to the newly executed civil or criminal process, the government should be authorized to maintain custody and control over seized property pending resolution of any claims. The government does not have to release the property and then re-seize it.

### C.  Timeliness and content of claims in administrative proceedings[17]

#### C.1  General rules

18 U.S.C. § 983(a)(2) sets the deadlines for filing claims to contest administrative forfeiture actions and outlines applicable content required for such claims. A person contesting an administrative forfeiture proceeding must file a claim with the seizing agency or forfeiture.gov no later than the deadline set forth in the notice letter or, if the potential claimant did not receive direct notice, no later than 30 days after the final day of publication of notice. *See* § 983(a)(2)(B). Section 983(a)(2)(C) further requires that claims identify the specific property at issue, state the claimant's interest in that property, and be submitted "under oath" and "subject to penalty of perjury." *See* § 983(a)(2)(C).

If an agency receives no claims that conform to the requirements, it may enter a declaration of forfeiture pursuant to 19 U.S.C. § 1609. When an agency receives a timely claim that meets the statutory content and form requirements, it must refer the case to the U.S. Attorney, who must either commence a civil or criminal forfeiture action in the district court within 90 days after the agency received the claim or return the property. *See* 18 U.S.C. § 983(a)(3)(A).

#### C.2  Resolving disputes as to form and content

In cases where a claim's content or timeliness is questionable, the seizing agency should consult promptly with the U.S. Attorney before deciding whether to issue a declaration of forfeiture or refer the case. Consultation should occur well before the 90-day deadline in 18 U.S.C. § 983(a) for commencing a civil judicial forfeiture action has expired, because § 983(a)(3)(B) will bar further civil forfeiture proceedings against that property if the government fails to meet the deadline.

---

[17] Sec. II.C's discussion in this chapter applies only to claims filed in administrative forfeiture proceedings commenced under statutes subject to 18 U.S.C. § 983. While Sec. II.C does not apply to claims filed in administrative proceedings exempted under the customs carve-out provision of § 983(i), agencies addressing claims filed in such proceedings are encouraged, in general terms, to assess and resolve claims having questionable timeliness, content, or verification in the manner outlined here.

### D. Plea and settlement negotiations involving property subject to administrative forfeiture

U.S. Attorneys should not agree to return property as part of a plea agreement or civil settlement if the property is subject to ongoing administrative forfeiture proceedings. U.S. Attorneys may not agree to return property as part of a plea agreement or civil settlement if the property is subject to completed administrative forfeiture proceedings.[18]

## III. Judicial Forfeiture Guidelines

### A. Parallel administrative, civil, and criminal forfeiture proceedings

It is well-settled that the government may pursue forfeiture of an asset in administrative, civil, and criminal judicial proceedings. Instituting one type of proceeding does not necessarily prevent the government from pursuing another type. Moreover, 18 U.S.C. § 983(a)(1)(A)(iii)(I) specifically contemplates that the government may pursue parallel administrative and criminal judicial forfeiture actions.

### B. Deadlines for instituting civil judicial forfeiture proceedings[19]

#### B.1 Statutory deadline for civil judicial forfeiture actions following administrative proceedings

18 U.S.C. § 983(a)(3) mandates that "not later than 90 days after a claim has been filed" in an administrative forfeiture proceeding, the government must file a civil forfeiture complaint, include the property in a criminal indictment, return the property, or obtain an extension of time from the court. Since § 983(a)(3)(A) states that "a court in the district in which the complaint will be filed may extend the period for filing a complaint," prosecutors should obtain a court order extending the filing deadline even if the claimant has stipulated to the extension.[20]

#### B.2 Preferred filing dates where no statutory deadlines apply

The 90-day deadline in 18 U.S.C. § 983(a) does not apply for two sets of circumstances:
(1) when an agency seized property that is eligible for administrative forfeiture but no administrative forfeiture proceedings are instituted[21] and (2) when an agency seizes property that is ineligible for administrative forfeiture.[22] Department policy provides *recommended* time limits for initiating a civil judicial forfeiture action against property in both situations.

---

[18] *See also* Chap. 11, Sec. I.B.4 in this *Manual*.

[19] Sec. III.B in this chapter does not apply to criminal forfeitures, which have no statutory deadline.

[20] This language has been interpreted by at least one court to permit an extension to be based solely on an agreement of the parties. *See United States v. Misc. Firearms*, Nos. 03–CV–1920 RMW, 09–CV–80136 RMW, 2012 WL 3877797, * 3 (N.D. Cal. Sept. 6, 2012). No court order allowing for the extension is referenced in the *Misc. Firearms* court's opinion.

[21] *See* Sec. III.B.2.a in this chapter.

[22] *See* Sec. III.B.2.b in this chapter; *see also* Sec. II.A discussing 19 U.S.C. § 1607, which provides that administrative forfeiture is not available for personal property valued at $500,000 or more, including $500,000 or more seized from a financial account and other classes of property.

### B.2.a    Property for which the government elects not to pursue administrative forfeiture

Given other statutory deadlines, when the government seizes property but elects not to pursue administrative forfeiture as a remedy, Department policy recommends that prosecutors commence a civil judicial forfeiture action against that property within 150 days after the seizure. This 150-day guideline mirrors the total of the 60-day deadline applicable for commencing administrative forfeiture proceedings, added to the 90-day period allowed for instituting a judicial forfeiture. This 150-day guideline not only conforms to other statutory provisions, but also avoids allegations that the government elected to forego administrative forfeiture to circumvent statutory deadlines and the policies that they embody.

### B.2.b    Property that is ineligible for administrative forfeiture

Where the seized property at issue is ineligible for administrative forfeiture pursuant to 19 U.S.C. § 1607, the Department recommends that prosecutors commence a civil judicial forfeiture action within 90 days after receiving a potential claimant's written request to release that property.[23] Some courts, reluctant to conclude that no deadline limits the period within which the government must file a judicial forfeiture action against property ineligible for administrative forfeiture, may press the Department litigators to concede otherwise. Department employees should resist such pressure; Congress set no such deadline. Moreover, it is not true that no legal deadline applies—courts have applied the Due Process Clause to set limits on how long the government may retain seized property absent the initiation of forfeiture proceedings. Accordingly, in a case where the agency or the Department receives a putative claimant's written request to return property that is ineligible for administrative forfeiture, the Department recommends that the prosecutor commence a judicial forfeiture action within 90 days of receiving the request.

## C.  Providing notice of judicial forfeiture actions

Although different statutes and rules authorize and govern civil and criminal judicial forfeiture proceedings, the mechanics of providing notice in both contexts are more similar than different.

### C.1  General rules governing notice by publication and direct notice in civil and criminal judicial forfeiture proceedings

The charts in Sections III.C.1.a and III.C.1.b compare the general rules governing direct notice and notice by publication in civil and criminal judicial forfeiture proceedings.[24] Prosecutors should comply with the applicable provisions.

---

[23] Nothing in this policy should be interpreted to allow a potential claimant to shorten the deadline for commencing an administrative forfeiture in a case where administrative forfeiture is authorized. In all events, in such cases the seizing agency will have 60 days (or 90 days in the case of adoptive forfeitures) to determine whether or not to proceed with the forfeiture proceeding. Although federal law gives agencies up to 90 days to send notice to interested parties in the case of adoptive forfeitures, Attorney General Order No. 3946-2017: Federal Forfeiture of Property Seized by State and Local Law Enforcement Agencies (July 19, 2017) requires them to send notice not later than 45 days after seizure, unless a senior official at the federal agency approves such an extension. *See* Chap. 3, Sec. IV.C in this *Manual*.

[24] *See* Rule G(4) of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules) and Federal Rule of Criminal Procedure 32.2(b)(6) (effective Dec. 1, 2009).

### C.1.a    Comparison of direct notice requirements chart

**COMPARISON OF DIRECT NOTICE REQUIREMENTS APPLICABLE TO CIVIL AND CRIMINAL JUDICIAL FORFEITURE PROCEEDINGS[25]**

| Direct Notice | Civil | Criminal |
|---|---|---|
| **Must be sent** | Per Supp. R. G(4)(b)(i), **to:** "any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under R. G(5)(a)(ii)(B)." | Per Fed. R. Crim. P. 32.2(b)(6)(A), **to:** "any person who reasonably appears to be a potential claimant with standing to contest the forfeiture." |
| **Content** | Per Supp. R. G(4)(b)(i) & (ii), **must contain**: **copy of the complaint**, and **document outlining:** (**1**) "the date when the notice is sent;" (**2**) the deadline for filing a claim falling at least 35 days after the notice is sent, and that an answer or Rule 12 motion is due no later than 21 days after claim is filed; **and** (**3**) the name of the government attorney upon whom to serve the claim and answer. | Per Fed. R. Crim. P. 32.2(b)(6)(B), **must:** **describe** the forfeited property, **state** the times when a petition contesting the forfeiture must be filed, **and** **state** the name and contact information for the government attorney to be served with the petition (same as required for publication). |
| **Means** | Per Supp. R. G(4)(b)(iii), **notice:** **must** be "sent by means reasonably calculated to reach the potential claimant;" **may** be sent to "the potential claimant," or the "attorney representing the potential claimant with respect to the seizure of the property or in a related investigation, administrative forfeiture proceeding, or criminal case." **must** be sent to "the place of incarceration" **if potential claimant is incarcerated**. **may** be sent to "the address that person last gave to the agency that arrested or released the person," if potential claimant was "arrested in connection with an offense giving rise to the forfeiture" but is no longer incarcerated when notice is sent. **may** be sent to "the last address that person gave to the agency that seized the property," if a person from whom the property was seized is not incarcerated when notice is sent. | Fed. R. Crim. P. 32.2(b)(6)(D) incorporates and adopts means of direct notice specified in Supp. R. G(4)(b)(iii)–(v). |

---

[25] For real property, the government must serve notice on the property owner. *See* 18 U.S.C. § 985(c)(1)(C); *see also* Chap. 4 in this *Manual*.

### C.1.b   Comparison of publication notice requirements chart

**COMPARISON OF PUBLICATION NOTICE REQUIREMENTS APPLICABLE TO CIVIL AND CRIMINAL JUDICIAL FORFEITURE PROCEEDINGS**

| Publication | Civil | Criminal |
|---|---|---|
| **When** | Per Supp. R. G(4)(a)(i): "**within a reasonable time** after filing the complaint or at a time the court orders." | Per Fed. R. Crim. P. 32.2(b)(6)(A), **after** "the court orders forfeiture of specific property" under R. 32.2(b)(2). |
| **Content** | Per Supp. R. G(4)(a)(ii)(A)–(C), **must**: **describe** the property with reasonable particularity, **state** the deadlines for claims and answers, **and** **name** the government attorney to be served with the claim and answer. | Per Fed. R. Crim. P. 32.2(b)(6)(B), **must**: **describe** the forfeited property, **state** the times when a petition contesting the forfeiture must be filed, **and** **state** the name and contact information for the government attorney to be served with the petition. |
| **Means** | Per Supp. R. G(4)(a)(iv), **must be:** "reasonably calculated to notify potential claimants of the action"— **by posting on forfeiture.gov** for at least 30 consecutive days; **OR** **if the property is in the U.S.**, publication in a generally circulated newspaper in the district where the action is filed, where the property was seized, or where property that was not seized is located, **OR** **if the property is outside the U.S.**, publication in a generally circulated newspaper in the district where the action is filed, in a generally circulated newspaper in the country where the property is located, or in generally published legal notices in the country where the property is located. | Fed. R. Crim. P. 32.2(b)(6)(C) incorporates and adopts the procedures outlined in Supp. R. G(4)(iii)(iv), with certain exceptions. |
| **Frequency** | Per Supp. R. G(4)(a)(iii), **notice must appear:** Once a week for 3 consecutive weeks, **OR** Once, if notice of administrative forfeiture proceedings against the same property were published at forfeiture.gov for 30 days, **OR** Once, if notice of administrative forfeiture proceedings against the same property were published for 3 consecutive weeks in an authorized district. | Fed. R. Crim. P. 32.2(b)(6)(C) incorporates and adopts frequency specified in Supp. R. G(4)(a)(iii). |

| Publication | Civil | Criminal |
|---|---|---|
| **Not Required** | Per Supp. R. G(4)(a)(i) **if:**<br><br>Property is worth less than $1,000, **and** direct notice dispatched as required by Supp. R. G(4)(b) to "every person the government can reasonably identify as a potential claimant,"[26] **OR**<br><br>Court finds that publication cost exceeds property's value and "other means of notice would satisfy due process." | Per Fed. R. Crim. P. 32.2(b)(6)(C), **if** a Rule G(4)(a)(i) exception applies; **and**<br><br>Per Fed. R. Crim. P. 32.2(b)(6)(A) **for**: generic forfeiture orders **or** money judgments.[27] |

### C.2   Notice policies specific to civil judicial forfeiture proceedings

Rule G(4)(b)(i) of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules) requires that the government send direct notice and a copy of the complaint to "any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)."  Department policy views anyone who appears likely to be able to show that they are an "owner" as defined in 18 U.S.C. § 983(d)(6) as entitled to direct notice of a civil forfeiture action.  In contrast, because § 983(d)(6) excludes persons with general unsecured interests in or claims against the property or estate of another from the definition of "owners," Department policy treats these persons as outside the class of persons entitled to receive direct notice of a civil forfeiture proceeding.

### C.3   Notice policies specific to criminal judicial forfeiture proceedings

Because Federal Rule of Criminal Procedure 32.2(b)(6) sets no deadlines for publishing notice of a preliminary order of forfeiture or for supplying direct notice to potential petitioners that a court has entered such an order, the government should simply effect the notice as soon as practicable. Moreover, the government should send direct written notice to any person who reasonably appears to be a potential petitioner with standing to contest the forfeiture of property at issue in the ancillary proceeding.

## D.   Issues specific to civil judicial proceedings

### D.1   Initiating and pursuing civil forfeiture proceedings against facilitating property used or intended to be used to facilitate criminal activity

Property used to facilitate the commission of a crime—that is, property that makes a crime easier to commit or harder to detect—or property that constitutes instrumentalities of a crime is generally

---

[26] Because internet publication costs essentially nothing, litigators may decide to use this means in all judicial forfeiture cases rather than run the risk of challenges based on whether the value of the asset is actually below the $1,000 threshold.

[27] *See* Federal Rule of Criminal Procedure 32.2(b)(6)(A), which requires publication only "[if] the court orders the forfeiture of specific property."

referred to as "facilitating property."[28] Unlike the proceeds of crime, which are acquired by the criminal wrongdoer as a direct result of the crime, facilitating property may be legally acquired but nonetheless subject to forfeiture because of how it is used. Thus, property may be forfeited on a theory of facilitation if it is used to commit or conceal illicit activity, even if the person who uses the property is not the owner. However, precisely because persons unrelated to criminal activity may lawfully own facilitating property, prosecutors must be mindful of the rights of property owners before filing a civil forfeiture complaint against facilitating property.

The policies in this section are intended to ensure that the compelling law enforcement interest in civilly forfeiting facilitating property is appropriately balanced with the rights of property owners.[29] This guidance applies with respect to the filing of a civil forfeiture complaint that includes a theory of facilitation; it does not apply to the seizure or restraint of property (except the seizure of an operating business), to the filing of a complaint against the proceeds of a crime, or to a criminal forfeiture proceeding involving facilitating property.

Although some of the guidance may be useful in determining whether to initiate a criminal forfeiture proceeding against facilitating property, this policy is limited specifically to civil forfeiture proceedings because of important distinctions relating to the government's standard of proof and a property owner's defenses. For example, unlike civil forfeiture proceedings, criminal forfeiture proceedings are predicated on the conviction of a criminal defendant, on proof beyond a reasonable doubt, for a criminal offense supporting the forfeiture.

### D.1.a "Substantial connection" between the property subject to forfeiture and the underlying criminal activity

In any case in which the government seeks to pursue a civil forfeiture proceeding against property that either facilitated or was "involved in" the commission of an offense, the government must demonstrate a "substantial connection" between the property subject to forfeiture and the underlying criminal activity. *See* 18 U.S.C. § 983(c)(3). Although the statute does not define the phrase "substantial connection," at a minimum, the government must show that "use of the property made the prohibited conduct less difficult or more or less free from obstruction or hindrance." *See United States v. Herder*, 594 F.3d 352, 364 (4th Cir. 2010) (internal citation omitted).

---

[28] Statutes that provide for forfeiture of property "involved in" an offense—such as 18 U.S.C. § 981(a)(1)(A), which permits forfeiture of property "involved in" various money laundering offenses—allow for forfeiture of property that facilitated the offense as well as, for example, proceeds of specified unlawful activity laundered through the money laundering offense and commissions that the money launderer earned as a result of the offense. This guidance addresses only the facilitating property "involved in" those offenses; it does not apply to either the criminal proceeds laundered through, or the commissions earned as a result of, the money laundering offense.

[29] The terms "property owner" and "owner" refer not only to title owners of property, but also to persons or entities having a statutorily recognizable interest in all or a portion of the property subject to forfeiture, such as "a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest." *See* 18 U.S.C. § 983(d)(6)(A).

Prosecutors must consider:

- whether the property had more than a negligible, inconsequential, incidental, tangential, or merely fortuitous role in facilitating or concealing the criminal activity;[30]

- whether the property was specifically designed, adapted, or modified to facilitate or conceal the criminal activity, or the property otherwise possessed unique features or characteristics making it particularly useful for facilitating or concealing the criminal activity; and

- the amount of time that the property was used, the frequency of such use, and portion of the property used in facilitating or concealing the underlying criminal activity.

No single factor is dispositive; collectively these factors provide a basic framework for prosecutors to assess whether there exists a "substantial connection" between the property and the underlying criminal activity.

To ensure that these factors are applied to address compelling law enforcement needs in a judicial district, prosecutors must obtain written authorization from their respective U.S. Attorney, or a designee, before filing any civil forfeiture complaint based on a theory that the property facilitated or concealed underlying criminal activity. The authorizing official may approve the filing of a complaint after determining that, based on a review of the case and the factors listed above, there is a substantial connection between the property and the underlying criminal activity. That written authorization must be retained in the forfeiture case file. Criminal Division trial attorneys, or other Department components not partnering with a USAO in the prosecution, must obtain approval from the Chief of the Money Laundering and Asset Recovery Section (MLARS).

### D.1.b    Civil forfeiture proceedings against operating businesses

Because of the complexities of seizing and forfeiting an operating business,[31] and the potential for substantial losses to the owner, other persons such as shareholders and employees, and the government itself, as well as the potential exposure to liabilities arising from the business, prosecutors must obtain written approval from their respective U.S. Attorneys before seizing or filing a civil forfeiture complaint against an operating business based on a facilitation theory. The U.S. Attorney may not delegate this approval authority.[32]

This policy and the prior approval requirement apply only when a prosecutor seeks to civilly forfeit under a facilitation theory an operating business itself or all or most of the property necessary for an operating business to continue operations. Therefore, it would not apply when a prosecutor seeks to forfeit only an individual asset or some discrete property of an operating business, the forfeiture of which would not cause a substantial or complete disruption or discontinuance of business operations

---

[30] As an example, use of a large parcel of property merely as a shortcut for transporting contraband from a property outside the parcel to another property outside the parcel generally would have only a fortuitous connection to the criminal activity. *See United States v. Two Tracts…in Carteret Cty., NC*, 998 F.2d 204, 210–14 (4th Cir. 1993).

[31] *See* Chap. 1, Sec. I.D.2 and Chap. 2, Sec. VI in this *Manual* for a full discussion of the policies and procedures involved in the seizure or restraint of an operating business and its property.

[32] Although this authority is ordinarily non-delegable, if the U.S. Attorney is recused from a matter or absent from the office, this authority may be exercised by an acting U.S. Attorney selected in the manner prescribed by regulation. *See* 28 C.F.R. § 0.137.

(*e.g.*, a car when the business has multiple vehicles; an individual parcel, among many, of real property; or a single financial account among several).

When evaluating whether to seize, restrain, or file a civil forfeiture action against an operating business based on a facilitation theory, prosecutors must consider:[33]

- the nature, management structure, and ownership of the operating business;

- the nature and seriousness of the criminal activity, including the risk of harm to the public;

- the nature and extent of the operating business's involvement in the facilitation or concealment of the underlying criminal activity;

- the pervasiveness of wrongdoing within the business, including the complicity in, or the condoning of, the wrongdoing by its principals, including corporate management and ownership;

- collateral consequences, including whether there is disproportionate harm to shareholders, pension holders, employees, and others not proven personally culpable, as well as effect on the public arising from forfeiture of the operating business; and

- the adequacy of other remedies, such as a restraining order, protective order, or other court-approved remedy in lieu of seizure and forfeiture of the business.

If a prosecutor obtains approval to seek an order authorizing seizure or restraint of an operating business before filing a civil forfeiture complaint, the prosecutor must file the complaint within 60 days of seizing or restraining that business. An exception to the 60-day requirement is permissible only with the written consent of the owner, pursuant to which the prosecutor can extend the deadline by 60 days, and upon approval from an appropriate official. Further extensions, even with consent of the owner, are not permitted unless the prosecutor has obtained the approval discussed below.

- Assistant U.S. Attorneys (AUSAs) must obtain approval from their respective U.S. Attorney. The U.S. Attorney may not delegate this approval authority, except as discussed in footnote 32 in this section.

- Criminal Division trial attorneys, or other Department components not partnering with a USAO in the investigation or prosecution, must obtain approval from the Chief of MLARS. The Chief of MLARS may not delegate this approval authority.

If additional evidence becomes available after the affected business has been released from seizure or a restraining order, a civil forfeiture complaint may still be filed with applicable approval of the new action.

---

[33] Before seizing or filing a complaint against an operating business under any available forfeiture theory, prosecutors should consult MLARS on the seizure and restraint of an operating business and its property. *See* Chap. 1, Sec. I.D.2 and Chap. 2, Sec. VI in this *Manual*.

### D.1.c    Civil forfeiture proceedings against personal residences[34]

To reduce the potential risk of subjecting innocent third parties to litigation to protect their lawful interests in their own homes, prosecutors must obtain written approval from their respective U.S. Attorneys before filing a civil forfeiture complaint against personal residences based on a facilitation theory.  For purposes of this policy, the term "personal residence" refers to a primary residence occupied by the title owner(s).  The U.S. Attorney may not delegate this approval authority except as discussed in Section III.D.1.b in this chapter.  Criminal Division trial attorneys, or other Department components not partnering with a USAO in the prosecution, must obtain approval from the Chief of MLARS.  The Chief of MLARS may not delegate this approval authority.

To determine whether the proposed forfeiture of a residence serves a compelling law enforcement interest, prosecutors must consider:

- the nature of the underlying criminal activity being facilitated by the residence;

- the extent to which the property was used to facilitate or conceal the underlying criminal activity, including factors such as the amount of time that the property was used, the frequency of the use, and the portion of the property used in facilitating or concealing the underlying criminal activity;

- whether the perpetrator or any other persons involved in the underlying criminal activity have an ownership interest in or reside at the residence; and

- if the owners of the residence are neither the perpetrators nor otherwise involved in the underlying criminal activity, whether they would likely prevail on an innocent owner defense, as discussed in Section III.D.2.a in this chapter, or otherwise meet the criteria in 18 U.S.C. § 983(d)(3)(B).

### D.2    Pre-filing due diligence on defenses to forfeiture

Even if the government meets its burden of establishing by a preponderance of the evidence a "substantial connection" between the facilitating property and the underlying criminal activity, property owners can still assert defenses to defeat or reduce the forfeiture.  Before filing a complaint, prosecutors must take all reasonable steps to determine the likelihood of a potentially meritorious defense.  This analysis will depend in part upon whether the property subject to forfeiture is owned or controlled by the person or persons involved in the criminal activity or owned or otherwise controlled by a third party.

### D.2.a    Innocent owner

The law entitles any claimant with standing to assert a defense, after the government has sustained its initial burden of proof on forfeitability, that the claimant qualifies as an innocent owner of the property as defined in 18 U.S.C. § 983(d).  There are two different innocent owner defenses: one applies to persons who held their property interests while the illegal activity was occurring; the other applies to persons who acquired their interest in the property only after the illegal activity occurred.

---

[34] *See* Chap. 4 in this *Manual* for a full discussion of the policies and procedures involving the unique issues that arise before and during forfeiture of real property.

Persons who had an interest in the property at the time the illegal activity was occurring can defeat the government's forfeiture claim by establishing that:

(1) they did not know of the conduct giving rise to the forfeiture,[35] *see* § 983(d)(2)(A)(i), or

(2) upon learning of the conduct, they did all that reasonably could be expected, under the circumstances, to terminate such use of the property, including

    (i) giving timely notice to an appropriate law enforcement agency of information that led the person to know the conduct giving rise to a forfeiture would occur or has occurred, and

    (ii) in a timely fashion, revoking or making a good faith attempt to revoke permission for those engaging in such conduct to use the property or taking reasonable actions in consultation with a law enforcement agency to discourage or prevent the illegal use of the property. *See* 18 U.S.C. § 983(d)(2)(A)(ii) and (B)(i)(I)–(II).[36]

Persons who acquired an interest in the property after the illegal activity occurred can also defeat the government's forfeiture claim by establishing that they qualify as a bona fide purchaser for value of the interest, and at the time they acquired the interest, they did not know and were reasonably without cause to believe that the property was subject to forfeiture. *See* § 983(d)(3). When evidence available before filing a civil forfeiture complaint demonstrates that the likely owner of the property used to facilitate or conceal the underlying criminal activity was either the perpetrator of or knowing participant in the activity, that evidence should be sufficient to overcome any "innocent owner" defense.[37] If, however, the likely owner is not the perpetrator of, or a knowing participant in, the underlying criminal activity, prosecutors must take all reasonable steps, before filing a civil forfeiture complaint, to ascertain whether the likely owner may have a viable "innocent owner" defense.

---

[35] In determining actual knowledge, some courts continue to subscribe to a concurrent willful blindness test. *See United States v. $822,694.81 in U.S. Currency*, No. 3:13-cv- 00545-DFM, 2019 WL 4369936, \*5–6 (D. Conn. Sept. 12, 2019); *United States v. 1988 Beachcraft Power Boat*, No. 4:01-cv-10054-JJO, D.E. 86 (S.D. Fla. Nov. 21, 2002).

[36] However, such persons are not required to take steps they reasonably believe would be likely to subject any person (other than the person whose conduct gave rise to the forfeiture) to physical danger. *See* 18 U.S.C. § 983(d)(2)(B)(ii).

[37] Before a forfeiture complaint is filed, it is not always readily apparent who may have an ownership interest in particular property. Nonetheless, the government must take reasonable efforts before filing the complaint to identify any person or entity with a likely ownership interest.

In making this determination, prosecutors must consider whether the likely owner:

- has standing to maintain a claim in the forfeiture proceeding;

- is merely a nominee or straw owner for the perpetrator of the criminal activity;

- had knowledge of, consented to, or was otherwise willfully blind to illegal use of the property at the time of the criminal activity;

- learned of the illegal use after the fact, but failed to take reasonable and timely steps to properly notify law enforcement or to prevent further illegal use of the property;

- financially or otherwise benefitted from the property's involvement in the criminal activity; or

- would qualify as a bona fide purchaser for value who was reasonably without cause to believe that the property was subject to forfeiture, if the likely owner acquired the property after the criminal activity subjecting the property to forfeiture had been completed.[38]

If a pre-filing investigation reveals that the sole owner or all owners with standing have a viable innocent owner defense, prosecutors should refrain from proceeding with a forfeiture action against that property. In a case where there may be more than one potential owner of the same property, it may be possible to proceed with the forfeiture but agree to mitigate the forfeiture to recognize the interests of the owners who would likely qualify as innocent owners.

### D.2.b   Grossly disproportional

Civil forfeiture, regardless of the nature of the relationship between the property and the criminal activity, shall not be "grossly disproportional to the gravity of the offense." *See* 18 U.S.C. § 983(g). A property owner may challenge the forfeiture of facilitating property on this ground. Rule G(8)(e) of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules) requires that a property owner who seeks to mitigate the forfeiture based on excessiveness do so by pleading it in the answer to give the parties an opportunity to conduct discovery relating to the defense. In anticipation of this defense, prosecutors must make reasonable efforts to develop evidence

---

[38] The relevance of each of the various factors will depend on whether the likely owner had an interest in the property when it was used in the commission or concealment of underlying criminal activity or whether they acquired an interest after the property's involvement in the activity.

and articulate reasons why forfeiture of facilitating property, or a portion of the property, would not be grossly disproportionate to the underlying criminal activity. Relevant factors include:

- the seriousness of the underlying criminal activity;

- the extent of the owner's involvement in or knowledge of the use of the property in the commission or concealment of the criminal activity;

- the extent to which the property was involved in the criminal activity;

- the effect of the criminal activity, and the property's use in the activity, on the community or identifiable victims; and

- the value of and equity in the property.

After consideration of these and any other relevant factors, if prosecutors determine that forfeiture of the facilitating property would be grossly disproportionate to the criminal activity, then they must attempt to mitigate the forfeiture. For example, a prosecutor may seek to forfeit only a divisible portion of the property otherwise subject to civil forfeiture. When mitigation is not possible, it may be appropriate to forego the forfeiture action altogether, unless doing so would potentially deprive victims of recovery of their losses.

This policy addresses the exercise of investigative and prosecutorial discretion and does not alter in any way the Department's authority to enforce federal law. Neither the policies set forth in this section nor any state or local law provides a legal defense to a violation of federal law, including any civil or criminal violation.

### D.3  Other civil forfeiture litigation issues

Civil forfeiture litigations may present other legal issues. For a discussion of the preservation policy in civil forfeiture litigations, negotiations with fugitives, and Fifth Amendment advisements, consult Chapter 7 in this *Manual*.

## E.  Issues specific to criminal judicial proceedings

### E.1  Finality of criminal forfeiture

A criminal forfeiture is not final unless the defendant has been sentenced. In cases where specific property[39] is forfeited, the criminal forfeiture is not final unless the government has provided notice of the forfeiture, and the court has resolved any ancillary petitions filed by third parties who have claimed interests in the specific property. Entering a "final judicial order" of criminal forfeiture in the Consolidated Asset Tracking System (CATS) prior to these events jeopardizes the overall operations of the Department's Asset Forfeiture Program (Program). Accordingly, USAOs shall not enter in CATS as the "final judicial order" in a criminal matter: (1) any date prior to the date of the defendant's sentencing, and (2) in cases where specific property is forfeited, any date prior to the expiration of the time frame to file a third-party petition and the conclusion of any ancillary proceedings.

---

[39] As used herein, the term *specific property* means property identified as having a nexus to the underlying offense and substitute assets; it does not include forfeiture money judgments.

### E.1.a    Importance of the proper recordation of finality

Forfeited property is not available for any purpose—whether for victim compensation, for law enforcement use, or for distribution as equitable sharing—until the forfeiture is final, the time to appeal the forfeiture has expired, and forfeited funds have been transferred from the Seized Asset Deposit Fund (SADF) to the Assets Forfeiture Fund (AFF).  Therefore, proper recordation of the finality date is critical to the Program's operations.

Proper recordation of the date of finality protects the financial status of the AFF.  For example, if Program participants improperly enter in CATS the date of a "final judicial order" before the criminal forfeiture becomes final, the AFF will prematurely recognize the forfeiture as revenue.  Alternately, if the forfeiture is not timely entered in CATS after becoming final, the AFF cannot properly account for revenue.  Both scenarios can lead to misstatements in the AFF's financial statements and can also affect the accuracy of the forfeiture data the Department reports annually to Congress and the public.

Proper recordation of the date of final criminal forfeiture also protects the Department's ability to compensate victims through its remission authorities by ensuring that victims are not paid from the AFF before a forfeiture is final, in the event the forfeiture is later reversed, abated, or otherwise vacated.  Similarly, proper entry of the date of finality eliminates the risk that forfeiture recoveries will be distributed prematurely under the Department's Equitable Sharing Program.

### E.1.b    Legal analysis to determine when forfeiture becomes final

The following legal principles guide USAOs' finality determinations: the sentencing requirements that apply to all criminal forfeitures and the notice and ancillary proceeding requirements that apply to the criminal forfeiture of specific property.

### E.1.b.1 Sentencing requirement applicable to all criminal forfeitures

Criminal forfeiture is final as to the defendant at sentencing.  *See*, *e.g.*, *Libretti v. United States*, 516 U.S. 29, 39 (1995) (stating that criminal forfeiture is "an aspect of punishment imposed following conviction of a substantive criminal offense"); 18 U.S.C. § 3554 (order of criminal forfeiture part of sentence); 28 U.S.C. § 2461(c) ("If the defendant is convicted of the offense giving rise to forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case").  At sentencing, the court must "include the forfeiture when orally announcing the sentence" or "otherwise ensure that the defendant knows of the forfeiture at sentencing." *See* Federal Rule of Criminal Procedure 32.2(b)(4)(B).  The sentencing court must also include the forfeiture order in the judgment. *Id.*  Failure to comply with the notice and inclusion requirements of Rule 32.2 at sentencing may result in no forfeiture, even where preliminary and final orders of forfeiture have been entered in the case. *See*, *e.g.*, *United States v. Petix*, 767 F. App'x. 119, 121–23 (2d Cir. 2019) (vacating monetary forfeiture judgment because it was not orally announced at sentencing, despite prior entry of forfeiture order).

Because criminal forfeiture does not become final as to the defendant until the defendant is sentenced in accordance with the notice and inclusion requirements of Rule 32.2(b)(4)(B), sentencing is the earliest possible date of finality.  Any "freestanding" orders of forfeiture entered after conviction, but prior to sentencing—*e.g.*, preliminary orders of forfeiture, forfeiture money judgments, or final orders of forfeiture under Rule 32.2(b)(4)(A)—do not perfect the forfeiture.  This is true even

if the defendant makes voluntary payments on a forfeiture money judgment prior to sentencing, or if a defendant consents to the forfeiture and to the early entry of a final order, as contemplated by Rule 32.2(b)(4)(A). *See United States v. Shakur*, 691 F.3d 979, 986–87 (8th Cir. 2012) (a final order of forfeiture that is not part of the judgment "has no effect"); *United States v. Bennett*, 423 F.3d 271, 275–76 (3d Cir. 2005) ("a freestanding final order of forfeiture" imposed seven weeks after sentencing "has no legal effect"; "Except in ancillary forfeiture proceedings…a final order of forfeiture that is not part of the judgment of sentence has no effect" (internal citation omitted)).

### E.1.b.2 Notice and ancillary proceeding requirements applicable to the criminal forfeiture of specific property

In criminal cases where the government seeks to forfeit specific property, the court must conduct an ancillary proceeding to address any potential third-party claims to the property. *See* 21 U.S.C. § 853(n); Federal Rule of Criminal Procedure 32.2(c). The ancillary proceeding must, at a minimum, consist of publishing notice of the forfeiture. *See* § 853(n)(1); Rule 32.2(b)(6) (incorporating the means of publication provided in Rule G(4)(a)(iii) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions). In addition, the government must send direct notice of forfeiture "to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding." *See* Rule 32.2(b)(6)(A).

While forfeiture of specific property is final as to the defendant at sentencing, it is only final as to the world when—and title does not pass to the government until—the ancillary proceeding concludes, and the court has resolved all third-party petitions. *See* § 853(n)(7); Rule 32.2(c)(2) (requiring the court to enter a "final order of forfeiture" at the conclusion of the ancillary proceeding). In accordance with the legal principles discussed above and the need to protect the financial integrity of the Program, Program participants shall not enter into CATS the date of the "final judicial order" forfeiting specific property any date prior to (1) sentencing *and* (2) the conclusion of the ancillary proceeding to resolve third-party petitions, or if no petitions are filed, the expiration of the deadline for filing a petition in response to direct and published notice of forfeiture. In circumstances where no third-party petition is filed in response to a preliminary order forfeiting specific property, the best practice is to request that the court enter a final order of forfeiture.[40]

### E.2   Best practice when property identified as subject to forfeiture in a criminal proceeding is forfeited administratively

In cases where the government institutes administrative and criminal forfeiture proceedings simultaneously and no one files a claim in the administrative proceeding, the agency should complete the administrative forfeiture. Thereafter, the prosecutor handling the criminal case should file a "notice" in the criminal proceeding that reports the completed forfeiture and serve the notice on the defense.

---

[40] As an alternative to filing a final order of forfeiture in an uncontested ancillary proceeding, the government may file an advisory "notice of finality," indicating the date(s) when, and manner in which, notice of the preliminary order was provided and fact that no petition was filed; however, a "notice of finality" does not serve as the "final judicial order" of criminal forfeiture for purposes of CATS. Instead, USAOs should enter into CATS the claim deadline date or the sentencing date, whichever is later.

### E.3   Correcting errors of law in criminal judicial forfeiture proceedings[41]

To try to identify errors before sentencing, prosecutors should recommend to the court that it follow Federal Rule of Criminal Procedure 32.2(b)(2)(B) and issue preliminary orders of forfeiture "sufficiently in advance of sentencing to allow the parties to suggest revisions or modification before the order becomes final as to the defendant" at sentencing "unless doing so is impractical."

Due to varied law on correction of errors, when errors occur during sentencing, the period for correcting such errors is potentially very short.  Prosecutors should presume that courts may construe their motions to correct errors of law as Federal Rule of Criminal Procedure 35(a) motions to correct sentence that do not toll Appellate Rule 4(b)'s deadlines.  When confronted with a forfeiture error of law at sentencing, a prosecutor should file a motion for reconsideration but urge the court to rule on it within 14 days of the sentence.  In addition, no matter what title the motion bears, the prosecutor should not presume that filing it will toll appellate deadlines, but instead, should file a notice of appeal before the 30th day under Appellate Rule 4(b)(1)(B), regardless of the status of a pending motion for reconsideration.  As a courtesy to the district court, the prosecutor may want to advise the court of this policy to ensure that the court understands what compels the government to file a notice of appeal— which divests the district court of jurisdiction—even though the court may have scheduled a hearing on the government's motion.

### E.4   Criminal forfeiture and *Brady* obligations

In criminal forfeiture matters, the government has not only an ethical but also a legal duty to disclose information favorable to the defendant as to either guilt or punishment.  *See Brady v. Maryland*, 373 U.S. 83 (1963) ("suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution").[42]  Forfeiture is an element of the sentence, and thus forms part of the punishment imposed on the defendant.  *See Libretti v. United States*, 516 U.S. 29, 38–39 (1995).  Accordingly, *Brady* requires the government, even without a request by the defendant, to disclose evidence favorable to the defendant that relates to criminal forfeiture.

## IV.   Firearms Forfeiture Policy

It is Department policy to forfeit seized firearms and ammunition.  Firearms are a unique type of personal property, and the forfeiture of firearms presents challenging issues involving complex firearms regulations, property ownership, and constitutional rights.  For further details on firearms forfeiture matters, prosecutors and law enforcement agencies should consult MLARS.

### A.   Preference for forfeiture

As a practical matter, forfeiture is the best way to dispose of crime-related firearms and ammunition, as reflected in the many specific and general forfeiture statutes that apply to firearms.  Forfeiture

---

[41]  The government may move to correct a clerical error at any time pursuant to Federal Rule of Criminal Procedure 36.  For example, if the error was simply the district court's failure to make the order of forfeiture part of the judgment as required by Federal Rule of Criminal Procedure 32.2(b)(3), in most circuits the error could be corrected pursuant to Rule 36.

[42]  *United States v. Agurs*, 427 U.S. 97, 110–111 (1976) (extended the rule announced in *Brady* to apply to evidence that "is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request").

proceedings provide the best and clearest protections for the due process rights of firearms' owners,[43] including innocent third parties who may have a lawful interest in firearms that have been stolen or otherwise used without the owners' knowledge and consent. In any case where firearms or ammunition have been seized for forfeiture, any plea agreement should specifically address the forfeiture or other disposition of seized firearms or ammunition.

In criminal prosecutions where the government has included the notice of forfeiture of firearms or ammunition as part of the indictment, any plea agreement must specifically address the forfeiture or other disposition of those items. Failure to address the forfeiture or other disposition of firearms in the plea agreement leaves the seizing agency in the difficult situation of determining how to dispose of personal property that cannot be returned to a possessor (typically, a prohibited person) and cannot be destroyed because the government has not obtained title to that property via the forfeiture process. This results in the unnecessary expenditure of government resources and delays the destruction of or other disposition of the property.

### B.  Administrative and civil judicial forfeiture of firearms deadline issues

The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) has jurisdiction to pursue administrative forfeitures under the Gun Control Act, 18 U.S.C. § 921 *et seq*. The Federal Bureau of Investigation (FBI) and Drug Enforcement Administration (DEA) have authority to administratively forfeit firearms used in drug trafficking or firearms as proceeds of drug trafficking. The CBP has administrative forfeiture authority in limited circumstances (*e.g.*, firearms seized during alien smuggling) as well.

Firearms and ammunition are subject to specific deadlines for the commencement of forfeiture actions pursuant to the forfeiture authority in the Gun Control Act. Under 18 U.S.C. § 924(d)(1), "[any] action or proceeding for the forfeiture of firearms or ammunition shall be commenced within one hundred and twenty days of such a seizure." The commencement of an administrative forfeiture action within the 18 U.S.C. § 983(a) deadlines has been held to meet this deadline. However, courts have not reconciled the statutory 120-day deadline in § 924(d)(1) for forfeiture under the Gun Control Act with those situations where delay in sending notice of a forfeiture action is permitted under § 983(a)(1)(D). As a precaution, the ATF should commence administrative forfeiture before the 120-day deadline, or request that the USAO seek a criminal indictment that includes a notice of criminal forfeiture for the firearm or ammunition if possible.

The ATF also has jurisdiction to pursue administrative forfeitures under the National Firearms Act. However, because the National Firearms Act is part of the Internal Revenue Code, Title 26, United States Code, forfeiture cases based on Title 26 offenses are exempted from the statutory civil forfeiture deadlines by 18 U.S.C. § 983(i) (generally known as the "customs carve-out"). These forfeitures are instead governed by the customs laws—19 U.S.C. §§ 1602–1619.

---

[43] *See Henderson v. United States*, 575 U.S. 622, 629–631 (2015) (holding that although 18 U.S.C. § 922(g) bars courts from ordering firearms returned to their felon-owner, it permits the court-ordered transfer of firearms to a third party of the felon's choosing so long as the recipient will not grant the felon access to, or accede to the felon's instructions about, the future use of the firearm).

### C. Firearms are treated differently

Forfeited firearms and ammunition are treated differently from other types of forfeited property in several respects. As explained below, they are not equitably shared with state and local law enforcement; they are not sold; and most often, they are destroyed.

Firearms are neither equitably shared with non-federal law enforcement agencies nor sold.[44] Forfeited firearms may be placed into federal official use (*e.g.*, by a federal investigative agency for federal law enforcement use, ballistics testing, or display). For example, in rare cases, firearms with significant educational, scientific, or historic value may be placed into official use for display purposes, such as at The Smithsonian Institution or another federally funded museum, or at one of the U.S. military academy museums. The ATF or the U.S. Marshals Service (USMS) may approve this type of official use only after the subject firearms have been rendered inoperable.

Minimum value and net equity thresholds do not apply to firearms. As explained in Chapter 1, Section I.C.3 in this *Manual*, an exception to the net equity thresholds exists where a particular forfeiture serves a compelling law enforcement interest. The Department has concluded that the forfeiture of firearms and ammunition involved in crime constitutes a compelling law enforcement interest. Because cheap firearms used criminally cause harm the same as expensive ones, there is a strong law enforcement interest in removing both types from circulation. Moreover, the federal government generally destroys forfeited firearms and ammunition and never resells them. Accordingly, their potential resale value is irrelevant to the determination whether to forfeit them. Therefore, unlike most forms of personal property, forfeitable firearms and ammunition should be forfeited regardless of their monetary value.

Unlike other types of forfeited property, federally forfeited firearms and ammunition may not be sold, except as scrap. 18 U.S.C. § 3051(c)(3) provides that "[notwithstanding] any other provision of law, the disposition of firearms forfeited by reason of a violation of any law of the United States shall be governed by the provisions of section 5872(b) of the Internal Revenue Code of 1986." 26 U.S.C. § 5872(b) provides that no notice of public sale is required as to forfeited firearms and that no forfeited firearm may be sold at public sale. Although § 5872(b) permits forfeited firearms to be retained for federal official use, forfeited firearms are not transferred to state or local law enforcement agencies through equitable sharing or otherwise. Although § 5872(b) indicates that the General Services Administration (GSA) could sell forfeited firearms to state or local governments, GSA has determined that it will not do so. *See* 41 C.F.R. § 102-41.200 & 102-40.175. As a result, seized and forfeited firearms cannot be sold and are generally destroyed.

Because law and Department policy prohibit the sale of federally forfeited firearms, prosecutors should not enter into any agreement calling for the sale of forfeited firearms and the distribution of proceeds from any such sale. Prosecutors should bring this prohibition on sale of forfeited firearms to the attention of the court whenever necessary to avoid entry of an order calling for such a prohibited sale. The overriding policy concern weighing against the sale or sharing of forfeited or abandoned firearms is that they may subsequently be resold and used in crime.

---

[44] *See* Chap. 15, Sec. I in this *Manual*.

# Chapter 6:
# Grand Jury

## I.    Using the Grand Jury Properly to Achieve Asset Forfeiture Policy Objectives

One of the primary goals of the Department of Justice's Asset Forfeiture Program (Program) is to punish and deter criminal activity by depriving criminals of property used in or acquired through illegal activities.[1]  Therefore, Department of Justice (Department) policy requires prosecutors "to use asset forfeiture to the fullest extent possible to investigate, identify, seize, and forfeit the assets of criminals and their organizations while ensuring that due process rights of all property owners are protected."[2]  In federal criminal investigations, Assistant U.S. Attorneys (AUSAs) and investigators can best accomplish these policy objectives by making lawful and prudent use of the grand jury both (1) to locate assets that might be subject to forfeiture, either criminally or civilly, in connection with the criminal investigation and (2) to return indictments that permit the fullest extent of criminal forfeiture possible under the charges, facts, and applicable law.

Before indictment, by virtue of their power to compel witnesses to provide testimony and to produce records, grand juries can help AUSAs and investigators find and secure evidence as to more than simply where, when, how, and why a target committed suspected criminal conduct.  AUSAs and investigators can and should also use the grand jury and its subpoena powers—in connection with an ongoing federal criminal investigation—to determine, where possible:

- How much in suspected criminal proceeds the target obtained;

- how the target disposed of those criminal proceeds, including what assets the target obtained with those proceeds and whether the target transferred any such assets to third parties;

- whether the target engaged in money laundering transactions using proceeds;

- what property facilitated or, as to suspected money laundering conduct, was "involved in" the target's suspected criminal conduct.

AUSAs and investigators may use information and evidence obtained by grand jury subpoena—including, for example, records permitting tracing of criminal proceeds—to pursue criminal forfeiture and, as discussed below, civil forfeiture as well.[3]

At the time of indictment, as an incident of their power to approve, or return, an indictment charging federal criminal offenses upon findings of probable cause, a grand jury can return an indictment setting forth not only the proposed federal criminal charges but also a forfeiture notice informing the defendant that the government will seek to forfeit property as part of any sentence imposed upon conviction of certain charged offenses in accordance with applicable forfeiture statutes.  Upon request, a grand jury can include in the indictment probable cause findings that the requisite nexus exists between particular charged offenses and particular property alleged to be forfeitable.[4]

---

[1]    *The Attorney General's Guidelines on the Asset Forfeiture Program* (July 2018) (*AG Guidelines*), Sec. 1.

[2]    *Id.*

[3]    *See* Sec. II in this chapter.

[4]    *See* Sec. III in this chapter.

## II.  When Assistant U.S. Attorneys May Disclose Matters Occurring before the Grand Jury in Connection with Asset Forfeiture Matters and Cases under 18 U.S.C. § 3322(a) and Federal Rule of Criminal Procedure 6(e)(3)

Subject to limited exceptions, Federal Rule of Criminal Procedure 6(e)(2)(B) precludes the disclosure of "a matter occurring before the grand jury."[5]  The importance of the grand jury secrecy rules set forth in Rule 6(e) is reflected in the penalty for violating those rules: contempt.[6]  AUSAs should therefore develop a firm understanding as to what constitutes "a matter occurring before the grand jury" within the meaning of Rule 6(e) under the law of their circuit.[7]  In addition, AUSAs must familiarize themselves with the federal statute and rules that can permit AUSAs to lawfully disclose grand jury information to AUSAs handling civil forfeiture cases and others in connection with asset forfeiture matters and cases under certain circumstances.  We discuss those authorities and circumstances in Sections II.A–C in this chapter.

### A.  Criminal Assistant U.S. Attorneys may disclose grand jury information to Assistant U.S. Attorneys for use in civil forfeiture matters and cases under 18 U.S.C. § 3322

18 U.S.C. § 3322(a) permits an AUSA who is privy to grand jury information to disclose that grand jury information "to an attorney for the government . . . for use in connection with any civil forfeiture provision of federal law."[8]  But Federal Rule of Criminal Procedure 1(b), in turn, defines the phrase "attorney for the government" to include only the Attorney General, an authorized assistant of the Attorney General, a U.S. Attorney, or an authorized assistant of a U.S. Attorney.  Thus, the "term 'attorneys for the government' is restrictive in its application." *In re Grand Jury Proceedings*, 309 F.2d 440, 443 (3d Cir. 1962).

Section 3322 does not expressly address whether the civil AUSA to whom grand jury information has been disclosed may use that information by publicly revealing it, without obtaining a further court order, while litigating a civil forfeiture case.  But the Money Laundering and Asset Recovery Section (MLARS) has concluded—based on both basic principles of statutory construction as well as

---

[5]  Federal Rule of Criminal Procedure 6(e)(2)(B).

[6]  Federal Rule of Criminal Procedure 6(e)(7) ("A knowing violation of Rule 6 . . . may be punished as contempt of court.").

[7]  For example, in at least some circuits, documents that exist independent of the grand jury may not necessarily constitute "matters occurring before the grand jury." *See*, *e.g.*, *In re Grand Jury Subpoena*, 920 F.2d 235, 240–242 (4th Cir. 1990) (materials obtained by two search warrants obtained in parallel criminal investigation were not "matters occurring before a grand jury," and therefore were not entitled to protection under Rule 6(e)(2)); *In re Grand Jury Investigation*, 630 F.2d 996, 1000 (3d Cir. 1980) ("The mere fact that a particular document is reviewed by a grand jury does not convert it into a 'matter occurring before the grand jury' within the meaning of 6(e).").

[8]  18 U.S.C. § 3322(a).

established practices regarding the use of grand jury information in civil forfeiture cases—that § 3322 permits AUSAs handling civil forfeiture cases to review and use grand jury information:

- in preparing papers to freeze and seize assets, such as applications for seizure warrants and motions for restraining orders or for arrest warrants *in rem*, before or after filing a civil forfeiture complaint;

- in preparing civil forfeiture complaints and other papers and pleadings filed in civil forfeiture cases, including motions for interlocutory sale, discovery requests, and motions for summary judgment; and

- by disclosing that information in the ordinary course of litigating the civil forfeiture case, for example, by producing it in discovery or using it as evidence at trial.[9]

## B. Although Assistant U.S. Attorneys may not disclose grand jury information to seizing agency counsel under 18 U.S.C. § 3322, they may under Federal Rule of Criminal Procedure 6(e)(3)(A)(ii)

18 U.S.C. § 3322 plainly does not itself authorize an AUSA privy to grand jury information to disclose such grand jury information to seizing agency counsel for use in administrative forfeiture proceedings because § 3322 permits an AUSA to disclose grand jury material for use in connection with a federal civil forfeiture provision only to an "attorney for the government"—but that term, as narrowly defined in Federal Rule of Criminal Procedure 1(b), does not include agency counsel.

Therefore, to disclose grand jury information to agency counsel, criminal AUSAs ordinarily must rely on an exception to the Federal Rule of Criminal Procedure 6(e) non-disclosure rule. That exception, set forth in Rule 6(e)(3)(A)(ii), and often referred to in U.S. Attorney's Offices (USAOs) as "adding" someone "to the 6(e) list," permits disclosure of grand jury material to "any government personnel— including those of a state, state subdivision, Indian tribe, or foreign government—that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law."[10]  To make such a disclosure, the AUSA must add the appropriate seizing agency asset forfeiture attorney to the Rule 6(e) list: "[a]n attorney for the government must promptly provide the court that impaneled the grand jury with the names of all persons to whom a disclosure has been made, and must certify that the attorney has advised those persons of their obligation of secrecy under this rule."[11]

Of course, a person to whom information is disclosed under Rule 6(e)(3)(A)(ii) may use that information "only to assist an attorney for the government in performing that attorney's duty to enforce federal criminal law."[12]  And in many cases, seizing agency counsel will not need to rely on grand jury information to commence an administrative forfeiture proceeding as to a seized asset because for a seizing agency to commence an administrative forfeiture proceeding for an asset, the seizing agency's counsel need only find probable cause that the asset has the requisite nexus

---

[9]  Generally, however, a civil forfeiture matter or case that is being investigated or litigated in parallel with a related criminal matter or case should be stayed until that criminal matter or case is resolved to avoid prematurely disclosing grand jury information and other discovery material in the civil forfeiture case in a way that might impair completion of the criminal investigation or trial of the criminal case.

[10]  Federal Rule of Criminal Procedure 6(e)(3)(A)(ii).

[11]  *Id*.

[12]  *Id*.

to a crime giving rise to forfeiture and then provide required notice of the forfeiture proceeding.[13] To find probable cause, seizing agency counsel may rely on information that investigative agents have obtained by various means other than grand jury subpoena or testimony—such as by witness interviews and evidence obtained by search warrant.  But in those cases where seizing agency counsel sees a need to rely on grand jury material to make the requisite probable cause finding as to nexus for the purpose of initiating an administrative forfeiture proceeding related to a criminal grand jury investigation, seizing agency counsel should ask the criminal AUSA to be added to the Rule 6(e) list for that grand jury matter so that the criminal AUSA may advise seizing agency counsel of their grand jury secrecy obligations, provide the court with seizing agency counsel's name, and cause the grand jury material to be shared with seizing agency counsel.

In such cases where seizing agency counsel and the criminal AUSA concur that seizing agency counsel does need access to grand jury material to make the requisite probable cause finding in connection with the related administrative forfeiture matter, then it necessarily follows—as matters of law and policy—that the USAO's disclosure of grand jury information to seizing agency counsel will be made "to assist an attorney for the government in performing that attorney's duty to enforce federal criminal law" because it is Department policy to punish and deter criminal activity by depriving criminals of property used in or acquired through illegal activities.  In short, as a matter of general practice, law, and policy, seizing agency counsel most definitely assist criminal and civil forfeiture AUSAs as they perform their duties of enforcing federal criminal law when seizing agency counsel initiates, conducts, and completes administrative forfeiture proceedings that are related to federal criminal investigations being handled by such AUSAs.

One other (seldom used) way to disclose grand jury information to seizing agency counsel is to have the seizing agency attorney appointed as a special AUSA (or as a special assistant to the Attorney General) under 28 U.S.C. § 515.[14]

### C. Assistant U.S. Attorneys should disclose grand jury material to government contractors working on civil or criminal asset forfeiture matters in a manner consistent with applicable Department of Justice guidance on disclosing grand jury materials to contractors

AUSAs should disclose grand jury material to government contractors working on civil or criminal asset forfeiture matters only in a manner consistent with applicable Department guidance on disclosing grand jury materials to contractors.

## III. Presenting Forfeiture to the Grand Jury

### A. Charging document must include notice of forfeiture

Federal Rule of Criminal Procedure 32.2(a) provides that the court may not enter a judgment of forfeiture in a criminal proceeding "unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in

---

[13]  *See* 18 U.S.C. § 983(a)(1)(A)(i).

[14]  *See In re Perlin*, 589 F.2d 260, 267 (7th Cir. 1978) (Commodity Futures Trading Commission); *United States v. Bates*, 627 F.2d 349 (D.C. Cir. 1980) (Federal Maritime Commission); *Bradley v. Fairfax*, 634 F.2d 1126, 1130–1132 (8th Cir. 1980) (Parole Commission hearing officer).

accordance with the applicable statute." [15]  Accordingly, in cases in which the government seeks forfeiture, the indictment or information must include a forfeiture notice setting forth the counts under which the government intends to seek forfeiture if the defendant is convicted and the forfeiture statute or statutes applicable to each of those counts.  The forfeiture notice should also set forth, as to each count for which the government seeks forfeiture, the forfeiture nexus authorized by the applicable forfeiture statute or statutes.  In addition, the notice should include a notice of the government's intent to forfeit substitute assets as permitted by applicable forfeiture law, typically 21 U.S.C. § 853(p), as made applicable to non-drug cases by 28 U.S.C. § 2461.

The grand jury need not make any probable cause finding as to the nexus between a charged offense and particular property items sought to be forfeited.  Accordingly, the indictment may, but need not, also list specific assets sought to be forfeited.  Simply including a general forfeiture notice, without listing particular assets subject to forfeiture, will preserve criminal forfeiture as an available option.  In that event, the government may follow up identifying the specific assets it seeks to directly forfeit in one or more bills of particulars filed a reasonable time before trial.[16]  But where an asset has been the subject of a claim in an administrative forfeiture proceeding, then to preserve the government's abilities both to retain custody of the asset during the pendency of the criminal forfeiture proceedings and to forfeit the asset civilly under 18 U.S.C. § 983(a)(3), the USAO should—within 90 days of the date of the administrative claim—either (1) name the asset as a defendant in a civil forfeiture complaint or (2) both list it as directly forfeitable in the forfeiture notice of the charging document and also take steps to preserve its availability for criminal forfeiture.[17]

The forfeiture notice may, but need not, make reference to a forfeiture money judgment or specify the particular dollar amount that the government might seek in such a money judgment.[18]

### B. Government may ask the grand jury to make a probable cause finding as to the nexus between particular charges and assets

Although the grand jury need not make a finding as to forfeiture nexus as part of a standard notice of forfeiture in an indictment, the government may request the grand jury to find probable cause to believe that the requisite nexus exists between a charged offense or offenses and particular assets alleged to be forfeitable.  Seeking a grand jury finding as to nexus can make particular sense where the government intends to seek a restraining order as to the asset.[19]

---

[15]  Federal Rule of Criminal Procedure 32.2(a).

[16]  *See United States v. Davis*, 177 F. Supp. 2d 470, 484 (E.D. Va. 2001) (holding that government may identify property as subject to forfeiture in a bill of particulars where indictment used general language tracking the forfeiture statute); *aff'd*, 63 F. App'x. 76 (4th Cir. 2003).

[17]  *See* 18 U.S.C. § 983(a)(3); *see also* Chap. 2, Sec. III in this *Manual*.

[18]  *See United States v. Plaskett*, 355 F. App'x. 639, 644 (3d Cir. 2009) (indictment need not specify that the government will seek a money judgment; notice that the defendant will be required to forfeit the proceeds of his offense and that government may seek substitute assets provides sufficient notice).

[19]  *See also* Chap. 8, Sec. III.A in this *Manual*, requiring prosecutors seeking the seizure or restraint of property located abroad to obtain a probable cause finding from a U.S. court regarding the forfeitability of the property in question before pursuing a mutual legal assistance (MLA) request.

### B.1  Under certain circumstances, prosecutors should instruct the grand jury on forfeiture and request a probable cause nexus finding

Although neither the Constitution nor applicable asset forfeiture statutes or rules require the grand jury to find probable cause as to forfeiture nexus, asking the grand jury to find probable cause as to forfeiture nexus can serve several useful purposes.

First, such a probable cause forfeiture nexus finding can serve as a basis for restraining directly forfeitable assets identified in the indictment.  21 U.S.C. § 853(e)(1)(A) provides for entry of a post-indictment restraining order "upon the filing of an indictment or information charging a violation… for which criminal forfeiture may be ordered…and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section."[20] The grand jury's finding of probable cause as to both the defendant's commission of the underlying offense or offenses giving rise to forfeiture and as to nexus between those offenses and the property sought to be forfeited would provide strong support for the government's follow-on motion for a post-indictment restraining order.  Upon considering that motion, the district court would be bound to accept as true the grand jury's finding of probable cause as to the commission of the offense; it should accept the grand jury's finding as to nexus as at least persuasive evidence.[21]  That said, in seeking the restraining order, an AUSA should submit an agent affidavit setting forth the key facts at least as to nexus.  Providing the district judge with the most robust findings of probable cause possible can help convince the district judge of the strength of the motion for a restraining order.

Second, a grand jury finding of probable cause to believe certain property is forfeitable might increase the effect of the indictment on third parties, including attorneys, who do business with, and receive funds from, the defendant.  An indictment containing a probable cause finding as to nexus would provide additional notice to third parties as to the nature and extent of the defendant's alleged criminal activities—and might thereby affect those third parties' ability to continue to receive potentially forfeitable property from the defendant as "bona fide purchaser[s]…reasonably without cause to believe that the property [is] subject to forfeiture."[22]

Third, in particularly challenging cases, the grand jury's probable cause finding might help insulate case agents and prosecutors from subsequent liability under *Bivens*[23] or the Hyde Amendment.[24]

---

[20]  21 U.S.C. § 853(e)(1)(A).

[21]  *See Kaley v. United States*, 570 U.S. 320, 331 n.9 (2014) (holding that when challenging the legality of funds restrained pretrial under 21 U.S.C § 853(e), a criminal defendant who has been indicted may not contest a grand jury's determination of probable cause to believe that the defendant committed the crimes charged, but indicating that a defendant may contest a grand jury's finding of probable cause as to nexus).

[22]  *See* 21 U.S.C. § 853(c) & (n)(6)(B); *see also United States v. McCorkle*, 321 F.3d 1292, 1294 n.2 (11th Cir. 2003) (attorney may lose bona fide purchaser status as to advance fee received from client "because the client is indicted and the attorney learns additional information about his client's guilt"); *Caplin & Drysdale v. United States*, 491 U.S. 617, 632–633 n.10 (1989) ("the only way a lawyer could be a beneficiary of § 853(n)(6)(B)['s bona fide purchaser provision] would be to fail to read the indictment of his client").

[23]  *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Under *Bivens*, individuals can file lawsuits for damages against federal officers acting under color of federal authority whose actions allegedly violated the individuals' constitutional rights.

[24]  Pub. L. 105-119, § 617, 111 Stat. 2440, 2519 (1997), reprinted in 18 U.S.C. § 3006A historical and statutory notes. Under the Hyde Amendment, a court may award an individual attorney's fees and litigation expenses if the government's litigation position was vexatious, frivolous, or in bad faith.

In these types of circumstances, criminal AUSAs—with the assistance and guidance of their USAO's asset forfeiture AUSAs and MLARS attorneys when needed—should consider instructing the grand jury on applicable asset forfeiture law, presenting evidence as to the forfeiture nexus between pertinent offenses and assets sought to be directly forfeited, and asking the grand jury to make appropriate probable cause findings as to nexus between the relevant offenses and assets. Where the government asks the grand jury to make such a forfeiture nexus finding, the indictment should include both a forfeiture notice—at least a general one—as well as the specific nexus findings given the requirement in Federal Rule of Criminal Procedure 32.2 that an indictment seeking forfeiture include a forfeiture notice.[25]

### B.2   It is not necessary to ask the grand jury to determine defendants' interests in forfeitable property

Although defendants' interests in forfeitable property may be litigated at later phases in criminal forfeiture proceedings, prosecutors typically need not present the issue of defendants' interests in forfeitable property to the grand jury. Unlike the nexus probable cause finding, which serves the various useful purposes outlined above, a finding of probable cause to believe that the defendant has an interest in particular property serves no comparable purpose in most cases.

Nonetheless, in cases where the defendant has attempted to conceal or hold, via a third party, an interest in property subject to forfeiture, it may be important to the grand jury's understanding of the case—and its ability to make necessary findings as to elements of charged money laundering or other offenses—to present evidence concerning the defendant's actual, although hidden, interest in forfeitable property.

### B.3   Presenting forfeiture evidence to the grand jury

Just as trial evidence relating to forfeiture is often best presented as an integral part of the government's case-in-chief, most grand jury evidence relating to forfeiture is also best presented as an integral part of the case establishing probable cause to charge the underlying criminal offenses. Prosecutors should focus their forfeiture presentation to the grand jury on the facts that (1) identify the assets with particularity and (2) establish the requisite nexus between the offense or offenses giving rise to forfeiture and the assets that the government seeks to have the grand jury make a nexus findings under all applicable theories of forfeiture—*e.g.*, the facts indicating that the assets (a) constitute, or were derived from, proceeds of the offenses, (b) were used to facilitate the commission or attempted commission of offenses permitting forfeiture of facilitating property, or (c) constitute property "involved in" money laundering offenses. *See* 18 U.S.C. § 981(a)(1)(C); 18 U.S.C. § 982(a)(1); 21 U.S.C. § 853(a); 18 U.S.C. § 924; 28 U.S.C. § 2461(c).

---

[25] *See* Sec. III.A in this chapter.

### B.4  Instructing the grand jury on forfeiture

In the typical case where the government is including only a forfeiture notice in the indictment, if it is consistent with local practice to do so, prosecutors should explain to the grand jury that:

- forfeiture is not a substantive offense, or an element of an offense, but rather a required part of the punishment imposed after conviction for certain criminal offenses;

- the forfeiture notice section in the proposed indictment is intended to put the defendant on notice that the government is seeking to forfeit certain property, or types of property, upon the defendant's conviction; and

- the government will seek to forfeit the defendant's substitute assets if some act or omission of the defendant makes the directly forfeitable property unavailable.[26]

When presenting a proposed indictment that asks the grand jury to make a probable cause finding as to forfeiture nexus, the AUSA should instruct the grand jury as to the type of nexus that must be found to exist between the charged offenses and the assets alleged to be forfeitable and present evidence as to such nexus.

The prosecutor should also ask the grand jury, upon considering all of the evidence, to determine whether there exists probable cause to believe that the listed assets have the requisite nexus to the specified charged offenses.

### B.5  Memorializing and describing the grand jury's probable cause finding

As explained in Section III.B.1 in this chapter, in certain circumstances, it is prudent to have the indictment contain not only a forfeiture notice but an explicit probable cause finding as to forfeiture nexus as well.

To make the grand jury's probable cause nexus finding easily recognizable—which is helpful if the government seeks to reference that finding when seeking and defending a pretrial restraint as described in Section III.B.3 in this chapter—such probable cause nexus findings should be set forth in a separate section of the indictment, following the forfeiture notice, titled "Findings as to Forfeiture Nexus" or "Finding of Probable Cause."

---

[26] Some districts have found it useful to cover these points in an introductory presentation to the grand jury outlining forfeiture law and procedures, as part of the grand jury's orientation during the first few weeks after a new grand jury is empaneled. This can be done by the district's forfeiture AUSA, who is in the best position to cover these issues and to address the grand jurors' questions. The orientation session also provides the prosecutor with the opportunity to explain to the grand jury that proceedings to forfeit the defendant's interest in an asset do not end the matter but rather that after any preliminary order of forfeiture is entered forfeiting the defendant's interest in the asset, the court will afford third parties the opportunity to assert a claim that they either have a superior interest in the asset or were bona fide purchasers of the asset without reason to know that the asset was subject to forfeiture. Although such instruction about third party rights is not directly relevant to the grand jury's deliberations, it helps the grand jury understand that the court will afford third parties asserting such interests a right to be heard before the court makes a final forfeiture decision as to an asset.

The grand jury's probable cause findings as to nexus should also be stated explicitly in the text of the indictment:

> The grand jury further finds probable cause to believe that upon conviction of the offense(s) in violation of set forth in Count(s) __ of this Indictment, the defendant(s) [*NAME(s)*] shall forfeit to the United States of America as [*describe nexus—for example, as property constituting, or were derived from, proceeds of that offense*], pursuant to __ U.S.C. § ___ all [*insert statutory language*], including, without limitation: $__.__ in United States currency seized from an account ending in digits and held in the name of [*NAME(s)*]; [*other particular assets*].

Using this language in which the grand jury expressly finds nexus, in a clearly captioned portion of the indictment separate from the forfeiture notice required under Federal Rule of Criminal Procedure 32.2(a), will help establish that the grand jury did in fact make the specific probable cause nexus findings.

# Chapter 7:
# Civil Forfeiture Litigation Issues

This chapter covers issues that arise during civil forfeiture litigation, including preservation of evidence in civil forfeiture proceedings, the propriety of Fifth Amendment advisements in civil forfeiture proceedings, and handling negotiations with fugitives.

## I.    Preservation Policy for Civil Forfeiture

### A.  Legal obligation

The government has a legal duty to preserve potentially relevant documents and other information once a party reasonably anticipates litigation, whether the government is the plaintiff or defendant. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003); Federal Rule of Civil Procedure 37 Advisory Committee Note, 2006 Amendment Subdivision (f).  Although a litigation hold is the primary method of preservation, reasonableness and good faith are the ultimate standards by which an alleged breach of the duty to preserve is judged.  A breach of the duty to preserve may be the basis for discovery sanctions if the government fails to produce relevant electronically stored information (ESI) or tangible items.

Preservation is distinguished from production under the Federal Rules of Civil Procedure that govern discovery and from admissibility under the Federal Rules of Evidence.  The fact that information may be work product, otherwise privileged, or inadmissible does not obviate the duty to preserve.  The fact that information is preserved does not necessarily mean it will be produced.

The guidance below applies to all Department of Justice (Department) attorneys, including Assistant U.S. Attorneys (AUSAs).  The guidance does not apply to investigative agency counsel or attorneys at independent agencies.

Investigative agency counsel should consult and follow internal agency policy and procedure relating to litigation holds.  However, in the absence of an internal agency policy, agency counsel should follow this guidance.

### B.  Litigation holds

When an event triggers the obligation to preserve documents and other relevant information for a civil forfeiture litigation, the Department attorney assigned to a case should, consistent with district-

specific practice and guidance, issue a litigation hold to the relevant investigative agency or agencies no later than:

(1)  the time at which a seizure warrant is obtained for property that, by statute, may not be administratively forfeited or for which the seizing agency lacks administrative forfeiture authority;

(2)  service or actual notice, whichever is earlier, of the filing of a complaint or other pleading by a claimant; or, upon receipt of a motion for return of property or notice of other action regarding seized or forfeited property;

(3)  when the attorney has received a referral to file a judicial forfeiture action, the time when it is reasonably certain that the Department will indeed file a complaint or a motion for extension of time to file a complaint (as opposed to declining the matter or pursuing criminal forfeiture instead); or

(4)  when the attorney advises, if the attorney determines that special circumstances exist, that circumstances warrant the immediate preservation of relevant documents and other information.

## C.  Documents and other relevant information subject to preservation

### C.1  Scope

The scope of the litigation hold defines what documents and other relevant information are relevant and the sources (physical locations) of those items.  Relevant information is anything that the government knows, or reasonably should know, relates to the foreseeable claims or defenses of any party or is likely to lead to the discovery of relevant information.  There is no duty to retain every piece of paper.  The Department attorney should determine relevance in consultation with agency counsel and the custodians of information, who, in an asset forfeiture matter, include persons at agencies in possession of the relevant case files.  Scope is a fact-specific inquiry, the parameters of which should be explained in detail by the Department attorney on a case-by-case basis.  The initial decision to preserve and the subsequent mechanisms chosen to fulfill the obligation should be guided by reasonableness and proportionality.

Relevant information should be preserved as it is kept in the usual course of business.  Duplicates do not need to be retained.  ESI should be maintained in native format.  Any agency advised to implement a litigation hold should ensure that all materials designated by the Department attorney as within the scope of the hold are, in fact, retained, and retained in the form specified.

### C.2  Relevant time frame

All relevant information in existence at the time when the duty to preserve attaches should be retained, as well as relevant information created thereafter, until the Department attorney or agency counsel advises otherwise.  The starting point for information that should be captured by the litigation hold is no later than either the date the investigation began or the date of the relevant seizure.

The point at which information will no longer require preservation under the litigation hold is no earlier than:

- the date when the forfeiture decision is final and non-appealable;

- the date upon which the time for filing an appeal or petition for a writ of *certiorari* expires; or,

- another date as the Department attorney advises.

## D.  Litigation hold notice

### D.1   Who issues litigation hold

The Department attorney issues the litigation hold to the relevant investigative agency or agencies. Agency counsel issues a litigation hold to relevant agency employees, consistent with agency policies and procedures.  The Department attorney is responsible for (1) preserving documents created or received by that attorney, (2) guiding other members of the attorney's office in implementing the litigation hold, and (3) working with agency counsel to monitor preservation efforts at the agency or agencies.

### D.2   Who receives litigation hold

Each relevant investigative agency is responsible for identifying key custodians subject to litigation holds.[1]  These custodians may include counsel's office attorneys assigned to the case, case agents, and any other persons who may have produced or received information relevant to the case.  The list of key custodians may be amended, and the Department attorney or agency counsel should send the litigation hold notice to newly identified custodians as needed.  Agencies should notify the Department attorney of all key custodians and any changes the agency makes to the key custodian list.

The practical duty of preservation rests with agency staff.  Proper execution of the duty to preserve includes consulting with information technology (IT) personnel, guiding the individual custodians of information, and following the instructions in the litigation hold notice as provided by the Department attorney or agency counsel.

The Department attorney should coordinate with agency counsel to ensure that relevant documents and other information are retained when key custodians leave their respective agencies or are reassigned.  The Department attorney should coordinate with agency counsel to ensure that new investigative agency employees are apprised of existing litigation holds relevant to their assignments when they assume their positions.

### D.3   Multiple agency situations

When more than one investigative agency works on a particular case—whether in a task force setting, through informal coordination, or under seizures from state and local agencies—the Department attorney should consult with the lead federal seizing agency to ascertain all entities that participated in the investigation.  The Department attorney should inquire as to which other agencies may be

---

[1]   In a forfeiture proceeding in which U.S. Immigration and Customs Enforcement-Homeland Security Investigations (ICE-HSI) is the seizing agency, and U.S. Customs and Border Protection (CBP) processes the forfeiture, the Department recommends that the Department attorney send a litigation hold to both ICE-HSI and CBP.

involved and communicate with agency counsel or other designated agency personnel at all additional participating agencies. The lead federal seizing agency should provide the Department attorney with the contact information of the relevant agency personnel at the other agencies involved so that the Department attorney can determine the scope of the hold and send the litigation hold notice to all participating agencies.

### D.4  Litigation hold format

Best practice entails a *written* litigation hold (urgent email is the preferred method) to agency counsel or other appropriate agency personnel. The Department attorney should attach a written, electronic agreement to comply along with the litigation hold notice and require an affirmative response from all recipients by a certain date.

### D.5  Litigation hold content

Where feasible, and consistent with applicable court orders, the litigation hold notice should contain:

(1)  names of any foreseeable parties in the anticipated litigation;

(2)  time frame during which documents and other relevant information has been or will be created;

(3)  affirmative directions to preserve documents and other relevant information and prohibitions on destruction or deletion;

(4)  instructions to initially separate information believed to be privileged from other preserved information;

(5)  expectations for compliance, consequences of non-compliance, and method of monitoring compliance;

(6)  instructions on how to proceed when the recipient believes the hold inadvertently excludes documents and other relevant information, sources of data, or entities likely to possess information;

(7)  an agreement to comply with the hold, to be signed and returned by a certain date;

(8)  a summary of the claims, defenses, or issues raised by the anticipated litigation;

(9)  scope of the hold and any limitations on it;

(10) mechanisms for the collection of preserved ESI, tangible items, and documents;

(11) any technological aspects of IT systems that could help or hinder preservation;

(12) procedure for how the hold may be expanded, diminished, and terminated; and

(13) contact information of the Department attorney.

### D.6  Ongoing duty

The Department attorney who issues a litigation hold should:

(1)  keep a log of all steps taken to initiate and maintain a litigation hold, including a record of communication with agency personnel and a concise statement of the reason any significant decision on preservation was made;

(2)  periodically review the litigation hold to determine whether to maintain, diminish, or expand its scope in light of the evolving claims, defenses, and issues in the case;

(3)  document changes made to the scope of the litigation hold or list of key custodians;

(4)  periodically review compliance with the hold, in consultation with agency personnel;

(5)  send a reminder notice, electronically, to all recipients of the litigation hold notice every 90–120 days unless other suitable arrangements have been made to ensure compliance;

(6)  promptly notify, electronically, all recipients of any modifications to the scope of the hold; and

(7)  notify recipients when the hold may be lifted.

### D.7  Removing a litigation hold

A Department attorney should not make the decision to lift a litigation hold until after the time for filing direct appeals in the case (and related or ancillary proceedings) or a petition for a writ of *certiorari* has passed.  If a Department attorney was never assigned to the case but agency counsel issued a litigation hold independently, or in cases where agency counsel has issued a litigation hold even when a Department attorney is assigned to the case, agency counsel may remove the hold when the time for a claimant to file a claim contesting the forfeiture has passed.  The Department attorney or agency counsel should electronically notify all recipients of the litigation hold notice that the need for the hold has ended and that they may cease preserving information related to the case.

## II.    Fifth Amendment Advisements in Civil Forfeiture Proceedings

The procedural safeguards established by the Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966), protect persons' Fifth Amendment rights to not be compelled in a criminal case to be a witness against themselves.  In *Miranda*, the Supreme Court's primary concern was the coercive atmosphere surrounding a person in custody who was subject to interrogation by the police.  *Id*. at 457–458.  Because these conditions typically are not present in the context of a deposition of a witness or claimant in a civil forfeiture proceeding, the Constitution does not require prosecutors to warn the witness of the right against self-incrimination prior to questioning in a civil deposition.  *See United States v. Solano-Godines*, 120 F.3d 957 (9th Cir. 1997) (*Miranda* warnings are not required before questioning in a civil deposition hearing).  Consequently, statements, including those which might be self-incriminating, made in the course of a deposition in a civil forfeiture case are admissible in the proceeding even in the absence of *Miranda* warnings because deposition proceedings are civil in nature.

In civil forfeiture cases where the deponent is known to the government to be a target or subject of a parallel criminal investigation or prosecution, government attorneys may defer the deposition until resolution of the criminal proceedings. If, however, the government proceeds with a deposition of a target in a civil forfeiture matter to which there is a parallel criminal investigation or prosecution, it must give an advisement that includes elements of the standard *Miranda* warnings that prosecutors routinely give targets and subjects in federal grand jury practice. In grand jury practice, Department policy requires prosecutors to give criminal targets and subjects Fifth Amendment advisements in a target letter and repeat those advisements on the record before the grand jury. *See Justice Manual* (JM) § 9-11.151. In the case of targets, Department grand jury policy also requires prosecutors to advise targets that they are a target of a criminal investigation.

Thus, in a civil forfeiture proceeding, government attorneys may advise a deponent in a civil forfeiture proceeding to which there is a parallel criminal investigation or prosecution, whether represented or unrepresented:

> You are advised that you are a target of a parallel federal criminal investigation. You may refuse to answer any question in this proceeding if a truthful answer to the question would tend to incriminate you. Anything that you do or say may be used against you in this proceeding, in a criminal proceeding, or in any other subsequent legal proceeding.

Government attorneys may also include, if applicable:

> If you are represented by appointed counsel in a related criminal case, you have a right to ask the court to appoint counsel for you in this proceeding.

Or:

> If you are using the real property which this case seeks to forfeit as your primary residence, you have a right to ask the court to appoint counsel for you in this proceeding provided you show that you are financially unable to obtain counsel.

In contrast, before taking the deposition of a target who is represented by counsel, the government attorney's advisement may simply state, "You are advised that you are a target of a parallel criminal investigation."

Where the civil forfeiture is being litigated by an attorney other than the criminal prosecutor, the civil forfeiture attorney may not be authorized to disclose the existence of the criminal investigation to the deponent. At the same time, the attorney's duty of candor may preclude the attorney from denying the existence of an ongoing criminal investigation if asked by the deponent or deponent's counsel. In those instances, it is still the better course to advise the deponent of their Fifth Amendment rights but to do so without confirming or denying the existence of a criminal investigation.

An advisement enhances the likelihood that if the testimony is offered in a criminal prosecution, it will be admitted. An advisement also helps rebut claimants' subsequent arguments that they were not aware of the Fifth Amendment right, or in the case of certain indigent claimants, that they were not aware that they may have the right to counsel in the civil forfeiture case. *See* 18 U.S.C. § 983(b); *see also* 18 U.S.C. § 981(g)(2)(C) (authorizing a claimant to move to stay a civil forfeiture proceeding based on Fifth Amendment concerns).

While there is no constitutional right to an attorney in a civil forfeiture proceeding, certain indigent claimants may have a statutory right to counsel where they are represented by court-appointed counsel in a related criminal case. *See* 18 U.S.C. § 983(b)(1)(A). And, upon the request of an indigent party in a civil forfeiture action brought by the government to forfeit the person's primary residence, the court shall ensure that the person is represented by an attorney. *See* § 983(b)(2)(A).

## III.  Negotiating with Fugitives in Civil Forfeiture Matters

Periodically, an individual defendant is indicted, becomes a fugitive, and then seeks to challenge or negotiate with the government regarding a civil forfeiture proceeding.[2] The fugitive disentitlement doctrine permits a court to "disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any related criminal forfeiture action," if the person:

(1) after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution—

   (a)  purposely leaves the jurisdiction of the United States;

   (b)  declines to enter or reenter the United States to submit to its jurisdiction; or

   (c)  otherwise evades the jurisdiction of the court in which a criminal case is pending against the person; and

(2) is not confined or held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction.[3]

When a court declines to apply the fugitive disentitlement doctrine, the government should consider other available pretrial motions.[4] For example, fugitives often will decline to appear for deposition or otherwise participate in discovery. Federal Rule of Civil Procedure 37(b)(2) allows the court to order a party to comply with a discovery request and if the party fails to comply, the court can impose sanctions that include:

(1) an order that certain facts shall be taken as established;

(2) an order refusing to allow the noncompliant party to support or oppose designated claims or defenses or introduce matters in evidence; and

(3) rendering judgment by default against the noncompliant party.

Where pretrial motions are not viable or are unsuccessful, prosecutors should pursue negotiations with fugitives only as a last resort. As a general matter, it is rarely in the government's interest to negotiate with fugitives. Prosecutors should not take any actions that may undermine the Department's

---

[2]  In the event a defendant made an appearance in the criminal case prior to taking flight, the proceeding (including sentencing and criminal forfeiture) may continue because the defendant has voluntarily chosen to be absent from an *in personam* proceeding. *See* Federal Rule of Criminal Procedure 43(c).

[3]  28 U.S.C. § 2466.

[4]  *United States v. 1988 Chevrolet Cheyenne Half-Ton Pickup Truck*, 357 F. Supp. 2d 1321, 1326 (S.D. Ala. 2005) (section 2466 "'does not mandate the court to disallow the claimant,' but rather confers upon the Court discretion to determine whether or not disentitlement is warranted.").

settlement policies.[5]  In most instances, the policy considerations for declining to negotiate with fugitives will outweigh the potential benefit to an individual civil forfeiture proceeding.  Only in instances where other considerations (*e.g.*, the cost of maintaining the asset subject to forfeiture, victim compensation, public interest, or international comity) militate in favor of negotiating a settlement should prosecutors begin to engage in such negotiations, in close consultation with the prosecutor handling the parallel criminal case.

In the exceptional case where negotiations with a fugitive are appropriate, prosecutors should limit the factors that influence the conduct of the negotiations.  Prosecutors may consider the government's litigation risk at trial or the expenses that the government may incur in maintaining an asset if the case would otherwise be delayed indefinitely.  For example, if the forfeiture involves tangible property that is incurring storage expenses or property with a lien that is continuing to accrue interest and erode the equity, it may be in the government's financial interest to resolve the forfeiture matter quickly.  Prosecutors may also consider the ability to compensate victims through a negotiated forfeiture settlement.  If a court declined to invoke the fugitive disentitlement doctrine, negotiation may be necessary to resolve the matter.  But under no circumstances should a prosecutor agree to exchange assets for a defendant's agreement to surrender and face criminal charges.[6]

---

[5]  *See* Chap. 11, Sec. I in this *Manual*; *see also In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270, 277 (S.D.N.Y. 2001) (noting the Southern District of New York USAO's response in a related case that "it is our firm policy not to negotiate dispositions of criminal charges with fugitives.  Such negotiations would give defendants an incentive to flee, and from the Government's perspective, would provide defendants with the inappropriate leverage and luxury of remaining absent unless and until the Government agrees to their terms.").

[6]  *See* Chap. 11, Sec. I in this *Manual*.

# Chapter 8:
# International Forfeiture

## I.    International Forfeiture Overview

Federal law enforcement should seek to pursue and recover forfeitable assets beyond the borders of the United States and, consistent with its international obligations, act affirmatively on incoming requests by other countries for assistance in restraining, forfeiting, and repatriating assets found in the United States that are forfeitable under foreign law.[1]  International requests for legal assistance in asset recovery, however, are subject to various treaty and other obligations, and may often implicate issues of diplomatic sensitivity or require coordination with other related investigations, domestic or foreign.  They accordingly require consultation with the Department of Justice's (Department) Money Laundering and Asset Recovery Section (MLARS) and Office of International Affairs (OIA).

OIA is the Central Authority of the United States for criminal matters under mutual legal assistance (MLA) treaties and other multilateral law enforcement conventions.  OIA transmits MLA and other formal legal assistance requests to foreign countries on behalf of investigators and prosecutors in the United States and executes MLA and other formal legal assistance requests from foreign authorities.  MLARS, in conjunction with OIA, also helps guide Assistant U.S. Attorneys (AUSAs) and agents through this often-complicated process.  MLARS and OIA can also provide informal assistance to AUSAs upon request.

### A.  Department of Justice consultation and coordination policy

Informal cross-border exchanges of law enforcement and prosecutorial information often are needed prior to, and in preparation for, the use of MLA mechanisms with other countries in asset forfeiture cases.  MLARS and OIA encourage these exchanges, provided that they occur via the appropriate law enforcement liaisons, Department attachés stationed in the United States and abroad, and other established informal asset recovery mechanisms, whenever this is operationally feasible.  Prosecutors and agents should use the limited and secure law enforcement networks to obtain or share information relevant to forfeiture efforts.  The principal informal channel for asset recovery cases is via the Department's role, on behalf of the United States, as a member of the Camden Assets Recovery Inter-Agency Network (CARIN), and a CARIN offshoot network, the Asset Recovery Inter-Agency Network for the Caribbean (ARIN Carib).  CARIN and ARIN Carib are informal international asset forfeiture practitioners' networks comprised of one law enforcement representative and one judicial (prosecutor) representative from each participating country.  MLARS is the U.S. prosecutor contact and the U.S. Marshals Service (USMS) is the U.S. law enforcement contact for these networks.  In addition to CARIN and ARIN Carib, the Department has access to six other ARIN networks.  The various ARIN points of contact can provide investigatory assistance and legal advice to support ongoing U.S. forfeiture efforts before statutory or treaty-based assistance is invoked, often allowing U.S. MLA requests to be better targeted and refined, and therefore more effective and expeditious.  MLARS and the USMS Asset Forfeiture International Unit can process outgoing ARIN requests for U.S. prosecutors and agents.  Other channels for asset-related information sharing include the

---

[1]  *See The Attorney General's Guidelines on the Asset Forfeiture Program* (July 2018) (*AG Guidelines*), Sec. 1 ("the Department of Justice should use asset forfeiture to the fullest extent possible to investigate, identify, seize, and forfeit the assets of criminals and their organizations").

Egmont Group channel[2] via the Financial Crimes Enforcement Network (FinCEN), which permits the exchange of financial intelligence and inquiries through Egmont Group's rules of engagement. MLARS can assist in understanding what information is available through Egmont and in making such requests.

In addition, under a longstanding policy, the Department requires the coordination of all incoming and outgoing international contacts by or with AUSAs regarding criminal justice matters with OIA.[3] OIA is the designated entity through which the United States must make all formal requests for legal assistance to foreign governments; it is also the designated entity for legal assistance from foreign governments. Federal prosecutors must adhere to established procedures for international contacts and should not contact foreign officials directly on case-related matters unless such contacts have been approved by, are under the supervision of, or are in consultation with, OIA. This includes contacting foreign citizens and entities to provide direct notice of forfeiture actions. Where foreign law and practice permit, OIA will allow prosecutors to have direct contact with foreign officials, provided that OIA is copied on, or informed about, all of the relevant communications. Federal investigators and prosecutors should consult with OIA for more details on the official policy on contact with foreign officials.

### B.  Forfeiture and recovery of assets located abroad under U.S. law

The extent and speed of forfeiture assistance afforded by the foreign nation in which the assets are located may vary greatly depending upon the applicable treaty obligations and laws of the foreign nation, as well as that country's expertise and capacity to manage asset forfeiture matters generally. As noted above, international requests for legal assistance may also implicate issues of diplomatic sensitivity or require coordination with other related investigations, domestic or foreign. Once foreign assets are identified as potentially subject to restraint for purposes of forfeiture under U.S. law, federal investigators and prosecutors should contact and seek the advice of MLARS and OIA.

### C.  Forfeiture of assets located in the United States under foreign law

It is important for the United States to act affirmatively on incoming requests so that it is not wrongly perceived as a safe haven for proceeds of foreign crime and other property forfeitable under foreign law. Moreover, providing assistance to other countries helps foster cooperation more broadly and advance U.S. investigations and prosecutions involving overseas assets when the United States needs assistance. MLARS executes incoming requests for forfeiture assistance under 28 U.S.C. § 2467 in consultation and coordination with OIA. In some circumstances, it may be necessary for MLARS to file a civil forfeiture action under 18 U.S.C. § 981(a) against an asset to assist a foreign government's forfeiture efforts. MLARS and OIA work with the established forfeiture contact(s) in each district where forfeitable assets are located to accommodate the legal assistance needs of the requesting jurisdiction.

## II.   Foreign Property Management Considerations

Tangible assets located abroad may present unique property management issues. Federal prosecutors and investigators should keep in mind that, although many countries are willing to restrain or seize assets in support of U.S. forfeiture efforts, some of them lack the resources, experience, technical

---

[2]   Contact MLARS for additional guidance.

[3]   *See Justice Manual* (JM), § 9-13.500.

expertise, or legal authority to adequately manage the seized or restrained property pending resolution of the U.S. forfeiture proceeding. Thus, extensive seizure or restraint planning may be required for certain property located abroad that is likely to require post-seizure or post-restraint preservation or management. Foreign governments may be willing to assume responsibility for preserving assets, or they may ask the United States to do so, and the United States or the foreign government may need to hire or legally appoint guardians, monitors, trustees, or managers for certain assets. Prosecutors should be aware that the costs of storing, maintaining, and disposing of certain assets located in a foreign country—particularly depreciating assets such as vehicles, vessels, or aircraft—may, in many instances, exceed the value of the asset itself.

When considering the seizure of tangible assets abroad that may require management, a federal prosecutor or investigator should promptly contact MLARS and the USMS' Asset Forfeiture International Unit. In cases in which the lead law enforcement agency is a Department of the Treasury (Treasury) or Department of Homeland Security (DHS) agency, the federal prosecutor or investigator should contact the Treasury Executive Office for Asset Forfeiture (TEOAF). Prosecutors must consult MLARS before the United States asks a foreign government to restrain or seize an ongoing business or its assets or to appoint or hire a guardian, monitor, trustee, or manager for the same.[4]

## III.  Probable Cause Finding to Seize or Restrain Assets Abroad

As a matter of policy, MLARS and OIA advise prosecutors seeking the seizure or restraint of property located abroad to first obtain a probable cause finding from a U.S. court regarding the forfeitability of the property in question before asking OIA to make an MLA request. This comports with U.S. law[5] and preserves our treaty-based forfeiture relationships with foreign counterparts by ensuring that requests are well-developed factually and legally, and that U.S. authorities only ask foreign authorities to take action against foreign-located assets that U.S. authorities could take if the assets were located in the United States. As discussed below, there are a number of ways to obtain such a probable cause finding.

---

[4]  For more information, *see* Chap. 1, Sec. I.D.2, which discusses the business consultation requirement for domestic seizures, and Chap. 9, Secs. II.A and II.B, which discuss consultation for trustees or monitors, in this *Manual*.

[5]  At least one federal district court has held that the United States must demonstrate probable cause of forfeitability of the subject assets located abroad before requesting another country to seize or restrain the assets. *See Kim v. Dep't of Justice*, No. 2:05-cv-03155-ABC-Mc, D.E. 26 (C.D. Cal. July 11, 2005). Under rare circumstances, OIA and MLARS may authorize a prosecutor to move forward with a treaty request to seize or restrain assets abroad without the prosecutor first obtaining a finding of probable cause. OIA may consider making a formal request without a probable cause determination where the assets located in a foreign state are held by a person "with no voluntary attachment to the United States," rendering the Fourth Amendment inapplicable. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 274–275 (1990). If the facts support this conclusion, the prosecutor should discuss this possibility with OIA and MLARS.

### A.  Criminal forfeiture cases

In a criminal forfeiture case, there are at least three options for obtaining a probable cause determination regarding forfeitability:

(1)  naming the foreign-based asset in the forfeiture allegation in the indictment and requesting the grand jury to find probable cause for forfeiture;

(2)  obtaining a restraining order; and

(3)  obtaining a criminal seizure warrant.

#### A.1  Indictment

If a pending indictment contains a criminal forfeiture allegation relating to property located abroad, and the grand jury has made a nexus finding of probable cause to believe that the *specific property* located abroad is subject to forfeiture, the indictment itself will serve as the necessary probable cause finding for purposes of the MLA request.[6]

#### A.2  Restraining order

Once the indictment is returned, the United States may obtain a post-indictment *ex parte* restraining order pursuant to 21 U.S.C. § 853(e).[7]  Such a restraining order requires a finding of probable cause; therefore, the issuance of the restraining order will provide the necessary probable cause determination so long as the asset located abroad is specifically identified in the restraining order.

The statutory authority for a restraining order under 21 U.S.C. § 853(e) is broad and includes authority to direct a defendant to repatriate property subject to forfeiture.  *See* § 853(e)(4).  As noted in Section V in this chapter, MLARS and OIA should be consulted prior to seeking issuance of such an order.

#### A.3  Criminal seizure warrant

Criminal seizure warrants may be less helpful in the foreign enforcement context than restraining orders.  The legal authority for the issuance of a criminal seizure warrant against foreign-based property is not explicit: 21 U.S.C. § 853(f) authorizes an AUSA or other trial attorney to obtain a seizure warrant from the court in the same manner as a search warrant under Federal Rule of Criminal Procedure 41, and § 853(l) provides that a federal court has "jurisdiction to enter orders as provided in this section *without regard to the location of any property which may be subject to forfeiture*" (emphasis added).  Also, § 853(f), which governs issuance of criminal seizure warrants, is not as broad as the corresponding authority for civil seizure warrants under 18 U.S.C. § 981(b).  Section 853(f), for example, provides that criminal seizure warrants may be obtained only if it appears that a restraining order would be inadequate to preserve the availability of the property for forfeiture.

---

[6]  A general or "generic" description of assets, such as "all property of the defendant located in Switzerland" will probably not satisfy the particularity requirement for probable cause under the Fourth Amendment.  Prosecutors should contact OIA if they intend to rely on the forfeiture allegation in the indictment for their probable cause finding, as some countries, such as Canada, do not find this to be sufficient for purposes of seeking asset restraint on behalf of the United States.

[7]  21 U.S.C. § 853(e) also provides for *ex parte* temporary restraining orders of short duration and pre-indictment restraining orders upon notice and an opportunity for a hearing.  Prosecutors may want to discuss these options with MLARS in the context of the facts of their case.

Moreover, the use of a criminal restraining order rather than a criminal seizure warrant does not raise the question of whether a U.S. district court has the authority to issue an extraterritorial seizure warrant pursuant to Rule 41(b)—beyond the express authorization to issue warrants for foreign-based property in domestic and international terrorism investigations under Rule 41(b)(3).

Alternatively, it may be advisable to obtain a criminal and civil seizure warrant in the same application so that the court's extraterritorial jurisdiction is clear and unassailable, and because one may be more readily enforceable than the other.[8]

In addition, in executing U.S. requests for assistance, foreign governments generally obtain orders under foreign law rather than directly enforcing a seizure warrant or restraining order issued by a U.S. court. Thus, a foreign nation's determination to secure property under foreign law seldom turns on whether the United States obtained a seizure warrant versus a restraining order, and the United States may be unable to meet the requirement for a seizure warrant under Rule 41 to show that a restraining order pursuant to § 853(e) would not be sufficient to preserve the property pending forfeiture.

## B. Civil (*in rem*) forfeiture cases

According to *Justice Manual* (JM) § 9-13.526,[9] prosecutors shall consult with OIA before filing an *in rem* forfeiture action based on 28 U.S.C. § 1355(b)(2). A growing number of jurisdictions can enforce civil forfeiture judgments (often referred to as non-conviction-based forfeiture judgments), due in part to expanding international standards, particularly where a perpetrator is unavailable by reason of death, flight, or absence. However, criminal forfeiture is more broadly recognized and prosecutors should first pursue the criminal forfeiture of assets located abroad where possible. OIA and MLARS can provide guidance regarding anticipated assistance from the foreign country where the assets are located.

If civil forfeiture is pursued, there are at least three options for obtaining a probable cause determination: (1) a warrant of arrest *in rem*, (2) a seizure warrant, and (3) a restraining order.

### B.1 Warrant of arrest *in rem*

Prosecutors may obtain a warrant of arrest *in rem* from the district court after a civil forfeiture complaint has been filed. Rule G(3)(b)(ii) and (c)(iv) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules) require a probable cause finding by a judge or magistrate judge before any warrant of arrest *in rem* is issued for property that is not already in the custody of the United States. The Supplemental Rules also provide for sending the warrant to a foreign country if the property is located abroad. Some countries do not recognize civil forfeiture, however, and may not assist in a civil case.

### B.2 Civil seizure warrant

Another option is to obtain a civil seizure warrant for the property pursuant to 18 U.S.C. § 981(b)(2) in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure. Such a warrant requires a finding of probable cause and may be obtained on an *ex parte* basis.

---

[8]  *See* the discussion in Sec. III.B.2 in this chapter and 18 U.S.C. § 981(b) (providing express authority for issuance of civil seizure warrants for property located outside the United States).

[9]  *See Justice Manual* (JM).

18 U.S.C. § 981(b) applies to all property subject to civil forfeiture under both § 981(a) (the forfeiture statute applicable to most federal crimes) and any other forfeiture statute containing language incorporating the procedures of Title 18, Chapter 46 of the United States Code, such as 18 U.S.C. § 1594 (forfeiture provisions for human trafficking), 21 U.S.C. § 881(a) (the civil forfeiture statute for drug offenses), and 8 U.S.C. § 1324(b) (the civil forfeiture statute for the smuggling or harboring of illegal aliens).  Accordingly, § 981(b) provides a means for obtaining a probable cause finding under the vast majority of federal civil forfeiture statutes.  However, where a given civil forfeiture statute does not incorporate § 981(b), the prosecutor will have to identify an alternative statutory basis for obtaining a pre-complaint finding of probable cause of forfeitability as to the foreign property sought to be forfeited.

In seeking a civil seizure warrant generally, it may be helpful to explain to the magistrate or judge the statutory scheme authorizing federal courts to order the seizure of assets in a foreign country.  A court has the authority to issue seizure warrants for assets located in a foreign jurisdiction pursuant to 18 U.S.C. § 981(b)(3).  Section 981(b)(3) provides that a seizure warrant may be issued by a "judicial officer in any district in which a forfeiture action against the property may be filed under [28 U.S.C.] section 1355(b), and may be executed in any district in which the property is found, *or transmitted to the central authority of any foreign state for service in accordance with any treaty or other international agreement*" (emphasis added).  Pursuant to 28 U.S.C. § 1355(b), a forfeiture action may be brought in any district court where any of the acts or omissions giving rise to the forfeiture occurred, even as to property located in a foreign jurisdiction.

One concern about obtaining such a seizure warrant is that 18 U.S.C. § 981(b) could be interpreted as incorporating all of the provisions of Federal Rule of Criminal Procedure 41, which, in turn, might require that the warrant be executed within 14 days.  However, § 981(b)(3) states that, notwithstanding the provisions of Rule 41(a),[10] a seizure warrant may be "transmitted to the central authority of any foreign state for service in accordance with any treaty or other international agreement."  Thus, the requirements of both § 981(b)(3) and Rule 41 are completely satisfied once a seizure warrant issued under § 981(b) has been transmitted for service in a formal request to the foreign country through OIA.  Prosecutors attempting to obtain seizure warrants for these purposes are encouraged to first consult with MLARS and OIA.[11]

### B.3  Restraining order

Finally, whether or not a complaint has been filed, the United States may ask the court to issue a restraining order pursuant to 18 U.S.C. § 983(j).  A restraining order may be issued on an *ex parte* basis.  Temporary restraining orders may only be issued upon a showing of probable cause—usually

---

[10]  Prior to the 2002 Amendments to Federal Rule of Criminal Procedure 41, section (a) addressed the jurisdictional reach of Rule 41 search warrants, which, arguably, was limited to locations within the United States.  The Rule 41 reference in 18 U.S.C. § 981(b), added by the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L. 106-185, Apr. 25, 2000, 114 Stat. 202, reflects express Congressional intent to give U.S. courts jurisdiction to issue seizure warrants with an extraterritorial reach.  After 2002, Rule 41(a) contains scope and definitions provisions not relevant for jurisdictional reach, making § 981's reference to Rule 41 confusing.

[11]  In particular, prosecutors should consider their district's policy on whether execution of a seizure warrant is satisfied upon transmission to OIA rather than a foreign authority.  If transmission to a foreign authority is required, steps will need to be taken to ensure that MLA and other requests are prepared (and sometimes translated) before the seizure warrant is obtained.

in the form of an affidavit submitted along with the application for the order.[12]  Thus, the issuance of a temporary restraining order will constitute the probable cause finding required to support the MLA request.

### C.  Parallel civil and criminal cases

Often prosecutors may preserve assets for forfeiture by initiating both civil and criminal forfeiture actions against property located abroad and then staying the civil proceeding pursuant to 18 U.S.C. § 981(g)(1) until the conclusion of the parallel criminal proceedings.  This approach will preserve a choice of options for restraining assets abroad should the criminal forfeiture fail for any reason.

## IV.  Securing Notice Abroad

In both civil and criminal forfeiture proceedings involving assets overseas, the United States is required to provide notice by publication; this may occur on forfeiture.gov, the federal government's forfeiture site.[13]  Publishing notice online provides more effective (and cost-efficient) notice than newspaper publication because the notice is available 24 hours a day, reachable worldwide by anyone with internet access, and searchable by use of search terms.  Therefore, in the absence of a compelling reason to use print publication, online publication should be considered as the norm and print publication as the exception for notices involving assets overseas.

Published notices on forfeiture.gov are limited to English at this time.  Depending on the facts of the case, it may be appropriate to publish notice in a newspaper of general circulation in the country in which the assets are restrained or seized, or via legal notices, in the appropriate foreign language, in the country in which known potential claimants are located.  Publication abroad should be requested in a manner and format that complies with the requirements of domestic publication in the United States and, as much as is possible, in the manner requested by the foreign government providing assistance with the publication.  Some foreign governments will assist with publication, while other governments require the United States to make its own arrangements.  In some instances, U.S. law enforcement officers or Department attachés stationed in foreign countries will arrange for publication.  Some foreign governments will not assist the United States with publication but still require that the United States obtain governmental permission before publishing in their jurisdictions.  Other countries insist that there be no publication at all within their borders.  Where foreign publication does occur, the United States typically pays the costs of publication.  Prosecutors and investigators should consult MLARS to ascertain the foreign government's preferences regarding the publication of notice within its borders before attempting publication in the country.

Similarly, foreign countries handle direct forfeiture notice to individuals and entities within their borders differently.  Some countries require notice by MLA request, some allow notice by FedEx or mail, and some require other informal notification.  Prosecutors should contact OIA before providing forfeiture notice to individuals and entities abroad.

---

[12]  18 U.S.C. § 983(j)(3); *see also United States v. Melrose E. Subdiv.*, 357 F.3d 493, 501 (5th Cir. 2004) (applying the probable cause requirement in *United States v. Monsanto*, 491 U.S. 600 (1989), to 18 U.S.C. § 983(j)(1)(A)).

[13]  *See* Rule G(4) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules) and Federal Rule of Criminal Procedure 32.2(b)(6).  In some countries, prosecutors may be required to take additional steps to secure notice.  Prosecutors should consult MLARS and OIA for country-specific guidance.

## V.  Consultation with MLARS and OIA when Seeking Repatriation of Forfeitable Assets Located Abroad

In cases where a foreign government has restrained or seized assets based on a formal U.S. request, prosecutors and investigators must consult MLARS and the OIA attorney handling the case before seeking repatriation of restrained or seized assets.  MLARS, in consultation with OIA, is usually aware of any foreign legal constraints on the repatriation of forfeitable assets as well as any sensitivity about repatriation on the part of the foreign government.  Repatriation of frozen assets also generally requires that any foreign restraint or seizure order be lifted or modified, as needed, which can only be done with the consent of, and action by, the appropriate foreign country.  In some cases, resolution of the U.S. forfeiture action alone may not be sufficient cause for lifting the foreign restraint; for example, the seizure or restraint may remain in place pending the outcome of a related prosecution in jurisdictions having mandatory prosecution laws.  *See* Section VIII in this chapter.

Further, before seeking an order compelling the repatriation of specific assets pursuant to 21 U.S.C. § 853(e)(4), federal prosecutors and investigators should always consult with MLARS and OIA before negotiating or ratifying an agreement with a defendant to repatriate criminally derived assets from abroad, even as to property that is not seized or restrained by the foreign government. This consultation requirement exists for several reasons.  First, the property in question may be subject to domestic proceedings in the foreign jurisdiction.  Second, certain countries deem another government's efforts to repatriate assets located in their jurisdictions—even the voluntary repatriation of assets by the defendant or owner—a violation of their sovereignty, and in rare instances, these nations may consider any person who instigates or is involved in the effort to repatriate to be involved in committing a criminal offense, such as money laundering.  Similarly, many countries may not object to a negotiated voluntary repatriation of assets and may allow such transfers to occur pursuant to a plea agreement or settlement, but object to court-ordered, non-voluntary repatriations because they regard the repatriation order as a "coercive measure" that violates the property owner's civil rights under their domestic law.  Other countries take the position that a failure to inform them of forfeitable assets located in their jurisdiction is a violation of applicable treaty obligations.  Finally, in matters in which the United States previously has asked a foreign government to restrain an asset, a voluntary repatriation by the defendant will require the lifting or modification of the foreign restraint of seizure, which, although legally permissible, may subject the foreign nation to unintended legal liabilities under its law, such as attorneys' fees.

## VI.  Approval Process for 18 U.S.C. § 981(k) Seizure from Correspondent Bank Account

18 U.S.C. § 981(k) authorizes the United States, in a civil forfeiture action, to constructively restrain, seize, and forfeit funds on deposit in foreign bank accounts located abroad by restraining, seizing, and forfeiting an equivalent amount of funds from a correspondent or interbank account held in the United States by the foreign financial institution where the relevant foreign bank account is maintained.  It is irrelevant for purposes of § 981(k) whether the tainted funds on deposit in the foreign bank account ever transited through the foreign bank's U.S. correspondent account that is subject to the § 981(k) forfeiture effort.  Thus, § 981(k) can be used to constructively restrain, seize, and forfeit funds on deposit abroad without resort to an MLA request, other treaty, or letter rogatory request.[14]

---

[14]  Letters rogatory are the customary method of obtaining assistance from abroad in the absence of a treaty or executive agreement.  *See* the Department of State's Preparation of Letters Rogatory page.

Nonetheless, the potential use of § 981(k) raises important policy considerations, and various U.S. officials should have an opportunity to closely review the § 981(k) request and consider the ramifications of granting the request. Approval authority for the use of § 981(k) rests with the Chief of MLARS, in consultation with the appropriate OIA, Treasury, and Department of State officials. MLARS is responsible for coordinating the approval process and must approve the use of this provision in writing. MLARS will grant this approval only in extraordinary cases.

Thus, prosecutors should seek written approval to use § 981(k) well in advance of any attempt to restrain or seize assets from a foreign bank's correspondent accounts in the United States. Sample § 981(k) approval requests may be obtained from MLARS. MLARS will approve requests for authority to use § 981(k) as the basis for constructively forfeiting funds on deposit in a foreign bank's correspondent accounts only if there are no other viable alternative means of effecting forfeiture of the tainted funds in the foreign bank account. Therefore, it should be considered only as a last resort. MLARS will not approve an application simply because it is deemed more expedient than using an MLA request, other treaty, or the letters rogatory mechanism. Accordingly, MLARS will approve § 981(k) requests only in limited cases, including where there is:

- no applicable treaty, agreement, or legal process in the foreign nation that would allow it to restrain, seize, or forfeit the target assets for the United States;

- a treaty or other agreement in force, but the foreign nation does not recognize the U.S. offense that gives rise to forfeiture;

- a treaty or other agreement in force, but in spite of its treaty obligation, the foreign nation has previously failed to provide requested forfeiture assistance, or provided untimely or unsatisfactory forfeiture assistance;

- a treaty or other agreement in force, but the foreign nation has no domestic legislation authorizing it fully to execute U.S. forfeiture orders or judgments; or

- another significant reason that, in the view of the policy stakeholders, justifies use of § 981(k) (*e.g.*, corruption within the foreign government may compromise the execution of a treaty request, or the jurisdiction is unable to repatriate or return victim money to the United States after forfeiture).

Once the Department grants prosecutors permission to seize funds from a U.S. correspondent account pursuant to § 981(k), prosecutors should take special care to ensure that the restrained correspondent account is limited to the amount of tainted funds traceable to, and on deposit in, the foreign bank account.

## VII. Lack of Administrative Forfeiture Authority for Overseas Property

Forfeiture of assets located abroad must be initiated as part of a judicial forfeiture action, either civil or criminal. There is no authority under federal law to commence an administrative forfeiture of property that is not physically located in the United States or its territories or possessions. Administrative forfeiture can be pursued against property repatriated to the United States pursuant to Section V in this chapter, however, assuming the property is otherwise eligible for administrative forfeiture.

## VIII. Settlements, Plea Agreements, and Attorneys' Fees

Federal prosecutors should not agree to, or enter into, any settlement or plea agreement affecting assets located abroad, or make any representation concerning the availability of assets located abroad to pay the legal fees incurred by a criminal defendant, without first speaking to MLARS about the consequences of such decisions.[15]  In addition, prosecutors should be aware of limitations on negotiating with fugitives or persons fighting extradition.[16]  The policy considerations that underlie the consultation and approval requirements applicable to settlement and plea agreements, and to agreements to use forfeitable funds to pay for attorneys' fees, in purely domestic cases apply with even greater force in the international context, particularly in light of the problems inherent in releasing property held abroad.  *See* Section V in this chapter.

In some cases, a U.S. request to restrain or seize foreign assets will prompt the initiation of a foreign criminal investigation as many jurisdictions are required to prosecute all criminal matters brought to their attention.  Thus, it may not be possible to make any meaningful or binding commitments to defendants or claimants regarding the disposition of funds restrained or seized abroad because the property may remain restrained or seized, or even ordered forfeited, under foreign law following conclusion of the U.S. forfeiture proceeding.  Furthermore, the United States has no authority to bind a foreign government regarding the disposition of assets ordered forfeited in any U.S. proceedings.  In addition, all plea and settlement agreements should include broad waiver and indemnification language that protects both the United States and foreign officials, and their governments, from any liability arising from seizing, restraining, or forfeiting assets located abroad.

Finally, prosecutors should seek and, if possible, obtain from a defendant or claimant an agreement to specifically waive any right to an award of costs or attorneys' fees under foreign law.  Prosecutors should also seek from the defendant, and persons acting in concert with the defendant, an agreement not to oppose enforcement of a U.S. forfeiture judgment abroad, any other legal action in any foreign jurisdiction relating to U.S. forfeiture efforts, or any U.S. request to a foreign government for related financial records.

## IX.  Enforcement of Judgments

### A.  Foreign enforcement of U.S. judgments

Some nations afford full faith and credit to U.S. forfeiture judgments affecting property within their borders.  Before transmitting a U.S. forfeiture judgment via OIA to a foreign jurisdiction, prosecutors should verify that the judgment is final under U.S. law.  In other words, the judgment must no longer be subject to direct appeal either because all opportunities for direct appeal have been taken and exhausted or the time for filing a direct appeal has expired.  These facts should be noted in the legal assistance request to the foreign authority for the jurisdiction in which the judgment is sought to be enforced.

Prosecutors should be mindful that third parties who did not appear in the U.S. proceedings may still be permitted to challenge enforcement of U.S. forfeiture orders under foreign law.  Thus, when transmitting a U.S. forfeiture judgment for execution by a foreign country, the request should demonstrate to the foreign jurisdiction that third parties were provided or sent notice of the U.S.

---

[15]  *See* Chap. 11 in this *Manual* for a discussion of settlement considerations.

[16]  *See* Chap. 7, Sec. III in this *Manual*.

forfeiture proceedings, had an opportunity to challenge the U.S. forfeiture, and either failed to avail themselves of the right to contest the forfeiture or were unsuccessful in their challenges.

### B.  U.S. enforcement of foreign judgments and restraining orders

Pursuant to 28 U.S.C. § 2467, the United States can restrain and forfeit assets in connection with foreign forfeiture matters.  Requests for this type of this assistances come as MLA (or other legal assistance) requests and are generally referred by OIA to MLARS for execution.  The most common mechanism under § 2467 for restraining or seizing assets is through the enforcement of a foreign court-issued restraining order.  Before a federal court may enforce a foreign restraining order or a "foreign forfeiture or confiscation judgment" under § 2467, the "Attorney General or the designee of the Attorney General" must certify that enforcing the order is "in the interest of justice."  *See* 28 U.S.C. § 2467(b)(2) & (d)(3)(B)(ii).  In 2006, the Attorney General delegated this authority to the Assistant Attorney General for the Criminal Division (AAG).[17]  That delegation order provides that the AAG may delegate the certification authority to "any subordinates."[18]  In October 2018, the AAG delegated to the Chief of MLARS the certification authority for (1) foreign forfeitures or confiscation judgments under § 2467(b)(2), where the amount involved is $5 million or less, and (2) all foreign forfeiture restraining orders under § 2467(d)(3)(B)(ii).[19]  For foreign forfeitures or confiscation judgments under § 2467(b)(2) where the amount involved is more than $5 million, the AAG is the certification authority.

## X.  International Sharing

The Attorney General (or a designee) may transfer any forfeited assets, as authorized by statute, to a foreign country that participated directly or indirectly in the seizure or forfeiture of those assets.[20]  It is the policy of the United States in those forfeiture matters that do not involve victims to encourage international asset sharing and to recognize all foreign assistance that facilitates U.S. forfeitures, where consistent with U.S. law.  International sharing is governed by 18 U.S.C. § 981(i), 21 U.S.C. § 881(e)(1)(E), and 31 U.S.C. § 9705(h)(2), and is often guided by standing international sharing agreements.  It may also be the subject of bilateral case-specific forfeiture sharing arrangements negotiated by MLARS and approved by the Department of State.  The Attorney General or the Secretary of the Treasury have the sole discretion to determine whether to share assets that have been forfeited to the United States with a foreign government.  The Secretary of State must also concur in the decision, and Congress may, in certain circumstances, veto it.  An April 1992 international sharing memorandum of understanding (MOU) among the Department, Treasury, and Department of State expressly prohibits investigators or prosecutors from making representations to foreign officials "that assets will be transferred in a particular case, until an international agreement and commitment to transfer assets have been approved by the Secretary of State and the Attorney General or the Secretary of the Treasury."

---

[17] *See* Attorney General Order No. 2820-2006: Delegation to the Assistant Attorney General for the Criminal Division Certain Authority Related to Foreign Forfeiture Judgments (May 9, 2006).

[18] *Id*.

[19] The amount involved for certification purposes should be determined based on the expected fair-market value of the assets unless the amount of the forfeiture judgment itself (or expected judgment) is under $5 million.  *See* Chap. 11, Sec. I.A.2 in this *Manual*.

[20] *AG Guidelines*, Sec. V.E.

In cases involving victims, prosecutors and federal law enforcement agencies should be mindful that any international sharing can occur only after all victims are compensated. Domestic equitable sharing can occur only after victims have been compensated in full, and after international sharing is completed.

Moreover, in all cases, both international and domestic sharing come from the net sale proceeds of forfeited property following the deduction of all case-related expenses. Thus, federal prosecutors and investigators should refrain from making any representations, to representatives of either a foreign government or a domestic law enforcement agency that provided assistance, regarding any sharing tied to the forfeiture of assets located abroad or any domestic forfeiture accomplished with the assistance of a foreign government.

Foreign governments are not required to follow a specific process for submitting a sharing request to the United States. This may be done pursuant to a treaty or sharing agreement, or, less formally, through other diplomatic or law enforcement channels. Prosecutors and law enforcement agencies should recommend international sharing to MLARS or their respective law enforcement agencies whenever they have received foreign assistance that facilitated the forfeiture of an asset in a U.S. case, particularly as to assets located in the United States. Upon completion of a forfeiture proceeding and the entry of a final order of forfeiture achieved with the assistance of a foreign government, the seizing agency shall submit a memorandum summarizing the sharing recommendation to the federal prosecutor assigned to the case, who should subsequently send a formal sharing recommendation to MLARS. For assets forfeited administratively, the seizing agency is responsible for submitting the recommendation to MLARS.

The Deputy Attorney General (DAG) delegated authority to the AAG to make final determinations on uncontested international sharing proposals involving assets valued at more than $5 million. The DAG also delegated authority to the Chief of MLARS to make final determinations on uncontested international sharing proposals involving forfeited assets valued at $5 million or less. If the seizing agency, U.S. Attorney's Office (USAO), and MLARS do not agree on the sharing allocations, the DAG makes the final decision.

To avoid delays, it is advisable to make the international sharing recommendation as soon as practicable, or at a minimum, immediately after the final order forfeiting the foreign assets is obtained. At the earliest possible time and definitely before the asset has been liquidated, the seizing agency should note in the Consolidated Asset Tracking System (CATS) that a particular asset might be, is, or will be subject to an international sharing request or recommendation. In order to place a "hold" on an asset intended for international sharing, the seizing agency must either (1) select "international sharing anticipated" when creating the standard seizure form or (2) enter a sharing recommendation in the international sharing module. Either of these actions will prevent the asset from being shared domestically until MLARS enters a pre-approval or approval ruling.

In cases implicating the Treasury Forfeiture Fund (TFF), the seizing agency—for example, Internal Revenue Service-Criminal Investigations (IRS-CI), U.S. Secret Service (USSS), U.S. Customs and Border Protection (CBP), or U.S. Immigration and Customs Enforcement-Homeland Security Investigations (ICE-HSI)—is responsible for submitting a sharing recommendation to TEOAF. However, the seizing agency should first consult the AUSA or other trial attorney responsible for the case. In these cases, the Director of TEOAF approves the sharing recommendations. MLARS and TEOAF also obtain concurrence from each other and the Department of State for each proposed

sharing transfer to a foreign government after it is approved by their respective designees. This interagency approval and consultation process may be lengthy.

If forfeitable assets located overseas are forfeited under U.S. law, repatriated, and placed into the Department's Assets Forfeiture Fund (AFF), they may be eligible for domestic sharing with participating state, local, and tribal agencies. However, funds shared with the United States by the foreign government that have not been forfeited under U.S. law may not be eligible for domestic equitable sharing.[21] Nevertheless, if U.S. prosecutors or investigators assisted in a foreign case that resulted in a foreign forfeiture, they should contact MLARS to determine if it might be fruitful for MLARS to submit a sharing request to that country, as these funds still may be deposited into the AFF. MLARS, in coordination with OIA, submits all requests to foreign countries for asset sharing.

Similarly, funds shared with the United States by a foreign government that have not been forfeited under U.S. law may not be eligible for victim remission or restoration, or for confidential informant awards under 28 U.S.C. § 524(c)(1)(C). However, depending on the circumstances of the case, it may be possible to employ other mechanisms for using such shared funds to make victims whole.[22] If U.S. prosecutors or investigators assisted in a foreign case involving victims that resulted in a foreign forfeiture, they should also contact MLARS' International Unit for guidance on potential alternative mechanisms and submission of a sharing request to that country.

---

[21] *See* Chap. 15, Sec. VI in this *Manual*.

[22] *See* footnote 2 in Chap. 14, Sec. I in this *Manual*.

# Chapter 9:
# Third-Party Experts in Forfeiture Cases

## I.    Introduction[1]

In the typical forfeiture case where assets have been restrained criminally or civilly, the U.S. Marshals Service (USMS) is capable of managing and selling assets either with its own resources or under its existing property management contracts without resort to appointment of third-party experts.[2]

However, in certain federal forfeiture cases involving complex assets, business enterprises, or international seizures, the Department of Justice (Department) may use trustees, business monitors, property managers, custodians, or other third parties (together "third-party experts").[3]  Both specific and general statutory authority exists for the appointment of a third-party expert in federal forfeiture cases.  *See* 18 U.S.C. § 983(j), civil forfeiture; 18 U.S.C. §§ 1963(d)(1) & (e), criminal forfeiture; 21 U.S.C. § 853(e) & (g), criminal forfeiture; *see also* 18 U.S.C. § 1956(b)(4); 18 U.S.C. §§ 1964(a) & (b).

Because an expert's role may vary based on the facts of each case and the nature of the asset or business entity involved, there is no single method for selecting third-party experts in every case.  Due to the cost and labor intensive nature of monitoring and administering third-party expert assistance, and the potential for litigation extending beyond entry of a final order of forfeiture, third-party experts should be appointed only when absolutely necessary, after all other alternatives have been considered and rejected, and where there is clearly sufficient net equity in the asset(s) to cover the total estimated cost of using the third-party expert and any necessary staff.

As a general rule, the government should avoid seizing or forfeiting operating businesses and other complex assets that will require third-party expertise or supervision or continuing capital investment from the Assets Forfeiture Fund (AFF) to remain viable, competitive, and marketable. The government should also generally avoid the assumption of direct or contingent liabilities. In extremely rare cases, compelling law enforcement or policy considerations may warrant the appointment of third-party experts despite insufficient equity in the business enterprise or complex assets to cover the costs.

---

[1]   Chapter 9 does not apply to the responsibility or authority of independent bankruptcy trustees, financial institution receivers, and foreign liquidators not otherwise directly engaged in forfeiture case activities on behalf of the government. U.S. Attorney's Offices (USAOs) and agencies interested in using the services of a trustee or claims administrator to support the remission and restoration processes should refer to Chap. 14, Sec. II.A.4 in this *Manual*.

[2]   In certain instances, procurement of the services not covered under existing contracts may require a new solicitation under Federal Acquisition Regulations (FAR).  *See* 48 C.F.R. Part 1.000 *et seq*.

[3]   In cases where the lead law enforcement agency is a Department of the Treasury (Treasury) or Department of Homeland Security (DHS) agency, the federal prosecutor or investigator should consult the Treasury Executive Office for Asset Forfeiture (TEOAF) for guidance.

## II.    Prerequisites to Selecting a Third-Party Expert

### A.  Consider alternatives to a third-party expert

The government should generally select the least intrusive and most cost-effective means of protecting the government's interests while achieving a successful forfeiture.  Alternatives to the appointment of a third-party expert include:

- obtaining a protective or restraining order, perhaps providing for USMS oversight, that specifies the consequences for violations of the order (such as the appointment of a third-party expert in addition to a contempt citation);

- appointment of a business or property manager through an existing contract;

- restraint or seizure of specific valuable assets, equipment, or inventory (restraint is preferred) in lieu of the entire business;

- oversight or management by state or local regulatory agencies;

- filing a *lis pendens*;

- interlocutory sale;

- foreclosure by a lienholder;

- retention of a professional, upon the consent of the business and to be paid at its own cost, to oversee business operations and finances while ensuring against future criminal violations during the pendency of the forfeiture action;

- enforcement of state or local nuisance or business regulatory laws;

- seizure of property by federal or state tax authorities to satisfy outstanding tax obligations; and

- securing a performance bond.

### B.  Consultation among the U.S. Attorney's Office, Money Laundering and Asset Recovery Section, Asset Forfeiture Management Staff, and U.S. Marshals Service before seeking the appointment of a third-party expert

Before seeking appointment of a third-party expert, the U.S. Attorney's Office (USAO) must consult with the Money Laundering and Asset Recovery Section (MLARS) and the USMS.  The USAO must also consult with the Asset Forfeiture Management Staff (AFMS) before seeking appointment of a third-party expert in a matter in which the USAO anticipates extensive costs.

Appointment of a third-party expert will occur only when clearly necessary and after all other alternatives have been considered and rejected.  In rare cases, compelling law enforcement or policy considerations might warrant appointment of a third-party expert even though there is not or may not be sufficient equity in the business enterprise or complex asset to cover the costs of employing the third-party expert.  In such cases, the USAO must thoroughly document for MLARS the reasons for rejecting all alternatives to the appointment of a third-party expert.

### III.  Qualifications of Trustees, Monitors, Managers, and Custodians

As set forth above, prior to appointment, the government will determine the purpose of and need for the assistance (*i.e*., to prevent either the dissipation of the asset or the enterprise from engaging in illegal activity, or both) as well as its goals.  The theory of forfeiture under which the property is seized and the nature of the business itself will inform the duties and goals of the third-party expert. For example, if the business subject to forfeiture was acquired with proceeds of illegal activity and is self-supporting or is subject to forfeiture as a substitute asset, the goal of the government generally is to prevent dissipation of the business and its assets.  Monitorship or trusteeship of such an asset usually requires less oversight and more often results in a profitable forfeiture than the forfeiture of an enterprise used to facilitate illegal activity.  The restraining order or other order appointing a third-party expert engaged by the government must define the duties and goals of the third-party expert.

The qualifications required of a third-party expert will vary depending on the nature and purpose of the contemplated third-party expert assistance.  For example, if the main purposes of the assistance are to manage a business and prevent dissipation of its value, the qualifications will likely include a business management and accounting background as well as expertise in the particular industry or specialized operational activity.  It will often be necessary for the third-party expert to have qualifications for complying with various reporting and legal requirements (*e.g.*, taxes, securities, environmental) pertaining to the business.

The appointment order should require the third-party expert to contact and coordinate with the designated prosecutor or supervisory case agent if the third-party expert detects or suspects ongoing criminal activity or evidence of past criminal conduct.

### IV.  Trustee, Monitor, Manager, and Custodian Expenses

In general, the government should not enter into a contract to pay for the services of a third-party expert from the AFF unless a determination is made that forfeiture is likely and the business revenues or proceeds from the eventual sale justify those costs in addition to any assumed and contingent liabilities and disposal costs.

# Chapter 10:
# Use and Disposition of Seized and Forfeited Property

## I.    Management and Disposal of Seized Assets

### A.  Assets seized by Department of Justice law enforcement agencies

The U.S. Marshals Service (USMS) has primary authority over the management and disposal of assets in its custody that have been seized for forfeiture or forfeited by the law enforcement agencies of the Department of Justice (Department) and, by agreement, certain other federal law enforcement agencies that participate in the Department's Asset Forfeiture Program (Program).[1]  The USMS bears responsibility for arrangements for services or commitments pertaining to the management and disposition of such property.  The Attorney General has delegated the authority to dispose of forfeited real property and to warrant title to the USMS Director.  *See* 28 C.F.R. § 0.111(i); *see also* Chapter 4, Section I.D's discussion of title conveyance in this *Manual*.

### B.  Assets seized by Department of the Treasury and Department of Homeland Security law enforcement agencies

Property custodians (generally contractors) operating under Department of the Treasury (Treasury) guidelines handle management and disposal of assets seized by agencies within Treasury and other agencies included by agreement in the Treasury Forfeiture Fund (TFF),[2] including certain agencies moved from Treasury to the Department of Homeland Security (DHS).[3]  However, the USMS serves as the property custodian for virtual currency seized by TFF agencies (a role it also performs for agencies participating in the Department's Asset Forfeiture Program).  The Treasury agency case agent or the asset forfeiture coordinator in the agency's field office generally serves as the initial point of contact for issues relating to custody, management, and disposal of seized property.[4]

### C.  Coordination for seizure planning, custody, and disposition decisions

In a federal case involving Department seizing agencies, and as soon as possible after the identification of assets other than cash for seizure or forfeiture, the U.S. Attorney's Office (USAO) or agent in charge of the field office responsible for an administrative forfeiture case should contact the USMS to discuss seizure planning.  For such cases involving Treasury seizing cases, USAOs should contact Treasury. *See* Chap. 1, Secs. I.A–D in this *Manual*.

---

[1]  The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) has primary authority over the custody and disposition of firearms and ammunition forfeited by Department agencies.  Department Program participants are ATF, the Federal Bureau of Investigation (FBI), the Drug Enforcement Administration (DEA), the USMS, the Money Laundering and Asset Recovery Section (MLARS), the Organized Crime Drug Enforcement Task Force (OCDETF), U.S. Attorney's Offices (USAOs), and the Asset Forfeiture Management Staff (AFMS).  Non-Department Program participants are the Department of State, Bureau of Diplomatic Service (DSS), Department of Defense (DOD), Defense Criminal Investigative Service (DCIS), Food and Drug Administration's Office of Criminal Investigations (FDA-CI), U.S. Department of Agriculture's Office of the Inspector General (USDA-OIG), and the U.S. Postal Inspection Service (USPIS).

[2]  For a list of agencies participating in the TFF, *see* 31 U.S.C. § 9705(o).

[3]  DHS participating agencies are U.S. Customs and Border Protection (CBP), U.S. Immigration and Customs Enforcement-Homeland Security Investigations (ICE-HSI), U.S. Secret Service (USSS), and U.S. Coast Guard.

[4]  Prosecutors should consult Treasury for procedures involving assets seized by Treasury agencies.

Before taking any property management or disposition action (*e.g.*, making a commitment in a settlement or plea agreement), the USAO or agency responsible for an administrative forfeiture case should consult the USMS in cases involving Department seizing agencies (or Treasury, in cases involving Treasury seizing agencies) to discuss any management or disposition issues. *See* Chapter 11, Section I.B.2 in this *Manual*.

## II.   Use of Seized Property

### A.  Use of seized property is prohibited

Absent an order of forfeiture or declaration of an administrative forfeiture affirmatively vesting title to seized property in the United States, the government does not have title to the property. Thus, any use of property held pending forfeiture raises potential issues of liability and creates the appearance of impropriety. Therefore, Department policy generally prohibits the use of property pending forfeiture.

Property under seizure and held pending forfeiture may not be used for any reason by government or contractor personnel, including for official use, until a final order of forfeiture is issued. Likewise, government or contractor personnel may not make such property available for use by others, including persons acting as substitute custodians, for any purpose, before completion of the forfeiture. Any vehicles or other property being stored by a federal agency, or under an authorized substitute custodial agreement with a state or local agency, must not be used by any party until the forfeiture is completed and title of the asset has been transferred to that agency.

In limited circumstances, however, a prosecutor may seek court authority for the use of seized property, after consultation with the USMS. This may be appropriate, for example, in situations where the maintenance of the property requires use of equipment under seizure (*e.g.*, to maintain a ranch or business).

### B.  Pre-forfeiture sale of certain seized property

The Department favors pre-forfeiture sale of property (*i.e.*, interlocutory sale) as a means of preserving asset value and mitigating asset expenses for assets subject to volatility in valuation or extreme management costs, assets requiring unique care or maintenance, assets that have unique security or safety concerns, or assets that have other extenuating circumstances. Interlocutory sales should be pursued upon agreement of the parties, including all known interested parties, or based upon those conditions set forth in Rule G(7)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules).[5] The USAO shall consult with the seizing agency and the USMS to determine the status of any petitions for remission before seeking a pre-forfeiture sale of property pending judicial forfeiture. The USMS has primary authority over the management and disposition of assets subject to interlocutory sale.

Proceeds from any pre-forfeiture sale shall be promptly deposited into the Department's Seized Assets Deposit Fund (SADF).

---

[5]   In addition, prosecutors and agents must consult with MLARS before seeking an order for interlocutory sale of cryptocurrency. *See* Chap. 2, Sec. V.B in this *Manual* for a discussion of the policy on interlocutory sale or pretrial conversion of cryptocurrency.

## III.  Disposition of Forfeited Property and Funds

### A.  Forfeiture orders

The disposition of property forfeited to the government is an executive branch decision and not a matter for the court.  Consequently, preliminary and final orders of forfeiture should include language directing forfeiture of the property to the government "for disposition in accordance with law."

In addition, judicial orders of forfeiture should specifically address any third-party claims against the forfeited property that the government recognizes.  If the interests of claimants will be satisfied in whole or in part by payments from the proceeds of a sale of property by the USMS (or Treasury), the proposed forfeiture order should provide specific guidance for the USMS (or Treasury) concerning these payments and, where possible, specify that these claims shall be paid only after the government recovers its costs, and only up to the net amount realized from the proceeds of the forfeited property.  The proposed forfeiture order should also identify those persons or entities who received direct notice of the forfeiture proceeding and expressly state that the interests of all persons who received notice and did not file a claim are extinguished.

The comptroller general has determined that judgments in excess of the proceeds of sale may be paid from Treasury's Judgment Fund.[6]  The Department's Assets Forfeiture Fund (AFF) is available for the payment of valid liens and mortgages "subject to the discretion of the Attorney General to determine the validity of any such lien or mortgage and the amount of payment to be made."  *See* 28 U.S.C. § 524(c)(1)(D).  The USMS is authorized to pay a lien or mortgage in excess of the proceeds of sale if the payment will facilitate the liquidation of the property and thus reduce the expenses of such property's continued custody.  USAOs and other litigating units must submit requests for approval of liens and mortgages in excess of the proceeds of sale to MLARS for approval.  However, when negotiating settlements with lienholders, USAOs should take care to limit recovery only to the amount of net proceeds recovered from the real property, allowing the lienholder to preserve all contractual rights to recovery against the contract-debtor.

### B.  Disposition of forfeited property in civil and criminal cases

The Attorney General has complete authority to dispose of forfeited property by "sale or any other commercially feasible means," without subsequent court approval.  *See* 21 U.S.C. §§ 853(h) and 881(e)(1)(B); *see also* 18 U.S.C. §§ 1467(b), 1963(f), and 2253(b).  This is generally called a "forfeiture sale" of the property.[7]

When a property or its owner is involved in criminal activity, forfeiture extinguishes all of the former owner's rights, title, and interests in that criminally derived or criminally involved asset, and vests them with the government.[8]  While the relation back doctrine in 21 U.S.C. § 853(c) provides that all right, title, and interest in forfeitable property vests in the government upon the commission of the criminal act giving rise to the forfeiture, the government's ownership interest is not confirmed to the world until a court enters a final order of forfeiture.

---

[6]  Treasury's Bureau of the Fiscal Service (BFS) manages the Judgment Fund.

[7]  The Department takes the position that 28 U.S.C. § 2001 does not apply to judicial forfeiture sales and no judicial confirmation is required.

[8]  21 U.S.C. §§ 853(c) and 881(h); 18 U.S.C.§ 1963(c); *see United States v. Grundy*, 7 U.S. 337, 350–351 (1806); *United States v. 6124 Mary Lane Dr., San Diego, CA*, No. 3:03-CV-00580, 2008 WL 3925074, *2 (W.D.N.C. Aug. 20, 2008).

Because the forfeiture process vests title to the property in the government, when the government conducts a forfeiture sale, it sells property it owns. The forfeiture statutes give the power to the Attorney General, on behalf of the United States as owner, to dispose of the property. After the final order of forfeiture, the court has no involvement in the sale or disposal process.

## C. Sale of forfeited property

Upon the successful completion of the forfeiture, the USMS shall promptly sell the property and deposit the proceeds of the sale into the AFF. The property may not be sold and the proceeds of the sale may not be deposited in the AFF if there is a pending owner or lienholder petition for remission or a pending request to place the property into official use.

Seizing agencies and the USAO shall promptly notify the USMS of all relevant facts affecting the forfeited property, including:

- outstanding bills, invoices, or pending requests for mitigation and remission;

- requests to transfer to federal, state, local, or tribal agencies;

- requests for official use by Department components, if known; and

- appraisals not provided by the USMS.

Based on these and other relevant factors, the USMS shall promptly and appropriately dispose of the property.

## D. Disposition of forfeited funds

The USAO securing a forfeiture and the seizing agency are responsible for initiating the disposal of funds forfeited to the government. In cases involving a Department seizing agency, the USAO and the seizing agency should provide prompt notification to the USMS of the events, enter the forfeiture decision and amount in the Consolidated Asset Tracking System (CATS), and provide the forfeiture documentation to the USMS.[9] The USMS will promptly dispose of forfeited funds by transferring the funds from the SADF to the AFF and entering disposal and collection data in CATS.

As discussed in Chap. 1, Sec. I.C.4 in this *Manual*, the Consolidated Appropriations Act of 2016[10] established—and the U.S. Victims of State Sponsored Terrorism Fund Clarification Act of 2019 amended—requirements for the disposition of the proceeds of forfeitures, fines, and penalties arising from violations of the International Emergency Economic Powers Act (IEEPA)[11] or the Trading with the Enemy Act (TWEA),[12] or any related criminal conspiracies, schemes, or other federal offenses that involve state sponsors of terrorism. For criminal matters, all funds and the net proceeds from the sale of property from these violations must be deposited into the U.S. Victims of State Sponsored Terrorism Fund (USVSST Fund). For civil matters, effective November 21, 2019, 75% of all funds and 75% of all proceeds from the sale of property must be deposited into the USVSST Fund.[13]

---

[9]   For cases involving assets seized by a Treasury agency, the USAO should provide prompt notification to the Treasury custodian for transfer to the TFF.

[10]  Pub. L. 114-113, Dec. 18, 2015, 129 Stat. 2242.

[11]  50 U.S.C. § 1701 *et seq.*

[12]  50 U.S.C. § 4301 *et seq.*

[13]  MLARS' USVSST Fund page has more information.

Prosecutors should consult MLARS as early as possible in any case that involves a state sponsor of terrorism and may require deposits to the USVSST Fund.

## IV. Purchase or Personal Use of Forfeited Property by Department of Justice Employees

Regulations prohibit Department employees from using or purchasing, either directly or indirectly, any property if the property has been forfeited to the government and offered for sale by the Department or its agents, absent prior approval by an agency designee. *See* 5 C.F.R. § 3801.104. In addition, Department employees are prohibited from using property forfeited to the government that has been purchased, directly or indirectly, by a spouse or minor child. *Id.*

This policy serves a twofold purpose. First, it ensures that there is no actual or apparent use of inside information by employees wishing to purchase forfeited property. Second, the policy protects the integrity of the Program by precluding even the appearance of a conflict of interest that would otherwise arise should a Department employee purchase forfeited property.

A written waiver of these restrictions may be granted by the USMS, in consultation with the agency designee, upon determination that, in the mind of a reasonable person with knowledge of the circumstances, the purchase or use of the asset by the employee will not (1) raise a question as to whether the employee has used their official position or nonpublic information to obtain or assist in an advantageous purchase, and (2) create an appearance of the loss of impartiality in the performance of the employee's duties. The agency designee must file a copy of this waiver with the Deputy Attorney General (DAG).

# Chapter 11:
# Settlements

## I.    General Policy

The Department of Justice (Department) encourages settlements to forfeit property to serve justice and to conserve the resources of both the government and claimants.

The Department's decision maker considers several basic criteria in determining whether a proposed settlement is appropriate, including whether:

- the litigation risks or other circumstances justify the settlement;

- the settlement employs forfeiture best practices;

- the settlement is consistent with overall Department policy and goals;[1]

- the settlement is made merely to induce a criminal plea, or conversely, gives the appearance that a defendant is avoiding or receiving a reduction in criminal penalties in exchange for agreeing to the proposed forfeiture; and

- the economic analysis is sound.[2]

### A.  Scope

#### A.1  Settlement

For purposes of this chapter, settlement means:

(a)    In a criminal forfeiture case, a plea agreement with a criminal defendant regarding the forfeiture or return of seized or restrained property; property not seized or restrained but listed in the forfeiture allegation of the indictment, information, or in a bill of particulars; or real property listed in an indictment, information, or subject to *lis pendens* under state law; or an agreement to resolve a third-party claim in the ancillary proceeding in a criminal case;

(b)    Resolution of a civil judicial case or an administrative claim that was referred to a U.S. Attorney's Office (USAO);

(c)    An agreement to dismiss a civil forfeiture case or forfeiture in a criminal case, or to release property seized or restrained for forfeiture, or real property listed in an indictment, information, or subject to *lis pendens* under state law, where the agreement includes a provision for the payment of a sum of money to the federal government or a

---

[1]    *See* Chap. 7, Sec. III (negotiating with fugitives), and Chap. 8, Sec. VIII in this *Manual*.

[2]    The applicable net equity thresholds may be waived where forfeiture of a particular asset serves a compelling law enforcement interest.  *See* Chap. 1, Sec. I.C.3 in this *Manual*.

federal agency as, for example, a fine, penalty, or restitution in lieu of forfeiture; or

(d)   A deferred prosecution agreement (DPA) or non-prosecution agreement (NPA) that contains

(i)    an agreement regarding the forfeiture or return of seized or restrained property; property not seized or restrained but listed in the forfeiture allegation of the indictment, information, or in a bill of particulars; or real property listed in an indictment or subject to *lis pendens* under state law;

(ii)   an agreement to resolve a claim filed by any claimant in a civil forfeiture case; or

(iii)  an agreement to release property seized or restrained for forfeiture, or real property subject to *lis pendens* under state law, where the agreement includes a provision for the payment of a sum of money to the federal government or a federal agency as, for example, a fine, penalty, or forfeiture.[3]

For purposes of the above provisions, a settlement does not include an agreement to pay the claim of a secured creditor, such as a mortgage or lien on real property, when (1) the secured claim has been properly perfected in accordance with state or other law and (2) there is no dispute as to the validity of the claim or the amount owed on the claim.  Unless there is an agreement to pay a sum of money to the government in lieu of forfeiture, as provided in Section I.A.1 in this chapter, a settlement also does not include: (1) a declination of an agency referral, (2) a dismissal of a civil forfeiture complaint or an amendment to a civil forfeiture complaint to dismiss claims as to certain assets, or (3) a dismissal of property identified for forfeiture in an indictment, information, or bill of particulars.

### A.2  Amount involved

For purposes of this chapter, the amount involved means:

- In a criminal forfeiture case, the amount involved is the fair market value at the time of settlement of the aggregate value of any property that has been seized, restrained, subject to *lis pendens* under state law, or specifically identified as property subject to forfeiture in any forfeiture count, allegation, or bill of particulars, including substitute assets.  But the amount involved does not include the amount of a forfeiture money judgment, unless there are assets currently available that may be forfeited to satisfy the judgment.  For example, if the government has seized several assets and restrained other assets for the purpose of forfeiture in connection with a criminal prosecution, and has also alleged in the indictment that the defendant is liable for a $2 million forfeiture money judgment, for purposes of negotiating a plea agreement with the defendant, the amount involved is the aggregate value of the assets that have actually been seized or restrained, but does not include the $2 million unless it

---

[3]  In Department of the Treasury Forfeiture Fund (TFF) agency cases, consult with the Department of the Treasury Executive Office of Asset Forfeiture (TEOAF) counsel and the TFF seizing agency for additional guidance.

appears that there are assets currently available that may be forfeited in satisfaction of the judgment.

- In the ancillary proceeding in a criminal case, the amount involved is the fair market value of the interest in the forfeited property claimed by the third party with whom the government is attempting to reach a settlement.

- In a civil forfeiture case, the amount involved is the fair market value of an interest claimed by the person with whom the government is attempting to reach a settlement. If the claimant asserts an interest in more than one asset, the amount involved is the aggregate of those interests. For example, if the defendant property is a dwelling with a fair market value of $1.2 million, and the claimant is a lienholder asserting a $400,000 lien, for purposes of reaching a settlement with the lienholder, the amount involved is $400,000. In the same case, if the claimant is the owner who acknowledges the validity of the lien but contests the forfeiture of the equity in the property, for purposes of reaching a settlement with the owner the amount involved is $800,000. But if the claimant is the owner who also contests the forfeiture of three other assets with a combined value of $350,000, the amount involved is $1.15 million.

### A.3  Amount to be released

For purposes of this chapter, the amount to be released means the value of the property at the time of settlement that a claimant, defendant, or third party in an ancillary proceeding would recover or would be permitted to retain.

### A.4  Fair market value

For purposes of this chapter, the fair market value means the appraised value of the property at the time of settlement less the amount of any outstanding costs, such as storage costs, mortgages, liens, and unpaid property taxes.

## B.  General settlement principles

Prosecutors must observe the following principles when negotiating and structuring forfeiture settlements.

### B.1  Factual basis

There must be a statutory basis for the forfeiture of the property and sufficient facts stated in the settlement documents or any related pleadings to show a nexus between the property subject to forfeiture and the offense upon which the forfeiture is based. For example, because a subject used a firearm to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance, the firearm is subject to forfeiture under 21 U.S.C. § 881(a)(11).

### B.2 Consultation

Prosecutors must negotiate all settlements in consultation with the seizing agency[4] and with the U.S. Marshals Service (USMS), where appropriate, and in compliance with the USAO's approval requirements.[5]  The seizing agency's input is essential to reach a settlement based on a common understanding of the facts and circumstances surrounding the seizure.  Settlements occasionally require that administrative action be taken by the agency to implement those settlements, including, on occasion, accepting a referral of the case back to the agency for administrative forfeiture of all or some of the seized property.  When a settlement involves complex assets, complex terms, or risk of loss to the government, prosecutors should seek input from the USMS or the relevant Department of the Treasury (Treasury) Forfeiture Fund (TFF) agency to determine any current and prospective expenses to ensure that the settlement is fiscally sound from the government's perspective, that the settlement agreement adequately addresses ownership interests and title issues, and that the USMS or the relevant TFF agency may carry out the terms of the settlement.

### B.3 Recovery of investigative and other costs

In general, the government should not attempt to use a settlement to recover the costs of its investigation.  It may be appropriate in certain limited circumstances, however, to recover extraordinary expenditures, such as funds needed to clean up environmental damage to the forfeited property.

### B.4 Status of administrative forfeiture

As outlined in Chapter 5, Section II.D in this *Manual*, before discussing any settlement, the prosecutor and the investigating agent must determine what property, if any, the seizing agency is presently processing for administrative forfeiture or has previously declared administratively forfeited.  Prosecutors may not reach agreements regarding the return of property that is the subject of a pending administrative forfeiture proceeding unless the prosecutor confers with the seizing agency and the seizing agency concurs with a request to suspend administrative forfeiture proceedings.  Property that has been administratively forfeited belongs to the government and, therefore, cannot be disposed of as part of a plea agreement.

### B.5 Disagreements

If the USMS or seizing agency disagrees with the USAO's recommended settlement proposal, either agency may refer the matter to the Chief of the Money Laundering and Asset Recovery Section (MLARS) for resolution.

---

[4]  The agency to be consulted regarding the terms of the settlement may not be the "seizing agency."  For example, U.S. Customs and Border Protection (CBP) is responsible for processing all seizures made by either CBP or U.S. Immigration and Customs Enforcement-Homeland Security Investigations (ICE-HSI).  In those cases, a prosecutor must consult both agencies.

[5]  In Treasury cases where the USMS is not the custodian of the property, an independent contractor will serve as the property manager and the USMS need not be consulted.  It is the responsibility of the seizing agency and authorized designee (CBP in ICE-HSI seizures) to contact the independent contractor when appropriate and to inform it of any settlement proposals.

### B.6  Property located in another district

To settle a forfeiture action involving property located in another judicial district, the USAO handling the forfeiture must notify and coordinate with the USMS in the district where the property is located. The USAO in the district that forfeits property located in another district must comply with the requirements for forfeiture in the district where the property is located. Failure to comply with such requirements may result in a cloud on the government's title that may interfere with the disposal of assets in accordance with settlement terms. Coordination will minimize this possibility.

### B.7  Partial payments

Generally, settlements shall not provide for partial payments. However, the USAO may seek an exception to this policy on the advice and approval of MLARS, in consultation with the USMS and its headquarters Asset Forfeiture Division (AFD).[6] For purposes of this provision, the subsequent forfeiture of assets to satisfy a money judgment does not constitute a partial payment.

### B.8  Reacquiring the property

The settlement should state that the claimant may not reacquire the forfeited property directly or indirectly through family members or any other agent. Family members or other agents who already own a partial interest in the forfeited property may, however, purchase the forfeited interest with legitimate funds.

### B.9  Effect on taxes and other obligations

Settlements do not negate the tax obligations, fines, penalties, or any other monetary obligations that the claimant owes to the government outside of the forfeiture action. Settlement documents should state that the resolution does not satisfy any other financial obligations.

When a proposed forfeiture settlement will release assets to a claimant who is known or likely to have other outstanding obligations to the government (*e.g*., taxes), prosecutors should notify the appropriate agency (*e.g*., the Internal Revenue Service) of the proposed settlement.

Additionally, the Debt Collection Improvement Act of 1996 (DCIA) requires Treasury and other disbursing officials to offset federal payments to collect delinquent non-tax debts owed to the government and to collect delinquent debts owed to states. The Treasury Offset Program (TOP) offsets payments related to the DCIA. Accordingly, settlements should also include language to notify the claimant that any funds currently on deposit in the Department's Seized Asset Deposit Fund (SADF) or Assets Forfeiture Fund (AFF) will be processed through TOP before being returned to the claimant, with the possibility that any of the claimant's outstanding and delinquent obligations to the federal or a state government might be offset against the payment.

---

[6]  Prosecutors should also seek the advice and approval of MLARS in Treasury and Department of Homeland Security (DHS) cases.

## II.  Settlement Approval Authorities

### A.  Authorizing officials

U.S. Attorneys, the Chief of MLARS, and the Deputy Attorney General (DAG) have authority to settle civil or criminal forfeiture cases as outlined in the chart below.[7]

| Authorizing Official | Amount Involved | Amount to be Released |
|---|---|---|
| U.S. Attorney | Up to $1,000,000 | Any dollar amount |
| U.S. Attorney | $1,000,001 to $5,000,000 | Up to 15% of amount involved |
| MLARS Chief | Any dollar amount | Less than $2 million and more than 15% of amount involved |
| Deputy Attorney General (DAG) | Any dollar amount | More than $2 million and more than 15% of amount involved |

### B.  Approval authority examples

- A criminal indictment alleges that the defendant must forfeit, upon conviction, various assets where the amount involved totals $3 million.  The assets are neither seized nor restrained, but they are listed in the forfeiture allegation in the indictment and the real property is included in an indictment or subject to *lis pendens* under state law.  As part of a plea agreement, the government agrees not to go forward with the forfeiture of most of the assets but instead agrees to accept a lump sum payment of $750,000 in lieu of forfeiture.  Because the agreement allows the defendant to retain assets worth more than $2 million, and which represent more than 15% of the total amount involved ($3 million in assets subject to forfeiture), the DAG must approve the plea agreement.

- The government brings a civil forfeiture action against a piece of real property with a market value of $1.5 million but in which the sole claimant has only claimed an interest in $250,000 of the equity in the real property.  The government settles with the claimant by agreeing to pay $125,000 out of the proceeds of the sale of the real property.  Because the total value of the equity involved—claimant's $250,000 claim—is less than $1 million, the U.S. Attorney has authority to approve the settlement.

- The government files a civil forfeiture action against seized bank accounts and currency in the amount of $1.8 million but agrees as part of a settlement to release 20% ($360,000) to the claimant.  Because the total value of the property exceeds $1 million and the amount to be returned is above 15%, the U.S. Attorney does not have authority to settle the case without approval from the Department; but because the amount to be returned does not exceed $2 million, the Chief of MLARS has the authority to approve the settlement without having

---

7  *See* 28 C.F.R. §§ 0.160, 0.161 and 0.168; Attorney General Order No. 1598-92.

to consult with the DAG, even though the amount to be returned is more than 15% of the total value.

## III. Using Administrative Forfeiture to Achieve a Settlement

The following procedures apply to settlement agreements in civil judicial forfeiture proceedings, criminal forfeiture plea agreements, and DPAs and NPAs where an administrative forfeiture is necessary to effectuate the agreement. In such cases, the USAO must consult the headquarters of the seizing agency involved prior to finalizing an agreement to ensure that the agency can accommodate the terms of the agreement.

### A. Settlement of forfeiture as an administrative forfeiture after a claim is filed in an administrative forfeiture proceeding but before a judicial complaint is filed

Certain requirements apply when a claim has been filed in response to a notice of administrative forfeiture and the case has been referred to the USAO, but a settlement is reached before the USAO files a civil judicial complaint:

(1)  The USAO must reduce the terms of the settlement to writing and include:

    (a)  a provision in which the claimant identifies their ownership interest in the property to be forfeited;

    (b)  a provision in which the claimant gives up all of the right, title, and interest in the property so identified;

    (c)  a provision in which the claimant agrees not to contest the government's administrative forfeiture action and waives all deadlines under 18 U.S.C. § 983(a);

    (d)  a provision in which the claimant agrees that the property is subject to forfeiture under the applicable civil forfeiture statute;

    (e)  a provision reciting the statutory basis for the forfeiture of the property and sufficient facts to justify the forfeiture of the property.

    (f)  specific reference to the withdrawal of the claim, and any pending petitions for remission, *see* Chapter 13, Section I.A in this *Manual*;

    (g)  a "hold harmless" provision and a general waiver of Federal Tort Claims Act (FTCA) rights and *Bivens*[8] actions as well as a waiver of all constitutional and statutory defenses and claims;

    (h)  where funds are to be returned to the claimant as part of the settlement, a statement that the return of funds may be subject to offset for any active debts the claimant may have in TOP;

---

[8]  *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

      (i)   a provision in which the claimant agrees to not reacquire the property (*see* Section I.B.8 in this chapter); and

      (j)   a provision in which the claimant agrees to bear their own costs, attorneys' fees, and expenses;

(2)   The case promptly should be referred back to the seizing agency to reinstitute the administrative process. The seizing agency shall reinstitute the administrative forfeiture process to effectuate the agreement upon receipt of a referral in compliance with this policy, consistent with its lawful authority; and

(3)   Property to be administratively forfeited must be eligible for administrative forfeiture under federal law, which in a settlement may include accepting "cash in lieu" of a named and existing forfeitable asset, as discussed in Section IX.C in this chapter. Substitute assets are not subject to administrative forfeiture.

Where the agreement provides that the claimant withdraw the claim to all property subject to forfeiture, the entire case will be referred back to the agency for administrative forfeiture unless, of course, other claims have been filed as to the same property. The seizing agency will still have to take steps to ensure compliance with noticing and administrative forfeiture eligibility.

Where the agreement provides that the claimant withdraw only a part of a claim, the case will be referred back to the agency for administrative forfeiture of that portion of the forfeitable property subject to the withdrawal. The remaining property will be handled as specified in the agreement, which may include release of the remaining property to the claimant. Republication of the notice or of the administrative forfeiture action is not necessary, provided publication covering the property to be forfeited occurred prior to the filing of the claim.

### B.  Using administrative forfeiture to settle civil forfeiture proceedings where no prior administrative forfeiture proceeding has begun

If a prosecutor has commenced a judicial action without a prior administrative forfeiture action, then to enter a settlement agreement involving a proposed administrative forfeiture of seized property:

- the headquarters of the seizing agency must concur in that part of the settlement that would obligate the agency to commence administrative forfeiture proceedings;

- the prosecutor must dismiss or amend the complaint to strike the assets to be administratively forfeited;

- the jurisdiction of the district court over the assets to be administratively forfeited must be relinquished before the prosecutor can refer the case to a seizing agency; and

- the property to be administratively forfeited must be eligible for administrative forfeiture under federal law, which in a settlement may include accepting "cash in lieu" of a named and existing forfeitable asset, as discussed in Section IX.C in this chapter. Substitute assets are not subject to administrative forfeiture.

Following the entry of a settlement agreement and completion of the above steps, the prosecutor will refer the case to the seizing agency. The seizing agency shall initiate the administrative forfeiture

process to effectuate the agreement upon receipt of a referral in compliance with this policy, consistent with its lawful authority.

### C. Using administrative forfeiture to settle criminal forfeiture proceedings

Prosecutors may settle a criminal forfeiture proceeding through plea or agreement to the administrative forfeiture of any asset if the asset is subject to administrative forfeiture. The headquarters of the seizing agency must concur in that part of the settlement that would obligate the agency to commence administrative forfeiture proceedings. The terms of any plea or agreement should include a waiver of administrative forfeiture deadlines and notice requirements.

Following the entry of a settlement agreement, the prosecutor will refer the case to the seizing agency. The seizing agency shall initiate the administrative forfeiture process to effectuate such an agreement upon receipt of a referral in compliance with this policy, consistent with its lawful authority.

Property to be administratively forfeited must be eligible for administrative forfeiture under federal law, which in a settlement may include accepting "cash in lieu" of a named and existing forfeitable asset, as discussed in Section IX.C in this chapter. Substitute assets are not subject to administrative forfeiture.

## IV.   References to Remission or Restoration in Settlements

No agreement—whether a settlement in a civil judicial action, a plea agreement resolving both criminal charges and the forfeiture of assets in a criminal case, settlement of a claim in an ancillary proceeding, or a DPA or NPA—may contain any provision purporting to bind the Department and the agencies to a particular decision on a petition for remission or request for restoration, or otherwise contain terms the effectiveness of which is contingent upon the making of such a decision. The remission and restoration processes, like the pardon process in criminal cases, are completely independent of the litigation and case settlement process.[9] However, where an individual has filed a claim and a petition, the USAO may provide for the express withdrawal and extinguishment of any petition when settling a claim.

In extremely limited circumstances and on request by the USAO, MLARS may adjudicate a properly filed petition for remission or mitigation prior to the negotiation of a forfeiture settlement or entry of a final order of forfeiture. MLARS will only adjudicate a petition for remission or mitigation following consultation with the USAO and receipt of the USAO and agency report and recommendations. Any such decision will include various caveats, such as the evaluation of any other filed petitions, liquidation of the assets, and available net proceeds in the case. Upon approval by MLARS in those specific cases only, a settlement agreement may include a provision that expressly leaves open or expressly forecloses the right of any party to file a petition for remission or mitigation.

## V.   Settlements in Civil Judicial Forfeiture Cases

Any settlement that purports to forfeit property binds only the parties to it and forfeits only the interest in the property that the settling claimant possesses. The USAO must follow these procedures

---

[9]   Although the USAO and seizing agency must provide their recommendations as to the allowance or denial of a judicial petition or request for restoration, the final determination rests with MLARS. *See* 28 C.F.R. § 9.1(b)(2). Prosecutors or seizing agencies must take care not to make representations to the court, the defendant, or potential victims as to whether remission or restoration may be granted. *See* Chap. 14, Secs. II.A and II.B.2 in this *Manual*.

to ensure that a valid and complete civil judicial forfeiture of the interest occurs through the settlement. The USAO must:

- file a civil verified complaint for forfeiture of the property in the U.S. district court to establish the court's jurisdiction. Filing an action as a "miscellaneous docket," "consent civil decree," and any other attempts to avoid filing a complaint violates the Department's policy requiring that a complaint be filed in each civil forfeiture case;[10]

- provide written notice to all known parties with interest in the property and publish notice;

- if no timely claim has been filed pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, seek a default judgment pursuant to Federal Rule of Civil Procedure 55 as to all interests in the property other than the interest(s) subject to the settlement agreement; and

- fully incorporate into proposed orders of forfeiture the terms of all settlement agreements, such as any lien or mortgage per diem rates and payoffs or spousal ownership interests.

## VI.  Plea Agreements Incorporating Criminal Forfeiture

In any plea agreement, a defendant may consent to forfeiture of any asset for which the forfeiture is factually supported by the counts of conviction. A plea agreement that purports to forfeit the property may bind only the parties thereto and not third parties who purport to hold an interest in the property. Property that has been transferred by a defendant to a third party may still be subject to forfeiture, subject to the third party's right to contest the forfeiture in the ancillary proceeding. The USAO must follow the procedures below to ensure that a valid forfeiture results from a plea agreement. The USAO must:

- include a forfeiture allegation in the indictment or information. To the extent property is known to be subject to forfeiture, it should be listed in the indictment or information, or in a subsequent bill of particulars. The USAO must ensure that its criminal pleadings comply with Federal Rule of Criminal Procedure 32.2;

- comply with the requirements applicable to third-party interests (like 21 U.S.C. § 853(n)(1)–(7) and the provisions of Federal Rule of Criminal Procedure 32.2), including notifying appropriate third parties of the forfeiture and of their right to obtain a post-conviction adjudication of their interests in the property;

- reduce the settlement to forfeit property to writing, and ensure the defendant expressly stipulates to all facts supporting the forfeiture and waives all defenses to the forfeiture;[11] and

- ensure that the court issues a preliminary order of forfeiture that incorporates the settlement or terms of the plea agreement and includes the forfeiture order in the oral pronouncement of the sentence in the presence of the defendant and in the written judgment of conviction at sentencing.

---

[10] *See* Chap. 5, Sec. II.B in this *Manual*.

[11] To the extent that the defendant preserves any rights, exceptions should be explicitly expressed and the rights observed should be identified.

## VII. Settlement of Attorneys' Fees Liabilities

Department prosecutors are encouraged to whenever possible obtain settlements wherein each party bears its own attorneys' fees and costs. A Department prosecutor cannot agree to the payment of a claimant's attorneys' fees out of the Treasury Judgment Fund without prior approval from MLARS and the Judgment Fund.

Any agreement to exempt an asset from forfeiture so that it can be transferred to an attorney as fees for representation in a criminal case must be approved by the Assistant Attorney General of the Criminal Division (AAG). *See* Chapter 12, Section IV in this *Manual*; *see also Justice Manual* (JM) § 9-120.116.

In limited circumstances, the government may be required to pay attorneys' fees under the Equal Access to Justice Act (EAJA) to a third-party petitioner who asserted a claim in the ancillary proceeding of a criminal case. Proposed settlements of EAJA claims are subject to the procedures in Chapter 12, Section II.B in this *Manual*.

## VIII. Global Settlements and Dealing with Claimants and Witnesses

### A. Ethical considerations

In situations where both a civil forfeiture proceeding and a related criminal investigation or charges are pending, forfeiture attorneys may face ethical issues in the context of settlements, plea agreements, and dealings with witnesses. The discussion in Section VIII addresses some of these issues, with references to certain pertinent authority; however, in addition to the materials identified here, prosecutors should consult the rules that apply in the state in which they are licensed as well as the state and court(s) in which the proceedings are pending.[12]

### B. Global settlements

The term global settlement describes a situation whereby the government concludes a civil or administrative forfeiture action in conjunction with the resolution of the criminal charges involving the same activity that gave rise to the forfeiture of the property. Global settlements may also include other types of proceeding, such as False Claims Act (FCA) treble-damage suits, and federal agency injunctive and civil penalty actions. While such agreements often effectively and efficiently resolve disputed matters, they may also raise ethical issues. Prosecutors must avoid any plea or settlement agreement that risks undermining faith in the fairness of those who administer the criminal process, such as an agreement that appears to reduce prison time in exchange for forfeiture, or vice versa.

Government attorneys should not introduce or suggest a global settlement disposition. If opposing counsel raises the issue, however, prosecutors may respond, and subsequently pursue a global settlement, in close consultation with supervisors and mindful of the relevant ethical issues. The initiation of the global settlement by opposing counsel should be documented by email or other means.

---

[12] Department attorneys are "subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State." *See* 28 U.S.C. § 530B.

Notwithstanding the above, this policy does not bar the introduction by the prosecutor of negotiations regarding the criminal forfeiture aspects of a criminal prosecution, regardless of any related and pending parallel civil forfeiture actions. A criminal plea agreement should properly address and include the criminal forfeiture of assets related to the criminal offenses to which the defendant is pleading guilty.

Prosecutors must observe several principles in negotiating a global settlement:

(1) No settlement agreement should be used to gain an improper advantage in a related civil or criminal case. The government should not agree to release property subject to forfeiture (civil or criminal) to coerce a guilty plea on the substantive charges or to dismiss criminal charges to coerce a forfeiture settlement. To the maximum extent possible, the criminal plea and forfeiture should conclude the defendant's business with the government. Delaying consideration of the forfeiture until after the conclusion of the criminal case unnecessarily extends the government's involvement with the defendant and diminishes the effectiveness and efficiency of forfeiture enforcement.

(2) If a plea agreement in a criminal case does not resolve the criminal forfeiture or a related civil forfeiture proceeding, then express language to this effect should be included in the plea agreement to remove any doubt or ambiguity on this point.

(3) Where a defendant who is also a claimant in a related civil forfeiture proceeding has negotiated a plea agreement in the criminal case and concurrently wishes to forfeit the property in the related civil forfeiture proceeding, the plea agreement should state that the defendant waives any and all rights—constitutional, statutory, or otherwise—with respect to the civil forfeiture.[13]

(4) The defendant, in the plea agreement or factual basis in support thereof, must admit to facts sufficient to support the forfeiture. The government should expressly reserve its right to reopen the civil forfeiture proceeding if it is later determined that the settlement was based on false information, if the defendant violates the plea agreement, or if the agreement is invalidated for any other reason.

### C.  Claimants and witnesses

The same ethical considerations of fairness and proper conduct that apply in global settlements also apply in situations where the government attorney interacts with claimants and witnesses in civil forfeiture litigation. These issues may arise where the potential exists for the appearance of a consolidation of governmental power against individuals in a way that could become abusive, or where conditioning the subject's status in a prosecution on that person's cooperation has the appearance of seeking a subject's cooperation solely in connection with a civil forfeiture matter.

For example, a claimant or witness may be required to take action in the civil forfeiture proceeding, such as providing testimony in a deposition, while a related criminal investigation or charges are pending. In that scenario, a claimant or witness may perceive a threat of criminal prosecution. In these circumstances, prosecutors must not coerce cooperation or the provision of testimony in the

---

[13]  To the extent that the defendant preserves any rights, exceptions should be explicitly expressed and the rights observed should be identified.

civil case by threats or promises relating to the criminal proceedings.[14]  Government attorneys should not use civil forfeiture discovery or other proceedings solely to obtain information or benefit for the criminal proceeding.[15]

Similarly, an individual who is not currently charged with a crime but who was involved in the offense may have relevant information that would aid the government in pursuing a civil forfeiture case.  In a criminal case, the prosecutor could properly advise the witness that if they do not tell the truth about what they know, the witness could be charged for their own involvement in the crime, assuming evidence existed to support a prosecution.  Generally, the same should be true in a civil case scenario.  However, government attorneys must not threaten prosecution solely to gain an advantage in the civil matter (*i.e*., to ensure that the criminal charges would be brought for some legitimate purpose in addition to gaining an advantage in the civil action).  The prosecution must be related to the criminal case and well-founded.

In the context of settling civil forfeiture cases, the government attorney handling the civil case must not harm the government's criminal prosecution, by, for example, compromising a civil forfeiture case to the benefit of a defendant or witness who has already entered into a cooperation agreement with the government.  In that circumstance, the civil forfeiture settlement may be viewed as a benefit to the cooperating witness that the government would have to disclose to the defense, and which may be used to impeach the cooperating witness on cross-examination.  Thus, prior to negotiating a civil forfeiture settlement with a cooperating witness or defendant in a pending criminal case, the government forfeiture attorney should consult with the government attorney prosecuting the criminal case.[16]

Ethical issues may also arise where government attorneys include cooperation provisions in civil forfeiture settlements.  Cooperation provisions that provide for assistance or cooperation by the claimant in other civil forfeitures or in related criminal proceedings create no ethical problems, so long as the settlement agreement itself stands on its merits and the provision calls for cooperation in a criminal case, it does not run afoul of ethical considerations relating to the interplay of civil and criminal cases noted above.

Again, ethics rules vary from state to state, and MLARS strongly recommends that each attorney dealing with related civil forfeiture and criminal cases consult the rules that apply to the states in which the attorney is licensed and in which the proceeding is pending.  Prosecutors should also consult the ethics advisor in the USAO or the Department's Professional Responsibility Office.

---

[14]  A claimant or witness in a civil forfeiture proceeding who is also a defendant in a pending criminal case may want to cooperate in the civil case in the hope that such cooperation may be a factor in supporting a motion by the government for reduction of sentence pursuant to USSG §5K1.1; however, it is not clear whether or to what extent cooperation in a civil forfeiture proceeding would constitute a factor under §5K1.1, though it is clear that the Sentencing Guidelines expressly separate a defendant's sentence from forfeiture of defendant's property.  *See United States v. Hendrickson*, 22 F.3d 170, 175 (7th Cir. 1994) (USSG §5E1.4's explicit language that "[f]orfeiture is to be imposed upon a convicted defendant as provided by statute" makes it "readily apparent that forfeiture was considered by the Sentencing Commission and was intended to be imposed in addition to, not in lieu of, incarceration"); *cert. denied*, 513 U.S. 878 (1994).

[15]  *See In re Phillips, Beckwith & Hall*, 896 F. Supp. 553, 558 n.5 (E.D. Va. 1995) (law firm moved to stay forfeiture proceeding in view of potential criminal charges against firm personnel; court denied stay, noting that allegation of "bad faith on the government's part by, for example, pursuing a civil lawsuit solely for the purpose of aiding a criminal investigation, or threatening or delaying bringing criminal charges in order to extract an advantage in the civil case by keeping the cloud of criminal prosecution overhead" would have produced different outcome).

[16]  The seizing agency or authorized designee must also be consulted in connection with settlement negotiations. *See* Sec. I.B.2 in this chapter.

## IX.  Cash in Lieu of Forfeiture of Other Property

### A.  Department of Justice policy

One of the primary goals of the Department's Asset Forfeiture Program (Program) is to "punish and deter criminal activity by depriving criminals of property used in or acquired through illegal activities."[17]  Forfeiting the "tainted" property itself accomplishes this goal more directly and clearly than forfeiting an agreed sum of money, because accepting cash in lieu leaves the "tainted" property itself in the hands of those whose acts or failures to act made it forfeitable.

Under limited circumstances, however, accepting and forfeiting an amount of money in lieu of the property directly linked to an underlying offense best serves the interests of justice.  For example, the forfeiture of cash in lieu of other tangible property may be appropriate in cases where innocent owners own all but a small portion of the property; where forfeiture of the particular property will cause an undue hardship on innocent owners; or where, after balancing the costs and risks of continued litigation, the government determines that settling for part of the value of allegedly forfeitable property is just and appropriate.

Thus, Department policy requires the forfeiture of all available directly forfeitable property rather than a replacement sum of money, unless the interests of justice clearly favor forfeiture of the replacement sum of money.  If the interests of justice clearly favor forfeiture of a replacement sum of money, the government may accept and agree to replace directly forfeitable property with a replacement sum of money, subject to the policy limitations outlined in Section IX.B in this chapter.

Forfeiture of cash in lieu of available directly forfeitable property is different from the forfeiture of substitute assets.  Substitute assets are not subject to administrative or civil judicial forfeiture.

### B.  Policy limitations

The following limitations apply to cases in which the directly forfeitable property is available for forfeiture and forfeiting a replacement sum of money would leave the directly forfeitable property in the hands of some or all of its present owners.

#### B.1  Administrative forfeitures

Federal seizing agencies may, as a form of relief from administrative forfeiture, accept and forfeit a sum of money in lieu of directly forfeitable seized property.  *See* 19 U.S.C. § 1613(c), as incorporated by 18 U.S.C. § 981(d), 21 U.S.C. §§ 853(j) and 881(d); *see also* 18 U.S.C. § 2344(c) and 19 U.S.C. § 1614.  As a matter of policy and discretion, however, the Drug Enforcement Administration (DEA) and the Federal Bureau of Investigation (FBI) limit their use of this authority to cases where such substitution is determined to be in the interests of justice and the agency has received a timely claim for the forfeitable property pursuant to 18 U.S.C. § 983(a)(2) and referred it to the USAO for initiation of judicial forfeiture proceedings.  After consultation with the seizing agency (*see* Section I.B.2 in this chapter), the government may accept a monetary amount in lieu of forfeiture of the seized property and refer the matter back to the seizing agency to effect the settlement.

---

[17] *The Attorney General's Guidelines on the Asset Forfeiture Program* (July 2018) (*AG Guidelines*), Sec. II.

### B.2  Judicial forfeitures

In a judicial forfeiture case, the government may accept and forfeit an agreed sum of money in lieu of directly forfeitable property, although a court order approving the substitution should be sought and obtained whenever possible.  This is true regardless of whether the directly forfeitable property has been seized if the directly forfeitable property is named in the lawsuit and in existence.

These policies do not apply when the government either (1) forfeits substitute assets in a criminal case under 21 U.S.C. § 853(p), because directly forfeitable property is unavailable because of some act or omission of a criminal defendant, or (2) sells property, either before or after forfeiture, to persons not involved in or associated with the underlying criminal activity.

### C.  "Cash in lieu" vs. "substitute asset"

Liquidation of property, and replacing it with a sum of money, is often an effective means of preserving forfeitable value in both civil and criminal forfeiture proceedings.  However, prosecutors must refer to the replacement sum of money as cash in lieu or substitute res, not as a substitute asset.  This linguistic distinction is important to avoid confusion.

Specifically, in criminal forfeitures, substitution of money for tainted property is authorized under the substitute assets provision if the defendant has transferred or commingled interests in directly forfeitable property in a way that makes liquidation and forfeiture of the property itself difficult.  *See* 21 U.S.C. § 853(p).  The phrase substitute asset is a term of art referring to substitute property forfeitable under § 853(p) and 18 U.S.C. § 1963(m).  Substitute assets are legitimate assets that are subject to forfeiture in place of directly forfeitable property that has been made unavailable for forfeiture solely because of some act or omission of the criminal defendant.  As a matter of statutory construction and Department policy, such substitute assets may not be restrained or seized under asset forfeiture authority prior to the conviction of the criminal defendant.[18]

By contrast, cash in lieu is a sum of clean money that replaces directly forfeitable property prior to forfeiture, either by consent of the parties or by court order.  It does not replace property that has been made unavailable for forfeiture by some act or omission of the defendant.  Rather, it replaces directly forfeitable property that is currently available and does so by consent or court order; thus, the replacement sum of money should be subject to restraint and seizure the same as the directly forfeitable property it replaces.

### D.  Interlocutory sales[19]

In civil judicial forfeiture cases, interlocutory sales are specifically authorized by Rule G(7)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules), which provides that the sale proceeds "are a substitute *res* subject to forfeiture in place of the property that was sold."  *See* Supplemental Rule G(7)(b)(iv).  Interlocutory sales may also be pursued in criminal cases.  *See* Federal Rule of Criminal Procedure 32.2(b)(7), incorporating the interlocutory sale provisions in Supplemental Rule G(7).

---

[18]  In certain cases, assets that are not directly traceable to criminal activity can be restrained under other authority, including 18 U.S.C. § 1345.

[19]  Prosecutors must consult with MLARS prior to seeking an order for the interlocutory sale of cryptocurrency.  *See* Chap. 2, Sec. V.B in this *Manual*.

Under many forfeiture statutes, the proceeds from the sale of forfeitable property are directly forfeitable without the need for formal "substitution" because the scope of direct forfeiture under such statutes is "derived from" or "traceable to" the forfeitable property. *See* 18 U.S.C. § 981(a)(1)(A), authorizing forfeiture of property traceable to property "involved in" money laundering, which includes any property traceable to otherwise forfeitable property; 18 U.S.C. § 981(a)(1)(C), property "which constitutes or is derived from proceeds traceable to" any offense constituting "specified unlawful activity"; 21 U.S.C. § 881(a)(6), property traceable to drug proceeds. "Substitution" of untainted property for forfeitable property is only necessary in the interlocutory sale context where the proceeds from sale of forfeitable property are not themselves directly subject to forfeiture. *See* 21 U.S.C. § 881(a)(7), authorizing forfeiture of facilitating real property, but not of property derived from or traceable to such property.

In judicial forfeiture cases, the government should request that any interlocutory order substituting money for a forfeitable asset direct the USMS, the appropriate Treasury agency, or other property custodian to accept and hold the money, after paying any expenses incurred with respect to the seizure and maintenance of the asset being liquidated or released, pending further orders of the court. Once a substitute *res* has been forfeited, the USMS or the appropriate Treasury agency must dispose of it in the same manner as other forfeited property.

# Chapter 12:
# Attorneys' Fees

## I.    Payment of Attorneys' Fees in Civil Forfeiture Proceedings

Claimants who "substantially prevail" in a civil forfeiture proceeding are entitled to an award of attorneys' fees, interest, and other litigation costs, regardless of whether the government was justified in bringing the forfeiture action.  *See* 28 U.S.C. § 2465(b).  Liability for attorneys' fees and other litigation costs under § 2465(b) is, however, subject to certain limited exceptions, including cases where the claimant was convicted of a crime for which the same property was subject to criminal forfeiture, or where multiple claims to the same property are filed and the government acts promptly to recognize and resolve claims.[1]  Further, to be eligible for attorneys' fees, claimants must pursue the claim in court and obtain a judgment that the government is liable for attorneys' fees under § 2465.[2]  Accordingly, the government is not liable for attorneys' fees in instances where it settles a forfeiture proceeding (even on unfavorable terms) or agrees to voluntary dismissal; only a "judicially sanctioned" loss on the merits, such as on summary judgment or at trial, can serve as the basis for an award of fees or interest under § 2465.[3]  The government also is not liable for attorneys' fees in cases where property was seized as evidence, or for some other law enforcement purpose, and not solely for forfeiture.[4]

These awards will be paid out of the Department of the Treasury's (Treasury) Judgment Fund.[5]  Thus, when the court enters a judgment awarding attorneys' fees, interest, and costs in a civil forfeiture case, the U.S. Attorney's Office (USAO) should submit a request for payment of the award to Treasury's Bureau of the Fiscal Service (BFS), which manages the Judgment Fund.[6]  For questions about attorneys' fees awards payments, including whether parties may agree upon the amount of any award, please contact the Judgment Fund.  The Money Laundering and Asset Recovery Section (MLARS) does not review USAOs' requests for payments of attorneys' fees awards for claimants who substantially prevail in civil forfeiture proceedings.

---

[1]  *See* 28 U.S.C. § 2465(b)(2)(B) & (C).

[2]  In civil forfeitures of firearms and ammunition pursuant to 18 U.S.C. § 924(d) where a claimant substantially prevails, 28 U.S.C. § 2465(b) applies and the government is liable for reasonable attorneys' fees and other litigation costs.

[3]  *See Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001) (rejecting "catalyst theory" for seeking fees under a fee-shifting statute where recovery was not the result of a "judicially sanctioned change in the legal relationship of the parties"); *United States v. Cap. Stack Fund, LLC*, 543 F. App'x 17, 19 (2d Cir. 2013) (affirming district court's denial of fees under § 2465 to claimant who recovered property following settlement in civil forfeiture proceeding, where the "outcome bore no judicial imprimatur").

[4]  *See* 28 U.S.C. § 2680(c)(1) (CAFRA re-waiver applies where "the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense some other law enforcement purpose"); *see also Smoke Shop, LLC v. United States*, 761 F.3d 779, 783 (7th Cir. 2014) (CAFRA re-waives sovereign immunity only if the government's sole purpose for seizing the property was forfeiture; if property is seized as evidence in a criminal investigation, the waiver does not apply); *Foster v. United States*, 522 F.3d 1071, 1079 (9th Cir. 2008) (the waiver of sovereign immunity in CAFRA applies only when the property was seized solely for the purpose of forfeiture but not where the property was seized for some law enforcement purpose, even if the government later pursued forfeiture of the seized property).

[5]  Forms for requesting payments out of the Judgment Fund are available at FMS and should be submitted directly to the office that handles Judgment Fund matters.  *See also* Treasury Executive Office for Asset Forfeiture (TEOAF) Directive 36: Payment of Attorney's Fees.

[6]  BFS' site has general information about the Judgment Fund as well as links to procedures for submitting a request for an award of costs and fees and to the appropriate forms.

## II.    Payment of Attorneys' Fees in Criminal Forfeiture Cases

### A.    Defendant's attorneys' fees

The defendant in a criminal forfeiture proceeding may file for an award of attorneys' fees only under the Hyde Amendment.[7]  A motion for fees and costs filed in a civil forfeiture proceeding under 28 U.S.C. § 2465(b) cannot include fees and costs incurred in even a directly related criminal proceeding.[8]  To prevail on a Hyde Amendment claim, the defendant must prove that: (1) the defendant was the prevailing party in the underlying action; (2) the government's position was vexatious, frivolous, or in bad faith; and (3) there are no special circumstances that would make the award unjust.[9]  This burden is higher than the one the party opposing forfeiture and seeking fees must meet under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, for civil actions.[10]  A request for attorneys' fees under the Hyde Amendment based on a criminal prosecution must be approved by the Hyde Amendment Committee and the Executive Office for U.S. Attorneys (EOUSA).  If the request specifically addresses criminal forfeiture, the defendant should also submit a copy to the Chief of MLARS.  Hyde Amendment claim awards are paid from the Judgment Fund.

Despite arising from a criminal proceeding, most courts have found a Hyde Amendment action to be a civil proceeding governed by the Federal Rules of Civil Procedure.[11]  Moreover, the Hyde Amendment provides that the procedures and limitations for granting an award shall be derived from those set forth in EAJA.[12]  In particular, EAJA requires the parties seeking an award to file their claims within 30 days of final judgment of the underlying civil action.[13]  EAJA also provides for the determination of reasonable attorneys' fees and other expenses.[14]

---

[7]  Hyde Amendment to the Department of Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act of 1998, Pub. L. 105-119, § 617, 111 Stat. 2440, 2519 (1997), codified as a note following 18 U.S.C. § 3006A (permitting award of attorneys' fees "where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust").

[8]  *See United States v. 317 Nick Fitchard Rd. N.W. Huntsville, AL*, 579 F.3d 1315, 1319 (11th Cir. 2009).

[9]  *See* Hyde Amendment to the Department of Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act of 1998, Pub. L. 105-119, § 617, 111 Stat. 2440, 2519 (1997), codified as a note following 18 U.S.C. § 3006A.

[10]  *See United States v. Gilbert*, 198 F.3d 1293, 1299–1302 (11th Cir. 1999) (discussing legislative history of the Hyde Amendment).  In its original form, the Hyde Amendment tracked EAJA in its burden and standard of proof but was changed prior to enactment by switching the burden from the government to the plaintiff and heightening the standard of misconduct that must be shown. *Id*. at 1302; *see also United States v. Wade*, 255 F.3d 833, 839 n.6 (D.D.C. 2001) (discussing in footnote that the Hyde Amendment is a heavier burden for petitioner than the EAJA standard); and Sec. II.B in this chapter.

[11]  *United States v. Braunstein*, 281 F.3d 982, 994 (9th Cir. 2002); *United States v. Holland*, 214 F.3d 523, 525–526 (4th Cir. 2000); *United States v. Truesdale*, 211 F.3d 898, 902–904 (5th Cir. 2000); *United States v. Wade*, 255 F.3d 833, 839 (D.D.C. 2001).  *But see United States v. Robbins*, 179 F.3d 1268, 1270 (10th Cir. 1999) (finding a Hyde Amendment action was a criminal proceeding to which the appellate rule for criminal actions applies).

[12]  "Such awards shall be granted pursuant to the procedures and limitations (but not burden of proof) provided for an award under Title 28, U.S.C. § 2412." Hyde Amendment to the Department of Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act of 1998, Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997), codified as a note following 18 U.S.C. § 3006A.

[13]  28 U.S.C. § 2412(d)(1)(B).

[14]  28 U.S.C. § 2412(d)(2)(A).

### B.  Third-party petitioner's attorneys' fees

#### B.1  Legal authority

A third-party petitioner in an ancillary proceeding to a criminal forfeiture may only assert payment for attorneys' fees under EAJA.[15]  EAJA provides for the award of attorneys' fees to prevailing parties in any civil action against the government in which the government's position was not substantially justified.[16]  A third-party claimant's ancillary proceeding to a criminal forfeiture is considered a "civil action" under EAJA.[17]

EAJA requires the court to award fees upon finding that (1) the applicants were the prevailing parties, (2) the government's position was not substantially justified, and (3) no circumstances exist that would make an award unjust.[18]  Payment of attorneys' fees awarded under EAJA will be paid "from any funds made available to the agency by appropriation *or otherwise*."  28 U.S.C. § 2412(d)(4) (emphasis added).  Generally, the Assets Forfeiture Fund (AFF) is not available to pay judgments arising from asset forfeiture cases, including costs and attorneys' fees.  However, the Department of Justice (Department) has the legal authority under 28 U.S.C. § 524(c)(1)(A) to permit the use of the AFF to pay EAJA awards arising from actions related to the seizure, attempted forfeiture, or forfeiture of property.  AFF allocations represent funds that are "otherwise" available to an agency.  The Chief of MLARS must expressly approve in writing any EAJA award before it may be charged against the AFF or an agency's AFF allocation.[19]

#### B.2  Procedure

MLARS may authorize payment of an EAJA award from the AFF when (1) federal participants acted in a way that was clearly consistent with current law and Department policy[20] or (2) federal participants acted in good faith, but it is not clear that their actions were consistent with existing law and Department policy.  The AFF will not be available, either directly or indirectly, to fund the EAJA award in any case in which the court finds bad faith or intentional disregard for existing law or Department policy by the federal participants.  If the Chief of MLARS denies authorization for

---

[15] *See United States v. Stanholtzer*, 492 F. App'x. 799, 801 (9th Cir. 2012) (section 2465(b) applies only to civil forfeiture, not the ancillary proceeding); *see also United States v. Moser*, 586 F.3d 1089, 1092–1096 (8th Cir. 2009) (prevailing third party in ancillary proceeding is not entitled to recover attorneys' fees under CAFRA); *United States v. Nolasco*, 354 F. App'x. 676, 679–681 (3d Cir. 2009).

[16] "Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust… (4) Fees and other expenses awarded under this subsection to a party shall be paid by any agency over which the party prevails from any funds made available to the agency by appropriation or otherwise."  28 U.S.C. § 2412(d)(1)(A) & (d)(4).

[17] *United States v. Douglas*, 55 F.3d 584, 587 (11th Cir. 1995); *United States v. McAllister*, No. 95–430–03, 1998 WL 855498, *3 (E.D. Pa. Dec. 9, 1998); *United States v. Bachner*, 877 F. Supp. 625, 627 (S.D. Fla. 1995).

[18] *Jean v. Nelson*, 863 F.2d 759, 765 (11th Cir. 1988).

[19] The AFF and AFF allocations are *not* available to fund EAJA awards in non-forfeiture cases.  Therefore, the USAO should not notify MLARS of actions in non-forfeiture cases.

[20] This includes those in cases in which: (1) MLARS is involved in planning a specific case or program initiative and the federal participants were executing the planned initiative in good faith; (2) the federal participants were executing their responsibilities in consonance with current law and Department policy but the court creates a novel reason or basis for overturning a case that could not be anticipated; or (3) similar "no fault" cases.

the payment from the AFF, the attorneys' fees awarded under EAJA may be paid from the operating budget of the federal government participants in the case.

If the government has contested the case and received an adverse judgment,[21] the prosecutor should immediately provide a copy of the court order to all involved agencies to permit their participation in preparation of the EAJA request. The USAO should forward the request to MLARS within five (5) business days of the court order. The request should include, as appropriate:

- a copy of the court order awarding a claimant attorneys' fees under 28 U.S.C. § 2412(d);

- a copy of any pleadings or answers, or a description of any litigative position that was cited as a basis for the award;

- a description of any governmental action not referenced above that was cited as a basis for the award; and

- a description of any extenuating factors affecting the federal participants that should be considered.

If the USAO is proposing to negotiate the amount of a claimant's attorneys' fees in an EAJA claim, the USAO should provide draft materials (minus the court order) to MLARS *before* agreeing to any amount. This policy is in addition to other policies governing forfeiture settlements referenced in Chapter 11 in this *Manual*.

The government should not include any reference to the source of funds for paying any award in any proposed court orders drafted by the government. The identification of appropriate sources of funding to pay court judgments is an Executive Branch function and may vary from case to case depending on the facts of the case.

Once approved, MLARS will notify the USAO, EOUSA, and Asset Forfeiture Management Staff (AFMS). AFMS will instruct the U.S. Marshals Service (USMS) to charge the award directly against the AFF from the federal participants' case-related expenses category. Responsibility for an EAJA award will generally be allocated equally among the participants, including the USAO, but MLARS may modify this allocation, depending on specific findings made by the court and extenuating circumstances described by the participants.

---

[21] *See Justice Manual* (JM) § 9-2.170 for adverse decision reporting and approval requirements.

## III.  Payment of Attorneys' Fees in Forfeiture Cases Chart

| Forfeiture Type | Funding Source | Payment Authority | Approval Authority | Standard |
|---|---|---|---|---|
| Civil | Judgment Fund | 28 U.S.C. § 2465(b) | BFS | Mandatory award of attorneys' fees and other litigation costs to non-government parties who substantially prevail in a civil forfeiture proceeding. |
| Criminal | Judgment Fund | Hyde Amendment, Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997), codified as a note following 18 U.S.C. § 3006A | EOUSA and Hyde Amendment committee | Award of attorneys' fees to defendants in criminal actions in which the government's position was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust. |
| Third-party Petitioners in Ancillary Proceeding to Criminal Forfeiture | AFF | EAJA, 28 U.S.C. § 2412(d)(4) | MLARS Chief | Award of attorneys' fees to prevailing parties in any civil action against the government in which the government's position was not substantially justified, and no circumstances exist that would make an award unjust. A third-party claimant's ancillary proceeding to a criminal forfeiture is considered a "civil action" under EAJA. |

## IV.  Forfeiture of Attorneys' Fees

The policy on the forfeiture of attorneys' fees is set forth in the *Justice Manual* (JM).[22]  As set forth in the *Justice Manual*, any action to forfeit attorneys' fees in a civil or criminal case as well as any agreement *not* to seek forfeiture of attorneys' fees in a case requires the approval of the Assistant Attorney General for the Criminal Division (AAG).

---

[22]  *See* JM § 9-120.000 *et seq.*

# Chapter 13:
# Post-Forfeiture Third-Party Interests

## I.    Petitions for Remission and Mitigation

Once assets have been forfeited, the authority to distribute them to owners, lienholders, or victims rests solely with the Attorney General. *See* 28 U.S.C. § 524(c)(1)(E)(i); 18 U.S.C. § 981(d) (civil forfeitures); 21 U.S.C. § 853(i)(1) (pertaining to controlled substances violations) incorporated by reference in 18 U.S.C. § 982(b)(1) (criminal forfeiture); 21 U.S.C. § 881 (controlled substances violations); *see also* 28 C.F.R. Part 9. Congress granted complete discretion to the Attorney General to remit or mitigate forfeitures as an "act of grace," and no judicial review of remission or mitigation decisions is available.[1]

The federal regulations at 28 C.F.R. Part 9 govern the remission or mitigation of administrative, civil judicial, or criminal forfeitures. In administrative forfeitures, the authority to decide petitions for remission or mitigation rests with the seizing agency. *See* 19 C.F.R. §§ 171.11–171.14 and 172.11–172.14; 26 C.F.R. Part 403.35–403.45; 28 C.F.R. § 9.1(b)(1). The Attorney General delegated the authority to decide petitions for remission or mitigation in judicial cases to the Chief of the Money Laundering and Asset Recovery Section (MLARS). *See* 28 C.F.R. § 9.1(b)(2).

Questions regarding administrative forfeiture policies and procedures should be directed to the forfeiting agency. *See* Chapter 14 in this *Manual* for a discussion of the policies and procedures governing the remission and restoration of forfeited property to victims.

### A.  Owners in remission

An innocent owner's right to file a petition for remission (or mitigation, as discussed in Section I.C in this chapter) is distinct from the right to file a claim in an administrative or judicial forfeiture proceeding.[2] Consequently, the Department of Justice (Department) must rule on petitions for remission filed by petitioners who claim that they have an ownership or lienholder interest in a forfeited asset, notwithstanding the fact that they may have already filed an unsuccessful judicial claim. If a petitioner consents to a judicial forfeiture, U.S. Attorney's Offices (USAOs) should include petition withdrawal language in the plea agreements and forfeiture stipulations so that MLARS may summarily extinguish any pending petitions that have been rendered moot by the consent to judicial forfeiture.[3] Absent a petitioner's explicit petition withdrawal, MLARS may not summarily extinguish a pending petition and must issue a decision on the merits of the petition. Similarly, if a petitioner agrees to withdraw a claim and consents to administrative forfeiture, the USAO should include petition withdrawal language in the plea agreement and forfeiture stipulations so that the seizing agency may extinguish any pending petitions.

---

[1]  *See United States v. 1957 Buick Roadmaster*, 167 F. Supp. 597, 601 (E.D. Mich. 1958).

[2]  Many forfeiture cases begin administratively and become judicial after a party files a claim challenging the agency's administrative forfeiture and the U.S. Attorney's Office (USAO) begins a civil judicial or criminal forfeiture proceeding. Often the party files both a claim and petition. MLARS must eventually adjudicate the petition where a judicial forfeiture case has commenced but only after the claim is resolved in the case. However, the petitioner need not submit a second remission petition to MLARS. The seizing agency should forward the petition to the USAO, which will further submit to MLARS. *See* Chap. 14, Sec. II.A in this *Manual*.

[3]  *See* Chap. 11, Sec. III.A in this *Manual*.

Remission may be granted if petitioners demonstrate that they have a valid, good faith, and legally cognizable interest in the seized property as an owner. *See* 28 C.F.R. § 9.5(a)(1). Petitioners must further demonstrate that they are an "innocent owner" as defined by 18 U.S.C. § 983(d)(2)(A) or (3)(A). The ruling official shall presume there is a valid forfeiture and shall not consider whether sufficient evidence supports the forfeiture. *See* 28 C.F.R. § 9.5(a)(4). The petitioner has the burden of establishing the basis for granting a petition for remission or mitigation of forfeited property. *See* 28 C.F.R. § 9.5(a)(3).

Because owners typically petition for the forfeited property itself, property should not be sold before a remission decision is issued if there is a pending owner petition. However, if the property is sold before remission is granted, an owner shall receive the proceeds of the sale, less any costs incurred by the government if the owner's petition is granted. The ruling official may waive these costs. *See* 28 C.F.R. § 9.7(a)(3).

### B.  Lienholders in remission

Lienholders may qualify for remission only if they can also demonstrate that they are innocent as defined by 18 U.S.C. § 983(d)(2)(A) or (3)(A). *See* 28 C.F.R. § 9.5(a)(1). If remission is granted to an innocent lienholder, the lienholder may receive (1) the property itself or (2) a payment up to the lienholder's net equity, less the expenses and costs incident to the forfeiture and sale of the property. *See* 28 C.F.R. § 9.7(b)(2)(ii). If the lienholder opts to claim the property itself, the lienholder must pay the government the costs and expenses incident to the forfeiture and any value of the property exceeding the lienholder's net equity. *See* 28 C.F.R. § 9.7(b)(2)(i). If the lienholder agrees to the sale of the property, the lienholder may receive the amount up to their net equity, less the costs and expenses incident to the forfeiture and sale of the property. *See* 28 C.F.R. § 9.7(b)(2)(ii). The ruling official, at their discretion, may waive costs and expenses incident to the forfeiture. *See* 28 C.F.R. § 9.7(b)(2)(i) & (ii).

General creditors holding unsecured debts may not be granted remission or mitigation unless they otherwise qualify as an owner, lienholder, or victim. *See* 28 C.F.R. § 9.6(a).

A creditor holding a judgment against the owner of the forfeited property will only be recognized as a lienholder if

(1)  the judgment was duly recorded before the seizure of the property for forfeiture;

(2)  under applicable state or local law, the judgment constitutes a valid lien on the property to which it was attached before the seizure of the property for forfeiture; and

(3)  the petitioner had no knowledge of the commission of any act giving rise to the forfeiture at the time that the judgment became a lien on the forfeited property.

*See* 28 C.F.R. § 9.6(f)(1). A judgment creditor's lien must be registered in the district where the property is located if the judgment was obtained outside the district. *See* 28 C.F.R. § 9.6(f)(3).

### C.  Mitigation

Mitigation is an alternative remedy for owners and lienholders. *See* 28 C.F.R. § 9.5(b). The ruling official may mitigate a forfeiture where an owner or lienholder has not met the minimum conditions

for remission but the official finds that some relief should be granted to avoid extreme hardship, mitigation will promote the interests of justice, and mitigation will not diminish the deterrent effect of the law. *See* 28 C.F.R. § 9.5(b)(1)(i). The ruling official may also grant mitigation to an owner or lienholder who has met the minimum conditions of remission but where the overall circumstances do not warrant complete relief. *See* 28 C.F.R. § 9.5(b)(1)(ii).

Non-innocent owners may qualify for mitigation in some cases. *See* 28 C.F.R. § 9.5(b)(2). The ruling official may grant mitigation to an owner or lienholder involved in the offense underlying the forfeiture when certain mitigating factors exist, such as the lack of a prior record or evidence of similar criminal conduct; the violation does not include drug distribution, manufacturing, or importation; the violator has taken steps like drug treatment to prevent further criminal conduct; the violation was minimal and not part of a larger criminal scheme; the violator cooperated with law enforcement investigations relating to the criminal conduct underlying the forfeiture; or complete forfeiture of an asset is not necessary to achieve the legitimate purposes of forfeiture.

### D. Procedure for notice and processing petitions

In administrative forfeiture cases, the agency must notify potential owners and lienholders of the opportunity to file petitions for remission or mitigation of forfeiture.[4] *See* 28 C.F.R. § 9.3(a). In judicial cases, the USAO must notify potential owners and lienholders of the opportunity to file petitions for remission or mitigation of forfeiture. *See* 28 C.F.R. § 9.4(a). Petitioners who have filed a petition in an administrative forfeiture case are not required to refile a petition for remission or mitigation if the USAO institutes judicial forfeiture proceedings.

Once a seizing agency or the USAO receives a petition for remission or mitigation, the seizing agency must conduct an investigation of the petition and issue either a decision for administrative forfeiture, or a report and recommendation for judicial forfeiture. For judicial forfeiture, the USAO then must prepare its own recommendation on the petition and send the petition, the seizing agency's report, and the USAO and seizing agency recommendations to MLARS, along with any necessary supporting documentation. Although the USAO and seizing agency must provide their recommendations on the grant or denial of a petition for remission for judicially forfeited assets, the final determination rests with MLARS. MLARS will notify the petitioner of its decision. Petitions are decided based on written documentation. There is no right to a hearing on the petition. *See* 28 C.F.R. § 9.4(g). Unsuccessful petitioners are entitled to one request for reconsideration, which is reviewed and decided by a different ruling official.

### E. Priority of payments

If the seizing agency and the USAO receive multiple petitions, innocent owners have first priority, followed next by lienholders, then federal financial institution regulatory agencies not constituting owners or lienholders, and then victims. *See* 28 C.F.R. § 9.9(a). All pending petitions for remission or mitigation must be ruled on before any official use or equitable sharing of forfeited proceeds occurs.

---

[4]  For any asset identified within the public notices of forfeiture, forfeiture.gov's petition information page has updated forms and petition filing FAQs. For any asset seized by Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Drug Enforcement Administration (DEA), Federal Bureau of Investigation (FBI), USAO, or U.S. Postal Inspection Service (USPIS) that is identified within the public notices of forfeiture, a petition may also be filed on forfeiture.gov.

### F.  Cultural property

When the U.S. government forfeits cultural property that has been removed from a foreign country or tribal authorities, it often seeks to return the property to its country or tribe of origin.  A foreign government or tribal authority may submit a petition for remission for forfeited cultural property if it can demonstrate a valid, good faith, legally cognizable ownership interest in the forfeited cultural property.  In many cases, cultural property is stolen from a government institution like a museum, and a foreign government or tribal authority can easily demonstrate that it was the titled owner of the property.  In other cases, cultural property may be returned to its country or tribe of origin even if the foreign government was not the titled owner.  This is usually accomplished by recognizing foreign or tribal laws that establish governmental ownership of cultural property.  If agencies and USAOs want to use this alternate theory of ownership, they should determine whether an appropriate cultural patrimony law exists before planning to return forfeited cultural property to a foreign government or tribe.[5]  Agencies and USAOs should coordinate any communications about petitions for remission with a foreign governmental or tribal authority representative with either the Department's Office of International Affairs (OIA) or the seizing agency attaché.  *See Justice Manual* (JM) § 9-13.540.

In judicial cases involving forfeitures pursuant to 19 U.S.C. § 2609, Convention on Cultural Property Implementation Act (CPIA), the government must first offer to return forfeited property to countries that are parties to CPIA.  In these cases, MLARS will conduct a summary review of the case and issue a concurrence letter.  USAOs should submit CPIA requests to MLARS just as they would submit typical remission petitions.

## II.  *Qui Tam* Actions: Payment of Relator's Share

### A.  Overview of the False Claims Act (FCA)

The False Claims Act (FCA) imposes civil liability on any person who submits a false or fraudulent claim to the government.  *See* 31 U.S.C. §§ 3729–3733.  An action may be filed by the Attorney General or a private person on behalf of the government.  *See* § 3730(a)–(b).  An action filed by a private person is known as a *qui tam* suit, and the private party filing the action is referred to as the relator.  The government can intervene in and take over the litigation of a qui tam suit or permit the relator to pursue the *qui tam* suit on their own. *See* § 3730(b)(4).  If the *qui tam* suit is successful, the government recovers the judgment and pays part of it to the relator.  *See* § 3730(d).  The relator's share of any recovery depends in part on whether the government intervenes in the action.  *See* § 3730(d)(1) & (2).

The FCA permits the relator to object to a settlement of the relator's claim.  *See* 31 U.S.C. § 3730(c)(2)(B).  However, the government may settle notwithstanding a relator's objection if the court determines after a hearing that the settlement is "fair, adequate, and reasonable."  *Id*.

In addition, the FCA provides that in *qui tam* suits the government "may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty."  31 U.S.C. § 3730(c)(5).  The purpose of this "alternate remedy" provision is to provide the government with maximum flexibility to choose the best forum for pursuing its fraud claims against the defendant.  *See* S. Rep. 99-345, 99th Cong., 2d Sess. 27, reprinted in 1986 U.S.C.C.A.N 5266, 5292.  Thus, the alternate remedy provision authorizes the

---

[5]  Information about applicable cultural patrimony laws can be found in the UNESCO Database of Cultural Heritage Laws.

government to stay the relator's FCA action and choose instead to pursue its fraud claims against the defendant through an alternative proceeding, in lieu of the relator's action under the FCA. *Id.* ("While the Government will have the opportunity to elect its remedy, it will not have an opportunity for dual recovery on the same claim or claims.") To ensure that the relator is not prejudiced if the government pursues an alternate remedy, the relator is granted the same rights in the alternative proceeding that the relator would have had in the civil action under the FCA, including the right to participate in the proceedings, to object to any settlement of the proceeding, and to receive a share of any recovery as described in Section II.D in this chapter. *See* 31 U.S.C. § 3730(c)(5).

### B. Forfeiture proceedings as alternate remedies

In general, a forfeiture proceeding does not qualify under the FCA as an alternate remedy giving rise to a relator share because the alternate remedy provision encompasses only those proceedings that are properly viewed as a substitute for the relator's civil claims under the FCA.[6] However, some courts may be inclined to find an alternate remedy where a criminal proceeding will recover most or all of a *qui tam* defendant's assets, particularly if the government also stayed the relator's *qui tam* suit in favor of the criminal case.[7] Under such circumstances, a court may conclude that the government deprived the relator of any meaningful opportunity to pursue the *qui tam* suit, and therefore the criminal proceeding was effectively a substitute for that suit. Accordingly, in such circumstances (*i.e.*, where the criminal proceeding will render the defendant without assets to satisfy an FCA judgment, and particularly where the government has stayed the *qui tam* case to pursue the criminal case), it may be appropriate to consider a negotiated resolution of the alternate remedy issue, provided that other bases to challenge the relator's entitlement to a share do not exist.[8]

If a relator seeks to intervene or file a claim in any forfeiture proceeding, the prosecutor must immediately consult government counsel on the FCA action or the Director of the Department's Commercial Litigation Branch, Fraud Section, Civil Division, and should also consult MLARS.

### C. Source of relator's right to recover

If a relator is awarded a share of any forfeiture proceeds under the FCA's alternate remedy provision, the relator's entitlement to the proceeds arises strictly out of the FCA and does not constitute a claim of ownership or interest in the specific property forfeited. Consequently, a *qui tam* relator does

---

[6]  *See United States ex rel. Babalola v. Sharma*, 746 F.3d 157, 158–62 (5th Cir. 2014) (holding that because there was no *qui tam* action pending at the time the government pursued criminal charges, the criminal charges could not be deemed an alternate remedy under FCA); *United States v. Lustman*, No. 4:05-CR-40082, 2006 WL 1207145, *3 (S.D. Ill. May 4, 2006) (rejecting the relators' motion to intervene in, and obtain a share of the proceeds of, a criminal proceeding instituted against one of the defendants named in their *qui tam* action).

[7]  *See United States v. Bisig*, No. 1:00-CV-00335, 2005 WL 3532554, *4 (S.D. Ind. Dec. 21, 2005).

[8]  The following issues may constitute a basis to challenge the relator's entitlement to a share of the judgment: (1) the validity of the *qui tam* action; (2) the relator's allegations are based on a "public disclosure" and the relator does not qualify as an original source of those allegations; or (3) jurisdictional and non-jurisdictional reasons why a relator has failed to file a valid action (for example, where a relator is not the first to file or has failed adequately to plead a FCA claim). *See* 31 U.S.C. § 3730(e)(4); Department briefs filed in *United States ex rel. Hefner v. Hackensack Med. Ctr.*, 495 F.3d 103 (3d Cir. 2007), and *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634 (6th Cir. 2003). Moreover, even where a relator's action is proper, the relator may be entitled only to a reduced share. *See* 31 U.S.C. § 3730(d)(1) & (3).

not qualify as a third party entitled to relief pursuant to 21 U.S.C. § 853(n) or 18 U.S.C. § 983(d).[9] Likewise, the *qui tam* relator is not a victim or third party generally entitled to recovery pursuant to the regulations governing petitions for remission.[10]

### D. Relator's share is a percentage of the net forfeiture recovery

If a court orders that the forfeiture constitutes an alternate proceeding and the relator is entitled to a share of the recovery, the relator must be awarded a percentage of the net forfeiture recovery.[11]  The agreement of the parties or the adjudication should determine the exact percentage share the relator will receive.[12]  While it is preferable for this determination to be made prior to the final disposition of the forfeited assets, this may not always occur.  In fact, where the FCA action will be litigated after the forfeiture proceeding, it is unlikely that the relator's share will be determined prior to the final disposition of the forfeited assets.  In such instances, the relator might request that up to 25% of the total forfeiture recovery be escrowed in case such funds are later needed to satisfy the relator's share.[13]  Because the proceeds of the forfeiture will be deposited into the Assets Forfeiture Fund (AFF), an escrow is not necessary and prosecutors should oppose the request.[14]  Determining the dollar value of the relator's share is more complicated.  In the context of a forfeiture, "the proceeds of the action" would be the amount of money available for deposit into the AFF—*i.e.*, the net recovery, which can be defined as the value of the forfeited property less the value of any valid claims and the costs associated with the seizure, forfeiture, and disposal of the property.  Consequently, the dollar value of the relator's share cannot be determined until all claims and expenses are paid and the amount available for deposit into the AFF is fixed.[15]

---

[9]  *See United States v. Bisig*, No. 1:00-CV-00335, 2005 WL 3532554, *6–7 (S.D. Ind. Dec. 21, 2005) (granting relator's motions to intervene and for adjudication of relator's interest in forfeited property, despite the fact that relator did not qualify for relief under 21 U.S.C. § 853(n), as relator had a valid claim under FCA).

[10]  *See* 28 C.F.R. § 9.4(b), providing that only petitioners as defined in 28 C.F.R. § 9.2(o) or attorneys and guardians on their behalf may file a petition for remission; 28 C.F.R. § 9.2, defining *petitioner* to include an owner, a lienholder, or a victim as defined in other subparts of § 9.2.

[11]  Under the FCA, the percentage of the proceeds that the relator is entitled to recover varies depending on whether the government intervenes in the relator's action as well as other factors.  *See* 31 U.S.C. § 3730(d)(1) & (2).  Assuming that the relator is not otherwise barred from claiming a share of the proceeds, determination of the relator's share will involve two related inquiries: (1) the "percentage" of the proceeds of the action to be awarded to the relator and (2) the value of those "proceeds."  Section 3730(c)(5) makes these inquiries applicable to a proceeding qualifying as an alternate remedy.  The Commercial Litigation Branch has issued guidelines governing the determination of relator share percentages.  The Commercial Litigation Branch or government counsel in the FCA action—not forfeiture counsel—is responsible for determining or litigating the relator's share issue.

[12]  Where the relator's share is addressed may depend on the forum in which the relator chooses to pursue it; however, the government should advocate for the determination to be made in the FCA action whenever such litigation remains viable.

[13]  *See* 31 U.S.C. § 3730(d)(1), which limits relator's reward to 25% of the proceeds of an action or settlement in those cases where the government proceeds with an action.  Relators have made similar requests regarding the escrow of funds paid toward restitution and criminal fines.  Where the restitution is payable to governmental victims, the government may consider such requests, particularly where the FCA action will not be completed.  However, prosecutors should always oppose requests for an escrow of funds due to individual victims or for criminal fines.

[14]  Until the relator's share is determined, the Department will not know the amount of funds that will remain in the AFF.  Therefore, a final decision on any petition for remission or mitigation should be deferred until the relator's share is determined, unless the total value of all petitions for remission or mitigation is less than 75% of the net forfeiture recovery.

[15]  On request of the relator, the government may provide the total expenses incurred in connection with a forfeiture proceeding.  In the Department's view, relators have no right to challenge forfeiture expenses or intervene in property management issues and thus are not entitled to a detailed itemization of forfeiture expenses, even if the forfeiture proceeding is determined to be an alternate remedy.

The dollar value of the relator's share is calculated in the same fashion when the forfeiture proceeding is resolved by settlement. Where possible, the government should obtain the relator's agreement to the forfeiture settlement. Pursuant to the FCA, however, the government may settle the action with the defendant notwithstanding the objection of the relator "if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." *See* 31 U.S.C. § 3730(c)(2)(B).

### E. Procedure for paying relator's share

Because the relator's share is mandated by Congress, it is a necessary expense incident to the forfeiture of the property as provided for in 28 U.S.C. § 524(c)(1)(A). The government should obtain an order in the FCA action that reflects the percentage share of the net recovery to be paid to the relator and forward a copy of the order to the U.S. Marshals Service (USMS), directing the USMS to pay the relator's share.

Similarly, the Department of the Treasury (Treasury) Forfeiture Program may authorize a relator's share as a necessary expense incident to the forfeiture of the property pursuant to 31 U.S.C. § 9705(a)(1)(A). Payment is coordinated through the seizing agency and the Treasury Executive Office for Asset Forfeiture (TEOAF), and it is usually processed using a Form 7 refund package if the funds are already in the Treasury Forfeiture Fund (TFF). Please contact the seizing agency counsel or TEOAF legal counsel for assistance.

# Chapter 14:
# Forfeiture and Compensation for Victims of Crime

## I.    Overview

Forfeiture is a critical tool in the recovery of illicit gains arising from financial crimes such as fraud, embezzlement, and theft.  Returning forfeited assets to victims through the remission and restoration processes is one of the primary goals of the Department of Justice's (Department) Asset Forfeiture Program (Program).[1]  Remission and restoration authority exists for virtually all offenses for which the government obtains a related administrative declaration of forfeiture, or civil or criminal forfeiture order.[2]  *See* 18 U.S.C. § 981(e)(6) (civil forfeiture), and 21 U.S.C. § 853(i)(1) (while § 853(i) governs the procedures for disposing of property criminally forfeited under the drug abuse prevention and control laws, those procedures are incorporated by reference in 18 U.S.C. § 982(b)(1), which extends those procedures to most other criminal offenses).

There are three primary means to pay victims—restitution, remission, and restoration.  Restitution refers to the process of determining victim losses for purposes of sentencing and paying victims in criminal cases, often, but not always, through collections from defendants and via the Federal Debt Collections Procedures Act.

Remission is a process whereby, in a civil or criminal forfeiture proceeding, the Department solicits, considers, and rules on petitions for payment.  The petitions can be submitted by, among other petitioners, victims.  The federal regulations governing the remission of civil or criminal forfeiture are found at 28 C.F.R. Part 9.

Restoration is a hybrid process available in both civil and criminal forfeiture proceedings that are closely related to a criminal prosecution in which a court has issued a restitution order identifying victims and restitution losses for which a defendant is liable.  The restoration procedure enables the Attorney General to transfer forfeited funds to a court for satisfaction of a criminal restitution order, provided that all victims named in the order otherwise qualify for remission under the applicable regulations.

Remission, restoration, and criminal restitution all serve to compensate victims through related but distinct mechanisms.  Remission and restoration are discretionary procedures for victim recovery from forfeitures and are available to persons who have incurred pecuniary losses from the offense underlying the forfeiture or from a related offense.  Restitution is a court-ordered equitable remedy intended to make crime victims whole and prevent unjust enrichment to the perpetrator.  In many cases, restoration—the use of forfeited funds to pay restitution—is desirable, because the defendant may be left without assets to satisfy the restitution obligation following forfeiture.

---

[1]    *See The Attorney General's Guidelines on the Asset Forfeiture Program* (July 2018) (*AG Guidelines*).

[2]    Funds shared with the United States by a foreign government that have not been forfeited under U.S. law may not be eligible to be used for victim remission or restoration.  However, depending upon the circumstances of the case, it may be possible to employ other mechanisms for using such shared funds to make victims whole.  If U.S. prosecutors or investigators assisted in a foreign case involving victims that resulted in a foreign forfeiture, they should also contact the Money Laundering and Asset Recovery Section (MLARS) for guidance on potential alternative mechanisms and submission of a sharing request to that country.  *See* also Chap. 8, Sec. X in this *Manual*.

The Money Laundering and Asset Recovery Section (MLARS) is the decision maker on petitions for remission and restoration requests for all judicial forfeitures, including those conducted by the Department of the Treasury (Treasury) Forfeiture Fund (TFF) member agencies.[3]  The TFF has a similar procedure for remission and restoration.[4]

## II.    Returning Forfeited Assets to Victims

### A.  Remission

For administrative forfeitures, the seizing agency should provide notice to all parties believed to be victims.  The notice should advise victims of the right to file a petition for remission under 28 C.F.R. Part 9.  For judicial forfeitures, the U.S. Attorney's Office (USAO) should send notice to all potential victims who did not submit a petition for remission following any administrative notice or who will not be included in a restitution order and related restoration request.

Once assets have been judicially forfeited, the authority to distribute them to owners, lienholders, and victims rests solely with the Attorney General.  *See* 28 U.S.C. § 524(c)(1)(E)(i); 18 U.S.C. § 981(d); 21 U.S.C. § 853(j)(1), incorporated by reference in 18 U.S.C. § 982(b)(1); 21 U.S.C. 881; 28 C.F.R. § 9.  The Attorney General delegated the authority to decide petitions for remission in judicial cases to the Chief of MLARS.  *See* 28 C.F.R. § 9.1(b)(2).  In administrative forfeitures, the authority to decide petitions for remission or mitigation rests with the seizing agency.[5]  Questions regarding administrative forfeiture policies and procedures should be directed to the seizing agency.

The remission process for victims is governed by regulation.  *See* 28 C.F.R. § 9.8.  The deciding official decides petitions based on written documentation.  There is no right to a hearing on the petition.  *See* 28 C.F.R. § 9.4(g).  Unsuccessful petitioners are entitled to one request for reconsideration, which is reviewed and decided by a different deciding official.  *See* § 9.3(j)(2) & (3); § 9.4(k)(2) & (3).  Judicial review of a denial of remission is not available.[6]  Although the USAO and seizing agency must provide recommendations as to the allowance or denial of a judicial petition for remission, the final determination rests with MLARS.  The seizing agency deciding official is responsible for making a final determination for petitions in administrative forfeitures.  USAOs or seizing agencies must take care not to make representations to the court or potential victims as to whether remission will be granted.

---

[3]  TFF member agencies include the Internal Revenue Service-Criminal Investigation (IRS-CI), U.S. Immigration and Customs Enforcement-Homeland Security Investigations (ICE-HSI), U.S. Customs and Border Protection (CBP), U.S. Secret Service (USSS), and U.S. Coast Guard (USCG).

[4]  Please consult the *Guidelines for Treasury Forfeiture Fund Agencies on Refunds Pursuant to Court Orders, Petitions for Remission, or Restoration Requests* (*Treasury Blue Book*).  Download a copy of *Treasury Blue Book* from treasury.gov.

[5]  *See* 19 C.F.R. §§ 171.11-171.14 and 172.11-172.14; 26 C.F.R. § 403.35-403.45; 28 C.F.R. § 9.1(b)(1).

[6]  *See LKQ Corp. & Keystone Auto. Indus., Inc. v. DHS*, 369 F. Supp. 3d 577, 585 (D. Del. 2019) (court lacked subject matter jurisdiction under Administrative Procedures Act to review decisions by CBP on petitions for remission because remission statutes provide CBP with wide discretion to make a determination on remission or mitigation; such decisions are unreviewable absent allegations of statutory or procedural violations); *United States v. Betancourt-Vega*, No. 3:12–CR–314, 2013 WL 6697811, *4 (N.D. Tex. Dec. 19, 2013) (because what claimant filed was a remission petition and not a claim under 18 U.S.C. § 983(a)(2), court's review is limited to ensuring that DEA acted in accordance with proper procedures in exercising its discretion); *Laconia Sav. Bank v. United States*, 116 F. Supp. 2d 248, 256 (D.N.H. 2000) (when claimant chooses to file remission petition instead of filing claim, court is without jurisdiction to review the denial of the petition on the merits or consider any constitutional claims even if denial was an abuse of discretion).

When petitions have been filed for both administratively and judicially forfeited assets in the same case, the seizing agency must coordinate with MLARS and the forfeiture Assistant U.S. Attorney (AUSA) assigned to the case to ensure consistency in rulings.

Many forfeiture cases begin administratively and become judicial after a party files a claim challenging the agency's administrative forfeiture. Often the party files both a claim and petition. MLARS must eventually adjudicate the petition in a judicial forfeiture, but only after the claim is resolved. However, the petitioner need not submit a second petition. The seizing agency should forward the petition to the USAO, which will submit to MLARS.[7]

### A.1  Standards for victims—28 C.F.R. Part 9

The factual basis and legal theory underlying the forfeiture will determine who qualifies as a victim. A victim for purposes of remission is "a person who has incurred a pecuniary loss as *a direct result of the commission of the offense underlying a forfeiture*." 28 C.F.R. § 9.2 (emphasis added). Corporations, federal agencies, and other governmental entities, in addition to individuals, may qualify as victims under the regulations. *See* 28 C.F.R. § 9.2.

Victims may also recover losses caused by a related offense. *See* 28 C.F.R. § 9.8. *Related offense* means: "(1) Any predicate offense charged in a federal Racketeer Influenced and Corrupt Organizations Act (RICO) count for which forfeiture was ordered; or (2) An offense committed as part of the same scheme or design, or pursuant to the same conspiracy, as was involved in the offense for which forfeiture was ordered." *See* 28 C.F.R. § 9.2. In general, the deciding official will consider all the crimes discussed in the charging documents or civil complaint as "related offenses" for purposes of victim compensation.

### A.2  Qualification to file

A victim may be granted remission of the forfeiture of property if the victim satisfactorily demonstrates that:

> (1) A pecuniary loss of a specific amount has been directly caused by the criminal offense, or related offense, that was the underlying basis for the forfeiture, and the loss is supported by documentary evidence including invoices and receipts;
>
> (2) The pecuniary loss is the direct result of the illegal acts and is not the result of otherwise lawful acts that were committed in the course of a criminal offense;
>
> (3) The victim did not knowingly contribute to, participate in, benefit from, or act in a willfully blind manner towards the commission of the offense, or related offense, that was the underlying basis for the forfeiture;
>
> (4) The victim has not in fact been compensated for the wrongful loss of the property by the perpetrator or others; and
>
> (5) The victim does not have recourse reasonably available to other assets from which to obtain compensation for the wrongful loss of the property.

*See* 28 C.F.R. § 9.8(b).

---

[7]  *See also* footnote 2 in Chap. 13, Sec. I.A in this *Manual*.

The regulations limit the amount of the pecuniary loss for which remission may be granted "to the fair market value of the property of which the victim was deprived as of the date of the occurrence of the loss." 28 C.F.R. § 9.8(c). However, the regulations do not define the term "fair market value." When the loss is property other than money, the deciding official must decide the date of the victim's loss and the fair market value of the property on that date to determine the victim's recoverable loss.

A victim's pecuniary loss must be supported by documentary evidence. Secondary losses to the principal loss, such as "interest foregone or for collateral expenses incurred to recover lost property or to seek other recompense," or attorneys' fees or other investigative expenses, are not eligible for remission. *See* 28 C.F.R. § 9.8(c).

Losses are also ineligible for remission if they result from property damage or physical injuries, or from a tort associated with illegal activity that formed the basis for the forfeiture, unless the tort constitutes the illegal activity itself. *See* 28 C.F.R. § 9.8(d). However, specific, documented pecuniary losses like medical and counseling bills in child exploitation cases may be eligible for remission.

Victims who "knowingly contribute to, participate in, benefit from, or act in a willfully blind manner towards the commission of the offense, or related offense that was the underlying basis for the forfeiture" are also ineligible for remission. *See* 28 C.F.R. § 9.8(b)(3). However, forced or unknowing participation in a crime will not preclude victims from compensation under this provision. For example, in some cases in which elderly fraud victims lose money yet also unwittingly serve as "money mules"—that is, persons who transfer money acquired illegally—those victims may be eligible for remission.

Victims need not show that their specific funds are among the funds that have been forfeited to establish eligibility for remission.

Petitions should be made sworn under penalty of perjury. Petitioners should also submit any supporting documentation that the government does not already have to support their petitions and claims of qualifying pecuniary losses.

### A.3  Priority in multiple-victim remission cases

The Department gives priority in the distribution of forfeited assets to valid owners, lienholders, federal financial regulatory agencies,[8] and victims (in that order), who in turn have priority over official use requests and equitable sharing requests. Victim recovery is limited to the net proceeds of all assets in the case or related cases. In cases involving more than one victim, the deciding official will generally grant remission on a *pro rata* basis where the amount to be distributed is less than the value of the victims' losses. Additional exceptions are permitted only in rare situations, such as when a *pro rata* distribution would result in extreme hardship to a victim or when a victim has better evidence of loss than other victims. *See* 28 C.F.R. § 9.8(f). However, the tracing of a particular victim's funds into a forfeited account does not give that victim priority over the victims whose funds cannot be traced.

---

[8]  A federal financial regulatory agency is generally entitled to priority of distribution over non-owner victims for losses and expenses incurred in its capacity as receiver of a failed institution. *See* 28 C.F.R. § 9.8(h). This priority applies only for reimbursement of the Federal Deposit Insurance Corporation (FDIC)'s payments to claimants and creditors of the institution or reimbursement of insurance fund losses under 18 U.S.C § 981(e)(3), and for fraud losses associated with the sale of assets held in receivership pursuant to § 981(e)(7).

### A.4  Claims administrators

MLARS may opt to hire a trustee or claims administrator in large, multiple-victim cases to assist in notifying potential victims of the opportunity to seek remission, processing the petitions, and making decision recommendations. *See* 28 C.F.R. § 9.9(c). MLARS will coordinate with the USAO and lead seizing agency, as necessary, during the selection process. In addition, if a trustee has been appointed in parallel regulatory or bankruptcy actions, MLARS may approve transferring funds for distribution to the trustee for ultimate payment to the identified victim pool.

USAOs and agencies interested in using the services of a trustee or claims administrator to support the remission and restoration processes should consult early with MLARS. MLARS awarded a national claims administration support contract that simplifies procurement actions and streamlines petition review and payment distribution in victim cases where highly experienced and expert firms are required to handle the volume of petitioners. Costs of an administration contract are deducted from the forfeited funds prior to any distribution.

### A.5  Additional grounds for denial of remission to victims

Remission to victims may be denied: (1) if determination of the pecuniary loss to be paid to individual victims is too difficult; (2) if the amount to be paid to victims is small compared to the expense incurred by the government in deciding the victims' claims; or (3) if the total number of victims is large and the amount available for payment to victims is so small as to make granting payments to victims impractical. *See* 28 C.F.R. § 9.8(e).

### A.6  Timeliness

Victims should file petitions for forfeited assets within the time period detailed in the notice.[9] However, when a victim fails to submit a timely petition, the deciding official may allow exceptions for good cause based on the particular circumstances of the case. Victims may file petitions in the Program's Online Claims & Petitions portal up to 60 days after the date of forfeiture; after that date, they must submit paper forms.[10]

### A.7  Remission decisions

Deciding officials will send remission decisions to the victims along with instructions for obtaining payment. Victims must provide their own Tax Identification (TID) number (*e.g.*, Social Security number (SSN)) for purposes of the Treasury Offset Program (TOP), although they may choose to use their attorney's bank account for payment. MLARS, Treasury Executive Office for Asset Forfeiture (TEOAF), the seizing agency, and the U.S. Marshals Service (USMS) do not have insight into whether an offset will occur. However, victims can call (800) 304-3107 for the Treasury Bureau of the Fiscal Service's TOP interactive voice response system to determine whether an offset will occur. Because of unknown Treasury offsets and case expenses, MLARS refrains from quoting specific payment amounts to victims in their remission grant letters.

If the deciding official grants remission, the official will notify both the forfeiture unit and the financial litigation unit at the USAO. The USAO must record payment information for purposes of

---

[9]  If direct notice is provided, it can be sent by the USAO, seizing agency, or claims administrator, as appropriate.

[10]  Victims should visit forfeiture.gov's petition information page for updated forms and FAQs.

capturing any restitution "credit" to the defendant in remission cases and coordinate with the local Financial Deputy Clerk of Court to ensure that the court is aware of the credit.

### B.  Restoration

Because forfeited assets are property of the government, courts and defendants lack authority to use them to satisfy a defendant's criminal debts, including fines or restitution obligations.  However, in many cases, defendants are left with little or no property after the forfeiture is completed.  Thus, under the restoration procedures, the Department may forfeit property and transfer the proceeds to the court in satisfaction of the defendant's order of restitution.

Restoration simplifies and accelerates the return of forfeited property to victims.  Restoration is an alternative to petitions for remission in cases where both forfeiture and restitution have been ordered and is designed to accommodate victims and the courts to the furthest extent possible while still meeting the statutory and regulatory requirements for remission.  Victims will not need to file petitions for remission, and the process of returning funds to victims typically will be faster.  The forfeiture will be completed so that costs can be recovered and third-party rights extinguished.  Proceeds from civil, criminal, and administrative[11] forfeitures can be handled together and applied to restitution.  Assets will be distributed primarily as they would have been under the remission regulations.  The restoration procedure permits victims to obtain compensation from the forfeited assets in accordance with the court's restitution order without having to file petitions for remission with the government and await decisions on them.  These procedures apply where:

(1)  both restitution to compensate victims and a related forfeiture (either civil, criminal, or administrative) have been ordered;

(2)  the victims and amounts listed in the restitution order essentially conform to the victims and amounts that would have been paid through the remission process; and

(3)  other property is not available to fully satisfy the order of restitution.

However, under no circumstances should the criminal AUSA make representations to a defendant or the court that forfeited funds will be used to satisfy restitution through the restoration process.  The AUSA may represent in a plea agreement that the USAO will seek MLARS' approval to have forfeited funds applied to restitution, but AUSAs should qualify the representation by noting that they will only seek such approval if appropriate under applicable regulations.

### B.1  How the restoration process works

Restoration requires both a court order of restitution *and* an order or declaration of forfeiture.  Because restoration decisions must be approved by the Chief of MLARS (as delegated by the Attorney General), the USAO or court may not unilaterally direct forfeited assets to be applied to restitution, or decrease restitution orders by the value of forfeited assets.[12]  However, when requested

---

[11]  In administrative forfeitures involving TFF member agencies, the USAO must obtain the written concurrence of the local or headquarters TFF seizing agency before MLARS may approve restoration of forfeited funds for purposes of criminal restitution.  *See Treasury Blue Book*, Sec. VI.B.1.b.  TEOAF policy does not permit the release of administratively forfeited funds to crime victims without the prior approval of the TFF seizing agency.  *See Treasury Blue Book*, Sec. VI.B.1.b.ii.

[12]  The Attorney General's restoration authority has been delegated to the Chief of MLARS pursuant to Attorney General Order No. 2088-97 (June 14, 1997).

by the USAO, MLARS may undertake a preliminary review of the expected restitution and forfeiture, so that prosecutors may advise the court of the government's intended distribution of the property.

To request restoration, the USAO must send the Chief of MLARS a copy of the judgment in a criminal case containing the order of restitution and a copy of the forfeiture order, along with a written request signed by the U.S. Attorney, or a designee, that includes the representations outlined in Section II.B.2 in this chapter. If the restitution order is sealed, the USAO must submit the underlying list containing victim names and restitution amounts to MLARS. If the Chief of MLARS approves the request for restoration, MLARS notifies both the USAO and the custodian of the property. The custodian then transfers the net proceeds of the forfeiture to the clerk of court for distribution pursuant to the order of restitution. MLARS will not accept or approve restoration requests for assets that have been disposed of for over five years unless there are unique circumstances surrounding the delay.[13]

Restoration is appropriate only when the distribution pursuant to the restitution order is essentially the same as the distribution that would be obtained through the remission process. Prosecutors who plan to request restoration must work with the seizing agency, probation officer, and the court to ensure that the court's restitution order lists the names of all victims and the amount of restitution due to each. Updated payment addresses must also be provided to the court so that the funds are paid out to victims.

Restitution is generally available for a much broader range of harms than may be satisfied through remission, which is allowed only for pecuniary losses caused by the offense underlying the forfeiture or a related offense. Thus, restoration may not be used where a significant portion of the losses covered by the restitution order relate to bodily harm, property damage, future expenses, and collateral expenses like legal, accounting, or security expenditures incurred in trying to correct the harm caused by the crime. Moreover, 28 C.F.R. § 9.8(c) limits the victim's loss to the fair market value of the property of which the victim was deprived, as of the date of the loss. No allowance is made for interest forgone, lost profits, or collateral expenses incurred to recover lost property or to seek other recompense.

If the restitution order is not amenable to the restoration process, MLARS will advise the USAO, and the USAO may have to collect remission petitions to distribute forfeited funds to victims through the remission process. In some instances, a USAO may be able to use an existing victim impact statement as a substitute for a petition for remission, or a "hybrid" approach may be warranted. *See* Section II.F in this chapter.

### B.2   Representations

Restoration is designed to achieve results that are consistent with the results of the application of the remission standards for forfeited assets at 28 C.F.R. § 9.8. Therefore, the U.S. Attorney, or a designee, must inform MLARS, in writing and accompanied by a signature, as part of the request for restoration that:

(1) **All known victims have been properly notified of the restitution proceedings and are properly accounted for in the restitution order**. This representation is intended to ensure that no victims have been left out of the restitution order and that all are treated

---

[13] Treasury has issued a similar policy to not accept or approve restoration requests for assets that have been disposed of for over five years unless there are unique circumstances surrounding the delay.

fairly in the order. This is also to ensure that the restitution order reflects the proper priority of payment to victims, if applicable.[14]

(2) **To the best of the U.S. Attorney's, or designee's, knowledge and belief after consultation with the seizing agency, the losses described in the restitution order have been verified, comport with the remission requirements, and reflect all sources of compensation received by the victims, including returns on investments, interest payments, insurance proceeds, refunds, settlement payments, lawsuit awards, and any other sources of compensation for their losses**. This is to avoid double recovery by victims who may already have been compensated for part of their losses.

(3) **To the best of the U.S. Attorney's, or designee's, knowledge and belief after consultation with the seizing agency, reasonable efforts to locate additional assets establish that the victims do not have recourse reasonably available to obtain compensation for their losses from other assets, including those owned or controlled by the defendants**. This is to ensure that restoration does not confer an undue benefit on the defendant.

(4) **There is no evidence to suggest that any of the victims knowingly contributed to, participated in, benefitted from, or acted in a willfully blind manner, toward the commission of the offenses underlying the forfeiture or a related offense**. This is to prevent the return of forfeited property to those who essentially took part in the conduct that led to the forfeiture.

The USAO must also ensure that the time for filing an appeal challenging either the restitution order or the forfeiture has passed or all relevant appeals have been adjudicated before submitting the restoration request to MLARS.

Because restitution and forfeiture are mandatory and independent parts of a criminal sentence, the forfeited assets may not be used to satisfy the restitution order if other assets are available for that purpose. Typical examples of this situation might involve corporations that have extensive holdings that are not subject to forfeiture, or individuals who have property that exceeds the amount subject to forfeiture. The statutes governing restitution permit the government to enforce the restitution order as a final judgment against almost all of the defendant's property, not just facilitating property or fraud proceeds that may be subject to forfeiture. Asset forfeiture coordinators should coordinate with the financial litigation coordinators in their offices on the best approach to return all available assets to victims.

### B.3  Payment

To restore assets to the victims listed in the restitution order, MLARS will notify the USAO and property custodian. The custodian will then transfer the net forfeited proceeds of all assets in the case or related cases to the clerk of court for distribution pursuant to the restitution order, which should reflect proper priority of payment. Payments will be made *only* in accordance with the court's restitution order. If the forfeited assets are not sufficient to fully satisfy the order, payment will be made by the court as directed in the order. Federal government entities are compensated only after all

---

[14] *See* Sec. II.B.3 in this chapter.

non-federal agencies are compensated in full. *See* 18 U.S.C. § 3664(i); *see also* Section II.D in this chapter. Insurance companies must also be prioritized after direct victims. *See* 18 U.S.C. § 3664(j).

### C.  Preservation of assets for victims

To ensure that forfeited assets are made available for victims, the USAO and seizing agency must enter remission petitions in the Consolidated Asset Tracking System (CATS) immediately upon receipt. In addition, the USAO must place a restitution "hold" on the distribution of seized assets in CATS when a restoration request is anticipated. If assets are transferred for official use or equitable sharing prior to victim compensation, the transfer may be reversed at the discretion of the Chief of MLARS or the Director of TEOAF (for seizures by TFF member agencies) to make the property available for remission or restoration.

Because CATS is not the TFF's system of record, the USAO must request that the TFF preserve assets in cases involving TFF agencies where restitution may be ordered or where remission or restoration may occur. To ensure the preservation of the forfeited property in judicial cases involving TFF agencies, the USAO must also timely notify and send a copy of the restoration request to the TFF seizing agency.[15]

### D.  Special considerations for federal government victims

A federal government agency may qualify as a victim entitled to receive compensation through the restoration and remission procedures. A federal government agency victim, like any other type of victim, must demonstrate that it suffered a pecuniary loss of a specific amount as a direct result of the commission of the offense, or related offense, underlying the forfeiture. *See* 28 C.F.R. §§ 9.2 and 9.8(b). Federal agencies are not required to submit detailed documentation of loss when an acceptable estimation of loss is provided.

Federal government agencies often suffer pecuniary losses as a result of crimes involving taxpayer-funded programs like Medicare or Medicaid healthcare, Supplemental Nutrition Assistance Program (SNAP) benefits, and U.S. Department of Housing and Urban Development-insured loans. In some cases, the federal investigating agency is also a victim of the offense that it is investigating. For instance, the Internal Revenue Service-Criminal Investigations (IRS-CI) may investigate and seize assets in a tax return scheme in which the IRS unknowingly paid tax refunds based on fraudulent tax returns. In these cases, the agency must ensure that the division of the agency providing the petition report and recommendation is separate from the petitioning division. For example, in an IRS-CI investigation involving a tax return scheme, IRS-CI could provide the remission petition report and recommendation, while a different IRS division submits the petition.

The act of forfeiting the seized assets and depositing the proceeds into the Assets Forfeiture Fund (AFF) or TFF does *not* mean that the seizing agency has received victim compensation. Rather, the victim agency should either (1) be included in the restitution order, with a specified pecuniary loss amount, for restoration request purposes,[16] or (2) file a petition for remission requesting compensation for its losses from the proceeds of the forfeited assets.

---

[15] *See Treasury Blue Book*, Sec. VI.B.1. Download *Treasury Blue Book* from treasury.gov.

[16] If restoration is used pursuant to 18 U.S.C. § 3664(i) federal agencies will not receive compensation until all non-federal victims are compensated in full.

### E.  Special considerations for victims of human trafficking crimes

On May 29, 2015, the Justice for Victims of Trafficking Act (JVTA) was enacted.[17]  JVTA directs the Attorney General to pay victim restitution orders in cases where a forfeiture occurs pursuant to 18 U.S.C. § 1594.  *See* § 1594(f)(1).  Accordingly, MLARS processes requests from USAOs in accordance with this statutory language regardless of whether the victims' losses are considered "pecuniary" as defined by the relevant remission regulations.  If no restitution order exists in cases where a forfeiture occurs pursuant to § 1594, MLARS will consider petitions for remission that include a claim of lost wages (based on minimum wage) as the victim's pecuniary loss, along with any other losses permitted by 28 C.F.R. Part 9.

However, 18 U.S.C. § 1594 does not allow for innocent owner or lienholder priority in remission cases.  *See* § 1594(f)(2).  Therefore, the USAO must resolve all outstanding innocent owner and lienholder claims through the judicial forfeiture process rather than the remission process.

### F.  Hybrid remission and restoration review

MLARS will process a restoration request together with petitions for remission in appropriate cases where a hybrid decision would be an efficient and just mechanism for compensating the victims.  For example, the USAO may discover after the entry of a restitution order that, despite its due diligence, additional victims exist who were inadvertently omitted from the restitution order.  In such a situation, it may be burdensome to require the victims in the existing restitution order to seek remission.  MLARS may determine that a hybrid restoration and remission decision is appropriate in light of, *inter alia*, the number of victims listed in the existing restitution order, the number of victims omitted from the restitution order, the reasons why victims were omitted from the restitution order, and the amount of net proceeds available for distribution from the forfeited assets.  However, this hybrid process is not suitable when a restitution order includes those who do not qualify as victims under the remission regulations.

### G.  Termination of forfeiture and direct payment of assets to victims

If forfeiture tools and resources are used to seize an asset, the forfeiture process should be followed to completion.  Termination of forfeiture is appropriate only in extremely limited circumstances and only if no final order of forfeiture has been entered.  In these limited situations, it may be appropriate for the USAO to move to dismiss the forfeiture proceeding and request the court to direct the property be turned over directly as restitution pursuant to 18 U.S.C. § 3663A(b)(1)(A), or be transferred to the clerk of court to be paid to the victim.  However, the USAO may not unilaterally direct a seizing agency or property custodian to send funds that have been seized for forfeiture but not forfeited to the clerk for restitution, absent a court order or agreement with the person from whom the funds were seized.

Termination of forfeiture may be more appropriate than remission or restoration when the victim is entitled to restitution for non-pecuniary harm or other collateral costs that are not compensable under the remission regulations.  In addition, termination of forfeiture may be appropriate in multiple-victim fraud cases arising in jurisdictions with unfavorable caselaw concerning constructive trusts.  *See* Section III in this chapter.  If forfeiture is to be terminated and payment is to be made to the victim through the clerk of court, the property at issue must be liquid, as the clerk cannot liquidate real or

---

[17]  Justice for Victims of Trafficking Act of 2015, Pub. L. 114-22, May 29, 2015, 129 Stat. 227.

personal property.[18]  For example, the default method of sale to execute a restitution judgment is a sale by the USMS at the courthouse.  *See* 28 U.S.C. § 3203(g)(1)(A)(i).

## H.  Comparison of judicial remission and restoration chart

| Remission | Restoration |
| --- | --- |
| There is no need for a criminal conviction or restitution order. Only a forfeiture of assets related to the victim's loss is required. | A criminal conviction, an order of restitution, and a criminal, civil, or administrative forfeiture related to the victim's loss are all required. |
| The USAO, in cooperation with the investigative agency or a claims administrator, may send notice to all known victims of the offense underlying the forfeiture. | The USAO works with the investigative agency and probation office to identify victims and determine their losses to ensure inclusion in the restitution order. |
| The victim must file a petition to receive compensation. | The victim is not required to file a petition but may be required to submit information to the investigative agency or probation office prior to sentencing. |
| For judicial forfeitures, the USAO requests the investigative agency to prepare a report and recommendation. The USAO makes a recommendation and forwards the petition package to MLARS. | The USAO submits a restoration request, including the four required representations, to MLARS. *See* Sec. II.B.2 in this chapter. |
| MLARS decides petitions for remission of judicially forfeited assets. Seizing agencies decide petitions for remission of administratively forfeited assets. | The Attorney General, through MLARS, reviews the restoration request and may restore forfeited property to victims identified in the restitution order. |
| The custodian of the forfeited asset distributes the net proceeds directly to victims. | The custodian of the forfeited asset transfers the net proceeds directly to the Clerk of Court. |

---

[18]  This is true also for TFF member agency cases.  As a general rule, the TFF will not allow use of its property contracts to liquidate non-seized or non-forfeited assets for purposes of restitution.

## III.  Constructive Trusts in Multiple-Victim Fraud Cases

While courts generally agree that fraud victims do not retain legal title in money paid voluntarily into a fraud scheme, some courts occasionally recognize constructive trusts in favor of victims. Under this equitable remedy, the perpetrator of the fraud holds title to the victim's funds in trust for the benefit of the victim.  A constructive trust generally requires a victim to trace their money to the seized funds, which may warrant extensive discovery and evidentiary hearings.  This legal theory is troublesome in forfeiture cases involving multiple victims because it can transform the forfeiture case into a cumbersome and costly liquidation proceeding in which all victims compete against each other and against the government for the seized funds.  The government should generally oppose a claim of constructive trust in multiple-victim fraud cases so that the Attorney General can return the funds to the victims through the orderly remission or restoration process.

Some judicial circuits have recognized that the forfeiture statutes do not preclude, as a matter of law, the imposition of a constructive trust.[19]  Thus, government attorneys should consult the caselaw in their circuit and state in responding to constructive trust claims in their districts.

In litigating forfeiture cases in circuits that recognize constructive trusts, government attorneys may elect to oppose victims' individual claims of constructive trust on the merits, and further argue that recognition of the trust would result in unfair priority to the claimant, contrary to the equitable principles underlying the trust.  The courts should also be advised that forfeiture will enable all victims to have the opportunity to recover the funds on the *pro rata* basis through the Attorney General's remission authority.  *See* 28 C.F.R. §§ 9.8(a)(1) and (f).

---

[19] *See United States v. $4,224,958.57* (*Boylan*), 392 F.3d 1002, 1003–1005 (9th Cir. 2004) (holding that victims of a large, fraudulent investment scheme established a sufficient legal interest in the seized proceeds through a constructive trust to confer on them standing to contest the forfeiture); *see also Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 238 (2d Cir. 2011).

# Chapter 15:
# Federal Official Use and Equitable Sharing

## I. Federal Official Use

### A. Overview

Federal retention, or "federal official use," means a law enforcement agency's use of forfeited assets in the direct performance of law enforcement activities, including operations, training, and other functions such as administrative and other mission support activities. The transfer of "unique" assets, such as property of cultural or historical significance, to non-component federal agencies is also considered federal official use. The Attorney General has the authority to retain or transfer property for official use to any federal agency.[1] According to *The Attorney General's Guidelines on the Asset Forfeiture Program* (July 2018) (*AG Guidelines*), "No seized property shall be placed into official use until a final determination of forfeiture has been made and the request to place the property into official use has been approved by the appropriate official."[2]

Any federal law enforcement agency that directly participates in a law enforcement effort that results in a federal forfeiture may request to put tangible forfeited property into federal official use. Agencies must request specific assets for federal official use.[3] Federal official use requests will be granted only if specific forfeited property remains after all approved claims, petitions for remission, and restoration requests have been processed and paid.

Federal agencies may not put into federal official use any cash or proceeds from the sale of forfeited property. The requests need not specify the exact intended use of the assets, but all federal official use must be for law enforcement purposes.

### B. Federal official use designations by the federal seizing agency

The head of the federal seizing agency, or designated headquarters official, decides whether to put assets seized by the agency into its own federal official use. However, the Money Laundering and Asset Recovery Section (MLARS) must approve requests to place anonymity-enhanced cryptocurrencies into federal official use.[4] In any instance where the property requested for federal official use is valued at over $75,000, the seizing agency and the U.S. Marshals Service (USMS) must provide MLARS with advance notice and an opportunity to review the request. MLARS must notify the Asset Forfeiture Management Staff (AFMS) of approved requests to place assets into official use.

Once an asset designated by the federal seizing agency for federal official use has been administratively or judicially forfeited and all third-party interests, including victim compensation,

---

[1] *See The Attorney General's Guidelines on the Asset Forfeiture Program* (July 2018) (*AG Guidelines*), Sec. V.F.

[2] *Id*.

[3] Federally forfeited firearms and ammunition are neither equitably shared with non-federal law enforcement nor sold. *See* Chap. 5, Sec. IV.C in this *Manual*. Also, gift cards and other types of stored value cards seized by a Treasury member agency cannot be placed into official use or transferred to another federal agency. *See* Department of the Treasury (Treasury) Executive Office for Asset Forfeiture (TEOAF) Directive 6: Transfer of Forfeited Property and Retention for Official Use, July 29, 2016. *See* Chap. 4, Sec. V in this *Manual* regarding the authorities and guidelines for placing real property into federal official use.

[4] *See* Chap. 2, Sec. V.B in this *Manual*.

have been resolved, the seizing agency has 30 calendar days to inform the USMS of its final decision to place or decline to place the asset into federal official use. The USMS has the discretion to grant a one-time extension of 15 calendar days. The seizing agency must request the extension in writing to the USMS. Absent a response from the seizing agency within the initial 30 calendar days (or a time extension that has expired), or following a negative response within the specified time period, the USMS is authorized and directed to take the necessary steps to dispose of the asset in the usual manner, according to law and regulations.

### C. Federal official use requests by other federal agencies

If the federal seizing agency responsible for a particular asset decides not to put the asset into its own federal official use, then any other Department of Justice (Department) investigative agency that participated in the case, Department components, or non-seizing federal agencies, in that order, may request to put the asset into its own federal official use. These agencies may seek the transfer of property for federal official use only if the property is not required for victim compensation, or international sharing.[5]

When one federal agency requests an asset for federal official use that was seized by another federal agency (*e.g.* if the U.S. Department of Agriculture (USDA) wants to place a vehicle into official use that was seized by the Federal Bureau of Investigation (FBI)), the requesting agency must follow the federal official use request process of the seizing agency and the USMS. MLARS must approve requests to place into official use any amount of anonymity-enhanced cryptocurrencies.[6] MLARS must notify AFMS of approved requests to place assets into official use. If more than one Department component seeks to retain the same forfeited property for federal official use, MLARS will determine which agency may place the property into federal official use. All requests, other than those for retention by the lead federal seizing agency, must be submitted to the USMS. Agencies that are not members of either the Department of Justice or the Department of the Treasury (Treasury) forfeiture programs must request items for federal official use through the participating agencies and the USMS. No federal contribution form (FCF)[7] is required, and the transfer decision follows via the federal official use approval process, not the equitable sharing approval process.[8]

### D. Internal guidelines

Each agency is required to maintain internal guidelines governing federal official use requests. The internal guidelines shall:

- prohibit the placement into federal official use of any seized property before (1) the entry of a final determination of forfeiture, (2) resolution of all third-party interests, including victim

---

[5] Requests for an equitable share of forfeited funds or of sales proceeds from forfeited property from tribal, state, and local law enforcement agencies are outlined in Sec. III.D in this chapter. Because these requests are part of equitable sharing, state, local, and tribal agencies may requeeited assets only when they directly participated in the case leading to forfeiture. *See Guide to Equitable Sharing for State, Local, and Tribal Law Enforcement Agencies* (July 2018), Sec. V.C

[6] *See* Chap. 2, Sec. V.B in this *Manual*.

[7] *See* Sec. V in this chapter for a discussion of the FCF.

[8] For assets seized by a Treasury Forfeiture Fust forfnd (TFF) member agency, *see* TEOAF Directive 6: Transfer of Forfeited Property and Retention for Official Use, July 29, 2016.

compensation, and (3) the appropriate approval of the request to place the property into federal official use;

- require all seized property be recorded and tracked in an official inventory of seized property without regard to its intended disposition;

- require a written justification detailing the reasons why the forfeited property was placed into federal official use, and require retaining these justifications for three years;

- require a specific supervisory-level official be responsible and accountable for the decision to place each item of forfeited property into federal official use and for ensuring appropriate federal official use of such property following its transfer;

- require the property placed into federal official use be identified and tracked in an accountable property system;

- state that the property may not be transferred or retained if it is primarily for purposes of trade or sale, or home-to-work transportation, or other uses not expressly authorized for property acquired through the expenditure of appropriated funds; and

- state an intention to place the property into federal official use for two years.

### E.  Payment of liens on personal property placed into federal official use

Liens on personal property placed into federal official use by Department seizing agencies and the USMS may be paid from the Assets Forfeiture Fund (AFF) provided that:

- there remains sufficient funding from the agency's AFF allocation for payment of the liens;

- the agency intends to place the property into federal official use for at least two years, except when the property is a vehicle requested for use in an undercover capacity.  In the case of a vehicle requested for use in an undercover capacity, the head of the seizing agency may decide to exchange the undercover vehicle for a similar vehicle(s) for use in an undercover capacity.  No cash or remuneration of any kind may be received as part of any such exchange.  Agencies shall report all such exchanges to the Chief of MLARS within 90 days after the end of each fiscal year;

- the total amount to be paid from the AFF amounts to less than one-third the appraised value of the property; and

- the total amount to be paid from the AFF is less than $25,000.

Seizing agencies must submit requests for exceptions to this policy in writing to the Chief of MLARS.

## II.  Equitable Sharing

Federal law authorizes the Attorney General to share federally forfeited property with participating state, local, or tribal law enforcement agencies.[9]  *See* 21 U.S.C. §§ 881(e)(1)(A) & (3); 18 U.S.C.

---

[9]  For more details and related publications on equitable sharing, please refer to MLARS' Equitable Sharing Program page.  The Treasury Forfeiture Fund (TFF) administers a substantially similar equitable sharing program.  *See* Treasury's Equitable Sharing Program page.

§ 981(e)(2); 31 U.S.C. § 9705(a)(1)(G) & (b)(4). Through equitable sharing, any state, local, or tribal law enforcement agency that directly participates in a law enforcement effort that results in a federal forfeiture may request an equitable share of the net proceeds of the forfeiture. The exercise of this authority is discretionary. The Attorney General is not required to share property in any case.

Equitable sharing requests will be granted only if forfeited property or net proceeds[10] from the sale of forfeited property remain after all approved claims, petitions for remission, and restoration requests have been processed and paid. In addition, international sharing must be reviewed and approved prior to payment of domestic sharing.[11]

## III.  Processing Applications for Equitable Sharing

### A.  Eligible participants

Any state, local, or tribal law enforcement agency that is a participant in the Department's Equitable Sharing Program (Equitable Sharing Program) and directly participates in an investigation or prosecution resulting in a federal forfeiture may request an equitable share of the net proceeds of the forfeiture. To receive shared funds, the agency must comply with the Equitable Sharing Program guidelines and reporting requirements. *See* the *Guide to Equitable Sharing for State, Local, and Tribal Law Enforcement Agencies* (July 2018) (*Guide*), Sec. II.

MLARS determines the eligibility of a state, local, or tribal law enforcement agency to participate in the Equitable Sharing Program. MLARS will assess any request according to criteria outlined in the *Guide* and any subsequent updates to the *Guide*. *See Guide* Secs. III and VII. No agency will be accepted into the Equitable Sharing Program until MLARS completes its determination.

### B.  Compliance

To participate in the Equitable Sharing Program, state, local, and tribal law enforcement agencies must first submit, and annually resubmit, an Equitable Sharing Agreement and Certification form (ESAC form) signed by both the head of the law enforcement agency and the head of the governing body with budgetary authority over the law enforcement agency. By signing the ESAC form, the signatories agree to be bound by, and comply with, the federal statutes and Department policies—including policies on the appropriate law enforcement purposes and functions of forfeiture—governing the Equitable Sharing Program. *See Guide* Sec. VII.A.

Any breach of the ESAC form by a state, local, or tribal law enforcement agency may render it non-compliant or ineligible to receive equitable sharing payments. Participation may be barred on either a temporary or permanent basis, and in some cases, an agency's pending equitable sharing distributions may be permanently extinguished where a requesting agency has failed timely to submit an ESAC form or UFMS Vendor Request Form (ACH form) or has failed to meet any other requirements as set forth in the *Guide*. *See Guide* Sec. VII. While federal investigative agencies and U.S. Attorney's Offices (USAOs) have no affirmative obligation to monitor an agency's eligibility, they are obliged promptly to report to MLARS any information that might affect an agency's eligibility to participate in the Equitable Sharing Program.

---

[10] In any case with underwater assets (*i.e.*, where the asset expenses are greater than income), the deciding official must offset the negative value of the underwater assets against any assets with a net income prior to distribution of any approved sharing.

[11] *See* Sec. VII in this chapter; Chap. 8, Sec. X in this *Manual*.

### C. Equitable sharing allocations

Equitable shares allocated to a law enforcement agency must bear a reasonable relationship to the agency's direct participation in the law enforcement effort resulting in the forfeiture. As a general rule, the recommended equitable sharing allocation should be based on a comparison of the workhours and qualitative contributions of each and every federal, tribal, state, and local law enforcement agency that participated in the law enforcement effort resulting in the forfeiture.[12] The decisionmaker may consider the qualitative factors outlined in Sec. IV.A. of the *Guide* when determining a sharing percentage.

Equitable sharing percentages may also be awarded based on an agency's participation in a task force that has previously adopted a task force sharing arrangement consistent with Department policy. In these cases, all agencies participating in the task force must sign a memorandum of understanding (MOU) reflecting the task force sharing arrangement before any seizures may be made pursuant to the MOU. These MOUs should be updated periodically to reflect material changes in the agencies constituting the task force or in any agency's contribution to forfeitures credited to the task force. However, an MOU only governs the total contribution of the task force agencies. It may not bind Department agencies or non-task force agencies to a particular share. For further information regarding the calculation of the sharing percentage, *see Guide* Sec. IV.B.

Funds collected to satisfy a forfeiture money judgment are ineligible for equitable sharing where no collection efforts were expended by the participants in the underlying investigation. For example, if a Deputy U.S. Marshal, USAO employee, or other federal agency locates funds in satisfaction of a money judgment, those funds cannot be shared unless the state, local, or tribal agency assisted in the collection effort. Funds located and applied to the money judgment at the time the money judgment is entered could be eligible for sharing.

### D. Submission of requests for equitable sharing

A state, local, or tribal law enforcement agency participating in the Equitable Sharing Program may request an equitable share of forfeited funds, or of sales proceeds from forfeited property, by submitting an equitable sharing request form (Form DAG-71) through the Department's Equitable Sharing Portal (eShare Portal). A separate Form DAG-71 must be completed by the requesting agency for each asset to be shared. An agency shall not file a Form DAG-71 on behalf of another agency. For more information about the procedures for submitting a Form DAG-71, consult Sec. IV of the *Guide*.

Federal agencies are not eligible to receive equitable sharing funds. Federal law enforcement agencies that participated in the forfeiture must follow agency policy to submit a FCF to the lead or processing federal agency to record participation or, where applicable, request a fund-to-fund transfer (*e.g.*, a transfer from the AFF to the Treasury Forfeiture Fund (TFF) or vice versa) for the assistance they provided.[13] A federal investigative agency shall not complete a FCF for another federal agency.

---

[12] When a state forfeiture relates to a federal criminal prosecution, federal equitable sharing decisions should account for both state and federal forfeitures in the investigation. Consequently, federal agencies and USAOs should collectively review state and federal forfeitures stemming from a single investigation before making federal equitable sharing recommendations and decisions.

[13] *See* Sec. V in this chapter for additional information on the FCF.

## E.  Final approval authority

Until the final decision maker has rendered a decision, federal personnel and contractors involved in making, processing, or deciding an equitable sharing request must not represent the projected outcome of sharing requests.

### E.1   Investigative agency

If assets are administratively forfeited and the total appraised value of all items forfeited under a single Declaration of Administrative Forfeiture is less than $1 million, the head of the investigative agency, or designated agency headquarters official, decides the appropriate equitable share as to each asset and requesting agency.

### E.2   U.S. Attorney

If the assets are judicially forfeited and the total appraised value of all of the assets forfeited in a single judicial forfeiture order is less than $1 million, the U.S. Attorney, or a designee, decides the appropriate equitable share as to each asset and requesting agency.

### E.3   Deputy Attorney General (DAG)

Regardless of whether assets are administratively or judicially forfeited, the Deputy Attorney General (DAG), or a designee, decides the final equitable share as to each asset and requesting agency in:

(1)   All cases in which the total appraised value of all of the assets forfeited under a single declaration of administrative forfeiture or judicial forfeiture order is $1 million or more.  Assets forfeited under a single declaration of administrative forfeiture or judicial forfeiture order cannot be separated so that only the individual assets having a value of $1 million or more, and not other assets, are submitted to the decision maker for sharing decisions;

(2)   Cases involving the equitable transfer of real property to federal agencies; or

(3)   Cases involving the transfer of tangible items to federal agencies.

The appropriate decision maker with delegated decision-making authority from the DAG is generally determined by the value of the assets to be shared, as set forth below.

#### E.3.a   Assets valued between $1 and $5 million

The DAG delegated to the Chief of MLARS the authority to decide equitable sharing requests for judicially or administratively forfeited assets in which (1) the property to be shared is valued between $1 million and $5 million and (2) MLARS, the seizing agency, and the USAO agree on the sharing allocations.  If the seizing agency, the USAO, and MLARS do not agree on the sharing allocations, the DAG must make the final decision.

#### E.3.b   Assets valued over $5 million

The DAG delegated to the Assistant Attorney General for the Criminal Division (AAG) authority to decide equitable sharing requests for judicially or administratively forfeited assets in which: (1) the

property is valued in excess of $5 million and (2) the seizing agency, the USAO, and MLARS agree on the sharing allocations. If the seizing agency, the USAO, and MLARS do not agree on the sharing allocations, the DAG must make the final decision.

### E.3.c   Prohibition on the transfer of tangible or real property

The transfer of forfeited tangible or real property to a state, local, or tribal law enforcement agency is prohibited.

## IV.   Equitable Sharing Payments

The USMS makes equitable sharing payments only after final approval of the sharing appears on the applicable reports generated by the Consolidated Asset Tracking System (CATS). Payments will not occur unless the investigative agency, the USAO, and MLARS have entered in CATS all information required to authorize the payment, and the recipient agency complies with all reporting requirements.

The USMS electronically transfers all equitable sharing payments to state, local, and tribal law enforcement agencies. To electronically receive equitable sharing payments, a state, local, or tribal law enforcement agency must submit a completed ACH form to the USMS at AFD.ACHFORMS@usdoj.gov.[14] Approved sharing of less than $500 will not be processed.

All equitable sharing payments are subject to certain offsets under the Debt Collection Improvement Act of 1996 (DCIA), through which Treasury and other disbursing officials must offset federal payments to collect delinquent non-tax debts owed to the United States or state governments, and the Taxpayer Relief Act of 1997, which provides for the continuous levy of federal non-tax payments to collect delinquent tax debts. The Treasury Offset Program (TOP) collects Taxpayer Identification Numbers (TIN) and banking account information for the payee on any such offset payment.[15]

## V.   Federal Contribution Form (FCF)

Each federal agency must complete the federal contribution form (FCF) to fully capture federal participation in the law enforcement effort leading to forfeiture, and when appropriate, must request a transfer of funds from one forfeiture fund (the AFF, TFF or U.S. Postal Inspection Service (USPIS) Forfeiture Fund[16]) to the fund of the recipient agency. Any forfeited funds or proceeds from the sale or other disposition of forfeited property may be transferred directly only to the appropriate forfeiture fund of the requesting agency, not to the requesting agency itself.

When federal agencies from the same forfeiture program participate in a joint investigation, no fund-to-fund monetary transfers occur. In these cases, the FCF documents the participation of each federal agency and also provides necessary information to the sharing decision-maker, who must evaluate the overall workhour and qualitative contributions of all participating federal, tribal, state, and local agencies when determining sharing percentages.

---

[14] The ACH form is available on MLARS' Equitable Sharing Program page. Contact TEOAF or the U.S. Postal Inspection Service (USPIS) for information about payments from these agencies.

[15] On occasion, a delinquent debt giving rise to an offset may be attributable to another agency in the same governmental jurisdiction as the requesting agency. Agencies whose funds have been offset should review *Guide* Sec. V.E. for information relevant to seeking repayment *from the responsible city, county, or state agency*. Treasury's Bureau of the Fiscal Service (BFS), which administers TOP, will not reimburse these payments.

[16] The USPIS has the authority to directly receive asset forfeiture proceeds, expend funds, and manage its own asset forfeiture fund. *See* 39 C.F.R. § 233.7.

When an AFF investigative agency participates in an investigation resulting in the seizure of property processed for forfeiture by another federal investigative agency, it can record the seizure in CATS by creating a "referral asset." A referral asset is another method for capturing statistics on seizures to document participation in an investigation.

An FCF may only be completed by the federal agencies listed in the NCIC/ORI Code chart below.

| NCIC/ORI CODE | Agency |
| --- | --- |
| CBPAMO000 | Customs and Border Protection- Air Operations (CBP-AO) |
| CBPOBP000 | Customs and Border Protection- Border Patrol (CBP) |
| CBPOFO000 | Customs and Border Protection- Field Operations (CBP-FO) |
| DCATF0000 | Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) |
| DCDOS0000 | Department of State |
| DCICE0000 | Immigration and Customs Enforcement (ICE) |
| DCIS | Defense Criminal Investigative Service (DCIS) |
| DEA | Drug Enforcement Administration (DEA) |
| FBI | Federal Bureau of Investigation (FBI) |
| IRS | Internal Revenue Service (IRS) |
| MDFDA03T0 | Food and Drug Administration (FDA) |
| TTB | Tax and Trade Bureau (TTB) |
| USCG | U.S. Coast Guard (USCG) |
| USDAIG | U.S. Department of Agriculture, Office of Inspector General (USDA-OIG) |
| USMS | U.S. Marshals Service (USMS) |
| USPS00000 | U.S. Postal Service (USPS) |
| USSS | U.S. Secret Service (USSS) |

When a TFF agency becomes involved in an ongoing joint investigation involving an AFF agency and state, local, and tribal law enforcement agencies, and an existing MOU governs sharing between the AFF agency and the participating state, local, and tribal law enforcement agencies, the sharing percentages agreed on in the MOU must be reduced to include a transfer to the TFF in recognition of the Treasury agency's participation. When a federal agency is invited to join an ongoing investigation, the agency must immediately notify the lead agency and the USAO of its involvement. Any issues that cannot be resolved through communication between case agents should be submitted to the appropriate special agent-in-charge (SAC) for the involved agencies. Agency headquarters will not participate in the resolution of issues unless the SAC from either of the participating agencies requests assistance. Prompt and accurate communication about sharing matters is important and should occur in the first instance at the field level.

The deadline for agencies to submit FCFs is 45 days after forfeiture. Agencies may submit FCFs for intra-fund joint investigations (*i.e.*, from one Department seizing agency to another) electronically through the eShare Portal.[17]

---

[17] Agencies should continue to submit hard copies of the FCF to Treasury and Department of Homeland Security (DHS) agencies.

## VI.  Reverse Sharing

The Department investigative agencies participating in an investigation resulting in the seizure of property that is processed for forfeiture by a state, local, or tribal law enforcement agency or foreign jurisdiction should create a "referral asset" in CATS to document their participation in the investigation.  If any proceeds are received from the state, local, or tribal law enforcement agency or foreign jurisdiction through "reverse sharing," the agency's share will be deposited into the AFF.

Funds shared with the United States by a foreign government that have not been forfeited under U.S. law are not eligible for domestic equitable sharing.[18]  Nevertheless, if U.S. prosecutors or investigators assisted in a foreign case that resulted in a foreign forfeiture, they are encouraged to contact MLARS to determine if it might be appropriate to submit a sharing request to that country, as the funds still may be deposited into the AFF and be applied for Asset Forfeiture Program purposes.  All requests to foreign governments for asset sharing must be submitted by MLARS in coordination with the Department's Office of International Affairs (OIA).

## VII.  International Sharing of Forfeited Assets

Chapter 8, Section X in this *Manual* sets forth Department policy applicable to international sharing, as well as the forfeiture of assets located overseas.  The Department encourages international asset sharing with countries that facilitate the forfeiture of assets under U.S. law.  International sharing, which requires both Department of Justice and Department of State's approval and concurrence by Department of the Treasury, must be either approved or pre-approved before any domestic equitable sharing in that case can take place.  The percentage granted to a foreign government often depends upon international sharing agreements or factors that differ significantly from the "workhour and qualitative contribution" standard used in determining domestic sharing.

---

[18] *See also* Chap. 8, Sec. X in this *Manual*.

# Appendix A:
# Approval, Consultation, and Notification Requirements Chart

## Adoption (State/Local Seizures)

| | | | |
|---|---|---|---|
| **Direct Adoption** | Approval | AFPM Chap. 3.V.A | **MLARS** must approve direct adoption by U.S. Attorney of real property.<br>**U.S. Attorney** may approve direct adoption of assets permitted to be adopted except for real property. |
| **Direct Referral by U.S. Attorney** | Approval | AFPM Chap. 3.V.B | **MLARS** must approve direct referral by U.S. Attorney of real property.<br>**U.S. Attorney** may authorize direct referral of any asset other than real property. |

## Attorneys' Fees

| | | | |
|---|---|---|---|
| **Defendant's Attorneys' Fees in Criminal Forfeiture Proceeding** | Approval | AFPM Chap. 12.II.A | **Hyde Amendment Committee** and **EOUSA** must approve a request for attorneys' fees under the Hyde Amendment based on a criminal prosecution. |
| **Defendant's Attorneys' Fees in Criminal Forfeiture Proceeding** | Notify | AFPM Chap. 12.II.A | Defendant must notify **MLARS** if the request for attorneys' fees specifically addresses criminal forfeiture. |
| **EAJA Awards** | Approval | AFPM Chap. 12.II.B;<br>JM § 9-117.220 | **MLARS** may authorize use of AFF funds to pay EAJA awards to third-party petitioners in criminal forfeiture actions. |
| **Exempt Fees from Forfeiture** | Approval | AFPM Chap. 11.VII, Chap. 12.IV;<br>JM §§ 9-113.600, 9-120.116 | **AAG** must approve entering into any agreement to exempt from forfeiture an asset transferred to an attorney as fees for legal services, including those restrained as substitute assets. |
| **Proceedings Against Fees** | Approval | AFPM Chap. 12.IV;<br>JM § 9-120.112 | **AAG** must approve any action to institute a criminal or civil forfeiture proceeding against an asset transferred to an attorney as a fee for legal services. |

| | | | |
|---|---|---|---|
| **AAG** | Assistant Attorney General | **JM** | *Justice Manual* |
| **AFF** | Assets Forfeiture Fund | **MLARS** | Money Laundering and Asset Recovery Section |
| **AFMS** | Justice Management Division, Asset Forfeiture Management Staff | **OIA** | Office of International Affairs |
| **AFPM** | *Asset Forfeiture Policy Manual* (2021) | **SADF** | Seized Assets Deposit Fund |
| **AG** | Attorney General | **TFF** | Department of the Treasury Forfeiture Fund |
| **DAG** | Deputy Attorney General | **Treasury** | Department of the Treasury |
| **Department** | Department of Justice | **USAO** | U.S. Attorney's Office |
| **EAJA** | Equal Access to Justice Act | **USMS** | U.S. Marshals Office |
| **EOUSA** | Executive Office for U.S. Attorneys | **USVSST Fund** | United States Victims of State Sponsored Terrorism Fund |

Appendix A: Business Entities

## Business Entities

| Facilitating Property | Approval | AFPM Chap. 1.I.D.2, Chap. 5.III.D.1.b | **U.S. Attorney** must provide written approval before the USAO: (1) seizes or files a civil forfeiture complaint against an ongoing business based on a facilitation theory or (2) extends 60-day deadline to file civil forfeiture complaint against an ongoing business based on a facilitation theory. **MLARS Chief** must provide written approval before the Criminal Division or other Department component not partnering with the USAO may extend 60-day deadline to file civil forfeiture complaint against an ongoing business based on a facilitation theory. |
|---|---|---|---|
| Losses or Liabilities; Planning for Seizure, Restraint, or Forfeiture | Approval | AFPM Chap. 1.I.D.2 | **MLARS** must approve the restraint, seizure, or forfeiture of a business that could create a net loss to the AFF. MLARS will coordinate with USAO, AFMS, and USMS. |
| Prior to Instituting Forfeiture Proceedings | Consult | AFPM Chap. 4.III.C; JM §§ 9-105.330, 9-111.124 | USAO must consult **MLARS** and **USMS** prior to filing indictment, information, or complaint in any forfeiture action against, seeking the seizure of, or moving to restrain an ongoing business. JM § 9-105.330 requires consultation with MLARS prior to seeking forfeiture of a business on the theory that it facilitated money laundering. JM § 9-111.124 says that USAO must consult MLARS prior to initiating a forfeiture action against, or seeing the seizure of, or moving to restrain an operating business. |

## Civil Forfeiture Complaint

| Facilitating Property | Approval | AFPM Chap. 5.III.D | **U.S. Attorney** must provide written authorization before USAO files any civil forfeiture complaint based on a theory that the property facilitated or concealed underlying criminal activity. |
|---|---|---|---|
| Facilitating Property | Approval | AFPM Chap. 5.III.D | **MLARS Chief** must provide written authorization before the Criminal Division or other Department component not partnering with the USAO files any civil forfeiture complaint based on a theory that the property facilitated or concealed underlying criminal activity. |

| | | | |
|---|---|---|---|
| **AAG** | Assistant Attorney General | **JM** | *Justice Manual* |
| **AFF** | Assets Forfeiture Fund | **MLARS** | Money Laundering and Asset Recovery Section |
| **AFMS** | Justice Management Division, Asset Forfeiture Management Staff | **OIA** | Office of International Affairs |
| **AFPM** | *Asset Forfeiture Policy Manual* (2021) | **SADF** | Seized Assets Deposit Fund |
| **AG** | Attorney General | **TFF** | Department of the Treasury Forfeiture Fund |
| **DAG** | Deputy Attorney General | **Treasury** | Department of the Treasury |
| **Department** | Department of Justice | **USAO** | U.S. Attorney's Office |
| **EAJA** | Equal Access to Justice Act | **USMS** | U.S. Marshals Office |
| **EOUSA** | Executive Office for U.S. Attorneys | **USVSST Fund** | United States Victims of State Sponsored Terrorism Fund |

| Correspondent Accounts | | | |
|---|---|---|---|
| Restraining Order or Warrant | Approval | AFPM Chap. 8.VI; 18 U.S.C. § 981(k) | **MLARS** must give approval before serving a restraining order, seizure warrant, or warrant of arrest on a correspondent bank account under 18 U.S.C. § 981(k) (**MLARS Chief** will get concurrence from **OIA director** as well as the relevant Treasury and Department of State officials). |
| Subpoena | Approval | 31 U.S.C. § 5318(k); JM § 9-13.525 | **OIA** must give approval before AAG can issue summonses or subpoenas to foreign banks that maintain correspondent accounts in the United States to get records. |

| Cryptocurrency | | | |
|---|---|---|---|
| Seizure from foreign-located service providers | Consult | AFPM Chap. 2.V.B | Prosecutors should consult **OIA** regarding the seizure of cryptocurrency from foreign-located service providers. |
| Interlocutory sale or pretrial conversion | Consult | AFPM Chap. 2.V.B | Prosecutors must consult **MLARS** before seeking an order for interlocutory sale. |
| Anonymity-Enhanced Cryptocurrencies Disposition | Consult | AFPM Chap. 2.V.B | Prosecutors must consult **MLARS** or **USMS** for guidance regarding disposition of anonymity-enhanced cryptocurrencies. |
| Anonymity-Enhanced Cryptocurrencies Disposition | Approval | AFPM Chap. 2.V.B, Chap. 15.I.B–C | **MLARS** must approve a request to sell anonymity-enhanced cryptocurrencies or place them into official use. |

| Equitable Sharing | | | |
|---|---|---|---|
| Assets Valued $1 to $5 Million | Approval | AFPM Chap. 15.III.E.3.a | **MLARS Chief** has authority to rule on equitable sharing requests for judicially and administratively forfeited assets in which: (1) the property to be shared is valued between $1 and $5 million and (2) MLARS, seizing agency, and USAO agree on the sharing. |
| Assets Valued Over $5 Million | Approval | AFPM Chap. 15.III.E.3.b | **AAG** has the authority to rule on equitable sharing requests if: (1) the property is over $5 million and (2) MLARS, seizing agency, and USAO all agree on the sharing. |

| **AAG** | Assistant Attorney General | **JM** | *Justice Manual* |
|---|---|---|---|
| **AFF** | Assets Forfeiture Fund | **MLARS** | Money Laundering and Asset Recovery Section |
| **AFMS** | Justice Management Division, Asset Forfeiture Management Staff | **OIA** | Office of International Affairs |
| **AFPM** | *Asset Forfeiture Policy Manual* (2021) | **SADF** | Seized Assets Deposit Fund |
| **AG** | Attorney General | **TFF** | Department of the Treasury Forfeiture Fund |
| **DAG** | Deputy Attorney General | **Treasury** | Department of the Treasury |
| **Department** | Department of Justice | **USAO** | U.S. Attorney's Office |
| **EAJA** | Equal Access to Justice Act | **USMS** | U.S. Marshals Office |
| **EOUSA** | Executive Office for U.S. Attorneys | **USVSST Fund** | United States Victims of State Sponsored Terrorism Fund |

Appendix A: Interlocutory Sales

## Equitable Sharing

| | | | |
|---|---|---|---|
| **International Sharing** | Approval | AFPM Chap. 8.X, Chap. 15.VII; JM § 9-116.400 | **Secretary of State** and **AG** approval required before forfeited assets can be shared internationally. In cases involving the AFF, (1) **AAG** approves uncontested international sharing proposals over $5 million and (2) **MLARS Chief** approves uncontested international equitable sharing proposals for $5 million or less. |
| **Multi-District / Disagreement** | Approval | AFPM Chap. 15.III.E.3.b; JM § 9-116.210 | **DAG** must approve equitable sharing in cases involving: (1) multiple districts or (2) disagreement among USAO, MLARS, and seizing agency on the sharing, regardless of the property value. <br><br> JM § 9-116.210 says that **DAG** must approve equitable sharing in cases involving: (1) $1 million or more in forfeited assets, (2) multi-district cases, or (3) cases involving real property transfers to a state or local agency for law enforcement related use. MLARS is coordinating with EOUSA to update JM. |

## Interlocutory Sales

| | | | |
|---|---|---|---|
| **Property pending judicial forfeiture** | Consult | AFPM Chap. 10.II.B | USAO must consult **seizing agency** and **USMS** to determine the status of any petitions for remission before seeking a pre-forfeiture sale of property pending judicial forfeiture. |
| **Cryptocurrency interlocutory sale or pretrial conversion** | Consult | AFPM Chap. 2.V.B | Prosecutors must consult **MLARS** before seeking an order for interlocutory sale. |

## International Forfeiture

| | | | |
|---|---|---|---|
| **Businesses Located Abroad** | Consult | AFPM Chap. 8.II | **MLARS** must be consulted before the United States asks a foreign government to restrain or seize an ongoing business or its assets, or appoint a guardian, or similar fiduciary for the same. |
| **Civil Forfeiture** | Notify | AFPM Chap. 8.III.B; JM § 9-13.526 | **Prosecutors must notify OIA** (which will consult with **MLARS**) before filing an *in rem* forfeiture action based on 28 U.S.C. § 1355(b)(2). |
| **Enforcement/ Recognition in Foreign Jurisdiction** | Consult | JM § 9-13.526 | Prosecutors must consult **OIA** (which will consult with **MLARS**) before taking steps to present to a foreign government, for enforcement or recognition, any civil or criminal forfeiture order entered in the United States for property located within the foreign jurisdiction. |

| | | | |
|---|---|---|---|
| **AAG** | Assistant Attorney General | **JM** | *Justice Manual* |
| **AFF** | Assets Forfeiture Fund | **MLARS** | Money Laundering and Asset Recovery Section |
| **AFMS** | Justice Management Division, Asset Forfeiture Management Staff | **OIA** | Office of International Affairs |
| **AFPM** | *Asset Forfeiture Policy Manual* (2021) | **SADF** | Seized Assets Deposit Fund |
| **AG** | Attorney General | **TFF** | Department of the Treasury Forfeiture Fund |
| **DAG** | Deputy Attorney General | **Treasury** | Department of the Treasury |
| **Department** | Department of Justice | **USAO** | U.S. Attorney's Office |
| **EAJA** | Equal Access to Justice Act | **USMS** | U.S. Marshals Office |
| **EOUSA** | Executive Office for U.S. Attorneys | **USVSST Fund** | United States Victims of State Sponsored Terrorism Fund |

## International Forfeiture

| | | | |
|---|---|---|---|
| **Enforcement of Foreign Judgments and Restraining Orders** | Approval | AFPM Chap. 8.IX.B | **MLARS** must authorize: (1) foreign forfeiture or confiscation judgments under 28 U.S.C. § 2467(b)(2) where the amount is $5 million or less; and (2) all foreign forfeiture restraining orders under § 2467(d)(3)(B)(ii). |
| **International Contacts** | Consult | AFPM Chap. 8.I.A; JM § 9-13.500 | Prosecutors must consult **OIA** to coordinate all incoming and outgoing international contacts regarding criminal justice matters. |
| **Notice** | Consult | AFPM Chap. 8.IV | Prosecutors should consult **OIA** before providing forfeiture notice to individuals and entities abroad. |
| **Repatriation** | Consult | AFPM Chap. 8.V | Prosecutors must consult **MLARS** and **OIA** when seeking repatriation of forfeitable assets located abroad. |

## Net Equity Thresholds

| | | | |
|---|---|---|---|
| **Decrease Thresholds** | Approval | AFPM Chap. 1.I.C.3; JM § 9-111.120 | When feasible, prior to seizure, supervisory-level approval, in writing, from the **USAO** (for **judicial forfeitures**) or **seizing agency** (for **administrative forfeitures**) required for any downward departure from the seizing thresholds. Reason for waiver must be explained in the case file. |
| **Increase Thresholds** | Consult | AFPM Chap. 1.I.C.3, Chap. 3.II footnote 3; JM § 9-111.120 | **USAO** (which will consult seizing agencies affected by the change) may institute higher district-wide thresholds for judicial forfeitures. |

## Official Use

| | | | |
|---|---|---|---|
| **Property Value $75,000 or More** | Notify | AFPM Chap. 15.I.B | Seizing agency or USMS must notify **MLARS** where property requested for official use is valued at over $75,000. |
| **Asset Seized by Agency Requesting Official Use** | Decision | AFPM Chap. 15.I.B | **Head of the seizing agency**, or a **designated headquarters official**, decides whether to put assets seized by the agency into its own official use. MLARS will notify AFMS of approved requests to place assets into official use. |
| **Requests by Other Federal Agencies** | Approval | AFPM Chap. 15.I.C | **Lead federal seizing agency** approves requests for official use by other federal agencies. If more than one Department component seeks to retain the same forfeited property for official use, **MLARS** will determine which agency may place the property into official use. MLARS will notify AFMS of approved requests to place assets into official use. |

| | | | |
|---|---|---|---|
| **AAG** | Assistant Attorney General | **JM** | *Justice Manual* |
| **AFF** | Assets Forfeiture Fund | **MLARS** | Money Laundering and Asset Recovery Section |
| **AFMS** | Justice Management Division, Asset Forfeiture Management Staff | **OIA** | Office of International Affairs |
| **AFPM** | *Asset Forfeiture Policy Manual* (2021) | **SADF** | Seized Assets Deposit Fund |
| **AG** | Attorney General | **TFF** | Department of the Treasury Forfeiture Fund |
| **DAG** | Deputy Attorney General | **Treasury** | Department of the Treasury |
| **Department** | Department of Justice | **USAO** | U.S. Attorney's Office |
| **EAJA** | Equal Access to Justice Act | **USMS** | U.S. Marshals Office |
| **EOUSA** | Executive Office for U.S. Attorneys | **USVSST Fund** | United States Victims of State Sponsored Terrorism Fund |

Appendix A: Plea Agreements or Settlements

## Official Use

| | | | |
|---|---|---|---|
| **Payment of Liens on Personal Property Placed into Official Use** | Approval | AFPM Chap. 15.I.E | **MLARS Chief** must approve requests for exceptions for payment of liens on personal property placed into official use from the AFF. |
| **Anonymity-Enhanced Cryptocurrency, Any Amount** | Approval | AFPM Chap. 15.I.B–C, Chap. 2.V.B | **MLARS** must approve requests to place anonymity-enhanced cryptocurrency into official use. |

## Plea Agreements or Settlements

| | | | |
|---|---|---|---|
| **Interlocutory Sale of Cryptocurrency** | Consult | AFPM Chap. 2.V.B, Chap. 11.IX.D footnote 19 | Prosecutors must consult **MLARS** prior to seeking an order for the interlocutory sale of cryptocurrency. |
| **Administrative Forfeiture, Return of Property** | Consult | AFPM Chap. 5.II.D, Chap. 11.I.B.4; JM § 9-113.103 | Prosecutors must consult **seizing agency** before entering into plea agreements or settlements returning property that is the subject of administrative forfeiture proceedings. Prosecutors should not agree to return property that is the subject of a pending administrative forfeiture proceeding, unless **seizing agency** agrees to suspend administrative forfeiture. |
| **Administrative Forfeiture, Return of Property** | Approval | AFPM Chap. 5.II.D, Chap. 11.I.B.4; JM § 9-113.104 | Prosecutors must consult **seizing agency** before entering into plea agreements or settlements returning property that is the subject of administrative forfeiture proceedings. Prosecutors should not agree to return property that is the subject of a pending administrative forfeiture proceeding, unless **seizing agency** agrees to suspend administrative forfeiture. |
| **Administrative Forfeiture Used to Effectuate Agreement** | Consult | AFPM Chap. 11.III; JM § 9-113.300 | Prosecutors must consult **seizing agency headquarters** where an administrative forfeiture is necessary to effectuate an agreement. JM § 9-113.300 *et seq.* requires consultation with **seizing agency headquarters** where an administrative forfeiture is necessary to effectuate a settlement. MLARS will coordinate with EOUSA to update JM. |
| **Management or Disposition** | Consult | AFPM Chap. 10.I.B, Chap. 11.I.B.2 | USAO or seizing agency (in **administrative forfeitures**) should consult **USMS** in cases involving Department seizing agencies, or **Treasury** in cases involving Treasury seizing agencies, before taking any property management or disposition actions. |

| | | | |
|---|---|---|---|
| **AAG** | Assistant Attorney General | **JM** | *Justice Manual* |
| **AFF** | Assets Forfeiture Fund | **MLARS** | Money Laundering and Asset Recovery Section |
| **AFMS** | Justice Management Division, Asset Forfeiture Management Staff | **OIA** | Office of International Affairs |
| **AFPM** | *Asset Forfeiture Policy Manual* (2021) | **SADF** | Seized Assets Deposit Fund |
| **AG** | Attorney General | **TFF** | Department of the Treasury Forfeiture Fund |
| **DAG** | Deputy Attorney General | **Treasury** | Department of the Treasury |
| **Department** | Department of Justice | **USAO** | U.S. Attorney's Office |
| **EAJA** | Equal Access to Justice Act | **USMS** | U.S. Marshals Office |
| **EOUSA** | Executive Office for U.S. Attorneys | **USVSST Fund** | United States Victims of State Sponsored Terrorism Fund |

## Plea Agreements or Settlements

| | | | |
|---|---|---|---|
| **Negotiations** | Consult | AFPM Chap. 11.I.B.2; JM § 9-113.103 | Prosecutors must negotiate all settlements in consultation with **seizing agency** and **USMS, where appropriate,** and in compliance with the USAO's approval requirements. When a settlement involves complex assets, complex terms, or a risk of loss to the government, prosecutors should consult **USMS** or the **relevant TFF agency**. |
| **Settlement Over $2 Million and 15% of Amount Involved** | Approval | AFPM Chap. 11.II.A; JM § 9-113.200 | **DAG** must approve settlements where the amount to be released exceeds $2 million and 15% of the amount involved. |
| **Settlement over $1 Million but under $2 Million and 15% of Amount Involved** | Approval | AFPM Chap. 11.II.A; JM § 9-113.200 | **MLARS Chief** has authority to approve a forfeiture settlement over $1 million, unless the amount to be released exceeds 15% of the amount involved and is greater than $2 million. |
| **Settlement under $1 Million or between $1 and $5 Million if Released Amount Under 15% of Original Claim** | Approval | AFPM Chap. 11.II.A; JM § 9-113.200 | **U.S. Attorney** may approve any settlement in a criminal or civil forfeiture claim if (1) the amount involved is less than $1 million, regardless of the amount to be released or (2) the amount involved is between $1 and $5 million, if the amount to be released does not exceed 15% of the original claim. |
| **Taxes** | Notify | AFPM Chap. 11.I.B.9 | USAO should notify **appropriate agency** (*e.g.* IRS) prior to any settlement that will release assets to claimant known (or likely to have) other outstanding obligations to the United States (*e.g.* taxes). |
| **Unsecured Partial Payment** | Approval | AFPM Chap. 11.I.B.7; JM § 9-113.107 | Generally, settlements shall not provide for partial payments. USAO must obtain approval from **MLARS** (which will consult **USMS**) for an exception to this policy. |
| **Unsecured Partial Payment** | Consult | AFPM Chap. 11.I.B.7; JM § 9-113.107 | Generally, settlements shall not provide for partial payments. USAO must obtain approval from **MLARS** (which will consult **USMS**) for an exception to this policy. |

## Planning for Seizure and Restraint

| | | | |
|---|---|---|---|
| **Loss or Liabilities** | Consult | AFPM Chap. 1.I.C.3 and 1.I.D.1.b; JM § 9-111.123 | USAO and seizing agency must consult **MLARS**, **AFMS**, **USMS** and **seizing agency** (in **judicial forfeitures**) before seizing assets with potential liabilities. |

| | | | |
|---|---|---|---|
| **AAG** | Assistant Attorney General | **JM** | *Justice Manual* |
| **AFF** | Assets Forfeiture Fund | **MLARS** | Money Laundering and Asset Recovery Section |
| **AFMS** | Justice Management Division, Asset Forfeiture Management Staff | **OIA** | Office of International Affairs |
| **AFPM** | *Asset Forfeiture Policy Manual* (2021) | **SADF** | Seized Assets Deposit Fund |
| **AG** | Attorney General | **TFF** | Department of the Treasury Forfeiture Fund |
| **DAG** | Deputy Attorney General | **Treasury** | Department of the Treasury |
| **Department** | Department of Justice | **USAO** | U.S. Attorney's Office |
| **EAJA** | Equal Access to Justice Act | **USMS** | U.S. Marshals Office |
| **EOUSA** | Executive Office for U.S. Attorneys | **USVSST Fund** | United States Victims of State Sponsored Terrorism Fund |

Appendix A: Real Property

## Planning for Seizure and Restraint

| | | | |
|---|---|---|---|
| **Management or Disposition** | Consult | AFPM Chap. 10.I.B | USAO should consult **USMS** before submitting or filing any proposed court orders to restrain, seize, or impose property or financial management obligations on property in USMS custody. |
| **Planning Discussions** | Consult | AFPM Chap. 1.I.A–D; JM § 9-111.110 | **USAO must consult USMS** and **MLARS** as part of the planning process prior to seizure, restraint, and forfeiture of complex assets. |
| **Third-Party Contractors** | Consult | AFPM Chap. 1.I.B | USMS must consult with **USAO** or **seizing agency** prior to the release of sensitive law enforcement information to third-party contractors for the purpose of pre-seizure planning. |

## Real Property

| | | | |
|---|---|---|---|
| **Contaminated Real Property** | Consult | AFPM Chap. 4.I.E; JM § 9-111.400 | **Seizing agency**, **USMS**, **MLARS**, and **AFMS** must be consulted prior to seizure of contaminated real property. (JM says USAO should exercise its discretion.) |
| **Liens or Mortgages** | Approval | AFPM Chap. 10.III.A; JM § 9-113.800 | **MLARS** must approve any requests for payment of liens and mortgages in excess of sale proceeds. |
| **Net Loss, Planning for Seizure and Restraint** | Consult | AFPM Chap. 1.I.C.3 and 1.I.D.1.b.1, Chap. 4.I.A–B | Consultation between **MLARS**, **AFMS**, and **participating agencies** (USAO, seizing agency, USMS) is required if the restraint, seizure, or forfeiture of real property could create a deficit to the AFF for that property. |
| **Net Loss, Pre-Seizure** | Notify | AFPM Chap. 1.I.C.3, Chap. 4.I.B.2 | If USAO decides to continue with forfeiture, it must (1) notify **MLARS** and **AFMS** and (2) obtain approval in writing from supervisory-level official at **USAO**. |
| **Net Loss, Pre-Seizure** | Approval | AFPM Chap. 1.I.C.3, Chap. 4.I.B.2 | If USAO decides to continue with forfeiture, it must (1) notify **MLARS** and **AFMS**, and (2) obtain approval in writing from supervisory-level official at **USAO**. |
| **Transfer: Federal Purpose** | Approval | AFPM Chap. 4.V.C | **DAG** must approve a real property transfer to a federal agency for use in fulfilling a law enforcement need, or for serving a significant and continuing federal purpose. |
| **Transfer: Operation Goodwill** | Approval | AFPM Chap. 4.V.B | **AG** must approve real property transfers to state or local governmental agencies, or its transferees, for use in the Operation Goodwill Program. |
| **Transfer: Recreational, Historic Preservation purpose** | Approval | AFPM Chap. 4.V.D | **DAG** must approve real property transfers to a state for use as a recreational or historic site, or for the preservation of natural conditions. |

| | | | |
|---|---|---|---|
| **AAG** | Assistant Attorney General | **JM** | *Justice Manual* |
| **AFF** | Assets Forfeiture Fund | **MLARS** | Money Laundering and Asset Recovery Section |
| **AFMS** | Justice Management Division, Asset Forfeiture Management Staff | **OIA** | Office of International Affairs |
| **AFPM** | *Asset Forfeiture Policy Manual* (2021) | **SADF** | Seized Assets Deposit Fund |
| **AG** | Attorney General | **TFF** | Department of the Treasury Forfeiture Fund |
| **DAG** | Deputy Attorney General | **Treasury** | Department of the Treasury |
| **Department** | Department of Justice | **USAO** | U.S. Attorney's Office |
| **EAJA** | Equal Access to Justice Act | **USMS** | U.S. Marshals Office |
| **EOUSA** | Executive Office for U.S. Attorneys | **USVSST Fund** | United States Victims of State Sponsored Terrorism Fund |

## Real Property

| | | | |
|---|---|---|---|
| **Transfer: Weed and Seed** | Approval | AFPM Chap. 4.V.A; JM § 9-116.500 | **DAG** must approve real property transfers to state or local agencies for further transfer to other government agencies or non-profit agencies for use in Weed and Seed Program. |
| **Facilitating Property** | Approval | AFPM Chap. 5.III.D.1.c | **U.S. Attorney** must provide written authorization before USAO files a civil forfeiture complaint against personal residences based on a facilitation theory. **MLARS Chief** must provide written authorization before the Criminal Division or other Department component not partnering with the USAO files a civil forfeiture complaint against personal residences based on a facilitation theory. |
| **Property Located in Another District** | Consult | AFPM Chap. 4.I.A | When USAO identifies real property for forfeiture that is located in a different district, the USAO should consult with **USMS** or the **USAO district** where the property is located to discuss any state-specific issues relating to the forfeiture. |
| **Property Located in Another District** | Notify | AFPM Chap. 11.I.B.6 | To settle a forfeiture action involving property located in another district, the USAO handling the forfeiture must notify and coordinate with **USMS** in the district where the property is located. |
| **Valuation** | Consult | AFPM Chap. 4.I.B | Federal seizing agency and USAO are required to consult **USMS** to discuss valuation products, lien information, occupancy issues, and other factors that may impact seizure and forfeiture decisions. |

## Remission or Restoration

| | | | |
|---|---|---|---|
| **Remission or Mitigation Petitions** | Approval | AFPM Chap. 13.I, Chap. 14.II.A | **MLARS** must approve (in **judicial forfeitures**) petitions for remission or mitigation. **Seizing agency** must approve (in **administrative forfeitures**) petitions for remission or mitigation. |
| **Restoration Requests** | Approval | AFPM Chap. 14.II.B.1 | **MLARS** must approve requests for restoration. |

## Seized Cash Management

| | | | |
|---|---|---|---|
| **Exceptions to Prompt Deposit** | Approval | AFPM Chap. 2.VII; JM § 9-111.600 | **MLARS** must give approval for exceptions to the policy requiring prompt deposit of any seized cash into the SADF, unless the seized cash is less than $5,000. |

| | | | |
|---|---|---|---|
| **AAG** | Assistant Attorney General | **JM** | *Justice Manual* |
| **AFF** | Assets Forfeiture Fund | **MLARS** | Money Laundering and Asset Recovery Section |
| **AFMS** | Justice Management Division, Asset Forfeiture Management Staff | **OIA** | Office of International Affairs |
| **AFPM** | *Asset Forfeiture Policy Manual* (2021) | **SADF** | Seized Assets Deposit Fund |
| **AG** | Attorney General | **TFF** | Department of the Treasury Forfeiture Fund |
| **DAG** | Deputy Attorney General | **Treasury** | Department of the Treasury |
| **Department** | Department of Justice | **USAO** | U.S. Attorney's Office |
| **EAJA** | Equal Access to Justice Act | **USMS** | U.S. Marshals Office |
| **EOUSA** | Executive Office for U.S. Attorneys | **USVSST Fund** | United States Victims of State Sponsored Terrorism Fund |

Appendix A: Structuring

## Structuring

| Seizure | Approval | AFPM Chap. 2.VIII.A | If no criminal charges have been filed, **U.S. Attorney** must provide written authorization before the USAO seeks a warrant to seize structured funds where no probable cause that the structured funds were generated by unlawful activity or that the structured funds were intended for use in, or to conceal or promote, ongoing or anticipated unlawful activity. |
|---|---|---|---|
| Seizure | Approval | AFPM Chap. 2.VIII.A | If no criminal charges have been filed, **MLARS Chief** must provide written authorization before the Criminal Division or other Department component not partnering with the USAO seeks a warrant to seize structured funds where no probable cause that the structured funds were generated by unlawful activity or that the structured funds were intended for use in, or to conceal or promote, ongoing or anticipated unlawful activity. |
| Seizure | Approval | AFPM Chap. 2.VIII.A | The basis for linking the structured funds to additional unlawful activity must receive appropriate supervisory approval and be memorialized in the prosecutor's records. |
| 150-day deadline | Approval | AFPM Chap. 2.VIII.C | **U.S. Attorney** must provide written authorization before the USAO may extend the 150-day deadline by 60 days to file criminal charges or a civil complaint against the asset. |
| 150-day deadline | Approval | AFPM Chap. 2.VIII.C | **MLARS Chief** must provide written authorization before the Criminal Division or other Department component not partnering with the USAO may extend the 150-day deadline by 60 days to file criminal charges or a civil complaint against the asset. |

## Terrorism

| State Sponsor of Terrorism | Consult | AFPM Chap. 1.I.C.4, Chap. 10.III.D | Consult with **MLARS** as early as possible in any forfeiture case involving a state sponsor of terrorism that may require deposits to USVSST Fund. |
|---|---|---|---|

## Third-Party Experts in Forfeiture Cases

| Appointment | Consult | AFPM Chap. 9.II.B | USAO must consult with **MLARS, AFMS, and USMS** before seeking appointment of a third-party expert in a forfeiture matter in which the USAO anticipates extensive costs. |
|---|---|---|---|

| | | | |
|---|---|---|---|
| **AAG** | Assistant Attorney General | **JM** | *Justice Manual* |
| **AFF** | Assets Forfeiture Fund | **MLARS** | Money Laundering and Asset Recovery Section |
| **AFMS** | Justice Management Division, Asset Forfeiture Management Staff | **OIA** | Office of International Affairs |
| **AFPM** | *Asset Forfeiture Policy Manual* (2021) | **SADF** | Seized Assets Deposit Fund |
| **AG** | Attorney General | **TFF** | Department of the Treasury Forfeiture Fund |
| **DAG** | Deputy Attorney General | **Treasury** | Department of the Treasury |
| **Department** | Department of Justice | **USAO** | U.S. Attorney's Office |
| **EAJA** | Equal Access to Justice Act | **USMS** | U.S. Marshals Office |
| **EOUSA** | Executive Office for U.S. Attorneys | **USVSST Fund** | United States Victims of State Sponsored Terrorism Fund |