**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Civil Action No. 25-cv-1907**

UNITED STATES OF AMERICA,

Plaintiff,

v.

APPROXIMATELY 225,364,961 USDT

Defendant *in rem*.

_______________________________________/

**VICTIM LISA KANG'S REPLY BRIEF IN RESPONSE TO OPPOSITIONS TO MOTION FOR HEARING PURSUANT TO THE CRIME VICTIMS' RIGHTS ACT, 18 U.S.C. § 3771**

Respectfully submitted,

**MDF LAW PLLC**
Marc Fitapelli, Esq.*
28 Liberty Street, 30th
New York, NY 10005
Phone: (212) 203-9300
Email: Marc@mdf-law.com
*Admitted *pro hac vice*

**SILVER MILLER**
David C. Silver, Esq.
5411 North University Drive - Suite 203
Coral Springs, FL 33067
Phone: (954) 516-6000
Email: DSilver@SilverMillerLaw.com

## TABLE OF CONTENTS

PRELIMINARY STATEMENT....1
POINT 1: THE GOVERNMENT'S POSITIONS ARE INCONSISTENT....1
A. The Government conflates standing under CVRA with Article III standing....2
B. The Government conflates its right to settle with the Court's civil jurisdiction....3
POINT 2: THE GOVERNMENT IGNORES MANY IMPORTANT ISSUES....4
Conclusion....5

# TABLE OF AUTHORITIES

Cases

*Burnham v. Superior Court*, 495 U.S. 604 (1990) ........ 1 n.2

*In re Dean*, 527 F.3d 391 (5th Cir. 2008) ........ 4

*Kenna v. U.S. Dist. Court*, 435 F.3d 1011 (9th Cir. 2006) ........ 4

*Leonard v. Texas*, 137 S. Ct. 847 (2017) ........ 1 n.2

*Pann v. Warren*, 2010 U.S. Dist. LEXIS 72234, 2010 WL 2836879 (E.D. Mich. 2010) ........ 3

*United States v. Rubin*, 558 F. Supp. 2d 411 (E.D.N.Y. 2008) ........ 3

Statutes

18 U.S.C. § 3771 ........ 1, 3-5

18 U.S.C. § 3771(d)(2) ........ 2, 4-5

18 U.S.C. § 981(d) ........ 1

Transparency is not a threat to justice; it is one of justice's most essential safeguards. By her motion, Lisa Kang ("Movant" or "Dr. Kang") seeks what every crime victim is entitled to receive pursuant to 18 U.S.C. § 3771: public accountability. To be clear, Dr. Kang has not filed a claim in this Court pursuant to 18 U.S.C. § 981(d) (Civil Forfeiture); and her application [Docket Entry No. ("DE" ) 61] is discrete. To that end, the Court should not be persuaded by other interested parties' efforts to oppose Dr. Kang's Motion for Hearing by conflating Article III standing with standing under the Crime Victims' Rights Act, or CVRA. [See, DE 64, 65, 66]. The Court should instead focus on the fact that the Government ignored many of Movant's concerns about this case, including the fact that $46 million of cryptocurrency was stolen from the U.S. Marshal's Custody in this District and allegedly taken offshore by a government contractor.[1]

**POINT 1: THE GOVERNMENT'S POSITIONS ARE INCONSISTENT**

The Government's position cannot be reconciled with the role it has asked this Court to play. On one hand, the Government invokes the Court's civil jurisdiction to seize assets from private parties. On the other, it asks the Court to step aside while the Government decides, behind closed doors, which victims may be heard to recover their own stolen property. The Government cannot have it both ways. Here, Movant did not file a claim in this forfeiture action because, under the current law, doing so would have been frivolous.[2] This makes it even more egregious

[1] To date, the government has only issued a Tweet about this incident on www.x.com. That tweet, from the FBI Director, displayed a man in handcuffs wearing a wig together with a suitcase full of money. The FBI Director's written message confirmed that the alleged criminal was able to move funds offshore to the island of Saint Martin, necessitating the involvement of the French authorities. See: https://x.com/FBIDirectorKash/status/2029574256959389933

[2] Movant reluctantly agrees with the Government that the Attorney General, not the Courts, has absolute statutory authority under existing law to civilly distribute to victims' property seized and held by the Government. Movant believes this statutory authority is unconstitutional and may file a separate action to challenge the Government. see *Leonard v. Texas*, 137 S. Ct. 847, 847, 197 L. Ed. 2d 474, 475 (U.S. 2017) (Thomas, J.) (statement respecting the denial of *certiorari*); *Burnham*

that the Government appears to be rewarding a small group of parties for filing deficient claims while excluding similarly situated victims who are complying with existing law. Indeed, it appears from Infiniweb's opposition that Infiniweb was privately invited by the Government to publicly file a late claim in this matter. See Opposition, Dkt. No. 64 ("***Upon agreement of the government***, Infiniweb also filed a verified claim, claiming the Defendant Assets as 'revenues belonging to Infiniweb, generated through the provision of Infiniweb's gaming and wagering services,' on October 17, 2025.") (emphasis added).[3] The result of this inconsistency is troubling. Some parties appear to have been permitted, with the Government's agreement, to file a late claim in Court, while Movant was directed into a closed-door administrative process controlled by the Government. That disparity underscores precisely why judicial oversight is necessary. The Court must ensure that the law is applied ***equally*** to all parties, which, based on the parties' own admissions, is not happening. Here, special treatment was afforded to certain parties by the U.S. Government at the expense of Movant and countless other victims. 18 U.S.C. § 3771(d)(2) (authorizing courts to fashion reasonable procedures under CVRA where there are many victims).

A. <u>The Government conflates standing under CVRA with Article III standing.</u>

Furthermore, the Court should be careful not to accept the Government's attempt to conflate standing under the civil asset forfeiture statutes with standing under the Crime Victims'

---

*v. Superior Court*, 495 U.S. 604, 607–28 (1990) (plurality opinion of Scalia, J.). Movant raises these constitutional issues for important context. At this stage, the Court need only decide whether Movant has standing under the Crime Victims' Rights Act to appear in this matter and, if so, what protections are necessary to ensure a fair and lawful process in this case under these unusual circumstances.

[3] Infiniweb's claim [DE 23] was filed on October 17, 2025 -- after the August 8, 2025 deadline set in this action -- and its purported agreement with the Government allowing Infiniweb to bypass that August 8, 2025 deadline is seemingly undocumented and does not appear on the public court docket.

Rights Act.[4] The former turns on whether a claimant has a legally cognizable ownership or possessory interest in the specific property subject to forfeiture; the latter turns on whether the movant is a "crime victim" whose rights are protected by 18 U.S.C. § 3771. These are distinct statutory frameworks, and the Government cannot defeat a victim's CVRA rights merely by arguing that the victim lacks standing generally. See, e.g., *Pann v. Warren*, No. 5:08-CV-13806, 2010 U.S. Dist. LEXIS 72234, 2010 WL 2836879 (E.D. Mich. 2010) (denying the victims' motion to intervene but granting their "request to be heard under the Crime Victims' Rights Act"); *United States v. Rubin*, 558 F.Supp.2d 411, 417 (E.D.N.Y. 2008) (noting that crime victims "are not accorded formal party status nor . . . intervenor status"; instead, "the CVRA appears to simply accord them standing to vindicate their rights as victims under the [Act]"). Respectfully, this Court should approach this issue in the same manner as those cited cases did and reject the Government's red herring arguments concerning standing generally.

B. The Government conflates its right to settle with the Court's civil jurisdiction.

Like standing, the Government tries in its opposition papers [DE 66] to conflate other issues, including conflating its right to settle with a criminal defendant with the right of a victim' to be heard. See, Government's Opposition [DE 66] at Footnote 8 (citing authorities). Here, Movant agrees with the Government that a crime victim generally may not challenge a settlement agreement between the Government and other parties. But that is not what is happening here. Here, the Government has already secured a fixed sum of assets from a criminal defendant through a civil case and is attempting to distribute to parties that have not followed the Government's own

[4] It bears repeating that Movant disagrees with the Government's position regarding victim standing under the civil asset forfeiture statutes. That issue, however, is separate from the question presented here. Here, the Court need only decide the narrow issue of whether a crime victim has standing under CVRA to request a hearing under these unique facts.

rules portions of that fixed sum before the Court has entered a final judgment. Respectfully, if the Government believes it can seize private property and redistribute it without Court approval, that begs the obvious question of why the Government filed this civil forfeiture action at all. Naturally, the answer is because the Government does not have such absolute power, particularly when it comes to seizing property.

**POINT 2: THE GOVERNMENT IGNORES MANY IMPORTANT ISSUES**

Notably, the Government's opposition does not address several of Movant's central concerns: victims' inability to independently replicate the Government's asset tracing; the reported theft of approximately $46 million from U.S. Marshals Service custody[5]; or the Government's continued decision to hold cryptocurrency in USDT, a stablecoin issued by a company with a history of regulatory issues involving the Government. [6] Candidly, the Government's silence on these issues provides all the more reason for the Court to grant Movant's requested relief and order a hearing. See, e.g., *In re Dean*, 527 F.3d 391, 394-95 (5th Cir. 2008); *Kenna v. U.S. Dist. Court*, 435 F.3d 1011, 1016-17 (9th Cir. 2006). Respectfully, the Government owes Movant and countless other victims explanations in Court -- not merely because transparency is democratic, but because Congress required courts to protect victims' rights in precisely these circumstances by passing CVRA and including 18 U.S.C. § 3771(d)(2).

---

[5] Shayne Gal/Stefan Jeremiah, U.S. Gov't Contractor Busted on Ritzy Caribbean Island for Stealing $46M in Crypto from U.S. Marshals Service, FBI Says, N.Y. Post (Mar. 5, 2026), https://nypost.com/2026/03/05/us-news/us-govt-contractor-busted-on-ritzy-caribbean-island-for-stealing-46m-in-crypto-from-us-marshals-service-fbi-says/ (last visited May 16, 2026).

[6] Tether to Pay $41 million Over Claims that Tether Stablecoin was Fully Backed by US Dollars Release No. 8450-21 (Oct. 15, 2021) https://www.cftc.gov/PressRoom/PressReleases/8450-21 (last visited May 20, 2026) (explaining how Tether lied to the public about being pegged to the U.S. dollar); compare Complaint ¶ 28 ("For example, Tether (also known as USDT) is a stablecoin pegged to the U.S. dollar.").

## CONCLUSION

For the foregoing reasons, and pursuant to 18 U.S.C. § 3771(d)(2), the Movant respectfully requests that the Court fashion a reasonable procedure leading to the fair resolution of this matter by ordering a hearing and directing the parties to confer in advance of that hearing regarding procedures that would adequately protect and address the rights and concerns of the victims and their counsel.

Dated: June 3, 2026

Respectfully submitted,

**MDF LAW PLLC**
*/s/ Marc Fitapelli*
Marc Fitapelli, Esq.*
28 Liberty Street, 30th
New York, NY 10005
Phone: (212) 203-9300
Email: Marc@mdf-law.com
*Admitted *pro hac vice*

**SILVER MILLER**
*/s/ David C. Silver*
David C. Silver, Esq.
5411 North University Drive - Suite 203
Coral Springs, FL 33067
Phone: (954) 516-6000
Email: DSilver@SilverMillerLaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was electronically filed with the Clerk of Court on this 3rd day of June 2026 by using the CM/ECF system which will send a notice of electronic filing to the following CM/ECF participant(s): **All Counsel and Parties of Record**.

*/s/ David C. Silver*
DAVID C. SILVER