**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>APPROXIMATELY 225,364,961 USDT,<br>Defendant *in rem*, | Case No. 1:25-cv-01907-AHA |
| CLAIMANTS 1-118,<br>Claimants. | **REPLY IN FURTHER SUPPORT OF CLAIMANTS 1-118'S MOTION TO TRANSFER** |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION .......... 3

II. RELEVANT BACKGROUND .......... 3

III. ARGUMENT .......... 5

A. The Government Has Conceded the Motion Due to Its Untimely Filing .......... 5

B. The Government Has Failed to Allege Proper Venue, and thus the Action Should Be Transferred Under § 1406 .......... 6

C. The § 1404(a) Factors Weigh in Favor of Transfer .......... 11

D. The Government's Pending Motion to Strike Should Not Postpone a Ruling on the Motion to Transfer .......... 18

IV. CONCLUSION .......... 20

## I. INTRODUCTION

Claimants 1-118 filed their Motion to transfer this action to the Northern District of California on November 7, 2025, more than seven months ago. The Government then waited months after the applicable December 8, 2025 response deadline, failed to respond to two separate notices of non-opposition, before finally filing its opposition 74 days late on the same day it filed a motion to strike Claimants' claims. That is a default. The late opposition also fails on its own terms. It identifies no D.C. victim, perpetrator, witness, exchange, tracing operation, or act giving rise to forfeiture. Instead, the Government relies on its own D.D.C. seizure warrant, custody decisions, and prosecutorial unit, while the Complaint itself centers the U.S. Secret Service's San Francisco Field Office, California victim examples, and California-based exchanges. The Court should treat the Motion as conceded under LCvR 7(b). On the merits, venue is improper under 28 U.S.C. § 1406(a); and even if the Court reaches § 1404(a), the private- and public-interest factors point to the NDCA. The Government's standing motion does not require a detour. Transfer is a non-merits threshold ruling, and the transferee court can decide standing, victim process, and allocation without rewarding the Government's forum delay.[1]

## II. RELEVANT BACKGROUND

The Government's Verified Complaint in this matter was filed on June 18, 2025. *See* ECF No. 1. On October 3, 2025, Claimants filed their verified claims. *See* ECF Nos. 14, 15. On November 7, 2025, Claimants moved to transfer this action to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). ECF No. 29.

[1] There is more than enough in the record to grant the transfer motion. To the extent the Court has questions, however, oral argument is merited – particularly as to why the government appears to have changed custody of the res during the pendency of this proceeding.

When accounting for shutdown-related extensions, the Government's response to the Motion was due on December 8, 2025. *See* ECF No. 40 at 3. The Government filed nothing by that deadline. On January 22, 2026, Claimants filed a Notice of Non-Opposition asking the Court to treat the Motion as conceded; the Government did not respond. *See* ECF No. 40. On February 5, 2026, Claimants filed a Second Notice of Non-Opposition; the Government again did not respond. *See* ECF No. 42.

After waiting 74 days, on February 20, 2026, the Government filed both a Motion to Strike and its Response to the transfer Motion. *See* ECF Nos. 44, 45. The parties later agreed to suspend reply briefing while they pursued settlement discussions, but Claimants reserved all rights, including their right to rely on the Government's waiver, default, and missed deadline. *See* ECF No. 48; Feb. 21, 2026 Minute Order; ECF No. 65 at 2-3.

After Dr. Lisa Kang filed a CVRA hearing motion, ECF No. 61, Claimants explained that forum should be decided before standing, victim-process, tracing, remission, allocation, or settlement-process issues. ECF No. 65 at 3-6. The Court denied Dr. Kang's motion on June 5, 2026. June 5, 2026 Minute Order.

In the Fifth Joint Status Report filed June 12, 2026, Claimants 1-118 asked the Court not to extend the previous 31-day stay, and instead resume briefing and decide the transfer Motion, because continued delay with the forum issue unresolved would not facilitate further settlement discussions. ECF No. 70 at 3.[2]

[2] The stay lasted until June 8, 2026, pursuant to the Court's May 14, 2026 Minute Order. Consequently, the deadline for this reply brief in support of Claimants' Transfer Motion ran from June 9, 2026, making it due today, June 16, 2026.

## III. ARGUMENT

### A. The Government Has Conceded the Motion Due to Its Untimely Filing

As an initial matter, the Court should treat the Motion as conceded under Local Rule 7(b), because the Government failed to oppose the Motion by the deadline and made no effort to explain its months-late filing. The Government's unexplained theory seems to be that it can ignore the Local Rules or pending motions if it intends to move to challenge standing at some undefined point in the future. No legal support for that theory exists, and the Government does not explain its own actions. The Local Rules do not require the Court to forgive a 74-day default, hold an evidentiary hearing, or give the Government another chance to build a record it chose not to submit.

LCvR 7(b) states that if an opposition "is not filed within the prescribed time, the Court may treat the motion as conceded." The Government's deadline to oppose the Motion under LCvR 7(b), as extended by Chief Judge Boasberg's Standing Order No. 25-59, was December 8, 2025. In the two months that followed, the Government filed no opposition. Claimants filed two Notices of Non-Opposition notifying the Court of that failure and the resulting prejudice to Claimants. *See* ECF Nos. 40, 42. Only fifteen days after the second Notice of Non-Opposition, and 74 days after the response deadline, did the Government file an opposition. *See* ECF No. 45. In its Response, the Government makes no effort to justify its late filing. The D.C. Circuit has affirmed dismissal as conceded under Local Rule 7(b), holding that the district court was not required to provide notice before enforcing the Local Rule 7(b) waiver. *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1295 (D.C. Cir. 2004) (observing that "Strictly enforcing procedural rules ensures both that cases are adjudicated efficiently and that litigants argue their causes on a level playing field[]" and "[w]here the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule.") (citations omitted). The same should apply here.

**B. The Government Has Failed to Allege Proper Venue, and thus the Action Should Be Transferred Under § 1406**

Above all, the Government's Response fails to show that the Complaint properly alleges venue in this District. Instead, the Response takes a shotgun approach, citing a grab bag of venue statutes that either do not apply here or are not supported by the allegations in the Complaint. The only D.C. facts the Government identifies are its own D.D.C. seizure warrant and – at some undefined point – the location of the defendant res. Accepting those allegations as pleaded, they still do not show that the Defendant Property was found here, first brought here, seized here, or tied to any D.C. act giving rise to forfeiture. Government-created custody does not create venue where the forfeiture facts point to California and abroad. Accordingly, venue did not lie in this District when this action was filed, and under 28 U.S.C. § 1406(a), this action must be transferred.

Supplemental Rule G(2)(b) provides that the complaint must "state the grounds for subject-matter jurisdiction, *in rem* jurisdiction over the defendant property, and venue." Despite that language, the Government's Response repeatedly relies on facts outside the Complaint. Most obviously, the Government now argues that "[t]he Defendant Property *was* held by the United States Marshals Service *and is now* held by the Federal Bureau of Investigation, Washington D.C. Field Office." ECF No. 45 at 3 (emphasis added). In contrast, the Complaint alleges only that the Defendant Property is "currently in the custody of the United States Marshals Service in the District of Columbia." Compl. ¶ 16. The Complaint does not allege that the Defendant Property was seized in this District, first brought into this District, found here, or held by the FBI's D.C. Field Office when venue had to be pleaded. Nor does the Government offer any declaration or evidence of these new facts not pled in the Complaint – namely, the fact that the Defendant Property was apparently only brought into this district at some point after the Complaint, and possibly the

Motion, was filed.[3] The Complaint instead alleges that a D.D.C. magistrate judge issued the seizure warrant on May 1, 2025, and that Tether later burned and reissued the token groups pursuant to that seizure. Compl. ¶¶ 48, 209, 213, 216, 220, 224, 227, 230. Those allegations do not supply a venue-generating event.

**Section 3238 is a criminal venue statute and does not apply to a civil forfeiture complaint.** It cannot establish venue here. That provision governs criminal offenses "begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district[.]" It then speaks in terms of an "offender," where the offender is arrested or first brought, and an "indictment or information." 18 U.S.C. § 3238. Those words do useful work for the Government only if this civil *in rem* complaint against property is treated as if it were a criminal prosecution against an offender. It is not.

Congress enacted dedicated civil-forfeiture venue provisions in 28 U.S.C. §§ 1355 and 1395, and Supplemental Rule G separately requires the forfeiture complaint to state the grounds for venue. The Government cites no case applying § 3238 as an independent venue statute for a civil forfeiture complaint. Even if § 3238 could somehow be repurposed for property, the Complaint does not allege that the Defendant Property was first brought into Washington, D.C.

**Section 1355(b)(2) and Currier do not help the Government.** That provision applies only when property "is located in a foreign country" or has been detained or seized pursuant to foreign legal process or competent foreign authority. Yet the Complaint alleges neither. It alleges a seizure warrant issued by a U.S. magistrate judge in this District and custody by the United States

---

[3] It is curious that the Complaint alleges that the res was in "custody" of the U.S. Marshals Service in D.C. Custody does not mean the property itself was in D.C. Then the Transfer Opposition Brief refers to its location as "now" held by the FBI in D.C. This suggests it may have been moved, possibly to manufacture a venue argument (even so, one that does not work).

Marshals Service in this District. Compl. ¶¶ 16, 48. Section 1355(b)(2) applies only to property that "is located in a foreign country." By the Government's own allegations, the Government cannot claim the foreign-location default of § 1355(b)(2) while simultaneously anchoring venue on having relocated the res to this District. To the extent the Government means that the property was seized abroad and then brought here, that is a § 1395(c) argument, which fails for the separate reason that the Complaint alleges no seizure "outside any judicial district"—only a warrant issued by a magistrate judge of this District. The Government cannot rely on a venue statute for property located in a foreign country while also arguing that the Defendant Property is now located in the United States. The argument borders on absurdity.

The Government misreads *Currier v. PDL Recovery Group, LLC*, 2018 WL 4057394, at *2 (E.D. Mich. Aug. 27, 2018). *Currier* was a Michigan garnishment case applying the default rule that intangible property follows the owner's domicile absent positive law. The Government's argument depends on treating the fraud operators as the "owners" of stolen victim funds. The Complaint alleges instead that victim funds were laundered through perpetrator-controlled OKX accounts; it does not transform wrongdoers into owners. Compl. ¶¶ 50-51. Federal crypto cases make the same point needed here: cryptocurrency has no physical or tangible existence. *See Sedaghatpour v. Lemonade Ins. Co.*, 654 F. Supp. 3d 525, 528 (E.D. Va. 2023); *see also Burt v. Travelers Commercial Ins. Co.*, 621 F. Supp. 3d 1049, 1052 (N.D. Cal. 2022) (treating cryptocurrency as intangible property). *Timoria* confirms the same point: cryptocurrency is intangible property with a "non-exclusive situs" for jurisdictional purposes in the owner's domicile, and access through a private key does not make the asset tangible. *Timoria LLC v. Anis*, 346 A.3d 1166, 1179-81 (Del. Ch. 2025).

**Section 1395 does not cure the defect.** The Government leans first on § 1355(b)(1)(B), but that provision merely points to districts where venue is otherwise "specifically provided for in section 1395 of this title or any other statute." It supplies no venue of its own. It helps the Government only if § 1395 or § 3238 independently fixes venue in this District. Section 1395 does not.

Section 1395(a) permits a civil proceeding for recovery of a pecuniary fine, penalty, or forfeiture in the district where it accrues or where the defendant is found. The Complaint alleges no D.C. accrual point; the acts or omissions giving rise to forfeiture are alleged in California and abroad. The Government's only path to a D.C. accrual theory runs through § 3238, and § 3238 does not apply for the reasons just stated.

Finally, section 1395(b) permits venue where property is "found," but the Complaint's allegation that the Defendant Property was currently in the "custody" of the USMS in this District says nothing about where the Defendant Property was found or located. And while the Government now asserts that Defendant Property is located in this District with the FBI, the Government offers no evidentiary support for this argument, and no explanation for why it filed a Complaint relying on § 1395(b) when the Defendant Property was apparently not in this District at the time of filing.

Yet even if the Government were to come clean and acknowledge that it moved the Defendant Property to this District after the Complaint was filed, venue would still not be proper under § 1395(b), because the property was not *found* in Washington D.C. and courts have repeatedly held that the government cannot manufacture venue for a forfeiture action by moving property to the district most convenient for the government. *See United States v. $633,021.67 in U.S. Currency*, 842 F. Supp. 528, 531-32 (N.D. Ga. 1993) ("A court may not treat a piece of

property as being 'found' within a certain judicial district where it is physically within the district only because the government moved it there subsequent to seizing it elsewhere."); *United States v. One 1974 Cessna Model 310R Aircraft*, 432 F. Supp. 364, 369 (D.S.C. 1977) ("It is unreasonable to assume that there was any intent on the part of Congress to confer upon the Attorney General the ability to bring his action for forfeiture in the district of his choice merely by transferring the property to that district."); *see also* Stefan Cassella, Asset Forfeiture Law In the United States, 2d., §7-7(c) ("The Government may not create venue, however, by transferring property from one district to another"). The premise is the same when an agency invokes compulsory process to create the forum connection it later relies on to resist transfer. *Cf. SEC v. Ernst & Young*, 775 F. Supp. 411, 415-16 (D.D.C. 1991). Indeed, the Government itself has taken this very position in the past. *See United States v. $358,613.00, U.S. Currency*, 703 F. Supp. 452, 453-54 (W.D.N.C. 1989) (transferring forfeiture action where the Government urged transfer to the district where a second batch of currency was seized "to avoid any future disputes on the issue of where this action should be properly prosecuted"). Accordingly, whether or not the government subsequently transferred the Defendant Property to this District (possibly in an attempt to moot this Motion), the Government still could not establish venue here.[4]

[4] For the same reasons, § 1395(c) also would not support venue here. Section 1395(c) establishes venue "in any district into which the property is brought" when the "property [is] seized outside any judicial district." Accordingly, the Complaint would need to allege (1) that the defendant res was "seized" outside the United States, and (2) that the Defendant Property was then brought post-seizure into this District. The Complaint does neither; it does not allege where the Defendant Property was seized (indeed, it is unclear from the Complaint whether the seizure warrant for the Defendant Property was issued before or after the property was moved to the United States, and as noted above, there is no evidence that the defendant res is currently in this District, just argument in the Government's Response unsupported by any declaration, with the clear implication that the Defendant Property was first brought somewhere else.

Finally, the Government's failure to establish any venue-generating connection between the Defendant Property and this District justifies transfer. *See United States v. Approximately $50,900 in U.S. Currency*, 2016 WL 4257328, at *3 (D. Mass. Aug. 11, 2016) (where the complaint and affidavit alleged no facts showing that the res had any connection to the district where the forfeiture action was filed, venue did not lie and transfer under § 1406(a) was appropriate). And since venue is improper in the District of Columbia, the Court need not consider the § 1404(a) factors and should instead transfer this action to the Northern District of California under § 1406(a), where venue is proper under § 1355(b)(1)(A). *See Approximately $50,900*, 2016 WL 4257328, at *3; *United States v. $358,613.00, U.S. Currency*, 703 F. Supp. 452, 453-55 (W.D.N.C. 1989); *see also Liu v. Mayorkas*, 737 F. Supp. 3d 1, 3-4 (D.D.C. 2024) (§ 1406(a) controls when the original venue is improper).

**C. The § 1404(a) Factors Weigh in Favor of Transfer**

**Even if venue were proper, transfer remains warranted under § 1404(a).** If the Court finds that venue is proper in the District of Columbia, however, then this action should still be transferred because the factors in § 1404(a) weigh in favor of transfer. The Government does not dispute the threshold point: this action could have been brought in the NDCA under § 1355(b)(1)(A). That leaves the factors to be weighed by the Court, which turn on this Complaint and this record both point to California.

The record shows that this case is centered in California and abroad, not Washington, D.C.: the San Francisco Field Office initiated the investigation; the Complaint uses California victim examples; the largest concentration of appearing Claimants is in California; and the relevant exchanges, custodians, tracing witnesses, and law-enforcement witnesses are in or closer to the NDCA. *See* ECF No. 29-1 at 7-17; Compl. ¶¶ 50-51, 73 n.24, 94. The Complaint itself describes

a "week-long law enforcement operation in Northern California" involving more than a dozen USSS personnel to trace victims and funds. Compl. ¶ 73 n.24. The Government's Response does not dispute those facts. It invokes its own filing, a D.C. warrant, D.C. custody, and the D.C. Scam Center Strike Force. Those are litigation and counsel-location facts. They are not the operative events, witnesses, proof, or victim interests that § 1404(a) asks the Court to weigh.

**The Government's forum choice gets little weight because this District has no meaningful tie to the dispute.** Any presumption of deference toward the Government's forum choice is misplaced when the "district is unconnected to the facts of this case." *SEC v. Roberts*, 2007 WL 2007504, at *2-*3 (D.D.C. July 10, 2007). And the mere fact that the Complaint was filed in this District does not establish a connection sufficient to confer deference. *See id.*; *Rosales v. United States*, 477 F. Supp. 2d 213, 216 (D.D.C. 2007) (finding transfer warranted when the case's only meaningful connection to the district was "the fact that it is the seat of the federal government"). Here, the Government has failed to provide any connection to the District of Columbia warranting deference. It argues that its forum choice is favored because it filed a seizure warrant here, the United States Marshals Service maintained custody of the cryptocurrency, and the cryptocurrency was at some later point transferred to the FBI's Washington, D.C. Field Office. ECF No. 45 at 5. The way the allegation in the Complaint is worded ("is currently in the custody") compared to the Opposition Brief ("was held" and "now held") does not make sense. It suggests that the Government obtained a seizure warrant in this district, but then may have brought the defendant res first to a *different district* – until the Movants pointed this problem out and the Government sought to remedy it. This would tend to show the Government's relative lack of concern with venue here. In any event, the fact that the Marshals Service had custody of the defendant *res* is true of any run of the mill forfeiture case and insufficient to establish venue. The

Government invokes "substantial deference" and a "heavy burden," ECF No. 45 at 3-4, 8, but those labels do not move this record. In contrast, California maintains a strong nexus with the operative facts of the case: the Government's investigation occurred in California, many victims and witnesses reside in or around California, and some illegal activity occurred in California. In sum, this factor favors transfer to the NDCA.

The Government's own authorities prove the point. Its transfer cases either ended with the case leaving this District or turned on a District nexus this case lacks. *Gross v. Owen*, a forum non-conveniens case, affirmed a dismissal out of this District. 221 F.2d 94, 95-96 (D.C. Cir. 1955). *Hunter v. Johanns* granted a § 1404(a) transfer even though venue was proper. 517 F. Supp. 2d 340, 344 & n.4 (D.D.C. 2007). The two denial cases, *Smith v. Yeager* and *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, among other factors, focused on claims that arose in the District. 234 F. Supp. 3d 50, 58-59 (D.D.C. 2017); 771 F. Supp. 2d 42, 47-48 (D.D.C. 2011). And *In re Korean Air Lines Disaster of Sept. 1, 1983* is inapplicable: it dealt with a § 1407 choice-of-law case that supports only the neutral proposition that any federal court can apply federal law. 829 F.2d 1171, 1175-76 (D.C. Cir. 1987).

The same conclusion follows from the cases citing the Government's own anchors. *Factor2 Multimedia Systems, LLC v. TikTok Inc.* applied *Smith* and transferred a case to the Northern District of California because the plaintiff's forum choice was "entitled to little weight" where neither the party nor the underlying controversy had a meaningful D.C. tie, and this District had "no connection to this dispute" and no local interest in it. 2025 WL 1713257, at *3-*5 (D.D.C. June 18, 2025). *First Advantage Enterprise Screening Corp. v. International Golden Foods, LLC* applied the same meaningful-tie rule and transferred despite formal D.C. contacts. 2022 WL 2191698, at *3-*4 (D.D.C. June 17, 2022). *SoundExchange, Inc. v. Music Choice*, by contrast,

denied transfer only after finding a substantial D.C. nexus. 2020 WL 759179, at *4-*5 (D.D.C. Feb. 14, 2020). *City of West Palm Beach v. U.S. Army Corps of Engineers* likewise observed that presence in D.C. "does not create a substantial factual nexus" and that counsel location carries "little, if any weight[.]" 317 F. Supp. 3d 150, 154-55 (D.D.C. 2018).

That also answers the Strike Force point. A prosecuting office in D.C. is not an operative event, source of proof, fact witness, victim, exchange, or act giving rise to forfeiture. D.D.C. cases reject attempts to anchor venue or transfer opposition in federal headquarters, agency lawyers, or generalized D.C. review. *See Berry v. U.S. Department of Justice*, 49 F. Supp. 3d 71, 76-77 (D.D.C. 2014); *Defenders of Wildlife v. Jewell*, 74 F. Supp. 3d 77, 84 & n.3, 88 (D.D.C. 2014); *Hi-Tech Pharmaceuticals, Inc. v. FTC*, 6 F. Supp. 3d 95, 100-01 (D.D.C. 2013); *Bergmann v. U.S. Department of Transportation*, 710 F. Supp. 2d 65, 73 (D.D.C. 2010). On this record, the Government's forum choice deserves little or no weight.

**The appearing Claimants and convenience factors point to California.** The victims are the real parties in interest in this forfeiture suit, and the Government's dismissal of their interests is wrong. Many are individuals who were defrauded out of their life savings and have had relief postponed until the Government fulfilled its self-imposed filing deadlines. This delay has been exacerbated by the Government now choosing to raise standing as a defense to transfer, long after its opposition was due. The Government's disregard for the appearing Claimants' interests is procedurally and substantively wrong, and cannot detract from the fact that the NDCA is the more appropriate forum because the operative events arose there and the significant witnesses and proof are there. The Government's only defense on this point is to challenge Claimants' standing, which is the subject of a pending motion and can be addressed through ordinary motion practice; the Government cannot simply disregard their interests because it

assumes that its motion to strike their claims will be granted. Transfer does not decide who receives funds. It decides where the case proceeds. The transferee court can manage standing, remission, allocation, and victim-process questions.

**The Government's defendant-choice point adds nothing.** In an *in rem* case, the defendant property has no litigating preference; at most, that factor is neutral, and a neutral factor cannot overcome the California-centered witnesses, proof, victims, and events.

**The claim arose elsewhere.** In the verified Complaint, the Government identifies more than 430 suspected victims and not a single act or omission that occurred in Washington, D.C. In contrast, California has the highest concentration of appearing victim Movants, served as the place for at least one instance where the fraud was procured, and acted as the hub of the fraud investigation. Compl. ¶¶ 45, 50-51, 94; ECF No. 29-1 at 4-8. Even though the fraud perpetrators may be located abroad, this factor still favors transfer to the NDCA, which is a district in which acts or omissions giving rise to forfeiture occurred. *See* 28 U.S.C. § 1355(b)(1)(A).

**The convenience of the parties and sources of proof favors transfer.** The Government's Response acknowledges that relevant sources of proof in this case are in the NDCA. Indeed, the Government does not dispute that the exchanges identified in the Complaint would be subject to the NDCA's subpoena power, or that the San Francisco Field Office and other agents with knowledge of the case sit in or near that district. The fact that the sources of proof may help the Government's case, rather than hurt it, simply underscores that the convenience factor favors transfer. Government agents who participated in the investigation can testify about fund tracing and the methods used by the fraudsters, which is critical to both Claimants' and the Government's case. The convenience of witnesses is the most critical factor. *Dean v. Eli Lilly & Co.*, 515 F.

Supp. 2d 18, 22 (D.D.C. 2007). The Government identifies no D.C. fact witness, exchange, victim, document source, or tracing team.

To sidestep those facts, the Government suggests that Washington, D.C. is a more convenient forum because the case is being prosecuted here. But convenience to Government counsel is not enough. *McClamrock v. Eli Lilly & Co.*, 267 F. Supp. 2d 33, 40 (D.D.C. 2003) ("Any inconvenience to plaintiff's counsel caused by the transfer of this action is not a factor that carries considerable weight in the Court's determination of whether or not to grant a motion to transfer pursuant to section 1404(a)"); *see also West Palm Beach*, 317 F. Supp. 3d at 155. The relevant witnesses, custodians, exchanges, and investigating agents point west; the Government's counsel table does not hold the case here.

**The public-interest factors favor transfer.** The three public-interest factors are (1) familiarity with governing law, (2) relative docket congestion, and (3) local interest in adjudicating local controversies. *Wada v. United States Secret Service*, 525 F. Supp. 2d 1, 10 (D.D.C. 2007). The first factor is neutral because both courts are federal courts applying federal forfeiture law, which is all the Government's *Korean Air* authority establishes. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175-76 (D.C. Cir. 1987). The Government cites no congestion evidence favoring D.D.C. The third factor, local interest in adjudicating local controversies, favors transfer to the NDCA.

In trying to establish a local connection to D.C., the Government notes "a large number of potential victims scattered around the United States," that "criminal actors are located in a foreign country," and supposed congressional intent evidenced by 28 U.S.C. § 1355 and 18 U.S.C. § 3238. ECF No. 45 at 7-8. Setting aside that § 1355 and § 3238 do not establish venue here, the Government has failed to show that Washington, D.C. has any local interest in resolving this

controversy. This District has no connection to the large number of potential victims scattered around the United States, and the Government has not shown a unique D.C. interest in preventing and deterring foreign scammers. Unlike this District, the NDCA has a strong local interest in protecting victims of this cryptocurrency scam because the scam was partially enacted in California, the San Francisco Field Office initiated the investigation, the Complaint describes California victim conduct, and relevant exchanges and custodians have California ties. Compl. ¶¶ 50, 94; ECF No. 29-1 at 4-8. Courts in this District reject national-policy shortcuts of the kind the Government invokes. The Government's own no-transfer analogue, *United States v. H&R Block, Inc.*, treated national economic significance as a neutral local-interest factor. 789 F. Supp. 2d 74, 83 (D.D.C. 2011). *Gulf Restoration Network v. Jewell* transferred despite national-significance arguments because national impact did not eclipse the transferee forum's concrete interest. 87 F. Supp. 3d 303, 315-17 (D.D.C. 2015). *Federal Trade Commission v. Illumina, Inc.* likewise held that nationwide impact made D.C. no different from any other forum where the agency was the only D.C. tie. 2021 WL 1546542, at *6-*7 (D.D.C. 2021). In sum, the case has deep California roots that create a strong California interest in adjudicating this controversy.

The D.C. Scam Center Strike Force does not change that analysis. The Government cites the Department's own website, not the Complaint, for the Strike Force point. ECF No. 45 at 5 n.22, 7 n.28. Even if the Court considered it, that fact describes the prosecutors' office, not the court's familiarity with this record or this District's local interest. *Preservation Society of Charleston v. U.S. Army Corps of Engineers* rejected the theory that the "national character" of a federal-law case keeps it in D.C.; that argument proves too much. 893 F. Supp. 2d 49, 54-55 (D.D.C. 2012). A national or foreign scam does not become local to D.C. because the Government filed here.

**D. The Government's Pending Motion to Strike Should Not Postpone a Ruling on the Motion to Transfer**

Even though Claimants have standing, the Government moved to strike Claimants' answer and claims on standing grounds. ECF No. 44. With a pending motion to strike under Rule G(8), the Government says the motion to strike "must be decided before any motion by the claimant to dismiss the action." Supp. R. G(8)(c)(ii)(A). But this is not a motion to dismiss. It is a transfer motion that decides where the case should proceed. Like Rule G(6)(c), the text is clear and limited and should be enforced according to its terms. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (when statutory language is plain, "the sole function of the courts is to enforce it according to its terms") (internal quotation marks omitted). Here the rule only references motions to dismiss, and nothing in the text expands it to an earlier-filed transfer motion. Accordingly, the Court should not delay a decision on Claimants' Motion to Transfer while the Government's Motion to Strike is pending.

Ruling on the Motion to Strike before Claimants' Motion to Transfer would also further prejudice Claimants. Claimants' Motion was pending unopposed for more than three months, from November 7, 2025 until February 20, 2026, while the Government unilaterally set its own opposition deadline, ignored the Local Rules, ignored two notices of non-opposition, and waited until it was ready to move to strike. This behavior should not be rewarded. Each day Claimants' Motion is not heard is another day Claimants must wait to recover the assets stolen from them. As a matter of equity and procedure, the Court should rule on Claimants' Motion before the Motion to Strike.

The transfer-first authorities confirm the same point. A court may decide forum before other threshold objections, including jurisdictional ones. *See Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422, 425, 431-33 (2007); *In re Papandreou*, 139

F.3d 247, 254-56 (D.C. Cir. 1998). The D.C. Circuit has allowed courts to bypass standing when a different non-merits threshold ground resolves the matter. *Public Citizen v. U.S. District Court*, 486 F.3d 1342, 1348-49 (D.C. Cir. 2007); *Public Service Electric & Gas Co. v. FERC*, 485 F.3d 1164, 1171 (D.C. Cir. 2007). And courts in this District apply *Sinochem* to § 1404(a) transfers. *See Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 79 (D.D.C. 2009); *Pacific Maritime Ass'n v. NLRB*, 905 F. Supp. 2d 55, 58-59 (D.D.C. 2012).

*Kazenercom* is the closest structural analogue. There, the court transferred under § 1404(a) without reaching pending motions under Rule 12(b)(1), (2), (5), (6), or Rule 12(f)(2), and left those motions for the transferee court. *Kazenercom TOO v. Turan Petroleum, Inc.*, 590 F. Supp. 2d 153, 156 n.5, 164 n.17 (D.D.C. 2008). *Laboratory Corp.* applied the same remedy, deciding venue first, transferring, and reserving all pending motions for the transferee court. *Laboratory Corp. of America Holdings v. NLRB*, 942 F. Supp. 2d 1, 3, 5 (D.D.C. 2013). That is the right disposition here: transfer now, and let the NDCA decide the strike motion.

The Government's party-presentation cases do not change that. *Greenlaw* and *Sineneng-Smith* address courts injecting unpresented issues in the lower courts; they do not prevent a court from deciding a transfer motion that Claimants filed. *See Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008); *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020). And the standing motion is evidence-heavy and merits-adjacent in a forfeiture case, where the D.C. Circuit cautions courts not to conflate forfeiture standing with the merits. *United States v. $17,900 in U.S. Currency*, 859 F.3d 1085, 1089-90 (D.C. Cir. 2017).

That sequencing is also the more efficient path. The transferee court can decide what victim process, standing process, or allocation process remains appropriate. Deciding those issues first risks merits-adjacent litigation in a court that may not supervise the next phase at all. The

Government has not shown diligence, has not carried its venue burden on the papers, and should not receive an evidentiary hearing or another chance to create a record against transfer.

**IV. CONCLUSION**

This case has no tie to the District of Columbia: no D.C. victim, witness, exchange, or act giving rise to forfeiture. The investigation began in California, the victims and witnesses point there, and the Government waited 74 days past its deadline before saying otherwise. The 118 appearing Claimants are real victims, not merely petitioners waiting on a discretionary remission process; they filed verified claims and came into court to contest the forfeiture. Having done so, they are entitled to what the venue laws protect: litigation in the district connected to the parties, conduct, and proof, not in a forum the Government chose far from home. For the foregoing reasons, Claimants respectfully request that the Court grant Claimants' Motion to Transfer and transfer this action to the Northern District of California, without prejudice to the transferee court resolving the Government's standing motion and any remaining victim-process issues.

Dated: June 16, 2026

Respectfully submitted,

*By: /s/ Michael Burshteyn*

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (*admitted pro hac vice*)
Marcelo Barros (*admitted pro hac vice*)
101 Second Street, Suite 2200
San Francisco, CA 94105
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

**GREENBERG TRAURIG, LLP**
Nathan J. Muyskens (D.C. Bar No. 45821)
Michael A. Pusateri (D.C. Bar No. 1005463)
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
Telephone: 202.533.2354
Nathan.Muyskens@gtlaw.com
pusaterim@gtlaw.com

______________________________

**BOIES SCHILLER FLEXNER LLP**
Dan G. Boyle (a*dmitted pro hac vice*)
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel. 213.629.9040 | dboyle@bsfllp.com

**THE CRYPTO LAWYERS, PLLC**
Rafael Yakobi (a*dmitted pro hac vice*)
11035 Lavender Hill Dr, Ste. 160-220
Las Vegas, NV 89135
Telephone: 619.317.0722
rafael@thecryptolawyers.com

**THE CRYPTO LAWYERS, PLLC**
Agustin M. Barbara (a*dmitted pro hac vice*)
848 Brickell Avenue, Penthouse 5
Miami, FL 33131
Telephone: 619.317.0722
agustin@thecryptolawyers.com

*Attorneys for Claimants 1-118*