# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**Civil Action No. 25-cv-1907**

UNITED STATES OF AMERICA,

      Plaintiff,

v.

APPROXIMATELY 225,364,961 USDT

      Defendant *in rem*.

_____/

## <u>VICTIM DR. LISA KANG'S MOTION FOR EXTENSION OF TIME TO FILE VERIFIED CLAIM</u>

Respectfully submitted,

| | |
|---|---|
| **MDF LAW PLLC** | **SILVER MILLER** |
| Marc Fitapelli, Esq.* | David C. Silver, Esq. |
| 28 Liberty Street, 30th | 5411 North University Drive - Suite 203 |
| New York, NY 10005 | Coral Springs, FL 33067 |
| Phone: (212) 203-9300 | Phone: (954) 516-6000 |
| Email: Marc@mdf-law.com | Email: DSilver@SilverMillerLaw.com |
|   *Admitted *pro hac vice* | |

*Counsel for Victim Dr. Lisa Kang*

-

**PRELIMINARY STATEMENT**

Dr. Lisa Kang respectfully requests that the Court extend the deadline for filing her verified claim pursuant to Supplemental Rule G(5)(a)(ii). In this situation, the filing deadline should not be applied so rigidly as to penalize an innocent crime victim, particularly where Dr. Kang followed the Government's instructions, diligently pursued recovery through the process she was directed to use, and moved promptly once it became clear that victims who filed claims in Court were receiving materially different treatment. Allowing Dr. Kang to file her verified claim to the assets seized by the Government and at issue in this forfeiture action will cause no unfair prejudice to the Government and will advance the interests of justice.

**STANDARD**

In determining whether an untimely claim should bar a claimant from contesting forfeiture, courts consider, among other factors, "the time at which the claimant became aware of the seizure; whether the government encouraged the delay; the reasons proffered for the delay; whether the claimant has advised the court and the government of its interest in the Defendant Property before the claim deadline; whether the government would be prejudiced by allowing the late filing; . . . whether the claimant timely petitioned for an enlargement of time." *United States v. One 1990 Mercedes Benz 300CE*, 926 F. Supp. 1, 4–5 (D.D.C. 1996).  "Courts typically exercise their discretion when claimants have timely placed the court and government on notice of their interest in the property and intent to contest the forfeiture, recognizing both the good-faith effort put forth and the lack of prejudice to the government under such circumstances." *$138,381.00 in United States Currency*, 240 F. Supp. 2d 220, 230 (E.D. NY 2003); see e.g. *United States v. $38,000 in U.S. Currency*, 816 F.2d 1538, 1547 (11th Cir. 1987) ("If anything, the burden on the government to adhere to the procedural rules should be heavier than on claimants. Forfeitures are not favored

- 1 -

in the law; strict compliance with the letter of the law by those seeking forfeiture must be required.") (internal citations omitted). Because Rule G(5)(a)(ii) permits the Court to set a different time "for good cause," the good-cause standard—not the more demanding "excusable neglect" standard—governs this request. See *United States v. Starling*, 76 F.4th 92, 100–02 (2d Cir. 2023).

## BACKGROUND

On March 11, 2026, undersigned attorneys Marc Fitapelli and David Silver contacted Assistant United States Attorney Rick Blaylock, Jr. after reviewing Docket Entry 43 in this action, a February 9, 2026 Status Report describing a settlement reached with certain victims purporting to hold claims to the seized assets at issue in this matter. See Exhibit 1 (Email from M. Fitapelli to R. Blaylock, Mar. 11, 2026). Counsel subsequently participated in a conference call with the Government and were assured that victims who filed claims in Court in this action would receive no special treatment from the Government, including priority payments.

On March 30, 2026, the Government instructed the undersigned to submit their clients' petitions for remission directly to the Department of Justice (Money Laundering and Asset Recovery Section ["MLARS"] petitions) rather than filing applications with the Court in this case. See Exhibit 2 (Email from R. Blaylock to M. Fitapelli and D. Silver, Mar. 30, 2026).[1]

On April 14, 2026, counsel filed its first Petition for Remission with the Department on behalf of a client.  That Petition was not filed on Dr. Kang's behalf.  To date, the Government has

---

[1] When the Government sent this email, Mr. Blaylock was unaware that Silver Miller and MDF Law represented Dr. Kang. The email was sent only because the Government understood that the two firms represented a substantial number of victims potentially affected by the forfeiture proceeding. The email therefore did not constitute formal notice to Dr. Kang, nor to any other client of either law firm. Rather, the Government sent the email solely as a professional courtesy to counsel.

not substantively responded to any of the submissions made by MDF Law or Silver Miller, including Dr. Lisa Kang's submission, which was made on May 18, 2026.

On May 22, 2026, Dr. Kang filed in this action a motion for a hearing pursuant to the Crime Victims' Rights Act, 18 U.S.C. § 3771. See ECF No. 61. On June 5, 2026, the Court denied Dr. Kang's motion because, in part, she had followed the instructions provided by the Government to her undersigned counsel that she need not file a verified claim in this proceeding.

## ARGUMENT

### POINT I
### DR. KANG SHOULD HAVE BEEN
### PROVIDED WITH DIRECT NOTICE

Courts routinely extend deadlines for victims where, as here, the Government fails to provide those victims direct notice.  see *United States v. Erpenbeck*, 682 F.3d 472 (6th Cir. 2012). In *Erpenbeck*, the Government also posted notice on Forfeiture.gov but did not directly notify a bankruptcy trustee whose interest was ascertainable. *Id*. at 479–80.  The Sixth Circuit vacated the final forfeiture order, observing that the trustee had not "occupied his free time by browsing www.forfeiture.gov" and required better notice. *Id*.  The Eighth Circuit has reached similar conclusions.  *United States v. Real Properties Located at 7215 Longboat Drive (Lot 24)*, 750 F.3d 968 (8th Cir. 2014).  In that case, the Government used only internet publication even though an estate reasonably appeared to be a potential claimant. *Id*. at 973–75. The Eighth Circuit held that the claims were not untimely because the Government's failure to provide direct notice meant the filing period never began to run. *Id*.

Those principles control here. Dr. Kang was not an anonymous member of the public. She reported her victimization to federal law enforcement years before this action was filed, working directly with United States Secret Service Special Agent Joshua Catella, who traced her stolen funds and coordinated with foreign authorities on her behalf.  The Government's own Complaint,

- 3 -

moreover, describes at length the class of "pig butchering" victims whose cryptocurrency was laundered through foreign cryptocurrency exchange OKX — the same network into which Dr. Kang's funds were traced by the Secret Service. Compl. ¶¶ 34, 71. On these facts, Dr. Kang "reasonably appear[ed] to be a potential claimant on the facts known to the government," and a reasonably diligent review of the Government's own records would have identified her. Fed. R. Civ. P. Supp. R. G(4)(b)(i); see *Erpenbeck*, 682 F.3d at 480; *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Because Dr. Kang was a known, reasonably ascertainable claimant who received only internet publication and no direct notice, the deadline to file her claim never began to run. See *7215 Longboat Drive*, 750 F.3d at 973–75.

Here, the deadline for Dr. Kang to file a claim never began to run; because she was not provided adequate notice of these proceedings. In this case, reliance on internet publication was particularly problematic for three distinct reasons.

First, Dr. Kang was defrauded by an individual posing as an FBI agent -- a method of deception that, as the Government itself alleges in the Complaint, was commonly used in the underlying scheme to exploit victims' trust in law enforcement. Compl. ¶ 71 n.22, ECF No. 1, at 25 (stating that victims are skeptical about government outreach because many were victimized by individuals posing as members of law enforcement).   Having been victimized by a fake FBI agent after losing money through a fake crypto exchange website, Dr. Kang could not reasonably be expected to treat an unfamiliar internet posting as authentic or to understand, without direct communication from the Government, that it required her action by a specific deadline.

Second, and more generally, the need for direct notice is especially compelling in this situation because the Government has, itself, created and hosted a fake crypto currency exchange

website.[2]  While the undersigned can appreciate the Government's use of humor to educate the public, the publication of satirical content on the .gov domain undermines the assumption that every .gov webpage conveys an authentic and credible information.[3] Rule G's internet-publication framework presupposes that official government websites always communicate information clearly and without satire. A court would not regard publication in a satirical newspaper as adequate legal notice merely because the notice appeared in print. Internet publication should be treated no differently and publication on a .gov domain is not suitable because the domain also hosts satirical content such as www.aliens.gov.[4]

Third, assuming that internet publication was an otherwise permissible means of notice, the Government has not established compliance with Supplemental Rule G. Rule G requires the Government to post the notice on an official forfeiture website "for at least 30 ***consecutive days***" Fed. R. Civ. P. Supp. R. G(4)(a)(iv). The Government's own Advertisement Certification Report reflects that Forfeiture.gov was not continuously available during the asserted publication period. See Advertisement Certification Report 5, ECF No. 5 (reflecting that the forfeiture.gov was not accessible for full 24-hour periods over multiple days).  Here is the notice:

---

[2] *The SEC Has an Opportunity You Won't Want to Miss: Act Now!*, Release No. 2018-88 (May 16, 2018), https://www.sec.gov/newsroom/press-releases/2018-88.

[3] A second example is www.aliens.gov, launched on May 28, 2026, which employs a UFO-themed, mock-declassification aesthetic, including the phrase "They walk among us" before revealing that the term "aliens" refers to undocumented immigrants and presenting immigration-enforcement information.

[4] The D.C. Circuit has expressly recognized that satire may initially be mistaken for truthful information. In *Farah v. Esquire Magazine, Inc.*, the court explained that "it is the nature of satire that not everyone 'gets it' immediately" and that satire may convey its message by "layering fiction upon fact." 736 F.3d 528, 536–37 (D.C. Cir. 2013).

| Court Case No: | 1:25-CV-01907 |
| For Asset ID(s): | See Attached Advertisement Copy |

| Consecutive Calendar Day Count | Date Advertisement Appeared on the Web Site | Total Hours Web Site was Available during Calendar Day | Verification that Advertisement existed on Web Site |
|---|---|---|---|
| 1 | 06/23/2025 | 24.0 | Verified |
| 2 | 06/24/2025 | 23.9 | Verified |
| 3 | 06/25/2025 | 23.9 | Verified |
| 4 | 06/26/2025 | 23.9 | Verified |
| 5 | 06/27/2025 | 23.9 | Verified |
| 6 | 06/28/2025 | 23.8 | Verified |
| 7 | 06/29/2025 | 24.0 | Verified |
| 8 | 06/30/2025 | 23.9 | Verified |
| 9 | 07/01/2025 | 23.9 | Verified |
| 10 | 07/02/2025 | 24.0 | Verified |
| 11 | 07/03/2025 | 24.0 | Verified |
| 12 | 07/04/2025 | 24.0 | Verified |
| 13 | 07/05/2025 | 23.8 | Verified |
| 14 | 07/06/2025 | 23.8 | Verified |
| 15 | 07/07/2025 | 24.0 | Verified |
| 16 | 07/08/2025 | 23.9 | Verified |
| 17 | 07/09/2025 | 23.8 | Verified |
| 18 | 07/10/2025 | 23.9 | Verified |
| 19 | 07/11/2025 | 23.9 | Verified |
| 20 | 07/12/2025 | 23.9 | Verified |
| 21 | 07/13/2025 | 24.0 | Verified |
| 22 | 07/14/2025 | 23.9 | Verified |
| 23 | 07/15/2025 | 23.9 | Verified |
| 24 | 07/16/2025 | 23.8 | Verified |
| 25 | 07/17/2025 | 23.8 | Verified |
| 26 | 07/18/2025 | 23.9 | Verified |
| 27 | 07/19/2025 | 23.9 | Verified |
| 28 | 07/20/2025 | 23.9 | Verified |
| 29 | 07/21/2025 | 23.9 | Verified |
| 30 | 07/22/2025 | 23.9 | Verified |

Additional log information is available and kept in the archives for 15 years after the asset has been disposed

The Government cannot establish that the notice remained publicly available for the thirty consecutive day period required by the Rule. This is because the ordinary legal meaning of a "day" is a complete twenty-four-hour period. See *Black's Law Dictionary* 357 (5th ed. 1979) (defining "day"); cf. *Johnston v. Board of Trustees, School Dist. No. 1 West*, 661 P.2d 1045, 1049 (Wyo. 1983). The National Institute of Standards and Technology likewise defines one day as twenty-

four hours, or 86,400 seconds, not 85,680 seconds, the equivalent of 23.8 hours.[5]   The Government's notice was also not "consecutive." see *HollyFrontier Cheyenne Refining, LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 392 (2021) (suggesting that modifiers such as "consecutive" may connote unbroken continuity).   The Government's apparent position, that as little as 23.8 hours constitutes a full "day" should be rejected because, under both legal and scientific definitions, a day consists of twenty-four hours. Moreover, the publication was not "consecutive" because the Government concedes that the website was inaccessible during portions of the required notice period.

For these three independent reasons, the government's notice to Dr. Kang in this matter fell short of Rule G's requirements.  Accordingly, her claim should be permitted and accepted as timely because the notice period could not have commenced as matter of law.

Dr. Kang is also a proper claimant with, at a minimum, a facially colorable interest in the defendant property, which is the threshold that standing requires at this stage. A claimant need only "allege a colorable interest in the property," not prove it; whether the interest ultimately succeeds is a question for the merits. *United States v. $17,900.00 in U.S. Currency*, 859 F.3d 1085, 1089–90 (D.C. Cir. 2017); see *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 527 (2d Cir. 1999) (the "only question" is whether the claimant has shown a "facially colorable interest," "not whether he ultimately proves the existence of that interest"). Dr. Kang readily clears that threshold: blockchain analysis conducted in connection with her losses tracks her stolen cryptocurrency through the same OKX-based laundering network the Government itself identifies as the source of the defendant property, supporting a colorable constructive-trust interest. See Petition for Remission ¶¶ 17–20,

---

[5] *See* Nat'l Inst. of Standards & Tech., *NIST Guide to the SI, Chapter 5: Units Outside the SI*, tbl. 6 (updated Dec. 8, 2025), https://www.nist.gov/pml/special-publication-811/nist-guide-si-chapter-5-units-outside-si (last visited July 15, 2026).

30; *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 416 (2d Cir. 2001) (a constructive trust may suffice to confer standing). Any dispute over the precise extent of tracing or commingling is a merits question that cannot be resolved against Dr. Kang at this preliminary threshold stage; to hold otherwise would conflate standing with the merits and impermissibly shift the Government's burden of proof. See *United States v. $17,900.00*, 859 F.3d at 1089–90; *United States v. All Assets Held in Account No. XXXXXXXX (Doraville Props. Corp.)*, 299 F. Supp. 3d 121, 134–36 (D.D.C. 2018); *United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 642–44 (7th Cir. 2015). Because forfeitures are not favored, any doubt on this record should be resolved in favor of permitting Dr. Kang to file her claim and litigate her interest on the merits.

## POINT II
## THE GOVERNMENT WILL
## NOT BE PREJUDICED

The Fourth Circuit's decision in *United States v. Borromeo* is particularly instructive when considering prejudice to the Government. Reversing the denial of leave to file the claim, the Fourth Circuit attempted to define prejudice:[6]

> It is perhaps more appropriate for our purposes to define what prejudice is not, rather than what it is. The government is not 'prejudiced' solely because Lily's claim may turn out to be meritorious. The goal of a civil forfeiture action under 21 U.S.C. § 881 is that all fruits and instrumentalities of drug distribution crimes be forfeited, while preserving the rights of unwitting, innocent owners of such property. § 881(a)(6). The degree to which the government has achieved that goal is not measured by the value of the property forfeited. If Lily's claim is valid, and the government can restore her property to her while retaining what is properly forfeited, the action is a success; justice and congressional intent are satisfied.

> We must conclude that the 'excusable neglect' equities favor Lily. The government did not serve her by mail though it knew of her interest. When Lily tried to file her claim, the case was at a preliminary standstill -- it had been stayed in its infancy pending resolution of the criminal charges and was months away from trial. Lily was geographically located a continent away. She relied to her

---

[6] *Borromeo* applied the "excusable neglect" standard under former Supplemental Rule C(6), not the current "good cause" standard under Rule G(5)(a)(ii), but the factors are substantially the same.

detriment on the bank's representations, admittedly hearsay, that the government would not take her money. Stanley failed to return phone calls from Ross; if he had, Lily's claim would doubtless have been filed sooner. As we have emphasized, the government made no assertion of prejudice.

*United States v. Borromeo*, 945 F.2d 750, 754 (4th Cir. 1991)

Here, at the Department of Justice's express invitation and direction, Dr. Kang submitted her MLARS petition on May 18, 2026, while this forfeiture action remained stayed -- a stay that had been in effect since February 2026. The Government therefore knew of Dr. Kang's asserted interest and received her supporting materials while no substantive litigation was occurring. Under these circumstances, permitting her verified claim would not reopen any adjudication, disrupt any deadline, or require the Government to duplicate completed work. Courts regularly permit late claims on precisely these facts—where the Government had actual notice of the claimant's interest and identifies no concrete prejudice—especially while the action is stayed. See *United States v. $20,000.00 in U.S. Currency*, 350 F. Supp. 3d 1148, 1155–56 (D.N.M. 2018).

### POINT III
### THE GOVERNMENT'S INSTRUCTIONS
### CONTRIBUTED TO THE DELAY

Courts frequently grant extensions where, as here, the Government's own instructions contributed to the claimant's delay. *United States v. One 1966 Chevrolet Pickup Truck*, 56 F.R.D. 459, 460 (E.D. Tex. 1972) (claim filed with IRS; claimant's attorney called U.S. Attorney to make sure he had followed proper procedure); *United States v. One 1979 Oldsmobile-Cutlass Supreme*, 589 F. Supp. 477 (N.D.Ga.1984) (claimant had made a good faith effort to assert his claim but had filed his claim in the wrong office because he relied on a letter from a government agency.).  Here, the Department expressly instructed Dr. Kang's undersigned counsel to *not* file claims in Court and instead to submit MLARS petitions directly to the Department of Justice. Dr. Kang and her counsel had every practical incentive to follow that direction, because remission is committed to

the Department's discretion, and the merits of a remission denial are generally not subject to judicial review. See *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 736–37 (D.C. Cir. 2001). Under those circumstances, disregarding the Department's instructions while simultaneously seeking relief from that same decision maker would have been imprudent. Dr. Kang's reliance was therefore entirely reasonable and, as a practical matter, effectively invited by the Government's own instructions; because the Government retains broad discretion to deny remission, with little or no meaningful judicial review of the merits of that decision.   This case is therefore unlike those in which a claimant unilaterally assumes that an administrative filing will suffice, where courts have declined to excuse the default. See *United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 163–66 (1st Cir. 2004). Here, by contrast, the Government itself directed undersigned counsel to pursue the administrative track; and the pendency of a remission petition is a recognized, legitimate justification for delay. Cf. *United States v. $8,850*, 461 U.S. 555, 565 (1983) (pendency of a remission petition justified delay in the forfeiture timeline).

## CONCLUSION

For the foregoing reasons, Dr. Kang respectfully requests that the Court find good cause under Supplemental Rule G(5)(a)(ii) to extend the deadline for the filing of her claim. Dr. Kang acted diligently, reasonably followed the Government's instructions to pursue administrative remission, and sought judicial relief promptly after learning that the process was not treating similarly situated victims equally. Because the Government had actual notice of her asserted interest, the case has remained at a preliminary standstill, and no substantive rights or proceedings would be disturbed, permitting her claim will cause no prejudice to any party. The interests of fairness, due process, and resolution on the merits therefore strongly favor allowing Dr. Kang to participate in this proceeding.

Respectfully submitted,

**MDF LAW PLLC**                              **SILVER MILLER**
  */s/ Marc Fitapelli*          .              */s/ David C. Silver*          .
Marc Fitapelli, Esq.*                         David C. Silver, Esq.
28 Liberty Street, 30th                       5411 North University Drive - Suite 203
New York, NY 10005                            Coral Springs, FL 33067
Phone: (212) 203-9300                         Phone: (954) 516-6000
Email: Marc@mdf-law.com                       Email: DSilver@SilverMillerLaw.com
  *pro hac vice granted

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was electronically filed with the Clerk of Court on this   17th   day of July 2026 by using the CM/ECF system which will send a notice of electronic filing to the following CM/ECF participant(s): **All Counsel and Parties of Record**.

                                   */s/ David C. Silver*
                                     DAVID C. SILVER

- 11 -