UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

       Plaintiff,

v.

APPROXIMATELY 225,364,961 USDT

       Defendant, in rem.

Civil Action No. 25-cv-1907-AHA

## STATUS REPORT OF CLAIMANT NIVEDITA KAUL

**TO THE HONORABLE COURT:**

Claimant Nivedita Kaul respectfully submits this status report pursuant to the Court's direction at the July 23, 2026 motion hearing. Citations herein are as follows: ('Compl. ¶') are from the government's Verified Complaint; ('Doc.') are from the case record documents; and ('Tr.') are to the certified transcript of the July 23, 2026 motion hearing (Sonja L. Reeves, RDR-CRR, certified August 3, 2026).

## I. PROCEDURAL BACKGROUND

At the July 23 hearing, the Court indicated its tentative positions on two pending motions: (1) inclination to deny the motion to transfer venue, and (2) inclination to deny the government's motion to strike the verified claims of Claimants 1-118. The Court reserved formal ruling to allow settlement discussions to proceed and directed all parties to file status reports by August 6, 2026.



**RECEIVED**

AUG 7 2026

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

-1-

Claimant opposed transfer at the hearing and maintains that position. Venue is settled as a practical matter - all parties except the 118 claimants have either opposed or taken no position on transfer, and the Court has indicated it will deny the motion.

## II. CLAIMANT KAUL'S EXCLUSION FROM SETTLEMENT

At the July 23 hearing, Claimant stated on the record that she has not been invited to the settlement talks or any of the meetings, and that she has been conspicuously excluded. The Court stated that Claimant 'would have equal right as any of the claimants to participate in that process' (Tr. 46:4-7), that she has 'one claim … filed here that's outside of the scope of the settlement' (Tr. 53:22-24), and that she has 'a filed claim here that's not been stricken' (Tr. 54:3-5). No party disputed that Claimant has been excluded.

The parties' own filings record the exclusion. The Fifth Joint Status Report of June 12, 2026 stated: 'The parties understand that the government has reached out to Claimant and have not heard her position. The parties consequently submit this report as to the remaining parties.' Doc. 70.

To complete the record: Claimant responded to the government in writing on June 17, 2026 and again on July 9, 2026, and the government confirmed receipt in writing on July 9, 2026. Doc. 79, Exhibits H, I. Her exclusion from the settlement process nonetheless continued.

AUSA Blaylock confirmed that the settlement is between four parties: the United States, Claimants 1-118, Claimants 119-266 (docketed as Claimants 1-147), and Infiniweb Technology, Inc. AUSA Blaylock stated: 'as part of the settlement agreement, the government and parties are not agreeing to compensate any specific victim any specific amount of money.' Tr. 40:14-16.

Earlier today, the settling parties filed a Joint Status Report (Doc. 85) reporting an agreement in principle, requesting that their four pending motions be held in abeyance, and undertaking to update the Court within 60 days. Two aspects concern Claimant directly. First, Doc. 85 refers to

Claimant as a 'putative claimant.' Claimant is a verified claimant of record (Doc. 53); as the Court observed, she has 'a filed claim here that's not been stricken' (Tr. 54:3-5). Second, Doc. 85 confirms that 'the proposed settlement framework would not address the motions filed by' Claimant. Her claim and pending motions must accordingly be adjudicated by this Court regardless of the settlement's outcome.

Claimant cannot participate in a settlement from which she has been excluded. She cannot evaluate terms that have not been shared with her. And she cannot accept a process that treats her secured claim to one of the seven seized token groups as equivalent to the unsecured, discretionary remission claims of other parties.

## III. TIMELINESS: SELECTIVE AND INCONSISTENT APPLICATION

At the July 23 hearing, AUSA Blaylock asserted that 'their claims are untimely, so they aren't privy to the settlement negotiations' (Tr. 56:20-22); the Court asked whether Claimant's claim had been objected to as untimely (Tr. 56:23-24). To which AUSA Blaylock stated that the government may strike her and intends to strike her. The government's stated basis for striking Claimant is untimeliness. This position is inconsistent with the government's treatment of other parties:

### A. The 118 Claimants Are Being Stricken Yet Included in Settlement

The government filed a motion to strike the verified claims of Claimants 1-118. Doc. 44. At the hearing, the Court indicated it was inclined to deny that motion. Yet the government is simultaneously including these same claimants in settlement negotiations. The government cannot seek to strike claimants from the proceeding while negotiating a global resolution with them as parties in good standing.

### B. AWKO's Entry Was Late Yet Included in Settlement

Claimants 119-266, represented by Daniel Thornburgh and AWKO, filed their verified claims on December 19, 2025. This was after the prior deadline for initial claims. Infiniweb's own filings confirm this. Infiniweb's Motion for Extension of Time (Doc. 36) notes that a new set of claimants filed a Notice of Adoption and Verified Claim on December 19, 2025, and its Motion for Protective Order (Doc. 37) explicitly states that it reserves the right to move for dismissal of claims filed after the prior deadline for initial motions.

The December 19, 2025 filings (Docs. 33, 34) were signed by Marlene Goldenberg (Nigh Goldenberg Raso & Vaughn), with Daniel Thornburgh of AWKO on the signature block marked 'Pro Hac Vice Motion Forthcoming' (Doc. 34-1). His pro hac vice motion followed on January 27, 2026 (Doc. 41), was granted January 28, 2026 (Minute Order), and his notice of appearance was entered February 21, 2026 (Doc. 49). If the government's standard for participation is timeliness, Claimants 119-266 should not be at the settlement table.

**C. Claimant Kaul Was Never Notified Despite VNS Registration**

Claimant was registered twice as a victim in the Department of Justice's Victim Notification System (VNS). Doc. 53. The VNS is designed to notify victims of developments in federal cases, including forfeiture proceedings. Claimant was never notified through the VNS or by any other means that this forfeiture action had been filed or that her seized assets were subject to a civil forfeiture proceeding in the District of Columbia.

The government cannot penalize Claimant for untimeliness when it failed to notify her through its own victim notification system. Her delay in filing was not a product of neglect or dilatory conduct. It was the direct result of the government's failure to notify a registered victim that her assets were the subject of a forfeiture action. The government's selective invocation of untimeliness - against

the one claimant it failed to notify - raises serious notice and due-process concerns that Claimant will address fully if the government moves to strike.

Supplemental Rule G(4)(b) provides: 'The government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government.' The facts known to the government included Claimant's direct dealings with its own agents - '[t]he Secret Service agents who took credit for that were in my case. I have offered analytics, forensics' (Tr. 48:2-3, unrebutted) - and its investigation opened in November 2023 (Compl. ¶ 50) after Claimant's reports to the FBI and the United States Secret Service. Claimant received no direct notice under Rule G(4)(b).

Since the hearing, Claimant has identified additional undisclosed conflicts among the negotiating parties, set out in Sections VII-IX below. In her respectful submission, the Court cannot meaningfully assess any proposed settlement - or the weight of any party's endorsement of it - until these conflicts are disclosed and addressed on the record.

## IV. THE GOVERNMENT'S ANNOUNCED INTENT TO STRIKE CLAIMANT KAUL

At the July 23 hearing, AUSA Blaylock stated that the government may strike her and intends to strike her. AUSA Blaylock further stated that the government's reasons for striking Claimant are independent of the reasons the Court was going to strike the other claimants. The Court noted that Claimant has filed a claim that has not been stricken.

The only ground stated in writing - that Claimant's 'funds are not traceable to this case' (email of AUSA Blaylock, July 9, 2026, Doc. 79, Ex. I) - differs from the ground stated at the hearing (untimeliness, Tr. 56:20-22) and from unspecified 'multiple reasons' reserved for 'motion practice' (Tr. 57:2-4). She requests that, if the government intends to move to strike her claim, it do so promptly and with specific factual and legal grounds, so that she may respond. The

government should not be permitted to announce its intent to strike on the record while simultaneously excluding the claimant from settlement discussions and withholding the basis.

## V. BIFURCATION OF WALLET 0x82E

The $225,364,961 USDT pool seized by the government consists of seven token groups across seven wallets. Wallet 0x82E is one of those seven token groups and is properly before this Court as part of the defendant in rem property.

At the July 23 hearing, Claimant explained that she is pleading to a very specific wallet out of the seven token groups, that Wallet 0x82E is the one that was seized and put in judicial proceedings, and that she is asking the Court to separate Wallet 0x82E, to which she has a secured claim and decide on that or dismiss it.

The Court responded that the matter was unrelated to the matter before the Court. Tr. 50:15-17. Claimant respectfully clarifies that the Court may have been referring to her parallel Turkish private prosecution and seizure proceedings, which are indeed separate. However, Wallet 0x82E itself is not separate and was first seized under custodia legis by the Turkish criminal judicial seizure order dated August 11, 2023, in the Claimant's Turkish proceedings (Doc. 79 Exhibit C). Wallet 0x82E was made part of defendant property in this case as Token Group G. The government seized the entire pool, including Wallet 0x82E, and brought it within this Court's jurisdiction. As AUSA Blaylock confirmed at the hearing, Tether destroyed and reissued the cryptocurrency, and the FBI Washington field office now controls the wallet. Tr. 12:11-19; 13:3-6.

The government's description of the burn-and-reissue process confirms the identity of the property: Tether 'make[s] the cryptocurrency held by the perpetrator worthless and then they create the same value of that cryptocurrency and a sum representing the same exact thing as the currency that they were after.' Tr. 13:16-20. On the government's own account, Token Group G before this Court

represents 'the same exact thing' as the tokens seized under Claimant's Turkish criminal judicial seizure order of August 11, 2023. Accordingly, Claimant's secured interest attaches to Token Group G as constituted before this Court.

Claimant's pending motion (Doc. 79) includes a request to bifurcate Wallet 0x82E from the general pool so that her secured claim to that specific token group can be adjudicated separately from the discretionary remission process governing the remaining six token groups. Her preliminary injunction motion seeks to prevent the distribution, transfer, or commingling of Wallet 0x82E pending resolution of her claim. The Court stated at the hearing that the motion for a preliminary injunction would be addressed for scheduling purposes. Claimant requests that the Court schedule the preliminary injunction motion for briefing and hearing.

Scheduling is time-sensitive as the government has stated that post-settlement payment to Infiniweb 'typically takes 60 days' per the U.S. Marshals (Tr. 55:5-8), and it has twice undertaken to supplement the record on the custody and movement of the res (Tr. 27:19-20; 28:12-15). In the alternative to expedited briefing, Claimant would not object to the Court accepting an undertaking by the government on the record that no portion of the defendant property will be moved, distributed, or transferred absent order of this Court, with the preliminary-injunction motion held in abeyance while that representation stands.

## VI. CUSTODY OF THE DEFENDANT PROPERTY

At the July 23 hearing, the Court asked where the defendant property was seized, when it was brought into this District, and whether the Marshals held the wallet or the key phrases; the government undertook to supplement the record on these points (Tr. 27:19-20; 28:12-15). To assist the Court, Claimant attaches a transaction map of the defendant property (Exhibit A) prepared from the Ethereum blockchain's public record via the Etherscan API, together with an appendix

(Exhibit A-Appendix), listing each underlying transaction hash so that every step may be independently verified. The on-chain record shows that the seven token groups were burnt and reissued on June 18, 2025; that the reissued funds moved through Tether and Bitfinex addresses to a government-controlled intermediary address (0xe280…db59) in June 2025, where they remained until January 6, 2026; that they then moved into Coinbase Prime custody addresses; and that on February 4, 2026 they were consolidated into a U.S. Marshals Service address (0x2f0c…9449) holding 225,364,964.024175 USDT.

Claimant respectfully requests that the government's forthcoming supplement identify which agency controlled the intermediary address 0xe280…db59 - the Federal Bureau of Investigation or the United States Marshals Service - and where the key phrases for that address were held at the time the Complaint was filed.

## VII. UNDISCLOSED CONFLICT: DANIEL THORNBURGH / AWKO

Claimant filed Doc. 79 at 12:27 p.m. ET on the day of the July 23 hearing (Tr. 3:7-8), which disclosed the conflicts of Boies Schiller Flexner (BSF), Greenberg Traurig, and CryptoLawyers in representing both victims and entities linked to the criminal network. Doc. 79 is incorporated by reference. One conflict was not addressed in Doc. 79 because it was discovered afterward. Claimant now brings it to the Court's attention.

### A. The Thornburgh RICO Action Against Infiniweb

Daniel Thornburgh, counsel for Claimants 119-266 in this proceeding, is simultaneously prosecuting a civil RICO action against claimant Infiniweb Technology, Inc. in the Central District of California (Case No. 2:24-cv-07215-AH-BFM).  In that action, Mr. Thornburgh represents Edmond Rambod, who is Claimant No. 100 (E.R.) in this proceeding, with a claimed loss of $2,300,000. See Doc. 34-1, Schedule A. The timeline is as follows:

**August 23, 2024:** Thornburgh's RICO action filed in C.D. Cal. against Defendant 1 (Anna Mhatre). Rambod v. Mhatre, Case No. 2:24-cv-07215-AH-BFM, Doc. 1.

**November 4, 2025:** Thornburgh filed a First Amended Complaint adding Infiniweb Technology, Inc. and ITECHNO Specialist, Inc. as RICO defendants. C.D. Cal. Doc. 43. The amended complaint explicitly references this forfeiture action (Civil Action No. 25-cv-1907) and alleges that Infiniweb is a racketeering enterprise that stole and laundered Mr. Rambod's cryptocurrency through a network linked to human trafficking and forced scamming.

**December 19, 2025:** Thornburgh's name appears on the Claimants' 119-266 filing (Doc. 34-1, signature block, 'Pro Hac Vice Motion Forthcoming'); his pro hac vice admission followed on January 28, 2026, and his notice of appearance on February 21, 2026 (Doc. 49). He did not disclose to this Court that he was simultaneously suing Infiniweb, a co-claimant in this proceeding, for racketeering.

**May 1, 2026:** Thornburgh filed a Notice of Settlement Negotiations in the RICO action (C.D. Cal. Doc. 53), stating that productive and ongoing settlement discussions between the United States, individual claimants, and Infiniweb in the $225M case may potentially resolve this matter and that a global resolution would likely render further proceedings in this case unnecessary.

**July 23, 2026:** Thornburgh appeared before this Court and participated in the settlement discussion. He did not disclose his RICO action against Infiniweb. He did not disclose that his client Rambod (Claimant No. 100) is the plaintiff in that RICO action. He requested additional time for settlement negotiations without informing the Court that the settlement would also resolve his separate RICO case.

**B. The Conflict Is Non-Waivable**

Mr. Thornburgh is suing Infiniweb for racketeering while simultaneously negotiating a global resolution in this Court that would return victim assets to Infiniweb. He cannot be both adversary and partner to the same entity. His client Rambod is a claimant in this proceeding and the plaintiff in the RICO action - Mr. Thornburgh's settlement authority in this Court is directly affected by his prosecution of the RICO case.

This is a non-waivable conflict under Rule 1.7 of the District of Columbia Rules of Professional Conduct. Mr. Thornburgh had a duty to disclose this conflict to the Court when he entered this proceeding on December 19, 2025 - six weeks after he amended his RICO complaint to add Infiniweb as a defendant. He also had a duty of candor to the tribunal under Rule 3.3 to disclose the RICO action at the July 23 hearing when settlement involving Infiniweb was discussed.

## VIII. INFINIWEB'S STANDING AND THE PROTECTIVE ORDER

### A. Infiniweb Has Not Established Lawful Ownership

The Verified Complaint records that in or around February 2025 an attorney contacted the United States for 'an online gaming/gambling company named Infiniweb Technology, Inc.' claiming ownership of the funds in five of the seven subject addresses; that open-source research showed Infiniweb 'is understood to have close links with Xionwei Technologies, which is accused of being involved in kidnapping and human trafficking,' as outlined in a 2023 report to the Congress of the Philippines; that Infiniweb appeared on the Philippine Amusement and Gaming Corporation's 'LIST OF CANCELLED OFFSHORE GAMING LICENSEES' dated January 15, 2024; and that Infiniweb's counsel 'has not provided the United States with any additional information showing that the funds … are derived from lawful sources.' Compl. ¶ 240.

The scope of Infiniweb's asserted ownership has also expanded without explanation. In February 2025 it claimed, through counsel, the funds in five of the seven subject addresses. Compl. ¶ 240.

Its verified claim of October 17, 2025 asserts ownership of all seven - including Token Group G, the wallet seized under Claimant's Turkish criminal judicial order. No filing explains how Infiniweb came to own two additional wallets, one of which holds assets that a Turkish criminal court had seized for Claimant, a fraud victim, eighteen months before Infiniweb first asserted any interest in it.

Under 18 U.S.C. section 983(d), an owner must have a lawful ownership interest, and the innocent owner defense requires that the claimant acquired the property in good faith and without knowledge or reason to know that the property was subject to forfeiture. An entity identified in the government's own complaint as the operator of criminal infrastructure cannot assert innocent owner status over the proceeds of that infrastructure.

The government propounded sixteen special interrogatories on Infiniweb (Doc. 37-1) asking it to prove the nature of its ownership interest, the circumstances of acquisition, transaction hashes, and the identity of all persons with wallet access. Interrogatory No. 4 specifically asks Infiniweb to state the nature of its ownership interest under 18 U.S.C. section 983(d). If Infiniweb's responses do not establish lawful acquisition, it lacks standing to receive any portion of the seized funds.

**B. The Protective Order Would Shield Evidence of Criminal Activity**

Infiniweb has moved for a protective order (Doc. 37) to designate its discovery responses as Confidential and to file them under seal. The protective order would cover Infiniweb's responses to interrogatories about its ownership structure, criminal history of its officers, gaming platform operations, wallet control, and third-party relationships.

Given the record described above (Compl. ¶ 240; Doc. 79), a protective order entered before Infiniweb's ownership is tested would shield from scrutiny the very information needed to test it. The Court should not enter a protective order that would conceal the identity of Infiniweb's owners,

-11-

the origins of the seized funds, or the operational structure of the enterprise that generated them - particularly when the settlement would return a portion of those funds to Infiniweb.

Claimant respectfully submits that before any protective order is entered, Infiniweb should be required to establish that its ownership interest is lawful. A protective order that shields the very information needed to evaluate Infiniweb's standing would undermine the Court's ability to assess the fairness of any settlement that returns funds to this entity.

Claimant was not yet a party when Doc. 37 was filed and takes no position on protecting genuine commercial confidences. She respectfully requests that any protective order entered: (a) afford all parties, including pro se parties, equal access to designated materials; (b) not restrict any party from submitting designated materials to the Court; (c) not apply retroactively to materials served before entry of any order, including the interrogatory responses, which were served without an order in place; and (d) expressly preserve the Court's ability to review Infiniweb's special-interrogatory responses in connection with any settlement approval. Claimant further requests that the Court direct that those responses be filed so that the Court may assess them against the public record before approving any distribution to Infiniweb.

The government filed a response of non-opposition to Infiniweb's motion earlier today (Doc. 86). Accordingly, the submissions before the Court on the protective order are Infiniweb's motion and that one-sentence non-opposition. No filing addresses access by pro se parties, retroactive designation of materials served before entry of any order, or the Court's ability to review the interrogatory responses in connection with any settlement - the conditions Claimant respectfully requests above.

## IX. THE SETTLEMENT TABLE

The following table summarizes the parties at the settlement table and their conflicts:

| PARTY | ROLE | CONFLICT / ISSUE |
|---|---|---|
| Infiniweb Technology, Inc. | Claimant | RICO defendant in C.D. Cal.; DOJ complaint identifies it as linked to forced scamming and human trafficking; cancelled Philippine gaming license; has not established lawful ownership under 983(d); seeks protective order |
| Dan Boyle / BSF | Counsel, Claimants 1-118 | Concurrently represents Chen Zhi / Prince Holding Group (U.S. v 127,271 BTC 1:25-cv-05745 EDNY), linked to Infiniweb / ITECHNO network. Former AUSA on investigation into the same network (Doc. 79 Exhibit L). |
| Greenberg Traurig | Counsel, Claimants 1-118 | Concurrently represented Daren Li (U.S. v. Li, No. 2:24-cr-00311 C.D. Cal.) linked to underlying criminal network |
| CryptoLawyers | Counsel, Claimants 1-118 | Compromised representation alongside BSF and Greenberg Traurig |
| Daniel Thornburgh / AWKO | Counsel, Claimants 119-266 | Suing Infiniweb for RICO in C.D. Cal. (filed 11/04/2025) while negotiating global resolution with Infiniweb in this Court; entered 12/19/2025 after prior deadline without disclosure; filed notice in RICO case (05/01/2026) tying its resolution to the $225M settlement |
| DOJ / AUSA Blaylock | Plaintiff | Filed motion to strike 118 claimants yet includes them in settlement; includes late-entering AWKO in settlement; has announced its intention to return a portion of the seized funds to Infiniweb; excludes only unconflicted claimant; failed to notify VNS-registered victim; confirmed receipt of Claimant's evidence concerning Infiniweb on July 9, 2026 (Doc. 79, Ex. I) and announced its intent to strike her claim the same day |

Claimant respectfully submits that the Court cannot evaluate the fairness of any proposed settlement or the credibility of any party's endorsement until these conflicts are disclosed and addressed on the record. The Court's equitable assessment should consider the non-disclosures described above, particularly given that lawyers representing both victims and perpetrators have their settlement authority compromised. Claimant, the only unconflicted claimant, has been excluded.

## X. BLOWN DEADLINES

The Court noted at the July 23 hearing that the government has missed a number of deadlines and Infiniweb has missed deadlines and warned all parties not to miss deadlines. Claimant has met all deadlines imposed by the Court and intends to continue doing so. The Court also deemed the government's unfiled reply in support of its motion to strike forfeited (Tr. 29:19-21).

## XI. POSITION ON NEXT STEPS

1. The settlement discussions have proceeded without Claimant's participation and without disclosure of terms. Claimant takes no position on the request in Doc. 85 to hold the settling parties' motions (Docs. 28, 29, 44, 50) in abeyance. She respectfully requests that any abeyance not extend to her own pending motions (Doc. 79). Doc. 85 states that the government 'will continue to address any motion practice by all non-settling parties' during the abeyance period; if motion practice against Claimant proceeds during the pause, scheduling of her motions should proceed with it. The 60-day update window proposed in Doc. 85 also coincides with the approximately 60-day post-settlement payment process the government described at the hearing (Tr. 55:5-8), which makes preservation of Token Group G before that window closes time-sensitive. Claimant proposes that briefing on Doc. 79 be completed within 21 days of a scheduling order, with any hearing at the Court's convenience thereafter.

2. Claimant cannot consent to a process from which she has been excluded. Her secured claim to Wallet 0x82E must be bifurcated from the general pool and addressed separately. The preliminary injunction motion must be scheduled.

3. If the government intends to move to strike her claim, it should do so now, with specific grounds, so the matter can be briefed and resolved. The government's selective application of timeliness - excluding a VNS-registered victim it failed to notify while including late-entering and stricken claimants - should be addressed.

4. The Thornburgh/AWKO conflict was not disclosed to the Court and directly affects the legitimacy of the settlement negotiations. The Claimant respectfully submits the Court should require disclosure of all conflicts before evaluating any proposed settlement.

5. The Claimant respectfully submits that Infiniweb's standing must be evaluated before any settlement returns funds to it. The protective order should not be entered until Infiniweb establishes lawful ownership.

6. By Minute Order dated August 4, 2026, the Court denied Claimant's motion for a blanket public access line without prejudice, indicating that the Court will consider requests to open a public access line made with respect to specific hearings, in light of the nature of the hearing and court resources. Claimant respectfully renews her request for a public access line for any future hearing at which settlement approval, motion argument, or the disposition of defendant property is addressed, and will file such requests with sufficient notice to allow the Clerk to activate the line. The members of the victim cohort are not physically present in court but wish to stay informed about proceedings related to assets that were taken from them, including the 266 victims who are parties but not present in person.

7. Claimant remains willing to discuss with any party a resolution of her claim to Token Group G.

## XII. PRAYER FOR RELIEF

For the foregoing reasons, Claimant respectfully requests that this Court:

1. Schedule the preliminary injunction motion (Doc. 79) for briefing and hearing at the Court's convenience, or in the alternative accept the government's undertaking on the record that no portion of the defendant property will be moved, distributed, or transferred absent order of this Court, with the motion held in abeyance while that representation stands;

2. Bifurcate Wallet 0x82E from the general pool for separate adjudication of Claimant's secured claim;

3. Direct the government to either move to strike Claimant's claim with specific grounds or withdraw its announced intent to strike;

4. Require disclosure of all conflicts of interest among settling parties, including the Thornburgh/AWKO RICO conflict, before considering any proposed settlement;

5. Require Infiniweb to establish lawful ownership under 18 U.S.C. section 983(d) before entering any protective order or approving any settlement that returns funds to Infiniweb;

6. Schedule a hearing to address the pending motions if settlement discussions do not produce a resolution that includes Claimant.

7. For any future hearing at which settlement, motion argument, or the disposition of defendant property is addressed, direct the Clerk to activate a public access telephone line and publish dial-in information on the docket no later than 24 hours before the hearing.

Dated: Aug 6, 2026

Re-signed with a hand-written signature on August 7, 2026 pursuant to the Clerk's Office email of August 7, 2026. Content unchanged from the version sent on August 6, 2026.

Respectfully submitted,

Nivedita Kaul

Nivedita Kaul

Nivedita Kaul
Aug 7, 2026

Nivedita Kaul

Claimant, Pro Se

5001 Ramon Road, Building 3 #1005

-16-

Palm Springs, CA 92264

Tel: +1 724 413 8167

nivie@digitaldefendersgroup.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was transmitted to the Clerk of Court for filing by email to dcd_intake@dcd.uscourts.gov on August 6, 2026, and resubmitted with a handwritten signature on August 7, 2026, my Court-ordered CM/ECF access being unavailable. Upon docketing, the Court's CM/ECF system will send a notice of electronic filing to all counsel and parties of record, which effects service. See LCvR 5.4(d).

Nivedita Kaul,

Claimant, Pro Se

5001 Ramon Road, Building 3 #1005

Palm Springs, CA 92264

Tel: +1 724 413 8167

nivie@digitaldefendersgroup.org