UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

APPROXIMATELY 225,364,961 USDT,

Defendant *In Rem*.

Civ. No. 25-1907 (AHA)

PLAINTIFF'S MOTION TO STRIKE NIVEDITA KAUL

**TABLE OF CONTENTS**

Contents

INTRODUCTION……………………………………………………………………………...1

PROCEDURAL HISTORY AND STATEMENT OF FACTS…..……………………………..1

RECORD CORRECTION…………………………………………………………..……2

LEGAL ARGUMENT……………………………………………………………….…..15

AMERICAN FEDERAL CIVIL FORFEITURE ON THE WORLD STAGE…………………...15

KAUL'S UNTIMELY FILINGS EXHIBIT MANIFEST LACK OF STANDING…………….....16

KAUL'S SUBSEQUENT FILINGS ARE REDUNDANT, IMMATERIAL, IMPERTINENT, AND SCANDALOUS…………………………………………………………...……….…….18

CONCLUSION………………………………………………………………………………..20

**Table of Authorities**

**Cases**

*Al-Tamimi v. Adelson,* 2024 WL 756601 (D.D.C. Feb. 23, 2024) ............................................15
*Food and Drug Admin. v. Alliance for Hippocractic Med.*, 602 U.S. 367, 144, S. Ct. 1540, 219 L.Ed. 121 (2024) ....................................................................................................................16
*U.S. v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141 (3d Cir. 2003).........................................19
*U.S. v. $39,557.00 in U.S. Currency*, 683 F. Supp. 2d 335 (D.N.J. 2010) ..................................16
*U.S. v. All Assets at Bank Julius Baer*, 2025 WL 3687615 (D.D.C. 2025) ........................... 18-19
*U.S. v. BCCI Holdings (Luxembourg)*, 46 F.3d 1185 (D.C. Cir. 1995).......................................17
*U.S. v. Fifty-Three Virtual Currency Accounts*, 2025 WL 2732705 (D.D.C. Sept. 25, 2025). 15-18
*United States v. Three Sums Totaling $612, 168.23,* 2021 WL 2255310 (D.D.C. June 3, 2021), *aff'd in part and appeal dismissed in part*, 55. F.4th 932 (D.C. Cir 2022)...............................17
*Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 129 S. Ct. 365, 172 L.Ed. 2d 249 (2008) .......................................................................................................................................19

**Statutes**

18 U.S.C. § 983(a)(4)(A)...........................................................................................................17,18
18 U.S.C. § 983(d) ...............................................................................................................2, 17,18
18 U.S.C. § 1343.............................................................................................................................1
18 U.S.C. § 1345...........................................................................................................................15
18 U.S.C. § 1355...........................................................................................................................15
18 U.S.C. § 1956.............................................................................................................................1

**Rules**

Fed. R. Civ. P. 12(f)..................................................................................................................19, 20
Supp. R. A(2) .................................................................................................................................20
Supp. R. G(5)............................................................................................................................ 17-19
Supp. R. G(8)............................................................................................................................18, 20
28 C.F.R. § 9 ........................................................................................................................ 16, 18, 19

**Constitution**

U.S. Const. Art. III, § 1 ...........................................................................................................16, 17

**Other**

Cullen Commission Final Report ..................................................................................................15

## INTRODUCTION

The United States, along with other parties to this case, wielded hammers to construct an agreement together instead of shoveling trenches. After consultation with parties, and despite representations that the United States intended to strike Ms. Kaul, the United States left open the possibility to invite Ms. Kaul to the tentative agreement once approved by the Deputy Attorney General.[1] Based on scandalous misrepresentations by Ms. Kaul to this Court and the public, that door is now closed. Yet the proposed settlement agreement would still enable legitimate recovery for Ms. Kaul, her mother, and others whom she may represent through remission.

The United States of America now moves to strike potential claimant Nivedita Kaul's claim because she manifestly lacks standing. The United States further moves to strike her preliminary injunction because they present scandalous material and because a preliminary injunction is not proper. But first, the United States moves to correct the record and rebut Ms. Kaul's fantastic statements untethered to fact.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

On June 18, 2025, the United States filed a Verified Civil Forfeiture Complaint asserting civil forfeiture claims on the bases of violations of 18 U.S.C. §§ 1343 and 1956. *See* ECF Doc. 1.

On August 8, 2025, the United States filed Notice of Publication evidencing publication of the Notice of Forfeiture on the federal government website www.forfeiture.gov from June 23, 2025, to July 22, 2025, 2025 for 30 consecutive days. *See* ECF Doc. 5-1. This notice created a statutory deadline for a claim responsive to publication notice by August 22, 2025.

[1] The asset forfeiture policy manual mandates ODAG approval for settlement amounts about a certain value. *See* Asset Forfeiture Policy Manual Chap. 10.II.A. at pg. 10-6.

On March 17, 2026, potential claimant Nivedita Kaul (hereafter "Kaul"), with the assistance of counsel, filed a Claim, seeking to assert a claim to the defendant property seemingly as a foreign judgment creditor. *See* ECF Doc. 53.

On April 7, 2026, Kaul, with the assistance of counsel, filed an Answer. Kaul sought to assert an affirmative defense as an innocent owner under 18 U.S.C. § 983(d). *See* ECF Doc. 54, Affirmative Defenses, ¶ 1.

On May 11 and 15, 2026, counsel for Nivedita Kaul moved to withdraw as counsel for Nivedita Kaul. *See* ECF Docs. 58, 60. On May 18, 2026, in a Minute Order, this Honorable Court granted counsel's motion and terminated her as counsel for Nivedita Kaul.

Despite already appearing in the case through counsel, on July 23, 2026, Kaul filed 152-pages fashioned as a Motion for Emergency Preliminary Injunction. *See* ECF Doc. 79.

RECORD CORRECTION

Kaul paints herself as the genesis of this investigation, but she is not. The United States Secret Service ("USSS") began this investigation on January 9, 2023. On the same day, USSS requested that Tether voluntarily freeze cryptocurrency subject to the investigation. A day later, Tether declined, and the investigation continued.

*Exhibit 1*

*Voluntary Freeze Request by USSS*




[redacted]

[redacted] ANDREW FREY [redacted]
To [redacted]
Cc

Mon 1/9/2023 3:29 PM

This message was sent with High importance.

[redacted]
153 KB

Good afternoon Tether team,

Our office is investigating a criminal organization tied to romance/investment scam activity. We've identified two wallet addresses with USDT linked to OKX accounts in receipt of scam proceeds.

Please see the attached request, which is in reference to the following addresses:

[redacted]
0xc7C8f8284c5360D0086a2f0AD58dD07AFdE23246

Any questions or concerns can be directed to myself, or [redacted]

Thank you,

Andrew Frey
Financial Analyst (Forensics)
U.S. Secret Service | San Francisco Field Office
Digital Asset Technology Alliance
[redacted]

Kaul reported a loss of $2.5 million on January 18, 2023, to a District Attorney's Office—ten days after this investigation started. Notably, Kaul claimed this amount included her mother's retirement savings. This loss is tragic, no matter the circumstances.

*Exhibit 2*

*Kaul's Email Expressing Mother's Loss*

**From:** N Kaul <nivkaul@gmail.com>
**Sent:** Wednesday, January 18, 2023 8:33:14 PM
**To:** [redacted]@dao.sccgov.org>
**Subject:** [EXTERNAL] $2.5 million Crypto Scam

Hi [redacted]

Thank you for responding back.
Attached are pdf with data for all the relevant transactions. Most recent on 12/24/2022.

Total amount lost is about $2.5 million (actual principal). My mother's retirement funds are included in this amount.
The scammer used a fake trading website to show that I had made millions by trading. I cannot make a withdrawal, and they keep asking for more funds such as "taxes" and "handling fees." The website also took my driver's license for KYC and might use it for identity theft.
The transactions happened between 5/5/2022 and 12/24/2022. I am still in contact with the scammer, and the website is still active. I need help recovering my funds. I want this person to be caught and brought to justice. There are groups online that are reporting similar fraud from the same website.
I met this person on Airbnb (I am a host) and I have seen similar pitches on FB groups for STR.

I am grateful for any assistance.

Nivie

List of All the known websites
https://dbexbit.me/#/
https://dbietx.com
https://dbietx.me/#/
https://www.dbex-ex.net/dist/#/
https://www.dbex-coin.net/dist/#/
https://www.dbex-global.com
https://www.dbex-platform.com
https://dbexhelp.zendesk.com/hc/en-001
https://www.dooobex.vip
https://twitter.com/DBEX_global/
https://www.gmex.io
https://www.gmexs.io
https://www.gmexsg.com

That District Attorney's Office notified USSS on January 19, 2023, who contacted Kaul on the same day. Once notified, USSS spent significant time and resources attempting to help Kaul trace her loss through cryptocurrency tracing and known, reliable accounting methods. USSS San Francisco went above and beyond even though Kaul was not in their jurisdiction and would not

typically be in their purview of investigative responsibility. When Kaul followed up with additional information, USSS continued to investigation and kept her apprised.

*Exhibit 3*

*Acknowledgment of USSS's Same Day Response*

On Jan 19, 2023, at 4:47 PM, [redacted]@dao.sccgov.org> wrote:

Excellent. I'm so glad to hear that. Frey is the best in the nation.

Get Outlook for iOS

**From:** N Kaul <nivkaul@gmail.com>
**Sent:** Thursday, January 19, 2023 2:10:58 PM
**To:** [redacted]@dao.sccgov.org>
**Subject:** Re: [EXTERNAL] $2.5 million Crypto Scam

Hi [redacted]

Andrew Frey from the Secret Service contacted me.
Thank you for the referral.

Nivie

On Jan 18, 2023, at 8:38 PM, N Kaul <nivkaul@gmail.com> wrote:

Thank you so much!

On Jan 18, 2023, at 8:37 PM, [redacted]@dao.sccgov.org> wrote:

I will work tomorrow to connect you with someone who can investigate this for you. I'm sorry this happened to you.

[redacted]

Get Outlook for iOS

*Exhibit 4*

*Additional Reporting and Further Investigation*

**From:** ANDREW FREY [redacted]
**Sent:** Monday, January 30, 2023 6:50 AM
**To:** [redacted]@dao.sccgov.org>; N Kaul <nivkaul@gmail.com>
**Subject:** RE: Dbex wallet Re: [EXTERNAL] $2.5 million Crypto Scam

Hi Nivie,

We're working on getting your transactions traced and if there is any opportunity for a recovery we'll do everything we can. This work can take some time, particularly considering the volume of transactions here. I will circle back with you when I have an update.

Thank you,

Andrew Frey
U.S. Secret Service | San Francisco Field Office

**From:** [redacted]@dao.sccgov.org>
**Sent:** Monday, January 30, 2023 3:50 AM
**To:** N Kaul <nivkaul@gmail.com>; ANDREW FREY (SFO) <ANDREW.FREY@usss.dhs.gov>
**Subject:** RE: Dbex wallet Re: [EXTERNAL] $2.5 million Crypto Scam

Hi Nivie,
Thank you for this additional information. I'm including Andrew Frey in this conversation so that he has visibility to this information.

[redacted]

*Exhibit 5*

*USSS Response to Kaul on January 30, 2023*

**From:** ANDREW FREY [redacted]
**Sent:** Wednesday, February 22, 2023 7:19 PM
**To:** N Kaul <nivkaul@gmail.com>
**Cc:** [redacted]@dao.sccgov.org>
**Subject:** RE: Dbex wallet Re: [EXTERNAL] $2.5 million Crypto Scam

Good evening Nivie,

I wanted to reach out to you to let you know that we've exhausted preliminary recovery efforts. Although recovery via more straightforward tracing and processes is not possible here, we will maintain the details about your scam for future investigative avenues. In several previous instances we have been able to recover funds down the road via less traditional methods, and that is my hope here.

I'm sorry I don't have better news for you. The nature of these scams makes recovery very difficult, but we nonetheless do our best, and will continue to do so. If anything about your case changes we will reach out to you.

Feel free to reach out to me if you have any questions.

Kind regards,

Andrew Frey
U.S. Secret Service | San Francisco Field Office

Kaul later followed up with USSS on June 6, 2023, to "ensure that my claim is staked for restitution from those funds." Kaul further stated, "A context I did not give you before is that I am an international lawyer, experienced cryptocurrency forensic investigator who trains law enforcement, and who also happens to be a victim who was defrauded of USD 2.5 Million."

*Exhibit 6*

*International Lawyer Staking Claim*

**From:** Nivie Kaul <nivie.kaul@thedarknight.online>
**Sent:** Tuesday, June 6, 2023 12:03 AM
**To:** ANDREW FREY [redacted]
**Cc:** [redacted]@dao.sccgov.org>; Glyn MacLean <Glyn.MacLean@thedarknight.online>; Paul Aherne <PA@clain.io>; Nivie Kaul <nivkaul@gmail.com>
**Subject:** Good news - DBEX seizure

You don't often get email from nivie.kaul@thedarknight.online. Learn why this is important

CC: Glyn MacLean | TDNO, Paul Aherne | [redacted] | REACT

Hi Andrew,

I hope you are well.

I have some good news. The target account into which my funds have gone was frozen and blacklisted. I am seeking your assistance to ensure that my claim is staked for restitution from those funds.

A context I did not give you before is that I am an international lawyer, experienced cryptocurrency forensic investigator who trains law enforcement, and who also happens to be a victim who was defrauded of USD 2.5 Million.

Here is where we are at.

We have established a forensic track and trace with Clain Probe (as used by Europol) to identify that the victim (my) funds are in USDT Tether, indeed on-chain, can be traced to a criminal wallet, have been frozen and are available to be seized and returned.

We have established a forensic track and trace with Clain Probe (as used by Europol) to identify that the victim (my) funds are in USDT Tether, indeed on-chain, can be traced to a criminal wallet, have been frozen and are available to be seized and returned.

Clain Probe - Crypto Investigation Platform https://clain.io/products/probe
The Dark Night Online (TDNO) has a formal international agreement with Clain software.

In the video link below, I show clear chain of evidence of funds flowing to the target account which has USDT 1.43 million. We have intelligence insight that these funds are now frozen, and the address is blacklisted (we don't know by who).

I am seeking that you stake my claim for restitution for either the whole amount or part thereof depending on the list of claimants. USSS and the FBI would have the authority to identify who initiated the freeze and to ensure that a claim for restitution is placed within that action.

TARGET WALLET ADDRESS: 0x450195A34602FA0f8F1eaa82646ABeAd93641953

WALKTHROUGH LINK: https://www.youtube.com/watch?v=RpXyqCZq9mQ

Could you please advise me of the actions that you will now be taking to ensure that my funds are returned to me as per the cryptocurrency REACT task force mandate of **educate, SEIZE, disrupt**.

Best regards

Nivie Kaul | DIRECTOR OF STRATEGY
TDNO | The Dark Night Online
Crypto, Cyber & Financial Crime Investigation
Email: Nivie.Kaul@thedarknight.online
Mobile: +1 724 413 8167
Website: www.thedarknight.online

"Pioneering pathways and developing partnerships to achieve justice for victims of crypto, cyber and financial crime investigation at The Dark Night Online."

USSS continued their investigation. However, those funds dissipated through a fast-moving money laundering network, and the government was unable to recover. USSS explained to Kaul that based on accepted accounting methods, those funds unidentified by Kaul were not part of a current balance in the reported wallet address.

*Exhibit 7*

*Funds Dissipated*

**From:** ANDREW FREY [redacted]
**Sent:** Tuesday, June 6, 2023 8:13 AM
**To:** Nivie Kaul <nivie.kaul@thedarknight.online>
**Cc:** [redacted]@dao.sccgov.org>; Glyn MacLean <Glyn.MacLean@thedarknight.online>; Paul Aherne <PA@clain.io>; Nivie Kaul <nivkaul@gmail.com>
**Subject:** RE: Good news - DBEX seizure

Hi Nivie,

I took a look at what you provided and determined that your funds are not part of the current balance in this wallet address, according to the accepted accounting methods we utilize when tracing ETH and tokens. Any time we are tracing ETH and tokens we need to be able to articulate how specific assets we are trying to seize are the same assets involved in the crime. With ETH and tokens that operate in an account-like manner we utilize accounting principles, such as "Last In- First Out," which establishes that the last funds deposited are the first to be expended. This sort of methodology helps us effectively argue that the initial fraudulently obtained assets are the same as the funds we are looking to seize despite numerous hops with additional deposit and withdrawal activity.

This address received a 200,000 USDT transfer on 12/21/2022, which included 55,988.74 USDT in proceeds traceable to your fraud. These funds were then expended in a series of smaller outgoing transfers between 12/21/2022 and 1/17/2023.

Separately, I have been contacted by a couple of FBI agents that I believe are working with you on your matter. I would suggest you continue working directly with these folks as they pursue their investigation. I recognize why a victim would want an "all hands on deck" approach to these sorts of matters, but involving multiple different agencies oftentimes can have a detrimental effect on the ongoing investigation. In case you need it, the FBI agent that I believe you've been working with can be contacted at [redacted]

Kind regards,

Andrew Frey
U.S. Secret Service | San Francisco Field Office

USSS notified Kaul that the Federal Bureau of Investigation was handling an investigation that may involve her funds. Counsel in this matter informed Kaul's previous Counsel about the FBI matter. Counsel in this matter also informed Kaul that her loss <u>may</u> be traceable to an action in the District of Colorado. Kaul even acknowledged this case in her filing.[2]

---

[2] Exhibit L, ECF. No. 79-14, central bottom right pointing to "US Forfeiture 23-cv-02549."

*Exhibit 8*

*Kaul's Acknowledgment Of The District Of Colorado Matter*




The government attempted to help Kaul in this matter, is helping recover funds that may belong to her in other matters, and still intends to recommend compensation for legitimate losses of her or any victim. In fact, Kaul *and* her mother, whom Kaul identified as also having an interest in the 2.5 million in funds she identified, may file petitions for remission for recovery. Despite the incredible time and effort spent, Kaul continues to drag the names and reputations of hard-working analysts and agents who attempted to assist her through the mud.

KAUL HAS NO KNOWN BAR LICENSE NUMBER YET APPEARS TO BE REPRESENTING OTHER INTERESTS

According to her own representations to USSS, Kaul's loss consists of $2.5 million including her mother's retirement account loss. It appears Kaul is representing another interest, as an "international lawyer," in a United States District Court, without an identified American bar license. Kaul also does not appear to be a licensed attorney by the Turkish Bar Association.

KAUL'S STATUS UPDATE DIFFERS FROM HER PUBLIC STATEMENTS

Kaul claims she was excluded from settlement negotiations.[3] Yet, a member of the "Digital Defenders Group," (hereinafter "DDG"), in which Kaul asserts to the be the Founder,

[3] ECF No. 89 at 2.

claimed "The US DOJ has agreed to give a majority of $225M in verifiable scam victim's funds to Infiniweb, an illegal Philippine Offshore Gaming Operator (POGO) under Prince Group. It's official." They further paint a routine protective order as a move to "shield The Syndicate."

*Exhibit 9*

*Statement by Jan Santiago, DDG*

[redacted] Jan Santiago
5d · Edited

The US DOJ has agreed to give a majority of $225M in verifiable scam victim's funds to Infiniweb, an illegal Philippine Offshore Gaming Operator (POGO) under Prince Group. It's official.
https://lnkd.in/g7UG4ZnT

Also agreed to that POGO's move for protective order, to shield The Syndicate
https://lnkd.in/gh7CHEDz

What's the use of all our scam fighting??

Why? https://lnkd.in/gRP6mhZj

#PrinceGroup #DigitalDefendersGroup #StolenTwice #InvestigativeOriginator #VictimFirst #VictimToVictor #DDG #OriginalInnocentOwner #SecondTheft

APPROXIMATELY 225,364,961 USDT

Defendant.

RESPONSE OF NONOPPOSITION

The United States of America does not oppose Claimant Infiniweb Technology Inc.'s motion for a protective order.

Respectfully Submitted,

JEANINE FERRIS PIRRO
United States Attorney

/s/ Rick Blaylock, Jr.
RICK BLAYLOCK, JR.
TX Bar No. [illegible]
Assistant United States Attorney
Asset Forfeiture Coordinator
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20001
(202) 252-6765

Response to motion – #86 in United States v. APPROXIMATELY 225,364,961 USDT (D.D.C.,

Other members of DDG, and Kaul herself, weighed in on the issue and reposted:

*Exhibit 10*

*Statement by Jan Santiago, DDG*

## DOJ Shields Infiniweb from Scrutiny Despite Human Trafficking Links

✦ This title was summarized by AI from the post below.

[redacted] Tao Liao
4d · Edited

😡😡😡 The DOJ filed a one-page document. It says everything.

Document 86. August 6, 2026. The DOJ's entire response: "We do not oppose Claimant Infiniweb Technology Inc.'s motion for a protective order." Signed: Rick Blaylock, AUSA.

Infiniweb is a cancelled Philippine gaming operator. The DOJ's own complaint links it to human trafficking and crypto-fraud shells. Document 79 calls it a criminal proxy for the Prince Group syndicate that stole $225M and billions more from victims worldwide.

The DOJ's position: we have no problem shielding criminals from scrutiny.

This is the same DOJ that called it the "largest crypto recovery in history" - then told victims recovery was "not possible."

Document 85, filed one minute earlier: the DOJ announces a "settlement in principle" with Infiniweb. It explicitly excludes Nivie Kaul, the investigative originator and claimant who seized the money first in Turkey and has filed Document 79 to stop exactly this and expose the corruption.

The DOJ made backroom deals with criminals while threatening to strike the legitimate owner. No evidentiary hearing. No justice. Just a one-page shield for the criminal proxy.

Where is the justice? Where is the integrity of the U.S. justice system?

[redacted]

152 followers

22 Posts

View Profile + Connect

Explore content categories

Career | Productivity | Finance | Soft Skills & Emotional Intelligence | Project Management | Education

Show more

*Exhibit 11*

*Repost*




Either Kaul and DDG know details of the settlement as claimed on LinkedIn, or they do not as they state in court filings. For the sole purpose of proving DDG's assertion about the settlement false, the tentative settlement, which is subject to approval from the Office of the Deputy Attorney General and final approval between the parties, is attached under seal. *See* Ex. 13 (under seal).

KAUL MAY STILL BE COMPENSATED THROUGH REMISSION

Notwithstanding any of the above facts, or the legal arguments below, Kaul—and her mother and anyone else she may represent—may still be compensated through remission through individual petitions.

## LEGAL ARGUMENT

I. AMERICAN FEDERAL CIVIL FORFEITURE ON THE WORLD STAGE

American federal civil forfeiture plays an enormously important role in the pursuit of international justice, especially given the international barriers to investigating and apprehending suspects beyond our borders. *See* The Honorable Austin F. Cullen, Commission Inquiry into Money Laundering in British Columbia: Final Report, p. 1583 (Province of British Columbia June 3, 2022)(also available on www.cullencommission.ca). Virtually no other country has the international civil forfeiture capacity of the United States, which stands as a model for the world. *Id*.

Congress reaffirmed a civil forfeiture public prosecution model where the United States is the sole plaintiff pursuing civil forfeiture claims, *see* 18 U.S.C. §§ 1345; 1355, against an alleged offender who may or may not contest the civil forfeiture claims. Those who are victims of the offense play an extremely limited role to promptly and specifically set forth their specific interest in the specific property that is the subject of the forfeiture claims such that the forfeiture order, if obtained, may be modified before final judicial judgment. Civil forfeiture claims do not give rise to private prosecution, nor counterclaims, nor private causes of action. *Id.*; *United States v. Fifty-Three Virtual Currency Accounts*, 2025 2732705 at *5 (D.D.C. Sept. 25, 2025); *Al-Tamimi v. Adelson,* 2024 WL 756601 at *5 (D.D.C. Feb. 23, 2024). As part of the entire statutory design,

Congress created an entirely separate and subsequent post-judicial process for sorting Petitions for Mitigation, applicable only to offender-claimant/petitioners, and Petitions for Remission, applicable to owners, lienholders, certain institutions, and victims. *See* 28 C.F.R. § 9.

II. KAUL'S UNTIMELY FILINGS EXHIBIT MANIFEST LACK OF STANDING

Kaul filed a claim as well as an answer asserting an interest in property in a certain cryptocurrency address without sufficient tracing to the actual property seized, that is, the defendant property. *See* ECF Doc. 53, 54. Instead, Kaul makes reference to providing information to Turkish authorities to initiate an investigation and an inchoate order which never matured into a judgment or a perfected lien to the defendant property that is the subject of the civil forfeiture action in the United States. Kaul even had the opportunity to confer with the USSS analyst assigned to this matter regarding her interest. The USSS undertook tracing using established accounting methods and advised Kaul that her property did not trace to the defendant property. In the course of their communications, Kaul represented to the agent that her claim was to a larger interest, however, she later asserted that she represented the property interests of others as an international lawyer aside from her own interest. *See* Exhibit 6.

Standing in civil forfeiture is multi-dimensional. One must establish constitutional standing, that is, a sufficient injury-in fact that is imminent and concrete and not too attenuated and speculative. *See generally Food and Drug Admin. v. Alliance for Hippocractic Med.*, 602 U.S. 367, 144, S. Ct. 1540, 219 L.Ed. 121 (2024); *United States v. Fifty-Three Virtual Currency Accounts*, 2025 WL 2732705 at *4 (D.D.C. Sept. 25, 2025).

One must also establish prudential standing, that is, being within the zones of interests protected by the statute, *see United States v. $39,557.00 in U.S. Currency*, 683 F. Supp.2d 335, 341, 344 (D.N.J. 2010), best characterized as substantive statutory standing. One must also satisfy procedural statutory standing, that is complying with the procedural dictates of the statute to avoid

false and otherwise erroneous claims. *Ibid.* The civil forfeiture statute provides that the zones of interests to protected are that of innocent owners. *See* 18 U.S.C. § 983(d)(2)-(3). A general or unsecured creditor is specifically statutorily disqualified as an owner, *see* 18 U.S.C. § 983(d)(6)(B)(i), because they have no specific interest in the defendant property. Indeed, the civil forfeiture statute further commands as a matter of procedural statutory standing that a potential claimant must establish in one's initial claim a specific interest in the specific defendant property that is the subject of the civil forfeiture action. *See* 18 U.S.C. § 983(a)(4)(A); Fed. R. Civ. P. Supp. R. G(5)(a)(i)(A)-(B). The law of this Circuit has long recognized that a general unsecured creditor lacks constitutional and statutory standing. *See United States v. BCCI Holdings (Luxembourg),* 46 F.3d 1185, 1191 (D.C. Cir. 1995). Judge Contreras in *Fifty-Three Virtual Currency Addresses*, correctly noted that a failure to identify a specific interest in the defendant property deprives a potential claimant of both constitutional and [both substantive (commonly referred to as prudential) and procedural] statutory standing. *Id.* at *4.

Here, Kaul fails in each way. She fails to trace her interest to the defendant property in her claim and makes vague references to preliminary inchoate orders demonstrating that she has not timely perfected a lien from a judgment to the Defendant Property. As such, she manifestly lacks constitutional and statutory standing.

Moreover, her procedural statutory standing is particularly egregious, despite asserting that she has been keeping an eye on her property all the while. To the contrary, with the assistance of counsel, she filed a claim in March 2026, nine months after the United States initiated publication notice in June 2025. The case of *United States v. Three Sums Totaling $612,168.23,* 2021 WL 2255310 at *6 (D.D.C. June 3, 2021) is particularly instructive. There, the Court observed a claim filed a year late deprived that claimant of procedural statutory standing. Furthermore, the United

States was correct to insist on strict compliance to avoid false and erroneous claims and that the United States was also prejudiced by the delay because the United States was being disrupted from "the normal course and progress of the proceedings." *Id.* This is especially appropriate here because the United States not only pursued its forfeiture claims, it facilitated victim-petitioners in their efforts to trace at the opportunity cost of further pursuit of its forfeiture claims. Not only that—the United States has now arrived at a settlement agreement between the parties. A consequence of leaving the door open indefinitely to claims is that it opens the door to a conveyor belt of untimely litigation and delays frustrating a resolution. And in this case, those claimants have been antagonistic to their own interests and to the United States's ability to investigate, prosecute, and gain recovery for them. no other government in the world exhibits the capacity to do so. *See* Point 1, *supra*.

Accordingly, because this potential claimant is well out of time and is prejudicing the United States actively, as will be further set forth below, this Court should especially strike the Kaul for lack of procedurally statutory standing as extremely untimely, so that she may be treated justly like all other potential claimants to file a petition for remission. *See* 28 C.F.R. § 9. Additionally, as Judge Contreras distinguished in *Fifty-Three Virtual Currency Accounts*, Kaul fails to identify her specific interest from her mother's interest or that of anyone else she may be representing. For this additional reason, her claim fails to specifically identify her interest in the Defendant Property. *See* 18 U.S.C. § 983(a)(4)(A); Fed. R. Civ. Supp. R. G(5)(a)(i)(A)-(B).

III. KAUL'S SUBSEQUENT FILINGS ARE REDUNDANT, IMMATERIAL, IMPERTINENT, AND SCANDALOUS.

Given that Kaul's claim should be struck for lack of standing, there is no need to reach her other filings. *See* Fed. R. Civ. P., Supp. R. G(8)(c)(ii)(holding that the United States's motion to strike must be reached first regarding standing and if successful, there is no need to reach a

potential claimant's motion who lacks standing); *cf. United States v. All Assets Held at Bank Julius Baer, Co.,* 2025 WL 3687615 at *3-4 (D.D.C. 2025)(barring a potential claimant's motion to dismiss[4], because the potential claimant lacked standing). However, because Kaul, now as a *pro se*, has gone out of her way to malign the United States, including the hard-working members of law enforcement trying to assist her, and other counsel in this action, the United States moves to especially strike Kaul's Motion for a Preliminary Injunction. *Cf.* Fed. R. Civ. P. 12(f), (g)(1)(allowing this kind of motion to strike to be joined with another motion).

The putative preliminary injunction, as Rule 12(f) proscribes of responsive pleadings, is redundant, immaterial, impertinent, and scandalous. A judicial claim and petition for remission each independently provide Kaul with an adequate remedy at law. Yet even if her judicial claim is struck, her position to establish legal recovery is unchanged because she may still petition for remission. *See* 28 C.F.R. § 9. An equitable appeal for injunctive relief upon a reasonable likelihood of success to establish immediate irreparable harm absolutely fails when there is an adequate remedy at law, which is the case here. *See generally Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L.Ed. 249 (2008)(outlining the preliminary injunction standard). As such, her papers are redundant, immaterial, and impertinent. Furthermore, her equitable injunctive appeal must be in the public interest. Here, it is in Kaul's personal interest at the expense of the public interest. To the contrary, the United States is acting in the public interest by having all victims treated appropriately for each to marshal his or her evidence in the petition for remission process to establish eligibility and priority. *See* 28 C.F.R. §§ 9.7-9.9.

---

[4] Kaul also attempts to attack in rem jurisdiction, but she is procedurally barred from so doing, because, with counsel, she filed an Answer instead of a motion to dismiss and expressly waived a challenge to in rem jurisdiction by failing to deny in rem jurisdiction in her Answer. *See* ECF Doc. 54, p. 2; *see also* 2006 Advisory Committee Notes to Supplemental Rule G(5) citing to *United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141 (3d Cir. 2003).

Additionally, Kaul's papers are scandalous accusing the United States and other counsel of engaging in a widespread criminal conspiracy. *See* ECF Doc. 79-2 at 11-12. Kaul also represents herself to be an international lawyer without evidence on the record.

The analogous provision of Federal Rule of Civil Procedure 12(f) should be applied here. *See* Fed. R. Civ. P., Supp. R. A(2)(allowing the application of consistent Federal Civil Rules of Procedure to civil forfeiture Supplemental Rules). The Court is free to act on its own to protect the Court and the officers of the Court. *See* Fed. R. Civ. P. 12(f)(1). For the reasons set forth above, the Court should strike Kaul's filings from the record. Even if Kaul's filings are struck, she and her mother may still pursue remission like all other potential victim petitioners.

CONCLUSION

The United States respectfully submits that pursuant to the law and Supp. R. G(8)(c)(i)(A)-(B), this Court should strike Kaul's Verified Claim, Answer, and Emergency Motion for a Preliminary Injunction for lack of standing and for violations of Federal Rule of Civil Procedure 12(f).

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: */s/ Rick Blaylock*
Rick Blaylock
TX Bar No. 24103294
Assistant United States Attorney
United States Attorney's Office
District of Columbia
601 D Street, NW
Washington, DC 20530
(202) 252-6765
Rick.Blaylock.Jr@usdoj.gov

*/s/ Jafer Aftab*
Jafer Aftab
N.J. Bar No. 050341997
Assistant United States Attorney
United States Attorney's Office
District of Columbia
601 D Street, NW
Washington, DC 20530
(202) 252-6714
Jafer.Aftab@usdoj.gov

Certification of Service

I certify that on August 14, 2026, true and correct copies of Plaintiff's Motion to Strike Nivedita Kaul and Response, the Proposed Order, and exhibits were served by electronic mail via ECF to all counsels. The United States further served Nivedita Kaul with a courtesy copy via email at nivie@digitaldefendersgroup.org.

*/s/ Rick Blaylock*
Rick Blaylock
TX Bar No. 24103294
Assistant United States Attorney
United States Attorney's Office
District of Columbia
601 D Street, NW
Washington, DC 20530
(202) 252-6765
Rick.Blaylock.Jr@usdoj.gov