# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>APPROXIMATELY 225,364,961 USDT<br>Defendant, *in rem*. | Civil Action No. 25-cv-1907-AHA |

**DECLARATION OF NIVEDITA KAUL IN SUPPORT OF CLAIMANT'S MOTION TO DEFER RULING ON THE GOVERNMENT'S MOTION TO STRIKE [DOC. 91], TO COMPEL SERVICE OF SEALED FILINGS [DOCS. 92 AND 93], TO STRIKE OR DISREGARD SPECIFIED EXHIBITS, FOR AN EXTENSION OF TIME, AND FOR PROTECTIVE RELIEF (EXHIBIT A)**

I, Nivedita Kaul, hereby declare under penalty of perjury pursuant to 28 U.S.C. section 1746 that the following is true and correct.

**I. PROCEDURAL STATUS**

1. I am the Claimant in this action, appearing pro se. My prior counsel withdrew by Minute Order of May 18, 2026. I contacted over 30 law firms. Most were conflicted or asked for amounts I could not afford. I am pro se by necessity, not by choice.

2. My CM/ECF e-filing access had been removed when I tried to file the Status Report [Doc. 89] on August 6, 2026. It has since been restored.

3. On August 14, 2026, the Government filed Doc. 91 and served it on me by email. The Government also filed Docs. 92 and 93 under seal. The Government did not serve Docs. 92 or 93 on me. The Government did not file a motion to seal. The Government did not confer with me before filing. This was seven days after the Court entered the Protective Order [Doc. 88] and explicitly reminded all parties that "Local Civil Rule 5.1(h)(1) requires any party that wishes to file a document under seal to file an accompanying motion to seal."

4. On August 7, 2026, the Court stayed the case. On August 14, 2026 - one week into the stay - the Government filed Doc. 91 without seeking leave of Court.

**II. WHAT DOC. 91 PUBLISHED**

5. Doc. 91 published my private email address.

6. Doc. 91 published my private USSS cooperation emails as Exhibits 2-7. When I first submitted my victim reporting to the USSS in January 2023, I wrote that the materials contained "a lot of personal details" and asked that they be "treated with sensitivity." Analyst Frey called me by phone first, then solicited my evidence. I submitted my materials asking for confidentiality. Analyst Frey responded: "Secrecy is in our name - we'll treat your information with the utmost care." That was the promise under which I submitted my cooperation materials. The Government has now broken that promise.

7. Doc. 91 published my mother's identity as a victim of fraud and financial circumstances. My mother is not a claimant. She is not a party. She has not consented to public disclosure. She is a senior citizen, and the disclosure can affect her employment and cause further harm.

8. Doc. 91 published the specific fraud websites, wallet addresses, and a YouTube video of my investigation. This creates a risk of reverse-engineering my specific case and is not needed to prove any legal issue. I reported with confidentiality.

9. Doc. 91 published my June 6, 2023 email as Exhibit 6. This email was written during a period of acute psychological distress. The Government extracted one line from a two-page document and presented it as evidence of unauthorized practice of law.

10. The fraud caused severe and lasting psychological trauma. I was in ongoing trauma therapy for approximately two years following the victimization, only stopping when my therapist relocated. The Government's public filing of private victim communications, and its framing that I am not a victim helping other victims but instead participating in the unauthorized practice of law, have aggravated that harm and forced me to re-litigate my own victimhood in open court.

11. If victims know that their private cooperation communications, financial losses, and psychological distress will be published on a public docket and used to accuse them of crimes, they will not report. But the harm goes far beyond non-reporting. Public disclosure shames victims. The victims I have communicated with through DDG come from all walks of life. They are physicians, engineers, executives, and professionals who cannot afford to have their victimization exposed to employers, licensing boards, or professional communities. It exposes their financial devastation to employers, colleagues, and communities. It reveals losses and circumstances that victims may have hidden from their own families because of shame, cultural stigma, or fear of judgment. I know from direct communications with victims that many have not told their spouses, parents, or employers about their victimization. The Government's publication of my private emails, my mother's identity, and our household's financial circumstances does not merely chill

reporting. It destroys the dignity, privacy, and relational trust that victims need to survive and rebuild.

**III. THE COMMUNICATION WITH USSS AND ERIN WEST**

12. On January 18, 2023, I contacted Erin West through LinkedIn after reading her public post about pig butchering scams. I identified myself as a victim and asked for guidance. West responded and offered to connect me with a detective. She asked me to send transaction hashes and deposit addresses. The LinkedIn exchange is attached as Exhibit C.

13. On January 19, 2023, USSS Financial Analyst Andrew Frey contacted me by phone without my solicitation, asking for my materials. I submitted my materials and asked that they be treated with sensitivity. Analyst Frey responded: "Secrecy is in our name - we'll treat your information with the utmost care." That was the promise under which I cooperated. The Government published five fragments of the subsequent correspondence in Doc. 91 but omitted this email. True and correct copies of the quoted emails are retained and will be provided to the Court upon request. The omitted email is attached as Exhibit B. The email the Government filed as Exhibit 2 to Doc. 91 was itself a response to a request: the Santa Clara County Deputy District Attorney to whom I first reported asked me to state my total loss and to send the transaction hashes and deposit addresses for my case. Exhibit 2 was my same-day response to that request.

14. Between February and April 2023, Frey informed me that recovery through his office's preliminary methods was "not possible here" and that there was "no ongoing work specific to your loss." I traced my funds to multiple exchanges and informed Frey of this on April 19, 2023. He did not dispute my tracing. He stated his office could not act on it. The February 22, 2023 email is

in the record as the Government's Exhibit 5 to Doc. 91 - although its caption misdates it as "January 30, 2023" - and the April emails are retained and will be provided to the Court on request.

15. On April 19, 2023, I wrote to Analyst Frey: "I was able to trace my funds to multiple exchanges. There are also fresh funds moving into the scam wallets every week. My case is a part of a very large scam, which I am sure involves many other US citizens. Is there any action being taken to recover the funds?" Analyst Frey did not dispute my tracing.

16. After Analyst Frey stated that there was "no ongoing work specific to your loss," I escalated the matter to FBI Agent Majors in March 2023 and again in June 2023, providing forensic findings and requesting that the FBI remedy what I believed was an operational error by the USSS. On June 24, 2023, the FBI registered me in the Department of Justice Victim Notification System (VNS). I was assigned a Victim Identification Number under the FBI Los Angeles Division. The Government had actual, documented knowledge of my victim status in its own notification database before it filed this forfeiture action.

## IV. EXHIBIT 91-1 PROVES THE GOVERNMENT'S FAILURE, NOT ITS PRIORITY

17. The Government's Exhibit 1 to Doc. 91 is a USSS document, not my document. It shows a January 9, 2023 voluntary freeze request to Tether that Tether declined. The visible wallet address concerns Token Group A, not Wallet 0x82e. The second address is redacted, and the Government has not identified it. These facts are relevant to the Government's claimed investigative priority and are addressed in the motion.

## V. SAFETY

18. For close to three years, I was anonymous. I never published the cryptocurrency wallet addresses I was investigating. I never disclosed my victimization details publicly. The Turkish judicial system protected my identity, sealed my complaint, and treated me as a protected witness.

19. The safety issue is not just about criminals. It is also about the claimants in this case who may feel I am the sole obstacle to the settlement and to those seeking to be paid from the proceeds. Doc. 91 broadcast that I am the obstacle standing between the settlement and roughly nine figures.

20. Individuals connected to the underlying criminal organization have contacted my associate, demonstrating that the criminal network is monitoring this litigation.

21. I place the Government on actual notice of the specific, foreseeable safety risks. I request immediate protective and corrective measures. I preserve all available claims, defenses, and remedies.

**VI. THE HOUSEHOLD RELATIONSHIP**

22. My mother and I live together. Our finances are intertwined. Our household was jointly affected by the fraud. My mother's interest in our joint losses will be addressed in her declaration.

23. My mother accompanied me to the FBI for the interview and to Turkey as well. She provided documentation. She voluntarily chooses and consents to my assistance with communications, records, investigation, advocacy, and recovery efforts. I have never charged her a fee. I have never held myself out as her attorney.

**VII. DDG AND THE DISCLAIMER**

24. Digital Defenders Group (DDG) is a 501(c)(3) nonprofit I founded. DDG is not a law firm. DDG does not give legal advice or financial advice. DDG educates victims, helps them preserve

and collect evidence in their own Google Drive folders, assists with investigations, and refers victims to licensed counsel. No fees are charged.

25. DDG was built for victims by victims. It is a safe community where victims support each other, share information, and learn to protect themselves. Through DDG, I have personally communicated with victims who were in suicidal crisis and directed them to emergency resources and licensed mental health professionals. I know from direct victim communications that peer support and evidence preservation assistance have prevented further harm. The Government's characterization of DDG as a vehicle for unauthorized practice of law is not only false but dangerous to victims who need the community and resources DDG provides.

26. Every email I send through DDG, including every email to the Department of Justice, contains the disclaimer: “The information contained in this email is intended solely for informational purposes and does not constitute legal advice. No attorney-client relationship is formed by the sending, receipt, or review of this email. Recipients should consult with their own legal counsel for advice regarding any specific legal matter. The transmission of this email does not imply or create an attorney-client relationship between the sender and the recipient.” This disclaimer is in every communication.

27. At the July 23 hearing, I stated on the record that I am an advocate for DDG victims and represent only myself. The Court clarified that I am appearing on behalf of myself only (Tr. 48-49).

28. During the March 2025 hearing in the Turkish proceeding, the defendants raised the subject of DDG. The presiding judge specifically asked me about DDG and its activities. This confirmed that

the Turkish court is aware of DDG's victim identification and evidence work within the broader case context.

**VIII. NEED FOR AMENDMENT**

29. Since filing Docs. 53 and 54, I have developed additional grounds supporting my interest in Wallet 0x82e based on the Government's own filings, the burn/reissue record, and the evolving legal analysis. I need time to prepare an amended claim and Answer, to obtain declarations from my mother and representative DDG victims, and to review the sealed filings the Government has not served. I am appearing pro se and managing this matter without the resources of a law firm or government agency.

30. I stated at the July 23 hearing that this proceeding has been extremely traumatic (Tr. 46:14). The Government's public filing of my private cooperation emails, my mother's identity, and my distress communications has increased that distress. I request the protective measures identified in the motion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 28, 2026, at Palm Springs, California.

/s/ Nivedita Kaul

Nivedita Kaul, Claimant, Pro Se
5001 Ramon Road, Building 3 #1005
Palm Springs, CA 92264
Tel: +1 724 413 8167
nivie@digitaldefendersgroup.org

**EXHIBIT INDEX**

| Exhibit | Document | Purpose |
|---|---|---|
| A | Declaration of Nivedita Kaul | Procedural facts, safety, household, DDG, Turkish proceeding, Government conflict, no US legal mechanism |
| B | January 19, 2023 Frey assurance email (redacted) | Shows omitted email quoting "secrecy is in our name" - absent from Government's exhibit set |
| C | Erin West LinkedIn Chat, (Jan 2023) | Shows initial contact was due to LinkedIn solicitation post. |
| D | LinkedIn Post Stephanie Ashford, (Dec. 2023), | Shows inability to freeze unhosted Tether wallet. https://www.linkedin.com/posts/stephashford_case-study-usss-pig-butchering-investigation-activity-7123031478606712835-KstZ/ |
| E | TRM Lab Case Study | Shows inability to freeze unhosted Tether wallet. https://www.trmlabs.com/resources/case-studies/usss |
| F | Table Of Contradictory Statements | Table of statements from the Government's Motion to Strike (Doc. 91), the Verified Complaint (Doc. 1), the official transcript of the July 23, 2026 hearing and this Court's Protective Order (Doc. 88). |