# EXHIBIT C

Nivie Kaul <nivie@digitaldefendersgroup.org>

# GASA Follow-up

1 message

**Roger Welte** <roger.welte@digitaldefendersgroup.org> Sun, Sep 13, 2026 at 11:51 PM
To: Timothy.Lauer@usdoj.gov
Bcc: nivie@digitaldefendersgroup.org

Hi Tim,

Hope you've been doing well. Here are the comments I feel compelled to make after a back-and-forth with Judge Pirro on September 2, 2026, at the GASA Summit, where my wife and I were representing Digital Defenders Group (DDG) to advocate for victims of scams. Some issues have continued to gnaw at me. We have much to say, based on our five years of experience with this crime. Please bear with me - I believe there is information and issues here that are worth understanding:

1. First, it was concerning that Judge Pirro, when I engaged her, did not know what I was referring to when I raised an objection to her assertion in court filings that scam victims "voluntarily" gave up their funds and hence do not have "standing" for claiming ownership of scammed funds, when that relates to the scams she had just finished speaking about and when that assertion was declared in forfeiture filings this year, pertaining to what has been widely publicized and praised as the largest recovery of funds in United States Secret Service history. That signaled she is simply signing off on what her assistant attorney, Rick Blaylock, is filing without paying attention to his assertions. This is especially true since, as I pointed out to Judge Pirro, she has claimed publicly that the goal is to make victims "whole." The two positions are not compatible, and the positions taken in the court filing Judge Pirro signed off on marginalize victims. Also note that Blaylock has made other unsubstantiated claims in filings that are not true.

   If victims have no standing as claimed in Judge Pirro's court filings, then the best they can hope for is remission. Being made "whole" is hence an unattainable result, given the United States forfeiture rules where victims' rights to their claims are erased, and they must accept whatever unaccountable bureaucrats deem is due to the applicant, after seized funds are first doled out to law enforcement (already paid for by taxes) and government contractors (like TRM Labs, which has already been apportioned money out of taxes despite having a $2 billion valuation). Victims come last, with a discretionary payout, unlike the prioritization in other countries. This is unacceptable to anyone who first has assets stolen by criminals and now has lost all power even to make a legal claim for their seized property. If we try to make a claim, the DOJ will move to strike (signed by Judge Pirro herself in the DC docket), competing with the victims for their ownership instead of supporting them. Again, removing victims' ownership rights and standing is incompatible with the publicly stated goal of making them "whole".

2. In that same encounter, I stated that government control of the $225 million might result in it going into the Bitcoin Reserve, and the best remissions victims could hope for would return little to them. Judge Pirro emphatically responded that was correct - that's what the process should result in - getting the seized funds to the Bitcoin Reserve. I argued that no, that definitely should not be the goal; the goal is to get those seized funds directly back to the victims, especially in this seizure where the evidence points to victims that deserve recompense. Funneling funds to an intermediate destination like the Treasury lets many others dip into the stolen assets, leaving victims scrambling for leftover crumbs while their debts keep piling on. That's even further reduced when costly legal representation is required to argue for those crumbs. VNS failures introduce additional issues. The forfeiture pipeline artificially adds wasteful bureaucrats, lawyers, and middlemen between previously productive, tax-paying victims and their assets. Coupled with Judge Pirro's claim that victims do not have statutory standing for ownership, this process guarantees victim owners will never be made "whole" - in fact, nothing remotely close to that, making it at odds with her publicly stated goal.

3. Looking back in time, victim contribution has been crucial in addressing the crime. Tech-savvy victims took the lead in addressing the "pig-butchering" epidemic years ago after quickly realizing that law enforcement (LE), including the Secret Service (SS) and FBI, had not yet acquired the requisite skills to deal with the crime. In 2022, my wife joined a victim organization that brought attention to the crime; my wife was one of those on both national and local TV speaking about the crime, for example, among the many responses provided by the group for information to media outlets like the WSJ and NYT. Sharp people in that group helped train LE on the crime and how to deal with it, exposed criminals, traced funds, assisted other victims with critical guidance and emotional support, and even placed people on the ground in a foreign land to face criminals on their territory, resulting in arrests (this part of the story will all be told in an upcoming book). It's suspected that one person was murdered while investigating a particular aspect in this crime space that we warned Erin West about when she was a prosecutor in the Santa Clara District Attorney's office in California. Additionally, at Erin West's demand, the victim's **personal, crime, and financial data** was shared with her because, at the time, the victim organization was made to believe she was best

positioned to help recover funds. After this organization was found to be compromised (which Erin West, the FBI, and the Secret Service were informed about), many of the victims who did extensive, time-consuming work organizing the data and investigating left the organization. The fruits of their painstaking labor were taken by the SS, FBI, and Erin West and later her associates (like TRM Labs) to take advantage of and unjustly monetize and exploit, while West told victims to expect no recovery for themselves (and she continues to do so). Hard-working and remarkable victims who played important roles are likely never to see their own recovery, as recovered funds are dispersed to LE and corporations despite greatly advancing the cause against the criminals far beyond that of ordinary victims - this result in itself is disturbing. Some could afford to move on reluctantly. But not everyone.

4. After leaving her position as a prosecutor, Erin West's former district attorney's office is denying any involvement in the crime and in gathering victims' **sensitive data** while she was a prosecutor. Why should they deny such involvement? I would suggest it is because it points to the exploitation of the victims and their personal data - something that we, in general, are very concerned about.

5. In that key case we're all well aware of, SS agents "seized" funds ($225 million) that had already been seized directly by another victim (Nivie Kaul) through Turkish criminal court proceedings two years prior, and after the SS agents had said there was nothing they could do. Who can fault a victim for making that happen after encountering dead ends with our then unequipped law enforcement? She had the right to deal with the matter on her own, as she did. An article just came out on WSJ.com on it ("They Lost Their Money to Scammers - and Now Battle the U.S. Government to Recover It"), stating that more than 130+ people were arrested, based on a 1,548 page indictment - a substantial investigative effort with accompanying results (including the seizure Tether was compelled to perform - no small feat). Those arrested were not the low-level thieves sitting at desks in scam business centers texting WhatsApp messages – they are those higher-up **founders and managers of organized crime rings (network controllers)**, running the criminal operation. I would claim, at a minimum, the DOJ's actions are disingenuous - not to find out more of the legal proceedings that took down a large criminal syndicate and additionally not credit the victim who catalyzed the arrests (Nivie Kaul), whose investigation and legal actions helped take down "*a professional money laundering ring, a tributary to the vast shadow economy underpinning the global scam industry*".

6. We all want to get money back to victims based on carefully preserved victim data and evidence and to bring down the criminals running the operations - not just close the scam business centers that are quickly rebuilt elsewhere (using victim money). I'm sure we all have this goal, but seized funds need to get back to victims so they can get back to their productive lives, not just to the "Bitcoin Reserve" or to contractors and BIG government agencies. Or else, what's the point of reporting scams to police, organizing our evidence, and even helping law enforcement?? We want those funds put into receivership so they can be justly returned based on evidence not controlled by bureaucrats.

7. Concerning that same case, the victim who was left to conduct her own investigation (Nivie) had those funds seized by a foreign court, and had to endure physical danger overseas when facing down powerful, well-resourced criminal masterminds in Turkish court (there was discussion whether bodyguards should accompany her, but the concern was that it would attract more attention). And yet, there is no acknowledgement of her work that resulted in the preservation and seizure of the funds, on her own dime, without any security. But there are plenty of accolades for the well-paid SS agents acting from safe quarters for their cleverness in seizing already court-seized funds in another country (which would be in violation of settled law - otherwise, if that's considered fair play, then chaos on the world stage is encouraged). This government theft is really hard to believe. This is really stunning. Doesn't anyone feel guilty for taking the credit while ignoring the victims who made it happen? Note that without Nivie Kaul's work in 2023, the funds would have been dissipated, and there would be nothing left for the DOJ to assume custody of in 2025. I just can't get my head around this.

8. Accordingly, our DOJ should not treat someone like Nivie as if she is an opportunist who should be removed from the unjust forfeiture proceedings, especially since her claim is based upon hard data and legal efforts to get the stolen funds back to the victims. This is not just about Nivie, though I thought this was very extraordinary for her, but such efforts and ability to persistently legally pursue justice overseas by quite literally pulling on one's bootstraps should be seen as commendable, not deserving of attack. Instead, now we have a ridiculous development where the DOJ has swept in to take control of those funds, but does not possess the requisite evidence to complete civil forfeiture of those funds, and so now it's forced to settle millions of those stolen victim funds back to the criminals in some backroom deal-making. THE DOJ IS HANDING OVER STOLEN FUNDS TO THE CRIMINALS, NOT TO THE VICTIMS the DOJ is supposed to be protecting. It's not just ironic; it's tragic, and it encourages future lawlessness and scamming by well-resourced foreign syndicates. Where is law and order here? Wouldn't it have been preferable to work with capable victims, instead of notorious criminal enterprises? Instead, the DOJ also agreed to protect the privacy of the criminal linked claimant (Infiniweb), your department itself accused of being involved in scamming and human trafficking, while exposing Nivie's private victim reporting to law enforcement, in full view, on the public docket, unredacted. Who would now report to US law enforcement?? NO victim deserves to justify the crime that happened to her. No victim deserves to have their private trauma exposed.

9. Finally, it's ignored that lost assets are often shared assets of family and loved ones, resulting in collateral damage for many innocent people who didn't give up anything "voluntarily." Beyond any legal disputes concerning this path to marginalization, the ethical and moral implications are undeniably disturbing.

The truth and the accompanying story are starting to come out. I humbly suggest Judge Pirro do the right thing and get on the right side of this. That includes withdrawing the remarks about victims giving up their money "voluntarily," which is incongruent with her other statements that say (accurately so) the crime is carried out via a sophisticated international criminal enterprise by experts on regular, busy people, so it's most important that victims don't blame themselves.

The assertion that victims “voluntarily” gave money away leads to a remission that returns practically nothing, after all the middlemen decide how much to keep. Judge Pirro must understand this. That assertion is extremely damaging to victims' constitutional rights. She has been led by the official DOJ’s framing into an untenable position against her public stance of making victims ‘whole’. It's especially egregious when applied to crucial victim contributors while credit is given to government agents who stood on the shoulders of these individuals’ work. Again, I would strongly urge Judge Pirro not to be on the wrong side of this story. This is about tenacious, heroic victims doing the investigative and legal work themselves and for other victims, then being ostracized and punished by their own DOJ. This is about preserving Americans’ wealth, not enriching the government. Victims should not be penalized for doing the laborious, unfunded work of helping other victims. That seems to me distinctly un-American.

As I've pointed out, I've dedicated my life to DoD and national security work, often to an extreme degree, even when bigger paydays were available outside of government work. This informs the vantage point I’m coming from. It's greatly disturbing that the same government is now working against my family and me when a despicable crime assaulted us. Separately, since 2021, I've worked hard to bring attention to this assault on us to the highest levels of the federal government (the Department of State, specifically), which I felt was best positioned to fight international crime. I've often sought relevant Stanford connections to help advance the cause. Caring enormously about future victims and the threat to our country, I warned years ago about the growth of this crime, scam money funding our worst adversaries, and that AI would make it worse, all of which unfortunately has come true. While what I have done is absolutely minuscule compared to what others have dedicated themselves to and the results they have achieved, it would be a remarkable and very sobering result if the end of that road only meant the transfer of money from one group (the international criminals) to another group (the U.S. government and those they choose to fund and reward), while victims are left scrambling for pennies on the dollar, if anything at all (again noting the VNS doesn’t work at all). Many victims know they don’t have enough to live out the rest of their lives, even if living simply. That’s what some of us are working hard to avoid by using preserved evidence to make the case ourselves. We should not be excluded from that right of getting our OWN MONEY back - not a “gift” from the government but our RIGHT.

To conclude, we are working hard to do the right thing for victims and to seek the restoration of our lives, and we are not seeking to enrich ourselves along the way - that’s not our space nor what drives us. Hence, we attended GASA, representing DDG as one of the only victim-led organizations. Of the attendees, I believe only AARP shares that important goal.

With all that said, I appreciate the opportunity to share my thoughts with you, and I hope you will share them with Judge Pirro. No personal attacks here outside of that relating to those taking credit in lieu of those who really deserve credit. That’s not where I’m coming from, although frustration clearly bubbles up. All of those I engage with are concerned about honest justice, nothing more, with hearts aching for so many victims who need help – I could not be more truthful.

As always, be well and thank you,

**Roger Welte**
Senior Policy Advocate & Director of Government Engagement
Digital Defenders Group (DDG) is a U.S. 501(c)(3) Nonprofit, EIN 99-1820914
Forensic Investigations | Investigative Intelligence | Tax Forensics & Relief | Litigation Support | Fraud Victim Advocacy
DDG Site | DDG LinkedIn | DDG X

**Fund the Fight for Victims of Cyber Fraud. Donate to DDG.**

---

*This communication is provided by Digital Defenders Group, a 501(c)(3) victim-advocacy and educational organization, for informational purposes only. It does not constitute legal, financial, tax, or professional advice, and no attorney-client, fiduciary, or advisory relationship is formed between DDG and any recipient by the sending, receipt, or review of this communication. Recipients are strongly encouraged to seek independent legal, financial, or tax counsel regarding any matter specific to their circumstances.*

*This email and any attachments contain confidential, proprietary, and sensitive information belonging to DDG, including investigative methodology, case intelligence, and victim data protected under applicable privacy and data-protection laws. This communication is intended solely for the named recipient(s). If you have received this message in error, you are strictly prohibited from using, copying, disclosing, or distributing its contents in any form. Please notify the sender immediately and permanently delete this message and all copies thereof.*

*Unauthorized use, reproduction, or disclosure of any DDG proprietary intelligence, methodology, or case-related material is strictly prohibited and may give rise to legal liability.*