**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>APPROXIMATELY 225,364,961 USDT<br>Defendant, in rem. | Civil Action No. 25-cv-01907-AHA |

**DECLARATION OF ROGER WELTE**

I, Roger Welte, declare as follows:

1. I am over eighteen years of age and competent to make this declaration. I make it from my own personal knowledge. I make it in my personal capacity, not on behalf of my employer. I am not a party to this action. I have received no payment or other benefit for making this declaration; my sole interest is that any funds that were stolen via criminal activity and are subsequently recovered be fairly returned to the victims from whom those funds were stolen, and not be placed in the control of law enforcement, especially when they had no hand in the preservation and recovery of those funds.

**Background**

2. I am a Principal Research Engineer at SRI, where I have worked since November 2016. From 2005 to 2014 I worked at Trimble Navigation on GPS for military applications (GPS anti-spoofing for military aircraft in contested/combat environments in particular). Prior to Trimble Navigation, I worked at Stanford Telecom, Tau Corporation, Unisys/Paramax, and GTE

Government Systems covering the period from 1985 to 2000, where my contributions related to producing electronic, image processing, and communications systems for the United States Department of Defense, and where my efforts were in electrical and software engineering. My only respite from defense department / national security work (often classified) occurred at Marvell Semiconductor from 2000 to 2004 where my efforts contributed to the production of some of the first WiFi chips.

3. I hold a bachelor's degree in physics from the University of California, Berkeley (A.B., 1982); a master's degree in electrical engineering from the University of California, Davis (M.S., 1985); and a master's degree in applied mathematics from Santa Clara University (M.S., 1992).

**My Family's Experience and Digital Defenders Group**

4. In 2021, my family lost both retirement and other funds to a cryptocurrency investment scam when my wife attempted to recruit prospective clients online for a business she was working for during the COVID-19 pandemic, when human face-to-face interaction was not possible. Since 2021, I have worked hard to bring this kind of fraud to the attention of the federal government, including law enforcement (the FBI, Secret Service), various government departments (the IRS, the SEC, the FTC), and the Department of State.

5. I serve as an unpaid volunteer with Digital Defenders Group ("DDG"), a 501(c)(3) nonprofit organization founded by Claimant Nivedita Kaul. My title there is Senior Policy Advocate and Director of Government Engagement. I receive no salary, fee or other compensation from DDG.

6. After having dealt with numerous individuals and organizations to aid my family in our personal situation and to combat the crime and support other victims, and where some of the organizations turned out to be dubious in nature, my wife and I eventually came into contact with

Ms. Kaul in mid-2024. Ms. Kaul has proven to be the most literate about the crime and relentless in seeking justice and recovery for victims, and she is also successfully prosecuting her case overseas. Significantly, Ms. Kaul was the most honest voice we ever came across, and her work relies on exact and specific details of the fraud, using evidence-based investigations and legal pathways to advance her fight against the crime and develop meaningful solutions for victims' recovery.

7. My wife has worked with other victims to support Ms. Kaul in the possible recovery of their stolen funds and to educate and assist distraught victims in collecting their evidence and crime data, applying best practices so they can seek recovery and justice. DDG educates victims and helps them organize their evidence and data in a way that keeps it private and not subject to outside control or monetization. To my knowledge, Ms. Kaul has never charged victims for services. My wife and I have been with DDG since mid-2024; DDG charges no fees, and I have neither observed nor heard of any victim being charged for her assistance or DDG's. Her sole effort has been to locate stolen funds and return them to the victims whose life savings were stolen. The Digital Defender's Group she started and leads is composed of victims helping each other, along with professionals with investigative and legal expertise - all with a common mission to see justice carried out.

8. After my wife's efforts to support Ms. Kaul's work, my involvement began in December 2025, leading to my current position there. The focus is on justice, with recovered funds to be returned to those whose funds were stolen, rather than being dispersed among others who are not victims.

**The GASA Summit, September 2, 2026**

9. On September 2, 2026, I attended the first of the two-day Global Anti-Scam Summit America 2026 at Pier 48 in San Francisco with my wife. DDG was invited to the Summit, and we attended on the organization's behalf to advocate for victims of scams.

10. Jeanine Ferris Pirro, the United States Attorney for the District of Columbia, gave a closing keynote address at the end of the first day, with that address entitled, "Public & Private Sector Collaboration With Results". After her address, I spoke with her in person, in a group that included three of her entourage. Her entourage included Tim Lauer, who she indicated handled her press functions and who I later found to be the Director of External Affairs for the United States Attorney's Office, District of Columbia. I exchanged contact information with Tim Lauer at the conclusion of my engagement with USA Pirro. Another person present was the person who provided bodily protection for USA Pirro, as well as another unidentified gentleman who was part of her group. Another unidentified gentleman was also present who may not have been part of USA Pirro's group. My wife was also present and took a photo of my interaction with USA Pirro.

11. During our discussion, I raised with USA Pirro the position she has taken in court filings that scam victims had "voluntarily" given up their funds and therefore lacked standing to claim them. I had in mind the Government's motion in this action to strike the claims of Claimants 1-118 (ECF No. 44), which states that victims' transfers, although "induced through misrepresentations," "were made voluntarily nonetheless." I stated this directly contradicted her public statements to make victims "whole." Her initial response was that she did not know what I was referring to since she submits many filings. After my surprise at that response, since it directly related to the content of the address she had just given and why she was at the summit, I refreshed

her memory, including that AUSA Rick Blaylock works under her and is the one who submitted the filing on her behalf.

12. With that clarification, she recognized the filing. I then contended, based on the filing, that she would prefer seized funds to go directly to the Bitcoin Reserve. To that, she emphatically declared, “Yes!” and that was the correct path for the seized funds and the process should result in getting the seized funds to the Bitcoin Reserve. I disagreed, stating that the intent should be to return them to the victims, not the Bitcoin Reserve. I also said that the best victims hope for through remission would return little to them, especially in this seizure, where the evidence points to victims that deserve recompense.

13. USA Pirro then departed for a dinner engagement, handing me off to Tim Lauer, with whom I cordially exchanged contact information; that included Tim Lauer providing me with both his cell phone number and email address.

**My Email of September 13, 2026**

14. On September 13, 2026, I sent an email to the aforementioned Tim Lauer. In it, I recounted the exchange described above and asked that he share my comments with USA Pirro. I blind-copied Ms. Kaul. Exhibit C to Ms. Kaul's status report is a true and correct copy of that email as I sent it. I wrote it from my own recollection of the events on September 2, 2026 and sent the email eleven days after the Summit.

15. To date, I have received no response to that email, which relates to the exchange with USA Pirro described in paragraphs 11 and 12 above. The email repeats my arguments concerning the $225 million seizure the Department of Justice has taken credit for and elaborates on my position on the matter as it relates to restitution for victims, including that the $225 million was secured through efforts by Ms. Kaul that were performed after the Department of Justice

unambiguously stated its inability to assist. It further expresses concern that the Department of Justice is attempting to broker a deal with Infiniweb, which the Government's complaint states is related to the criminal activity and now is willing to share a large portion with them, which would be a disastrous result, especially after those funds had been seized previously due to Ms. Kaul's efforts to return those funds to the worldwide victims.

16. The email sent by me to Tim Lauer also brings into question the actions of Erin West, the former Deputy District Attorney in Santa Clara County, who worked with one of the "dubious" organizations alluded to in paragraph 6. That organization is called the Global Anti-Scam Organization (GASO). My wife was part of GASO until it became compromised, with members concerned about corruption and scammer-adjacent activity; until then, it focused on raising awareness of and fighting online crime and helping victims, both emotionally and with the intent to recover their funds. Ms. West became involved with the GASO in 2022 and was educated on the crime by the GASO victims, who had also worked with the FBI and the Secret Service and taught them about the crime, as the members consisted of many tech-savvy victims. At some point, Ms. West asked for and then received victims' personal, crime, and financial data in a way that raises legal concerns about where and how that data was monetized, even as it was collected through the hard work of the victims themselves and for their own recovery, not for any other reason; my wife was one of those who had collected the data given to Ms. West. Ms. West now tells victims not to expect to receive any funds back from what is recovered.

17. When corruption occurred within GASO, it was reported to the FBI, Secret Service and IRS by victim members of the Board of Directors, who instructed those law enforcement agencies to no longer work with GASO, and then they resigned their positions. My wife confidentially notified Ms. West of these events, who turned around and reported her to one of those at GASO

under question, exposing my wife as a whistleblower, along with another member at GASO, resulting in my wife and the other GASO victim members being retaliated against and removed from a GASO group that assisted victims. In an email dated May 9, 2023, Ms. West replied to my wife, admitting she was the one who had exposed the whistleblowers to retaliation, stating, "I'm so sorry that I have breached your trust. I was confused about what was happening at GASO and reached out to reporters and to Brian for clarification. That was a mistake in judgment and it will not happen again." (I quote from the email, a copy of which I retain and will produce if the Court requests it.) That other member reported Ms. West's conduct, as it was egregious for a prosecutor, to Ms. West's superior, James Gibbons-Shapiro, an Assistant District Attorney for Santa Clara County, California. That resulted in Ms. West being removed from further activity with GASO.

**The LinkedIn Comment**

18. On September 23, 2026, I posted a comment in response to a LinkedIn post by Ms. West where she was writing about law enforcement action now taking place in Turkey - the same Turkey where those law enforcement actions were initiated by Ms. Kaul way back in 2023. Ms. West was lauding that activity, while previously stating that "whatever Turkey says doesn't have any bearing on US Secret Service." My comment in response stated, "I don't understand. What's credit-taking about? Back in August 2023, Tether was forced to comply with a Turkish criminal seizure order from an investigation brought on by victim Nivie Kaul - after Secret Service agents had told her recovery 'is not possible here.'" I described the result of Ms. Kaul's action: "over 130 arrested on a 1,548-page indictment (WSJ), with Kaul facing down dangerous criminals in court and resulting in the seizure of $225 million in illicit funds to go back to worldwide victims."

19. I then quoted Ms. West after the Department of Justice claimed seizure of those same funds two years later, when she stated that Secret Service agents "devised a clever plan" and

"figured out how to do a burn and reissue with Tether". I also summarized, in my own words, what USA Pirro had said to me on September 2, 2026, as described above, and then concluded that this means victims have no rights to that property. I put that in my own words in the post that USA Pirro had "emphatically" stated, "the Bitcoin Reserve is the correct destination for that money." My understanding of the U.S. Forfeiture Fund distribution waterfall is that law enforcement and government contractors and associates are prioritized over discretionary victim restitution, and as such, likely recipients would include Ms. West via her Operation Shamrock organization and her close affiliation with TRM Labs, a Government contractor holding a $94.66 million sole-source one-year contract from U.S. Immigration and Customs Enforcement - an award so contested that TRM's competitor, Chainalysis, sued the United States over it in the U.S. Court of Federal Claims. Ms. West's organization operates as a partner of TRM Labs: its own website routes victim scam reports to TRM's Chainabuse platform, and TRM Labs co-authored the Operation Shamrock white paper, the publication of which credits Mr. Castaño, TRM's Chief Executive Officer, as a co-founder of the organization. It is against that landscape - victim data flowing into a contractor's platform, the contractor paid from the enforcement side, and victims directed not to expect recovery - that I formed the view that the likely beneficiaries of keeping these funds from victims include those positioned in that ecosystem. In USA Pirro's and Ms. West's preferred scenario, victims would be required to go through a remission process, giving up their property rights and claims to seized property, and hope for a fraction of what might be left over after the forfeiture process.

20. When I returned to the post at about 9 PM ET, I found that Ms. West had deleted my LinkedIn comments to her posting, along with those who responded and appreciated my comments. Before the deletion, LinkedIn showed that nearly 200 people had viewed my

comments. My comments here were following up on my prior comments to Ms. West's postings over several months, where I repeatedly asked in a civil manner why the $225 million shouldn't go to victims for whom it was claimed and since Ms. Kaul, a victim herself, was the force behind having the money seized. Such comments were never responded to.

21. As a result of the deletion of my comments, I posted a response: "Erin, why are you deleting the comments of actual victims? And never answering their questions? What are you hiding?" The account of Operation Shamrock replied to it, beginning: "There were no questions in the deleted message, just unfounded accusations." 'I asked those questions because of my family's own experience with Ms. West described above. The comment shown in Exhibit B to Ms. Kaul's status report is mine. My comment and Operation Shamrock reply were removed from the same post and I noticed it the same day. I was simultaneously blocked from seeing any further LinkedIn postings by Ms. West.

22. My being blocked by Ms. West, with prior comments left unanswered and the latest comments being deleted, indicated to me she possessed no valid justifications for the Department of Justice's actions in assuming custody of funds already seized and destined to be returned back to victims rather than the Bitcoin Reserve. If Ms. West had a valid justification, there is no reason she would not have provided it, especially since the questioning came from victims who were greatly harmed and whom she purports to assist. I had engaged Ms. West in the past, attempting to help her while she was a prosecutor and while she was given victim data compiled by my wife. I now questioned Ms. West with the understanding that if such victims who have helped her over the years don't deserve an explanation, then who does?

**Consent**

23. I consent to the filing in this action of my email of September 13, 2026 (Exhibit C to Ms. Kaul's status report), of the LinkedIn material reproduced in Exhibit B, and of this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 5, 2026, at San Carlos, California.

Roger Welte