**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>APPROXIMATELY 225,364,961 USDT<br>Defendant, in rem. | Civil Action No. 25-cv-01907-AHA |

**DECLARATION OF JOHN (JAY) CARTWRIGHT UNDER 28 U.S.C. § 1746**

1. I, John (Jay) Cartwright, declare under penalty of perjury under the laws of the United States of America that the following is true and correct.

2. I am over eighteen years of age and competent to make this declaration. The matters I state are within my own knowledge, except where I say that a matter comes from a record, in which case I identify the record.

3. I make this declaration in support of Claimant Nivedita Kaul's motion for leave to file a supplemental response to Infiniweb Technology Inc.'s motion to dismiss, suppress, and strike (ECF 28), and in support of the proposed supplemental response itself, and concerning the Report of Findings on Infiniweb Technology Inc. described below.

**About me**

4. I have worked in investigations, asset tracing and due diligence since 2006, when I joined KSL Carratu as an investigator. I founded Sure Step, a corporate intelligence consultancy in the United Kingdom, in 2009, and I am a director of Sure Step Limited. My work has covered more than 100 countries.

5. I am a member of the board of Digital Defenders Group, Inc. ("DDG"), a United States 501(c)(3) nonprofit organisation that supports victims of cryptocurrency fraud, including by tracing the proceeds of their losses, and I am its Head of Intelligence. I joined DDG to help victims of cryptocurrency fraud. I prepared the report described below for DDG, and I have not been paid for my time on it. I have never been a victim of a cryptocurrency fraud or scam, including the fraud at issue in this action, and I am not seeking any recovery in it.

**The Report**

6. Attached as Exhibit A is a true and correct copy of the public version of the Report of Findings on Infiniweb Technology Inc. dated Oct 25, 2026 (the “Report”). I prepared the Report, which names me as its author and is issued in the name “DDG Investigations”.

7. The Report sets out what court filings, official registers, and my own use of the platform Infiniweb names show. Each finding identifies the record it comes from. The records are listed at Annex B of the Report, and the caption and source line of each figure identify the capture or record that the figure reproduces. I obtained the records listed at Annex B myself, from the source given for each, except two official records. A lawyer obtained, on my instructions, and provided to me the company search of Infiniweb of Sep 25, 2026 in the Registry of Corporate Affairs of the British Virgin Islands Financial Services Commission (VIRRGIN), which includes its register of members, filed on Jun 30, 2026 under transaction T260958990 (Annex B, row 8). A member of DDG obtained, on my behalf, from the Philippine Securities and Exchange Commission, its certification of non-registration of company, issued under seal on Apr 17, 2026 (Annex B, row 12); the original names that member as the person who submitted the request. A copy of the certification is already on the docket (ECF 79-13). I obtained Infiniweb’s entity profile and list of directors from the British Virgin Islands registry myself, on Mar 16, 2026. Attached as

Exhibit B is a true and correct copy of the company search of Sep 25, 2026, redacted as described in paragraph 8, and attached as Exhibit C are true and correct copies of the entity profile and list of directors that I obtained on Mar 16, 2026. Section 10 of the Report explains how the captures were made and the limits of what the records show.

**The public version and the unredacted copy**

8. The Report exists in two versions. In the public version, personal data is redacted as section 10 of that version describes: faces; dates of birth, which the text gives as the year; passport and identity card numbers; home addresses, except the city and postcode; the names shown for the dealers at the live tables; and the names of private individuals in a Chinese court judgment and in a trademark record. The user names, player identifiers and order numbers of my accounts are also covered in the public version. I hold the unredacted copy. Apart from the redactions, their description in section 10 and the markings on the cover and in the footer, the two versions are the same. Exhibit B is redacted in the same way: the two shareholders' dates of birth and their home addresses, except the city and postcode, are covered. I hold the unredacted copy of Exhibit B.

**How I made the captures**

9. I made the captures of websites reproduced in the Report myself, on my own computer, on the dates the Report gives. Most were made with a browser extension that saves a screenshot of the page, the text of the page and an archive of the page as served, and records the address of the page, the time in UTC and a SHA-256 hash of each file it saves. The pages of the UK Gambling Commission and of YouTube were saved as PDF copies, which record the time of saving. I made screen recordings on Sep 15, 2026 and Oct 15, 2026 with the screen recording

facility of my computer. I viewed archived pages through the Internet Archive (web.archive.org), and on Sep 03, 2026 I exported the public Telegram group "BiB Exchange Official".

10. I examined the platform through commercial virtual private network services (VPN). On Sep 15, 2026 I opened the account through an exit in Singapore. The live tables did not open through that exit, and that afternoon I tried other exits until they did; my play that day was through an exit in Turkey. On Sep 16, 2026, Oct 15, 2026 and Oct 16, 2026 I used an exit in Turkey. I did not log which exit was in use at the time of each capture; the exit is known for each stage of a session from the notes I kept at the time.

11. On Oct 21, 2026 I carried out the access test described in section 5 of the Report. Using two commercial virtual private network services (VPN), I logged in to the account on baobo13.com and opened the platform's live casino lobby from exits in 18 countries. For each country, I saved the internet address in use, on an IP lookup page or on the platform's own page, and a capture of the platform's response; for the later tests, I also saved a screenshot of the VPN application showing the server and its address. I placed no bets and sent no message to the platform's customer service. I carried out the test only to record how the platform responds to visitors from different countries.

**The accounts**

12. Every account used for the Report was opened, funded and operated by me alone, with my own money, and no one else took part: the account on baobo13.com, opened on Sep 15, 2026, from which the bets in sections 4.2 and 4.3 of the Report were placed; the account on the Kaiyun Sports site, www.fosfb3.vip, opened on Sep 16, 2026 (section 8.6 of the Report); and the agent account and the player account described in section 4.5 of the Report, opened on Oct 16, 2026. I made each deposit from a cryptocurrency wallet of my own.

13. On Oct 16, 2026 I carried out the test of the agent programme described in section 4.5 of the Report. I opened the agent account and, through its promotion link, a new player account. I changed the agent account's name once to see whether the site allowed it. I made the two deposits of 2 USDT to the agent account, credited ¥5.00 of the agent account's quota to the player account, and placed one bet of ¥5.00 from the player account, which lost. I recruited no one, no other person used either account, and I withdrew nothing. I carried out the test only to record how the programme's pages work.

**Translations**

14. The translations in the Report, from Chinese, Romanian and French, are working translations made with language translation software. They are not certified. The images show the records in their original language, and in the text and the captions the foreign words relied on are followed by their translation in brackets. A member of DDG whose first language is Chinese, and who is fluent in English, has read each translation from Chinese in the Report against the Chinese text. She is not a certified translator. She has assigned her own claim in this action to Claimant Nivedita Kaul, and so has an interest in its outcome. She has confirmed in writing, in messages I have seen, that she considers the translations accurate, and that where a literal translation does not fully carry the tone of the original, the difference is small.

**The figures**

15. Each figure in the Report is a true copy of the capture or record identified in its caption and source line, with the following alterations, each of which the Report states: red outlines and labels have been added; some images are cropped, scaled or combined with others; my account names in Figures 11 to 13 are covered in grey; and, in the public version, the personal data and the account details listed in paragraph 8 are covered. Nothing else in any image has been altered.

Illustration 1 (section 3.5 of the Report) and Illustration 2 (section 8.5) were prepared from the records at Annex B, rows 1, 2, 8, 9, 10 and 12 and rows 4, 24 and 25 respectively. They reproduce no capture. I have checked each name, date, address and time in them against those records.

16. I have kept the original capture files, with the hash values recorded when they were made, and copies of the records as I received them. They are available to the Court on request.

**Statement**

17. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 26, 2026, Powys, United Kingdom.

______________________________

John (Jay) Cartwright